**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **SAUNDRA G. ELION,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **Civ. Action No. 05-0992 (PLF)** |
| **v.** | ) |
| | ) |
| **ALPHONSO R. JACKSON,** | ) |
| **Secretary Of Housing And** | ) |
| **Urban Development,** | ) |
| | ) |
| **Defendant.** | ) |
| _____ | ) |

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

**Preliminary Statement**

1.)   This is an action by Saundra G. Elion, an African American woman who, until her involuntary reassignment, was employed by the Office of Inspector General ("OIG"") of the Department of Housing and Urban Development ("HUD") as the Director of the Headquarters Audits Division in Washington, D.C.

2.)   In December of 2002, Ms. Elion filed an administrative complaint of discrimination which charged senior OIG management with race, sex, and age discrimination by diluting Ms. Elion's job duties and subjecting her to a hostile work environment.

3.)   During that earlier complaint process, Deputy Inspector General Michael Stephens notified Ms. Elion that he was prepared to participate personally in ADR and resolve her complaint, but only if Ms. Elion participated without counsel.

4.)   Ms. Elion agreed to Mr. Stephens' condition and participated in ADR without counsel in January of 2003.  Based on

1

the Deputy Inspector General's representations to rectify the dilution of Ms. Elion's job duties and the hostile work environment she was experiencing, Ms. Elion withdrew her earlier administrative complaint in March of 2003.

5.) The improved working conditions which Mr. Stephens led Ms. Elion to believe he would bring about never came to be. Within a short time after the termination of her earlier complaint process, and continuing for the next year, Ms. Elion was again subjected to a hostile work environment and the dilution of her duties.

6.) Then, on April 21, 2004, senior OIG management stripped Ms. Elion of her supervisory duties and reassigned her to a previously non-existent position, as part of a pretextual reorganization of her former Division, one personally approved by Deputy Inspector General Stephens.

7.) The only other member of the OIG Headquarters Audits Division adversely affected by this pretextual reorganization was Ms. Elion's former Assistant Director, Donna Hawkins. Like Ms. Elion, Ms. Hawkins is an African American woman who had earlier filed an EEO complaint against senior HUD OIG management; she, too, was reassigned to a nonsupervisory position in the pretextual reorganization of their former Division.

8.) In January of this year, HUD OIG also involuntarily reassigned D. Michael Beard, a senior auditor who, until that time, served as the Regional Inspector General for Audit of HUD Region 6, to a previously non-existent, nonsupervisory position

in the OIG Headquarters Office of Audit.  Like Ms. Elion and Ms. Hawkins, Mr. Beard had previously filed an administrative complaint of discrimination against senior HUD OIG management.

9.)  In April of this year, HUD OIG also involuntarily reassigned Daniel P. Salas who, until that time, served as the Deputy Assistant Inspector General for Investigations, to a previously non-existent, nonsupervisory position in OIG Headquarters.  Like Ms. Elion, Ms. Hawkins, and Mr. Beard, Mr. Salas had previously filed an administrative complaint of discrimination against senior HUD OIG management.

10.)  This case seeks redress for defendant's retaliation and discrimination against Ms. Elion.  It arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16, and the Age Discrimination In Employment Act of 1967, 29 U.S.C. §§621 et seq., and seeks:  a.) declaratory and injunctive relief; b.) Ms. Elion's reinstatement in a supervisory Senior Auditor position; and c.) compensatory damages.  Ms. Elion also seeks an award of the attorneys' fees and costs incurred in the prosecution of this action and the administrative proceeding which preceded it.

<u>**Parties, Jurisdiction, And Venue**</u>

11.)  Plaintiff Saundra G. Elion was, at all times relevant until her involuntary reassignment, a supervisory Senior Auditor employed by HUD OIG.  Ms. Elion is an African American woman who participated in the administrative EEO complaints process before the actions which underlie this suit.  Ms. Elion is now 57 years

of age and resides at the address recited in the caption of this Complaint.

12.) Defendant Alphonso R. Jackson is the Secretary of Housing and Urban Development, the Cabinet official who heads HUD, and is sued in his official capacity only. HUD is a department in the Executive Branch of the federal government, the mission of which is to provide and encourage the provision of moderate and low income housing in the United States. HUD's Office of Inspector General is the entity within HUD which employed plaintiff. Its mission includes preventing and detecting fraud, waste, and abuse by individuals and entities who are engaged in the business of providing, or are the residents of, HUD-sponsored and HUD-financed housing and housing programs through administrative audits and criminal investigations.

13.) Jurisdiction of this Court is based upon 28 U.S.C. §1332; 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000e-5(c)); and 29 U.S.C. §§621, et seq. Venue lies here pursuant to 28 U.S.C. §1391, and 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000-5(f)(3)), because the actions of defendant at issue occurred in this judicial district, where plaintiff is and would be employed.

## Statement Of Facts

### Background

14.) Ms. Elion was appointed to the position of District Inspector General for Audit of HUD OIG's then Capital District at the Grade 15 level in June of 1999. In May of 2002, that office was abolished and the staff transferred to HUD OIG Headquarters. As part of that transfer, Ms. Elion's position became the Director of the HUD OIG Headquarters Audits Division.

15.) In that position, Ms. Elion was responsible for supervising the execution of audits[1] and audit reports for all HUD programs and funds awarded to entities (among them, public housing authorities, nonprofit organizations, and persons doing business with HUD) within the Washington, D.C., metropolitan area, as well as for HUD Headquarters programs. Ms. Elion was also responsible for performing audits and issuing audit reports in more complicated and sensitive areas involving HUD officials.

16.) Ms. Elion's specific assignment when she was hired as District Inspector General for Audit was to staff the Capital District fully and increase its productivity. Within her first

---

[1] Audits entail the review of financial transactions and dealings of entities which receive HUD funds, among them public housing authorities, contractors, and mortgagees, to ascertain whether their dealings with HUD, its programs, and federal funds, have complied with federal law and regulation. The end product of an audit is typically an audit report, which details the auditee's compliance and recommends whether sanctions should be sought, either by recovery of public funds, debarment, or other civil or administrative penalty. OIG investigations, by contrast, focus on potential criminal violations and prosecutions.

year in the position, Ms. Elion succeeded in accomplishing both goals.

17.) Despite her success, Ms. Elion came to believe that her efforts to reinvigorate her office were being undermined by senior OIG management, specifically newly appointed Deputy Inspector General Michael Stephens and Assistant Inspector General for Audit James Heist, as well as by Deputy Assistant Inspector General for Audit Michael Phelps.

18.) In particular, Ms. Elion believed that these three officials had restricted her ability to fill vacant positions on her staff, including her Assistant Director position, and reassigned members of her staff, even while there was a vigorous nationwide recruitment effort underway throughout OIG.[2]  No such limitations were imposed on any of Ms. Elion's counterpart Office Directors, all of whom were white males.

19.) Ms. Elion also believed that she was denied recognition and awards given to every other counterpart Office Director, even though her Division ranked 4th by OIG standards.

20.) Ms. Elion further believed that OIG management was actively undermining and diminishing her authority with subordinates and implementing managerial procedures not imposed on any of her counterpart white male Division Directors.

---

[2]    Among other matters, between June 2001 and October 2002, Ms. Elion was permitted to replace only one of eight auditors who left her Division.  Between June and August of 2003, two auditors were sent to another audit office on temporary detail over Ms. Elion's objections, and the senior most auditor was transferred to another Division without her concurrence.

## Earlier Administrative Complaint

21.) On December 18, 2002, Ms. Elion initiated the administrative discrimination complaints process concerning the allegations of discrimination and hostile work environment specified above in paragraphs 14 through 20 on the basis of her race, her sex, and her age (then, 54).

22.) On December 24, 2002, Ms. Elion requested that OIG management engage in Alternative Dispute Resolution, specifically mediation, to resolve her informal complaint, rather than EEO counseling.

23.) In January of 2003, through the OIG Ombudsman, Deputy Inspector General Michael Stephens responded that OIG was prepared to participate and he was prepared to participate personally in ADR and attempt to resolve Ms. Elion's complaint.

24.) However, Deputy Inspector General Stephens' offer was conditioned upon Ms. Elion agreeing to participate in mediation without counsel.

25.) On January 16, 2003, Ms. Elion responded through the OIG Ombudsman and accepted the Deputy Inspector General's condition.

26.) On January 30, 2003, Ms. Elion participated in a mediation session with Deputy Inspector General Stephens, Assistant Inspector General Heist, and Deputy Assistant Inspector General Phelps. The mediation session itself was confidential.

27.) On March 20, 2003, and in conformity with the express desire of Deputy Inspector General Stephens, Ms. Elion withdrew

her informal complaint without a written settlement agreement codifying OIG's obligations to remedy the discrimination and harassment she had suffered.

### Current And On-Going Discrimination And Retaliation

28.) In short order after the conclusion of her earlier administrative complaint process, Ms. Elion again began experiencing discrimination and harassment at OIG, which continued until the actions which gave rise to this Complaint.

29.) In particular, Ms. Elion's staff was not restored, her authority with subordinates continued to be undermined, and she was not given recognition or awards for her work.

30.) In or about December of 2003, Ms. Elion's Assistant Director, Donna Hawkins, filed an administrative complaint of discrimination alleging that senior OIG management had subjected her to a hostile work environment on account of her race (African American) and her sex (female) by removing staff from her supervision, undermining her authority with subordinates, maligning her professional reputation, and subjecting her theretofore independent work to peer review.

31.) In December of 2003, Deputy Inspector General Stephens directed Ms. Elion to attend a meeting with himself and Ms. Hawkins, at which Mr. Stephens attempted to solicit information about Ms. Hawkins' complaint of discrimination. Ms. Hawkins refused to provide the information sought by Mr. Stephens unless he permitted her counsel to participate, which he refused to do.

32.) In early April of 2004, Mr. Stephens instructed Ms. Elion to appear in his office and questioned her in an aggressive manner about Ms. Hawkins' relationship with her staff in an apparent attempt to obtain information adverse to Ms. Hawkins. During this meeting, which took 45 minutes, Ms. Stephens raised his voice and pointed his finger at Ms. Elion when she would not provide negative information about Ms. Hawkins. He then abruptly ended their meeting.

33.) On April 21, 2004, Deputy Inspector General Stephens, Assistant Inspector General Heist, and Deputy Assistant Inspector General Phelps removed Ms. Elion from her position as Director of the OIG Headquarters Audits Division, reassigned her to a previously non-existent position, and stripped her of supervisory duties, as part of a pretextual and unnecessary reorganization of her division.

34.) As part of this foregoing pretextual reorganization, Ms. Hawkins was also reassigned to a non-supervisory position as a desk officer.

35.) At the time of their reassignment, Ms. Elion and Ms. Hawkins were the only African-American female managers in the Headquarters Office of Audit, and were the only members of the OIG Office of Audit adversely affected by the foregoing reorganization.

36.) Ms. Elion's duties and responsibilities in the position to which she has been reassigned are not commensurate with her GS-15 grade level. They are essentially <u>ad</u> <u>hoc</u> and

make-work typically assigned to junior auditors and oversight
staff.

37.) In reassigning Ms. Elion from her position as Director
of the OIG Headquarters Audits Division, Deputy Inspector General
Stephens, Assistant Inspector General Heist, and Deputy Assistant
Inspector General Phelps retaliated against Ms. Elion for her
prior protected participation in the administrative EEO
complaints process, and discriminated against Ms. Elion on
account of her race, her sex, and her age.

38.) In January of 2005, Deputy Inspector General Stephens,
Assistant Inspector General Heist, and Deputy Assistant Inspector
General Phelps involuntarily reassigned D. Michael Beard, the
former Regional Inspector General for Audit of HUD Region 6, to a
previously non-existent, nonsupervisory position in the OIG
Headquarters Office of Audit in retaliation for his prior
protected participation in the administrative EEO complaints
process.

39.) In April of 2005, Deputy Inspector General Stephens
involuntarily reassigned Daniel P. Salas, the former Deputy
Assistant Inspector General for Investigations, to a previously
non-existent, nonsupervisory position in the OIG Headquarters in
retaliation for his prior protected participation in the
administrative EEO complaints process.

### Denial Of Return To Supervisory Position

40.) From the outset of the administrative process which underlies this Complaint, Ms. Elion made it known to defendant that she sought reinstatement in a managerial position in the OIG Headquarters Office of Audits.

41.) In August of 2004, defendant reassigned a nonminority, male auditor noncompetitively to a supervisory position as a Division Director in OIG Headquarters Office of Audit without advertisement.

42.) Ms. Elion was qualified for the forgoing supervisory position and better qualified than the white male auditor, one who had not previously utilized the administrative EEO complaints process, who was reassigned to that position.

### Exhaustion Of Administrative Remedies

43.) Ms. Elion timely initiated the informal administrative EEO complaints process concerning the employment actions which comprise the subject matter of this Complaint on May 5, 2004.

44.) On July 6, 2004, Ms. Elion timely filed a formal administrative complaint of discrimination and timely amended that complaint on September 14, 2004.

45.) Ms. Elion has exhausted the administrative remedies available to her, because more than 180 days have elapsed since she filed and last amended her formal administrative complaint of discrimination without the issuance of a Final Agency Decision.

**COUNT I**
**(Retaliation — Title VII)**

46.) Plaintiff repeats the allegations contained in paragraphs 1 through 45 above, as though fully set forth here.

47.) On or about April 21, 2004, defendant removed plaintiff from her position as Director of the OIG Headquarters Audits Division, reassigned plaintiff to a previously non-existent position, and stripped plaintiff of supervisory duties, as part of a pretextual and unnecessary reorganization of her division.

48.) In removing plaintiff from her position as Director of the OIG Headquarters Audits Division, and reassigning her to a previously non-existent, non-supervisory position lacking recurrent substantive duties commensurate with plaintiff's grade, defendant materially and adversely altered the terms, conditions, and privileges of plaintiff's employment and plaintiff's future employment opportunities, both within and outside of OIG, and took materially adverse action against Ms. Elion that would dissuade a reasonable worker from making or supporting a charge of discrimination.

49.) In taking the foregoing actions, defendant retaliated against plaintiff on account of her participation in protected EEO activity, in particular initiating the administrative discrimination complaints process in or about December of 2002 and pursuing that complaints process until on or about March 20, 2003.

50.) Defendant violated the "participation clause" of Title VII of the Civil Rights Act, 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2003-3(a)), by retaliating against plaintiff in the manner described above.

51.) Defendant's violation of plaintiff's civil rights caused her to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

### COUNT II
### (Race Discrimination)

52.) Plaintiff repeats the allegations contained in paragraphs 1 through 51 above, as though fully set forth here.

53.) On or about April 21, 2004, defendant removed plaintiff from her position as Director of the OIG Headquarters Audits Division, reassigned plaintiff to a previously non-existent position, and stripped plaintiff of supervisory duties, as part of a pretextual and unnecessary reorganization of her division.

54.) In removing plaintiff from her position as Director of the OIG Headquarters Audits Division, and reassigning her to a previously non-existent, non-supervisory position lacking recurrent substantive duties commensurate with plaintiff's grade, defendant materially and adversely altered the terms, conditions, and privileges of plaintiff's employment and plaintiff's future employment opportunities, both within and outside of OIG.

55.) In taking the foregoing actions, defendant discriminated against plaintiff on account of her race, which is African American.

56.) Defendant's violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000e-2)), in taking the foregoing actions.

57.) Defendant's violation of plaintiff's civil rights caused her to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

### COUNT III
### (Sex Discrimination)

58.) Plaintiff repeats the allegations contained in paragraphs 1 through 57 above, as though fully set forth here.

59.) On or about April 21, 2004, defendant removed plaintiff from her position as Director of the OIG Headquarters Audits Division, reassigned plaintiff to a previously non-existent position, and stripped plaintiff of supervisory duties, as part of a pretextual and unnecessary reorganization of her division.

60.) In removing plaintiff from her position as Director of the OIG Headquarters Audits Division, and reassigning her to a previously non-existent, non-supervisory position lacking recurrent substantive duties commensurate with plaintiff's grade, defendant materially and adversely altered the terms, conditions, and privileges of plaintiff's employment and plaintiff's future employment opportunities, both within and outside of OIG.

61.) In taking the foregoing actions, defendant discriminated against plaintiff on account of her sex, which is female.

62.) Defendant violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000e-2)), in taking the foregoing actions.

63.) Defendant's violation of plaintiff's civil rights caused her to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

## COUNT IV
### (Age Discrimination)

64.) Plaintiff repeats the allegations contained in paragraphs 1 through 63 as though fully set forth here.

65.) On or about April 21, 2004, defendant removed plaintiff from her position as Director of the OIG Headquarters Audits Division, reassigned plaintiff to a previously non-existent position lacking recurrent substantive duties commensurate with plaintiff's grade, and stripped plaintiff of supervisory duties, as part of a pretextual and unnecessary reorganization of her division.

66.) In removing plaintiff from her position as Director of the OIG Headquarters Audits Division, and reassigning her to a previously non-existent, non-supervisory position, defendant materially and adversely altered the terms, conditions, and privileges of plaintiff's employment and plaintiff's future employment opportunities, both within and outside of OIG.

67.) In taking the foregoing actions, defendant discriminated against plaintiff on account of her age, which at the time was 56 years of age.

68.) Defendant violated the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§621 et seq., by taking the foregoing actions.

69.) Defendant's violation of plaintiff's civil rights caused her to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

### COUNT V
### (Retaliation Under The ADEA)

70.) Plaintiff repeats the allegations contained in paragraphs 1 through 69 as though fully set forth here.

71.) On or about April 21, 2004, defendant removed plaintiff from her position as Director of the OIG Headquarters Audits Division, reassigned plaintiff to a previously non-existent position lacking recurrent substantive duties commensurate with plaintiff's grade, and stripped plaintiff of supervisory duties, as part of a pretextual and unnecessary reorganization of her division.

72.) In removing plaintiff from her position as Director of the OIG Headquarters Audits Division, and reassigning her to a previously non-existent, non-supervisory position, defendant materially and adversely altered the terms, conditions, and privileges of plaintiff's employment and plaintiff's future employment opportunities, both within and outside of OIG, and

16

took materially adverse action against Ms. Elion that would dissuade a reasonable worker from making or supporting a charge of discrimination.

73.) In taking the foregoing actions, defendant retaliated against plaintiff on account of her participation in protected ADEA EEO activity, in particular initiating the administrative discrimination complaints process in or about December of 2002 and pursuing that complaints process until on or about March 20, 2003.

74.) Defendant violated the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§621 et seq., by retaliating against plaintiff in the manner described above.

75.) Defendant's violation of plaintiff's civil rights caused her to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

**COUNT VI**
**(Retaliation – Title VII)**

76.) Plaintiff repeats the allegations contained in paragraphs 1 through 75 above, as though fully set forth here.

77.) Despite knowing of plaintiff's interest in being restored to a supervisory position as a senior auditor in OIG Headquarters in Washington, D.C., in August of 2004, HUD OIG noncompetitively reassigned a nonminority, male auditor to a supervisory position as a Division Director in OIG Headquarters Office of Audit without advertisement.

78.) Ms. Elion was qualified for the forgoing supervisory position and better qualified than the white male auditor, one who had not previously utilized the administrative EEO complaints process, who was reassigned to that position.

79.) In not reassigning plaintiff to the foregoing position, defendant materially and adversely altered the terms, conditions, and privileges of plaintiff's employment and plaintiff's future employment opportunities, both within and outside of OIG, and took materially adverse action against Ms. Elion that would dissuade a reasonable worker from making or supporting a charge of discrimination.

80.) In taking the foregoing actions, defendant retaliated against plaintiff on account of her participation in protected EEO activity, in particular initiating the administrative discrimination complaints process in or about December of 2002 and pursuing that complaints process until on or about March 20, 2003.

81.) Defendant violated the "participation clause" of Title VII of the Civil Rights Act, 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2003-3(a)), by retaliating against plaintiff in the manner described above.

82.) Defendant's violation of plaintiff's civil rights caused her to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

## COUNT VII
## (Race Discrimination)

83.) Plaintiff repeats the allegations contained in paragraphs 1 through 82 above, as though fully set forth here.

84.) Despite knowing of plaintiff's interest in being restored to a supervisory position as a senior auditor in OIG Headquarters in Washington, D.C., in August of 2004, HUD OIG noncompetitively reassigned a nonminority, male auditor to a supervisory position as a Division Director in OIG Headquarters Office of Audit without advertisement.

85.) Ms. Elion was qualified for the forgoing supervisory position and better qualified than the white male auditor who was reassigned to that position.

86.) In not reassigning plaintiff to the foregoing position, defendant materially and adversely altered the terms, conditions, and privileges of plaintiff's employment and plaintiff's future employment opportunities, both within and outside of OIG.

87.) In taking the foregoing actions, defendant discriminated against plaintiff on account of her race, which is African American.

88.) Defendant's violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000e-2)), in taking the foregoing actions.

89.) Defendant's violation of plaintiff's civil rights caused her to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of

enjoyment of life.

### COUNT VIII
### (Sex Discrimination)

90.) Plaintiff repeats the allegations contained in paragraphs 1 through 89 above, as though fully set forth here.

91.) Despite knowing of plaintiff's interest in being restored to a supervisory position as a senior auditor in OIG Headquarters in Washington, D.C., in August of 2004, HUD OIG noncompetitively reassigned a nonminority, male auditor to a supervisory position as a Division Director in OIG Headquarters Office of Audit without advertisement.

92.) Ms. Elion was qualified for the forgoing supervisory position and better qualified than the white male auditor who was reassigned to that position.

93.) In not reassigning plaintiff to the foregoing position, defendant materially and adversely altered the terms, conditions, and privileges of plaintiff's employment and plaintiff's future employment opportunities, both within and outside of OIG.

94.) In taking the foregoing actions, defendant discriminated against plaintiff on account of her sex, which is female.

95.) Defendant violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000e-2)), in taking the foregoing actions.

96.) Defendant's violation of plaintiff's civil rights caused her to suffer emotional pain, embarrassment, humiliation,

mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

**COUNT IX**
**(Retaliation Under the ADEA)**

97.) Plaintiff repeats the allegations contained in paragraphs 1 through 96 as though fully set forth here.

98.) Despite knowing of plaintiff's interest in being restored to a supervisory position as a senior auditor in OIG Headquarters in Washington, D.C., in August of 2004, HUD OIG noncompetitively reassigned a nonminority, male auditor to a supervisory position as a Division Director in OIG Headquarters Office of Audit without advertisement.

97.) Ms. Elion was qualified for the forgoing supervisory position and better qualified than the white male auditor who was reassigned to that position.

99.) In not reassigning plaintiff to the foregoing position, defendant materially and adversely altered the terms, conditions, and privileges of plaintiff's employment and plaintiff's future employment opportunities, both within and outside of OIG, and took materially adverse action against Ms. Elion that would dissuade a reasonable worker from making or supporting a charge of discrimination.

100.) In taking the foregoing actions, defendant retaliated against plaintiff on account of her participation in protected ADEA EEO activity, in particular initiating the administrative discrimination complaints process in or about December of 2002

and pursuing that complaints process until on or about March 20, 2003.

101.) Defendant violated the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§621 et seq., by retaliating against plaintiff in the manner described above.

102.) Defendant's violation of plaintiff's civil rights caused her to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

### COUNT X
### (Retaliation – Title VII)

103.) Plaintiff repeats the allegations contained in paragraphs 1 through 102 above, as though fully set forth here.

104.) Despite knowing of plaintiff's interest in being restored to a supervisory position as a senior auditor in OIG Headquarters in Washington, D.C., in August of 2004, HUD OIG noncompetitively reassigned a nonminority, male auditor to a supervisory position as a Division Director in OIG Headquarters Office of Audit without advertisement.

105.) Ms. Elion was qualified for the forgoing supervisory position and better qualified than the white male auditor, one who had not previously utilized the administrative EEO complaints process, who was reassigned to that position.

106.) In not reassigning plaintiff to the foregoing position, defendant materially and adversely altered the terms, conditions, and privileges of plaintiff's employment and plaintiff's future employment opportunities, both within and

outside of OIG, and took materially adverse action against Ms. Elion that would dissuade a reasonable worker from making or supporting a charge of discrimination.

107.) In taking the foregoing actions, defendant retaliated against plaintiff on account of her participation in protected EEO activity, in particular pursuing the administrative discrimination complaints process which underlies this action beginning on May 5, 2004.

108.) Defendant violated the "participation clause" of Title VII of the Civil Rights Act, 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2003-3(a)), by retaliating against plaintiff in the manner described above.

109.) Defendant's violation of plaintiff's civil rights caused her to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

### COUNT XI
### (Retaliation Under the ADEA)

110.) Plaintiff repeats the allegations contained in paragraphs 1 through 109 as though fully set forth here.

111.) Despite knowing of plaintiff's interest in being restored to a supervisory position as a senior auditor in OIG Headquarters in Washington, D.C., in August of 2004, HUD OIG noncompetitively reassigned a nonminority, male auditor to a supervisory position as a Division Director in OIG Headquarters Office of Audit without advertisement.

98.) Ms. Elion was qualified for the forgoing supervisory position and better qualified than the white male auditor who was reassigned to that position.

112.) In not reassigning plaintiff to the foregoing position, defendant materially and adversely altered the terms, conditions, and privileges of plaintiff's employment and plaintiff's future employment opportunities, both within and outside of OIG, and took materially adverse action against Ms. Elion that would dissuade a reasonable worker from making or supporting a charge of discrimination.

113.) In taking the foregoing actions, defendant retaliated against plaintiff on account of her participation in protected ADEA EEO activity, in particular pursuing the administrative discrimination complaints process which underlies this action beginning on May 5, 2004.

114.) Defendant violated the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§621 et seq., by retaliating against plaintiff in the manner described above.

115.) Defendant's violation of plaintiff's civil rights caused her to suffer emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

## PRAYER FOR RELIEF

Wherefore, plaintiff Saundra G. Elion respectfully requests that the Court enter judgment in her favor and award her the following relief.

A.    An Order declaring that defendant violated plaintiff's civil rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16, and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§621 et seq., and restraining and enjoining defendant from further violations.

B.    An Order reinstating plaintiff in a supervisory, senior auditor position with the Office of Inspector General of the Department of Housing and Urban Development in its Headquarters Office in Washington, D.C.

C.    Compensatory damages in an amount to be determined at trial to compensate plaintiff for the emotional pain, embarrassment, humiliation, mental anguish, inconvenience, career loss, loss of professional reputation, and loss of enjoyment of life caused by defendant's unlawful actions.

D.    Record correction.

E.    The attorneys' fees and costs incurred by plaintiff.

G.    Such other relief as may be just and appropriate.

**JURY DEMAND**

Plaintiff requests a trial by jury of all issues so triable.


Respectfully submitted,


_____/s/_____
Robert C. Seldon, Esq.
  D.C. Bar No. 245100


_____/s/_____
Molly E. Buie, Esq.
  D.C. Bar No. 483767
Robert C. Seldon & Associates, P.C.
1319 F Street, N.W.
Suite 305
Washington, D.C.  20004
(202) 955-6968

Counsel for Plaintiff