THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAUNDRA ELION,                     ) | |
|                                    ) | |
|     Plaintiff,            ) | |
|                                    ) | |
|     v.                   ) | Civil Action No. 05-0992 (PLF) |
|                                    ) | |
| ALPHONSO R. JACKSON,                ) | |
| Secretary of the                    ) | ECF |
| U.S. Dept. of Housing and           ) | |
| Urban Development,                  ) | |
|                                    ) | |
|     Defendant.           ) | |
| _____    ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS**

**I.    Introduction**

Plaintiff Saundra Elion moves under Fed. R. Civ. P. 37 to exclude one e-mail that discusses a hiring freeze from the record as a discovery sanction, claiming that Defendant did not timely produce that e-mail. As shown below, Plaintiff did not ask for that e-mail in her discovery and, therefore, Defendant was not obligated to produce the e-mail until it was specifically requested by counsel. More importantly, Plaintiff has not shown that she is prejudiced by Defendant's failure to produce that e-mail during the discovery period. In fact, the record shows that Plaintiff was aware of the "hiring freeze" while this case was at the administrative level – long before this case was filed in federal court. For these reasons, the Court should deny Plaintiff's Motion for Sanctions.

**II.    Factual Background**

1

There are two alleged discrete acts of discrimination and retaliation in this case. First, Plaintiff sued under Title VII and the ADEA alleging race and age discrimination and retaliation when Defendant reorganized and disbanded the Headquarters for Audit Division ("HAD") in April 2004. Amended Complaint ("A.C.") at Counts I-V. Plaintiff claims that the reorganization effectively reassigned her to a different position and took away her supervisory responsibilities. Second, Plaintiff claims that Defendant further discriminated and retaliated against her when Defendant did not reassign her to a position with supervisory responsibilities when that position became available in August 2005. See A.C. at Counts VI-XI. Plaintiff, however, represented to the Court at the status conference on August 10, 2006, that she is voluntarily dismissing her allegations pertaining to a non-reassignment in August 2005. Therefore, Counts VI to XI are no longer at issue in this case.

The dispute for purposes of this Motion pertains to an April 7, 2004 e-mail that Mr. James Heist mentioned in his deposition. The factual background surrounding the issue is as follows:

In April 2004, Mr. James Heist, Assistant Inspector General for Audit ("AIGA") for the Office of the Inspector General, U.S. Department of Housing and Urban Development, disbanded the HAD. At the time, the HAD was a five-person office, consisting of two supervisors and three auditors. One of the supervisors was the Plaintiff, who was laterally transferred to become a Special Assistant to the AIGA, with no loss in grade and pay. As a result of this transfer, Plaintiff filed an administrative complaint of discrimination, alleging that disbanding the HAD and transferring her to become a Special Assistant was retaliation and unlawful discrimination based on her race and age.

The reasons for disbanding the HAD were explained by Mr. Heist in a Memorandum, dated April 20, 2004, and in an email, dated April 21, 2004, both of which are in Plaintiff's possession. In fact, Plaintiff had the April 20, 2004 Memorandum during the administrative proceedings. Pl. Att. F at 14 (F.2.1). Plaintiff also had the April 21, 2004 e-mail, because she was one of the recipients of that e-mail. See Gov. Exh C (April 21, 2004 e-mail).

The parties could not resolve the discrimination complaint administratively, and Plaintiff filed this lawsuit. The parties engaged in discovery in good faith. Defendant made its officers and employees available for depositions, including one senior official who voluntarily cooperated even though he had retired. Defendant produced thousands of pages of documents to Plaintiff. The Plaintiff, still employed with Defendant, continues to have access to her e-mails and Defendant's offices and employees.

On July 31, 2006, one day before the close of discovery, Mr. Heist, the author of the April 20, 2004 Memorandum, testified at his deposition that a hiring freeze was in effect at the time that he proposed to disband the HAD. He revealed an e-mail sent on April 7, 2004 ("April 7, 2004 E-mail) to corroborate the hiring freeze. Heist Depo. at 90-91 (Pl. Att. B). The April 7, 2004 E-mail essentially indicates that there would be a new hiring freeze effective immediately and the freeze would continue into 2005. See Pl. Att. C. It does not order any division to reorganize or suggest any such reorganization as a result of the hiring freeze. Id. Furthermore, the April 7, 2004 E-mail neither refers to the HAD nor indicates that the HAD must be or should be reorganized. Id.

The failure to produce this e-mail prior to Mr. Heist's deposition is at the center of this dispute, although Plaintiff was well aware of the substantive fact of the hiring freeze in 2004.

3

See Pl. Att. A (April 20, 2004 Memorandum); Gov. Exh. C (April 21, 2004 E-mail); and Pl. Att. F at 9.

**III.     Argument**

    **A.     Standard of Review**

Rule 37(c)(1) of the Federal Rules of Civil Procedure provides that:

> A party that without <u>substantial justification</u> fails to disclose <u>information required by Rule 26(a)</u> or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless <u>such a failure is harmless</u>, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions (emphasis added).

<u>See also</u> <u>Sanders v. District of Columbia</u>, 2002 WL 648965 (Apr. 15, 2002 D.D.C.); <u>see also</u> <u>Foster v. U.S.</u>, 130 F. Supp.2d 68, 69 n.1 (D.D.C. 2001).  Therefore, for the Court to exclude the April 7, 2004 E-mail, the Court must find (1) that Defendant was not substantially justified in not producing the e-mail sooner; (2) that the e-mail was required to be disclosed by Rule 26(a); and (3) that the untimely production somehow harmed Plaintiff.  As shown, there are no bases for the Court make this finding.

    **B.     Defendant Was Well Justified In Not Producing the April 7, 2004 E-mail Because It Was Not Required to Produce It During Discovery.**

Plaintiff argues that she asked for the April 7, 2004 E-mail in her discovery requests but Defendant failed to timely produce that document.  Pl. Mem. at 4-6.  Specifically, Plaintiff argues that her Interrogatory No. 6 and Document Request No. 16 seek information and documents surrounding the decision to abolish the HAD, which would capture the April 7, 2004 E-mail.  <u>Id</u>.  This is incorrect.  These specific discovery requests did not seek information on the "hiring freeze" – the subject of April 7, 2004 E-mail.

4

Interrogatory No. 6, which has four subparts, seeks information on "the processes and actions leading up to and including the decision" to disband the HAD. Pl. Att. D at 14. Each of the subparts in turn seeks (a) all personnel and human resources specialists involved in the decision to disband the HAD; (b) all persons involved in that decision; (c) each person's "action" in abolishing the HAD; (d) all documents that "refer or relate" to Defendant's responses to subparts (a)-(c).[1]

In response, Defendant identified Mr. Heist and Mr. Michael Stephens, the Deputy Assistant Inspector General, as those involved in disbanding the HAD. Defendant also referred Plaintiff to Mr. Heist's declaration and documents, previously submitted as part of the administrative record of this case. Id.; see also Pl. Att. F at 14 (listing the documents attached to the Report of Investigation – F.2). Mr. Heist's declaration discussed his rationale for disbanding the HAD. In fact, he stated that the rationale is contained in the April 20, 2004 Memorandum, which he prepared for Mr. Stephens' approval. See Heist Declaration at 4 (Gov. Exh. A). The April 20, 2004 Memorandum was part of the ROI. See Pl. Att. F at 14 (F.2.1); see also Pl. Att. A. In the April 20, 2004 Memorandum, Mr. Heist explained, *inter alia*, that because of "budget constraints" and "a hiring freeze" there was a need to reorganize and disband the HAD. See April 20, 2004 Memorandum (Pl. Att. A). In addition, Defendant also produced an April 21, 2004 e-mail from Mr. Heist to Plaintiff (and other affected employees) discussing the reasons for the reorganization. See Gov. Exh. B (April 21, 2004 e-mail). Defendant also referred Plaintiff to Mr. Stephens' declaration, which also discussed the need for the reorganization because of

---

[1] Plaintiff's Document Request 16 seeks documents that "refer or relate" to the April 20, 2004 Memorandum. As discussed herein, the April 7, 2004 E-mail does not "refer or relate" to the disbanding of HAD – the subject of the April 20, 2004 Memorandum.

"limited resources." See Stephen Decl. at 4-5 (Gov. Exh. C); Pl. Att. E at 14.

In short, Defendant fully responded to Plaintiff's Interrogatory No. 6 and Document Request No. 16. Conspicuously absent from these two discovery requests is any request for "documents related to any hiring freeze." Furthermore, the April 7, 2004 E-mail does not mention the HAD and was not related to the HAD in any way. More importantly, the e-mail does not direct an organization within the OIG to reorganize in any way because of the hiring freeze.

In any event, Plaintiff had knowledge of the "hiring freeze" as one of the factors for the disbanding of the HAD at the administrative stage of this case. In fact, she even claimed in her administrative complaint that the "budget constraints" were not the true objectives of the HAD's reorganization. See Pl. Att. F at 9. Plaintiff, however, simply failed to propound any discovery request that would specifically seek information about a hiring freeze in 2004 – the subject of the April 7, 2004 E-mail. Plaintiff should not be allowed to re-characterize these two discovery requests as seeking information on the "hiring freeze."

Plaintiff then argues that her Document Request No. 8, which seeks documents on full-time employees (FTE), would capture the April 7, 2004 E-mail. Again, this is not true. Document Request No. 8 seeks documents from Fiscal Years 2001 to 2006 that contain information about "the number of FTE's" and the "funds budgeted for FTE's" for Auditors of the Inspector General for Audit. Pl. Att. E at 29. Defendant produced documents responsive to this request. Indeed, Plaintiff admitted that Defendant produced "150 pages of documents" responsive to this request. Pl. Mem. at 4-5 n.2. Furthermore, on July 19, 2006, two weeks prior to the close of discovery, Plaintiff deposed Mr. Stephens (the author of the April 7, 2004 E-mail)

6

and quizzed him extensively on the number of FTE's and how that number is determined. See Stephens Depo. at 33-46 (Gov. Exh. D). As such, Mr. Stephens' deposition testimony provided additional information responsive to Plaintiff's Document Request No. 8.

However, the disputed April 7, 2004 E-mail is not responsive to Plaintiff's Document Request No. 8. The April 7, 2004 E-mail neither refers to "the number of FTEs" nor "the funds budgeted for the FTE's" for Auditors of the Inspector General for Audit. Therefore, the April 7, 2004 E-mail is not useful in determining the number of FTE's or the budget for those FTE's for Auditors of the Inspector General for Audit. Simply put, Document Request No. 8 does not ask the right question that would capture the April 7, 2004 E-mail. Plaintiff should not be allowed to re-characterize her Document Request No. 8 to include the April 7, 2004 E-mail at this stage.

In any event, after Plaintiff *actually* requested a copy of the April 7, 2004 E-mail Defendant produced it to Plaintiff. Indeed, on July 31, 2006, the day before discovery closed,[2] Plaintiff deposed Mr. Heist and examined him on the factors that led to the disbanding of the HAD. Mr. Heist testified that budget constraints and a hiring freeze were some of those factors. Heist Depo. at 90:9-91:10. As discussed above, Plaintiff was aware of these same factors at the administrative stage. Mr. Heist then specifically referred to the April 7, 2004 E-mail. Id. At that point, Plaintiff's counsel asked for a copy of the e-mail. Id. at 91:12-19. The undersigned then produced it at the next earliest opportunity on August 10, 2006, after the status hearing in

---

[2] Contrary to Plaintiff's assertions that with "literally hours to go in discovery" Mr. Heist testified about the April 7, 2004 E-mail, Mr. Heist's deposition took place the day before discovery closed – on August 1, 2006. See Dkt. No. 13 (consent motion for an extension of the discovery deadline to August 1, 2006); June 5, 2006 Minute Order (granting the requested extension). Therefore, Plaintiff knew of the April 7, 2004 E-mail before discovery was closed.

this case.[3]  See Pl. Att. C.[4]

In short, Defendant was substantially justified in not producing the April 7, 2004 E-mail sooner because Plaintiff's discovery requests simply did not ask for it with "reasonable particularity."  Fed. R. Civ. P. 34(b).  Plaintiff now has that e-mail.

### C.  Plaintiff Had Notice of the Hiring Freeze and Is Not Prejudiced In Any Way By Receiving the April 7, 2004 E-mail on August 10, 2006.

Plaintiff argues that she is prejudiced by the untimely production of the April 7, 2004 E-mail.  Pl. Mem. at 9-10.  Plaintiff contends that she "has already completed a carefully designed plan of discovery" and the untimely production of this e-mail "threatened to render . . . that plan ineffectual."  Id. at 9.  This argument rings hollow.

It appears that Plaintiff's "carefully designed plan of discovery" is flawed because it failed to ask for the information that she knew existed during the administrative stage.  It is not disputed that Mr. Heist's April 20, 2004 Memorandum – which describes that "a hiring freeze" was one of several factors that led to the disbanding of the HAD – was produced to Plaintiff at

---

[3]  There were several mitigating circumstances for not producing the e-mail to Plaintiff immediately after the July 31st deposition.  First, the undersigned was preoccupied with preparing and defending two witnesses for their depositions in another matter from August 2-4.  Second, during that time the undersigned was also preoccupied with reviewing multiple filings by a plaintiff who sought a preliminary injunction and a temporary restraining order in yet another case.  See Canales v. Paulson, No. 06-1330 (GK).  Finally, also during that time, the undersigned had a personal emergency that was not resolved until August 8, 2006.  In fact, the undersigned had to end Plaintiff's deposition early to attend to this matter on August 7, 2006.  Plaintiff's counsel graciously agreed to accommodate the undersigned.  The parties will confer on a mutually agreeable date to complete Plaintiff's deposition.

[4]  On August 10, 2006, Defendant produced the April 7, 2004 E-mail under Fed. R. Civ. P. 26(e) because Mr. Heist testified to it during his deposition and Plaintiff's counsel specifically asked for it.  Defendant maintains that the e-mail is not responsive to any of the Plaintiff's discovery requests propounded to date.

the administrative stage of this case. See Pl. Att F at p. 14 (listing the April 20, 2004 Memorandum as an exhibit in the ROI – F.2.1.). Plaintiff simply did not propound any discovery requests seeking information surrounding this hiring freeze.

Furthermore, approximately two weeks prior to the close of discovery, Plaintiff had knowledge on how a "hiring freeze" would lead to reorganizations of certain offices. Indeed, on July 19, 2006, Plaintiff deposed Mr. Stephens, the author of the April 7, 2004 E-mail, and examined him extensively on the relationship between hiring freezes and reorganizations.

> **Q**: . . . What I was wondering was how does that relate to responsibility for considering, say, budgetary matters?
>
> **A**: Well, the federal budget in the last four or five years has been under terrific strain. Our organization, like many, have [sic] had to foment hiring freezes. Because of hiring freezes, you must move people to where the work needs to be done. You don't have an ability to replace people that leave the organization by retirement or transfer to another government job. That's an issue that all federal managers have to deal with, as well as the assistant inspector generals.
>
> . . .
>
> **Q**: Okay. And then who is responsible, or what entity is responsible for determining, if any, the effect of a proposed reorganization on the budget of OIG?
>
> **A**: Well, the assistant inspector generals have to come up with solutions to meet their requirements placed upon them. And so, they certainly can initiate potential solutions within their organization to meet that end. And that might include reorganization.

Stephens Depo. at 23:5-24:22 (Gov. Exh. D).

Mr. Stephens also confirmed that the reasons – including "a hiring freeze" – in the April 20, 2004 Memorandum were the same reasons he approved the disbanding of the HAD.

> **Q**: Okay. To your understanding, this memorandum, Stephens Exhibit 2 [i.e., April 20, 2004 Memorandum] that you approved, did this give you any reasons for seeking your approval of the proposed realignment that had not been given to you by Mr. Heist before?
>
> **A**: To the best of my recollection, what's written here matches up our conversation

    prior to me receiving this.

Stephens Depo. at 66:12-19.

  The record is clear that Plaintiff knew about the "hiring freeze" mentioned in the April 7, 2004 E-mail and April 20, 2004 Memorandum and asked questions about that subject approximately two weeks prior to the close of discovery. Therefore, Plaintiff cannot claim that she is prejudiced because she was blind-sided by the April 7, 2004 E-mail when Mr. Heist mentioned it in his deposition on July 31, 2006. See Sanders v. District of Columbia, 2002 WL 648965, *1 (Apr. 15, 2002 D.D.C.) (Friedman, J.).

  In Sanders, defendants moved to strike plaintiff's loss of opportunity claim under Fed. R. Civ. P. 37(c)(1) arguing that plaintiff untimely disclosed this theory of recovery during discovery. Id. at * 1. Defendants argued that the Court should impose "automatic and mandatory" sanctions by excluding plaintiff's claim. Id. This Court held that although it agreed with defendant that plaintiff failed to disclose this claim during discovery, it found that "defendants were put on notice of the theory in the course of plaintiff's deposition." Id. The Court, therefore, rejected defendant's Rule 37 motion for sanctions.

  Even assuming that Defendant was required to but did not produce the April 7, 2004 E-mail timely, under Sanders, the e-mail should not be excluded. Like the defendants in Sanders, Plaintiff was on notice that the "hiring freeze" was one of the factors for disbanding the HAD. She had this knowledge as early as April 21, 2004, when Mr. Heist sent out an e-mail informing all employees (including Plaintiff) within HAD that because of "budget constraints" HAD must be realigned and employees would be reassigned. Gov. Exh. B (April 21, 2004 E-mail); see also Pl. Att. F at 9 (noting that Plaintiff claims that "budget constraints" were not the true objectives

of the HAD's realignment). Moreover, Plaintiff also had knowledge of this hiring freeze and the HAD's realignment at the administrative stage because the April 20, 2004 Memorandum, which specifically reference "a hiring freeze", was submitted as a part of the ROI. See Pl. Att. F at 14 (listing the April 20, 2004 Memorandum as an exhibit – F.2.1.). Finally, the April 20, 2004 Memorandum was introduced as a deposition exhibit in this case as early May 31, 2006, when Plaintiff deposed Mr. Michael Phelps, her former first line supervisor. This same Memorandum was also introduced as an exhibit during Mr. Stephens' deposition on July 19, 2006, and Plaintiff asked Mr. Stephens numerous questions on realignments as a result of hiring freezes. Thus, Plaintiff's "discovery" of the April 7, 2004 E-mail did not provide her with any new information. She was aware of the hiring freeze but failed to tailor her discovery requests to elicit this specific information. The April 7, 2004 E-mail simply corroborates what she has been told by Defendant all along. As such, Plaintiff cannot be prejudiced by its introduction into evidence. Accordingly, under Sanders, because Plaintiff had notice of the "hiring freeze" and the potential role it has in reorganizations throughout the OIG, the Court should not exclude the April 7, 2004 E-mail. See Stephens Depo. at 23:5-24:22 (Gov. Exh. D).

In any event, because the Court has neither set a schedule for the filing of dispositive motions nor a trial date in this case, Plaintiff can cure any prejudice that she may have suffered through additional discovery. As Defendant represented to the Court during the status conference, Defendant is willing to make Messrs. Stephens and Heist available for deposition on the April 7, 2004 E-mail. Plaintiff did not use all of the 7-hour limit allowed under Fed. R. Civ. P. 30 during their depositions and she can now use the remaining time to depose them on that issue.

However, without citing any case law, Plaintiff argues that she would be harmed because additional discovery would drive up her attorney's fees. Pl. Mem. at 2, 9-10. Under the law, Plaintiff can recover for reasonable attorney's fees and costs if she prevails in this case. See 42 U.S.C. § 2000e-5(k). Therefore, attorney's fees should not be the determining factor to exclude the April 7, 2004 E-mail.

Finally, even assuming that the April 7, 2004 E-mail should have been produced sooner, the tardiness did not flow from any consciousness to hide an email that would hurt the Defendant's case. The opposite is true. The email helps the Defendant's case. The Court is entitled to treat that as an important factor in its consideration. See Jackson v. Harvard University, 900 F.2d 464, 469-70 (1st Cir. 1990) (noting that it was reasonable for the court to conclude that "the sanction needed to be one appropriate to the truth-finding process, not one that . . . served only further to suppress evidence."). Preclusion is a grave step, "by no means an automatic response to a delayed disclosure . . . [or] where failure to make discovery [is] not willful." Freeman v. Package Machinery Co., 865 F.2d 1331, 1341 (1st Cir. 1988). Given the circumstances in this case, preclusion is too drastic a remedy for this matter, especially where the Plaintiff was aware of the issue (i.e., the hiring freeze) from the beginning.

**D.     The Cases Cited by the Plaintiff Are Inapposite.**

Plaintiff mainly relies on five cases to support her contention that the Court should impose an automatic and mandatory sanction under Rule 37(c) to exclude the April 7, 2004 E-mail.[5] See Pl. Mem. at 7-8 (citing Yeti by Molly Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101,

---

[5] Plaintiff conclusorily argues that to prevent prejudice the Court should exclude the April 7, 2004 E-mail and "related evidence." Pl. Mem. 2. Plaintiff fails to identify what other "related evidence" was untimely produced to Plaintiff so as to warrant exclusion under

1105-06 (9th Cir. 2001); Wilson v. Bradlees of New England, Inc., 250 F.3d 10, 18-19 (2001); Heidtman v. County of El Paso, 171 F.3d 1038, 1040-41 (5th Cir. 1999); Klonoski v. Mahlab, . 250 F.3d 10, 18-19 (2001); and Cole v. Perry, 217 F.R.D. 1, 6 (D.D.C. 2003)).  These cases are inapposite.

In Yeti by Molly Ltd. v. Deckers Outdoor Corp., defendant appealed the exclusion of its expert report on damages, which was not disclosed to plaintiff until one-month prior to trial. 259F.3d 1101, 1105-06 (9th Cir. 2001).  The Ninth Circuit affirmed the exclusion noting that under such a circumstance the use of an automatic sanction of exclusion was not an abuse of discretion.  Similarly, in Wilson v. Bradlees of New England, Inc., the First Circuit found that the district court did not abuse its discretion by excluding an expert videotape, which was not disclosed until three months prior to trial.  250 F.3d 10, 18-19 (2001).

In Heidtman v. County of El Paso, the Fifth Circuit affirmed the district court's exclusion of defendant's expert witnesses because defendant failed to timely disclose those witnesses within the deadlines set by the court.  171 F.3d 1038, 1040-41 (5th Cir. 1999).  The Fifth Circuit also noted that exclusion was proper because defendant "failed to proffer any of the expert witness testimony or the expert witness report into the record." Id. at 1040.  In Klonoski v. Mahlab, the First Circuit affirmed the exclusion of certain documents introduced during the cross-examination of plaintiff at trial when those documents were not previously produced during discovery.  156 F.3d 255, 271 (1st Cir. 1998).  These cases do not apply here as they all involved the failures to disclose expert reports or documents until the eve of trial or during trial.

---

Rule 37(c).  Therefore, to the extent that the Court imposes a sanction against Defendant, the Court should exclude the April 7, 2004 E-mail only and not other "related evidence."

Unlike those cases, the Court has not set a trial date or even a deadline for the filing of dispositive motions.

Finally, Plaintiff cites Cole v. Perry, 217 F.R.D. 1, 6 (D.D.C. 2003), for the proposition that she was harmed by the alleged untimely production of the April 7, 2004 E-mail. However, the circumstances in Cole are starkly different from this case. Specifically, in Cole, a year after discovery closed, defendant produced to plaintiff "several hundreds of pages of unidentified documents" right before trial. Id. at 5. Defendant also indicated that these documents "may be used in connection with testimony in this case." Id. Plaintiff filed a motion in *limine* to exclude these documents. The court found that defendant was trying to cure its failure to disclose these documents during discovery and also noted that defendant did not even attempt to justify its untimely production. Id. Rather, defendant argued that plaintiff had the documents and should have moved for an enlargement of the discovery period. Id. The court rejected this argument noting that the court had previously indicated that it would allow any enlargement of any deadlines. Id.

Unlike the defendant in Cole, Defendant is substantially justified in not producing the April 7, 2004 E-mail because Plaintiff's discovery requests did not seek information or documents that would capture that e-mail. Moreover, once Plaintiff's counsel requested the April 7, 2004 E-mail Defendant produced it at the earliest opportunity. In addition, Defendant has offered to make its witnesses available for Plaintiff to conduct additional depositions about the e-mail. Therefore, unlike the plaintiff in Cole, Plaintiff in this case is not prejudiced by the alleged untimely production of the April 7, 2004 E-mail.

**IV.    Conclusion**

For the foregoing reasons, the Court should deny Plaintiff's Motion for Sanctions.

Dated: August 31, 2006.                    Respectfully Submitted,

   /s/   Kenneth L. Wainstein
KENNETH L. WAINSTEIN, D.C. BAR #451058
United States Attorney

   /s/   Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

   /s/   John C. Truong
JOHN C. TRUONG, D.C. BAR #465901
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 307-0406
Attorneys for Defendant

# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAUNDRA ELION, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 05-0992 (PLF) |
| | ) |
| ALPHONSO R. JACKSON, | ) |
| Secretary of the | )     ECF |
| U.S. Dept. of Housing and | ) |
| Urban Development, | ) |
| | ) |
|     Defendant. | ) |
| _____ | ) |

## ORDER DENYING PLAINTIFF'S MOTION FOR SANCTIONS

Upon consideration of Plaintiff's Motion for Sanctions, Defendant's opposition thereto, and the entire record herein, it is this _____ day of _____, 2006,

ORDERED that Plaintiff's Motion for Sanctions be and is hereby DENIED.

SO ORDERED.

                                                                                      _____
                                                                                      U.S. District Judge