**AFFIDAVIT**

Location: Washington, DC

I, James A. Heist, solemnly swear to the truth of the following statement, which is in response to questions posed by Tondalaya Williams, Equal Employment Opportunity (EEO) Investigator, Southwind, and provides information pertaining to the formal complaint of discrimination, filed against the U.S. Department of Housing and Urban Development on June 23, 2004, by Saundra Elion, Case No. IG-04-04. The following claims have been accepted for investigation:

*Whether Ms Elion was subjected to discrimination and continuous harassment because of her race (African-American), sex (female), age (56) and in reprisal, when the Deputy Inspector General, Assistant Inspector General for Audit and the Deputy Assistant Inspector General for Audit, Office of Inspector General (OIG), Office of Audit, Washington, DC.*

1. *Subjected her to a hostile work environment since December 2002 through April 2004.*

2. *On April 21, 2004, reassigned her from the position of Director of the Headquarters Audits Division of OIG to a non-supervisory position with significantly less responsibility, career exposure and opportunity for advancement.*

3. *On August 30, 2004, she learned that she was not considered for the position of the Director, GS-15 Supervisory, Technical Oversight and Planning Division, OIG Headquarters*

Q  Please state your full name.

A  James Alan Heist

Q  Please state your title and grade.

A  Assistant Inspector General for Audit, SES

Q  Please state the name of the agency for which you work, the organizational unit to which you are assigned, and the address of your duty station.

A  HUD, OIG, Office of Audit, Washington, DC

Initials [signature]



Exhibit E-2

1   Q   How long have you held your current position?

2   A   3 years, 9 months

3   Q   Please state your race.

4   A   Caucasian

5   Q   Please state your gender.

6   A   male

7   Q   Please state your age (date of birth).

8   A   50 years old (date of birth June 8, 1954).

9   Q   Have you previously participated in the EEO process? If so, when and in
10  what way?

11  A   Yes, I have in the past, been named as an alleged discriminating official and I
12  have been management's representative in ADR sessions.

13  Q   Were you aware Complainant had participated in the EEO process? If so,
14  when and how did you become aware?

15  A   I don't recall the dates but I do recall the complainant previously had an
16  informal complaint that she dropped and did not pursue before it reached the
17  formal stage. I became aware of the complaint that is the subject of this affidavit
18  shortly after it was filed as an informal complaint. Although I do not specifically
19  recall, I believe that it was my supervisor, Mr. Michael Stephens who informed me.

20  Q   Please identify your first and second level supervisors by name and title.

21  A   1st level – Michael Stephens, Deputy Inspector General

22      2nd level – Kenneth Donohue, Inspector General

23  Q   What is your organizational relationship to Complainant?

24  A   I am the complainant's supervisor

Initials [signature]

1   **1.   Subjected to hostile work environment from December 2002 to April 2004**

2   Q      Ms Elion contends she was subjected to a hostile work environment from
3   December 2002 to April 2004. Did she ever bring to your attention concerns of a
4   hostile work environment? If so, what were her concerns? What action did you take
5   in regards to her concerns?

6   A      I do not remember or believe the complainant ever bringing to my attention
7   any concerns that she was being subjected to a hostile work environment.

8   Q      To your knowledge, does the Agency have a policy regarding raising
9   concerns of harassment/hostile work environment? If so, what is your
10  understanding of that policy?

11  A      The Department has policies relating to the EEO program and prohibitions
12  against harassment. Also, OIG maintains an ombudsman program to provide a
13  mechanism for employees to informally and confidentially address concerns.

14  Q      Have all management personnel within your office received the appropriate
15  training in the policy?

16  A      Training on sexual harassment was provided through on line training. In
17  addition, all managers received training at a managers' conference in May 2003.

18  Q      Has the policy been communicated to all employees? If yes, how?

19  A      See above. Also, information on the ombudsman program was
20  communicated through distribution of policy manual and Email announcements.
21  Please note that drafting and issuing OIG policy regarding HR matters is the
22  responsibility of OIG's Office of Management and Policy and that organization is in
23  a better position to respond to this question.

1   Q   Ms. Elion contends the reorganization was used as a form of retaliation
2   against her. Please state specific reasons for the abolishment of Ms. Elion's former
3   office, the Headquarters Audits Division of OIG.
4   A   The rationale for my recommendation to the Deputy Inspector General to
5   disband the Headquarters Audits Division is set forth in a memorandum dated
6   April 20, 2004. (see Attachment 1) In summary, it made business sense to disband
7   the Headquarters Audits Division of OIG because of workload and resource issues.
8   Q   Were the functions of the Headquarters Audits Division transitioned to
9   another office/division? If so, where were they transitioned?
10  A   Yes. Responsibility for the Headquarters Audits Division's two ongoing
11  assignments was transferred to the Information Systems Audits Division. The
12  complainant retained responsibility for completing any remaining audit resolution
13  activities associated with reports issued by the Headquarters Audits Division. As
14  necessary and as requested on a case by case basis, the complainant was provided
15  with staff support to assist her in carrying out this responsibility.
16  Q   Please provide the name of the individual(s) that assumed the overall
17  responsibility of the duties performed by Ms. Elion's former office.
18  A   No specific designations were necessary. The workload of the Headquarters
19  Audit Division was reactive in nature and driven by requests or complaints that
20  were assigned to the Office of Audit. As future requests and complaints are
21  assigned to the Office of Audit, they will be assigned to a regional office or one of
22  the remaining headquarters divisions. It is possible that the type of assignments
23  that historically went to the Headquarters Audits Division will not even come to the

1   Office of Audit but will instead be routed to a newly created OIG inspection
2   function.
3   Q   Were other divisions/offices impacted by the reorganization? If so, please
4   provide the names of the offices and how they were impacted.
5   A   There has been minimal or no impact on the other organizations within the
6   Office of Audit, particularly as the other regional offices or headquarters divisions
7   already had staff with the qualifications and experience necessary to perform the
8   type of work that had been assigned to the Headquarters Audits Division. In other
9   words, the Headquarters Audit Division staff was not uniquely qualified to perform
10  the work.
11  Q   Please explain how the abolishment of Ms. Elion's office helped to improve
12  the organization.
13  A   At the time the Headquarters Audits Division was disbanded, the division
14  had three staff auditors, a supervisory GS-14 assistant director and a supervisory
15  GS-15 director, which resulted in a supervisor to staff ratio of 1 to 1.5. Such a ratio is
16  inefficient, particularly in light of government-wide emphasis on higher staff to
17  supervisor ratios and eliminating unnecessary layers of management. The action
18  allowed me to eliminate two supervisory positions, redistribute staff to a function
19  that was mission critical and statutorily mandated (i.e., the audit of HUD's financial
20  statements), and fill a critical senior auditor vacancy in the Technical Oversight and
21  Planning Division with an experienced GS-14.
22  Q   Was Ms. Elion's race a factor in reorganization/abolishment of her position?
23  A   No.
24  Q   Was her gender a factor?

Initials _____

1   A   No.

2   Q   Was her age a factor?

3   A   No.

4   Q   Was the reorganization/abolishment of Ms. Elion's position an act of reprisal
5   for her filing an EEO complaint?

6   A   No.

7   Q   Ms. Elion contends that during the period June 2001 and October 2002, her
8   ability to hire replacement staff was hindered by a reduction in staffing and
9   reassignment of existing staff to 2-month details. Ms. Elion also contends that,
10  during this same period, there was a nationwide recruitment campaign in place.
11  Was Ms. Elion hindered from hiring replacement staff during the period in
12  question? If so, what were the reasons?

13  A   During the period in question, Mr. Phelps, Deputy Assistant Inspector
14  General for Audit, was the complainant's supervisor and had direct responsibility
15  for overseeing all of the regions' and headquarters divisions' staff ceilings and
16  hiring. He can provide the details to answer this question as I had no involvement
17  in this issue.

18      With respect to detailing of staff to other offices, such details are not without
19  precedence and are generally done when the priority of the assignment warrants.
20  While the complainant does not specify the assignment, the only occasions I can
21  recall detailing the complainant's staff was to provide staffing for either a
22  legislatively required audit or a congressionally requested audit, both of which are
23  high priorities.

1   Q   During the same period, were other divisions within OIG restricted in
2   hiring? If so, please provide the names of the divisions and explain how they were
3   similarly impacted. If not, why?
4   A   During the period in question, Mr. Phelps, Deputy Assistant Inspector
5   General for Audit was the supervisor for all of the Regional Inspectors General for
6   audit and headquarters division directors, and had direct responsibility for
7   overseeing all of the region's and headquarters divisions' staff ceilings and hiring
8   and I had no involvement. He can provide the details to answer this question.
9   Q   Was Ms. Elion's race a factor in not being allowed to hire replacement staff?
10  A   In my role as Mr. Phelps' supervisor, regarding his responsibility for
11  overseeing the complainant's hiring, I am not aware of anything that would suggest
12  that race was a factor in any of his hiring decisions, and thus, no.
13  Q   Was her gender a factor?
14  A   In my role as Mr. Phelps' supervisor, regarding his responsibility for
15  overseeing the complainant's hiring, I am not aware of anything that would suggest
16  that gender was a factor in any of his hiring decisions, and thus, no.
17  Q   Was her age a factor?
18  A   In my role as Mr. Phelps' supervisor, regarding his responsibility for
19  overseeing the complainant's hiring, I am not aware of anything that would suggest
20  that age was a factor in any of his hiring decisions, and thus, no.
21  Q   Was not being allowed to hire replacement staff an act of reprisal for her
22  filing an EEO complaint?
23  A   In my role as Mr. Phelps' supervisor, regarding his responsibility for
24  overseeing the complainant's hiring, I am not aware of anything that would suggest

Initials 

1     that any of his hiring decisions were the result of reprisal for the complainant's filing

2     an EEO complaint. Also, I am advised by Mr. Phelps that the period in question was

3     prior to the complainant's filling an EEO complaint, and thus, no.

4     Q     Ms. Elion contends that although the Headquarters Audit Division ranked

5     4th, she did not receive recognition or any awards or bonuses for the

6     accomplishments of the Headquarters Audits Division under her leadership. She

7     further states other managers received not only recognition but also monetary

8     awards. Was Ms. Elion given awards or bonuses for the accomplishments of the

9     Headquarters Audits Division under her leadership? If so, what type of award(s)

10     did she receive? If not, please explain your reason(s) for not awarding Ms. Elion for

11     her accomplishments.

12     A     During the period in question, Mr. Phelps was the complainant's supervisor

13     and can respond to this issue while I had no involvement.

14     Q     Was Ms. Elion's race a factor in her not receiving awards and bonuses?

15     A     In my role as Mr. Phelps' supervisor, I am not aware of anything that would

16     suggest that race was a factor in any of his decisions regarding award

17     recommendations, and thus, no.

18     Q     Was her gender a factor?

19     A     In my role as Mr. Phelps' supervisor, I am not aware of anything that would

20     suggest that gender was a factor in any of his decisions regarding award

21     recommendations, and thus, no.

22     Q     Was her age a factor?

1  A    In my role as Mr. Phelps' supervisor, I am not aware of anything that would
2  suggest that age was a factor in any of his decisions regarding award
3  recommendations, and thus, no.
4  Q    Was Ms. Elion's not receiving awards and bonuses an act of reprisal for her
5  filing an EEO complaint?
6  A    In my role as Mr. Phelps' supervisor, I am not aware of anything that would
7  suggest that any of his decisions regarding award recommendations were motivated
8  out of reprisal for the complainant's filing an EEO complaint, and thus, no.
9  Q    Ms. Elion contends that she was directed to take action against another Black
10 female employee (Donna Hawkins) for alleged alcohol and leave abuse when she
11 did not consider it appropriate. She contends this incident is a form of retaliation.
12 Was Ms. Elion directed to take disciplinary action against Ms. Hawkins? If so, what
13 action was she directed to take?
14 A    I did not direct the complainant to take any such action nor do I have any
15 knowledge of anyone else directing the complainant to take disciplinary action
16 against Ms. Hawkins for alleged alcohol and leave abuse.
17 Q    Did Ms. Elion inform you that she did not consider it appropriate to take
18 action against Ms. Hawkins? If so, what were her reasons for not wanting to take
19 action?
20 A    No.
21 Q    Was Ms. Elion's race a factor in directing her to take disciplinary action
22 against Ms. Hawkins?
23 A    n/a; no.
24 Q    Was her gender a factor?

Initials

1   A   n/a; no.

2   Q   Was her age a factor?

3   A   n/a; no.

4   Q   Was directing Ms. Elion's to take disciplinary action against Ms. Hawkins an
5   act of reprisal for her filing an EEO complaint?

6   A   n/a; no.

7   Q   Would you like to add anything else regarding this claim?

8   A   No.

9   **2. Reassigned to non-supervisory position**

10  Q   Ms. Elion contends that on April 21, 2004, she was reassigned to the position
11  of Special Assistant, Office of Inspector General without supervisory responsibility.
12  Was Ms. Elion reassigned? If so, to what position?

13  A   Yes, the complainant was reassigned to the position of Special Assistant to
14  the Assistant Inspector General for Audit. The position is not supervisory.

15  Q   Please state the specific reason(s) for reassignment and whether the
16  reassignment was to a position without supervisory responsibility.

17  A   At the time the decision was made to disband the Headquarters Audits
18  Division, it was my desire to place all the Division employees into positions where
19  their grades would not be affected. The complainant's former position as Director,
20  Headquarters Audits Division was a GS-15 and there were no supervisory GS-15
21  vacancies in the Office of Audit. The reassignment was to a position without
22  supervisory responsibility.

Initials

1  Q   Was Ms. Elion the only senior level manager reassigned? If not, please
2  provide the name(s) of the individuals who were reassigned and the reasons for the
3  reassignments.
4  A   Ms. Elion was the only GS-15 manager reassigned as a result of the
5  disbanding of the Headquarters Audits Division.
6  Q   Please describe the differences in the level and duties Ms. Elion performed
7  prior to the reassignment and in her new assignment.
8  A   The level of responsibility associated with the complainant's current position
9  as Special Assistant is comparable to that of her former position as Director,
10 Headquarters Audits Division, by virtue of the fact that both positions were at the
11 GS-15 grade level. The duties are different – see Attachment 2 for the position
12 description of the complainant's former position of Director, Headquarters Audits
13 Division, and Attachment 3 for the position description of the complainant's current
14 position of Special Assistant to the Assistant Inspector General for Audit.
15 Q   Was the reassignment an existing position within the OIG or created
16 specifically for Ms. Elion?
17 A   A Special Assistant position within the Office of Audit has been staffed on
18 two previous occasions that I am aware of. (In both instances a previous Assistant
19 Inspector General for Audit filled the position). The complainant was reassigned to
20 an existing Special Assistant position that had not been filled after the last
21 incumbent left the organization. The position was not created specifically for the
22 complainant.

Initials [signature]

1   Q    Please explain why Ms. Elion was not given a lateral reassignment (with
2   supervisory responsibility and a similar level of work) to another area of OIG or
3   within the agency.
4   A    This question, in part, is based on the incorrect premise that the complainant
5   was not laterally assigned. As noted previously, the level of responsibility associated
6   with the complainant's current position as Special Assistant is comparable to that of
7   her former position as Director, Headquarters Audits Division, by virtue of the fact
8   that both positions were at the GS-15 grade level (i.e., a lateral reassignment). As
9   noted previously, at the time the Headquarters Audits Division was disbanded,
10  there were no supervisory GS-15 vacancies in the Office of Audit.
11  Q    Was Ms. Elion's race a factor in her reassignment?
12  A    No.
13  Q    Was her gender a factor?
14  A    No.
15  Q    Was her age a factor?
16  A    No.
17  Q    Was Ms. Elion's reassignment an act of reprisal for her filing an EEO
18  complaint?
19  A    No.
20  Q    Would you like to add anything else regarding this claim?
21  A    Yes. Subsequent to the disbanding of the Headquarters Audits Division, two
22  supervisory GS-15 vacancies occurred in the Office of Audit: the Regional Inspector
23  General for Audit in Region 1 and the Assistant Director, Technical Oversight and
24  Planning Division in headquarters. The complainant did not apply for either

Initials 

1  position. With respect to the Assistant Director, Technical Oversight and Planning
2  Division, I selected an African American female for the position. There were no
3  Minority or female applicants for the Region 1 Inspector General for Audit position
4  and I selected a Caucasian male.

5  **3.  Not given consideration for position of Director, Technical Oversight and**
6  **Planning Division.**

7  Q   Ms. Elion contends she was not given consideration for the position of
8  Director, Technical Oversight and Planning Division. Was Ms. Elion considered for
9  the position? If not, why?

10 A   The Director, Technical Oversight and Planning Division will become vacant
11 in January 2005 with the planned retirement of Stanley McLeod, the incumbent to
12 that position. Coincident with a decision to consolidate the Office of Audit's regions
13 7 (Kansas City) and 8 (Denver), I announced my intention to reassign Robert Gwin,
14 the current Regional Inspector General for Audit for Region 8, to the position of
15 Director, Technical Oversight and Planning Division, effective upon the incumbent's
16 retirement. This is to be a non-competitive placement action, made pursuant to the
17 authority in OIG Manual Chapter 1335, Merit Staffing Plan, Section 2-2, G.

18     I did consider whether it would be appropriate to reassign the complainant
19 to the position of Director, Technical Oversight and Planning Division, upon the
20 incumbent's retirement. Such a reassignment would not have been appropriate for a
21 number of reasons. The position of Director, Technical Oversight and Planning
22 Division, is an especially critical position within the Office of Audit. The director of
23 this division is responsible for overseeing the audit activities of all of the regional
24 offices as well as the other two headquarters divisions. This division also produces

Initials 

1  the Office of Audit's portion of the IG's Semiannual report to the Congress, prepares
2  testimony for the IG and provides comments on Departmental issuances, just to
3  name a few responsibilities. The position is extremely demanding and the Director,
4  Technical Oversight and Planning Division has to work under tight deadlines on a
5  daily basis. Moreover, as a peer of the regional and division audit managers (i.e., all
6  are GS-15 supervisory auditors), the Director, Technical Oversight and Planning
7  Division has to command the respect of those audit managers if he or she is to be
8  effective. In addition, the Director, Technical Oversight and Planning Division
9  directly supervises two other GS-15 supervisory auditors (Assistant Directors) and is
10 second level supervisor for a group of highly qualified GS-14 senior auditors.

11 In my judgment, the complainant does not possess the level of professional
12 competence that is necessary for this position. As Director, Headquarters Audits
13 Division, and previous to that as District Inspector General for Audit, Capital
14 District, both the Deputy Assistant Inspector General for Audit and I had concerns
15 with her management of both of those offices. On more than one occasion, staff
16 under the supervision of the complainant expressed concerns about the manner in
17 which the complainant managed those offices. Moreover, staff under her
18 supervision either left the organization or requested transfers to other OIG offices
19 because they no longer wanted to work under her supervision. I was concerned that
20 reassigning the complainant to the position of Director, Technical Oversight and
21 Planning Division would lead to similar results.

22 Another concern with the complainant's level of competence for the Director,
23 Technical Oversight and Planning Division position is her inability to consistently
24 manage the completion of work products in a timely manner. As noted above, the

Initials 

1  Director, Technical Oversight and Planning Division has to operate under tight
2  deadlines, and both the Deputy Assistant Inspector General for Audit and I have
3  had concerns with the complainant's ability to manage the completion of work
4  products in a timely manner.

5  Another consideration was the relative qualifications of Robert Gwin, the
6  individual I ultimately decided to reassign to the position of Director, Technical
7  Oversight and Planning Division. Mr. Gwin, in my judgment, commands a great
8  deal of respect from all levels of the organization including the Inspector General,
9  the Deputy Inspector General and his peer group of regional and headquarters audit
10 managers. He has served with distinction at HUD-OIG in positions in headquarters
11 and, for the past 6½ years, as Regional Inspector General for Audit in Region 8. He
12 was named Audit Manager of the Year for 2002, an award that is determined not by
13 me, but by the Inspector General based on the consensus recommendation of the
14 Deputy IG; the Assistant Inspectors General for Audit, Investigation, and
15 Management and Policy; and the IG Counsel. Moreover, Mr. Gwin is a Certified
16 Public Accountant, which is of added benefit to me because one of the headquarters
17 divisions that the Director, Technical Oversight and Planning Division oversees is
18 the Financial Audits Division, which is responsible for auditing HUD's financial
19 statements. The Director, Assistant Director and all senior auditors in the Financial
20 Audits Division are Certified Public Accountants. Because Mr. Gwin is also a
21 Certified Public Accountant, he will have greater credibility in carrying out his role
22 as it relates to overseeing the Financial Audits Division. Mr. McLeod, the outgoing
23 Director, Technical Oversight and Planning Division, is also a Certified Public
24 Accountant. It is my understanding that the complainant is not a Certified Public


Initials

1  Accountant, nor has she ever informed me that she is a Certified Public Accountant.
2  Further, I have been advised that the complainant's official personnel file shows no
3  evidence that she is a Certified Public Accountant.
4      Another advantage Mr. Gwin has demonstrated is his proven ability to
5  complete and manage the completion of work products in a timely manner. Prior to
6  his tenure as Regional Inspector General for Audit, Region 8, he was a senior auditor
7  in the Financial Audits Division where he had to meet statutory-based due dates for
8  completing his portion of the audit of HUD's financial statements.  As Regional
9  Inspector General for Audit, Region 8, he directed the completion of a nationwide
10  congressionally mandated audit in a timely manner. Finally, in managing Region 8
11  during fiscal year 2004, Region 8 exceeded the goal for issuing reports within the
12  OIG's 240 calendar day standard.
13  Q    If Ms. Elion was considered for the position, why was she not selected?
14  A    As noted above, Mr. Gwin was better suited for the position.
15  Q    What role did you play in the request or approval of the reassignment of
16  Robert Gwin to the referenced position?
17  A    With the Deputy IG's concurrence, I approved Mr. Gwin's reassignment to
18  be the Director, Technical Oversight and Planning Division.
19  Q    Was there a selection process? If so, what was the processed used?
20  A    As stated above, this is to be a non-competitive placement action, made
21  pursuant to the authority in OIG Manual Chapter 1335, Merit Staffing Plan, Section
22  2-2, G.
23  Q    What were the criteria used to determine the best-suited candidate for the
24  position?

Initials 

1   A   See above.

2   Q   Was Ms. Elion's race a factor in her not being selected for the position of
3   Director, Technical Oversight and Planning Division?

4   A   No.

5   Q   Was her gender a factor?

6   A   No.

7   Q   Was her age a factor?

8   A   No.

9   Q   Was Ms. Elion's reassignment an act of reprisal for her filing an EEO
10  complaint?

11  A   No.

12  Q   Would you like to add anything else regarding this claim?

13  A   Yes. The complainant never expressed to me that she wished to be
14  considered for reassignment to the Director, Technical Oversight and Planning
15  Division position.

16  Q   Would you like to add anything else to your statement?

17  A   No.

18
19

Initials [signature]

I have read this statement consisting of 18 pages plus attachments, and I have made all the necessary changes, additions or corrections, and I have signed or initialed every page.

I hereby declare under penalty of perjury that the foregoing statement is true, correct, and complete to the best of my knowledge and belief.

Signature: _James G. Hent_

Date: _12/17/04_

Subscribed and sworn to before me this _18_ day of _December_ 2004.

_[signature]_

EEO Investigator, Southwind

Or

_____

Notary Public

My commission expires: _____

Witnessed: Agnes Matthews 12/17/04