**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SAUNDRA G. ELION, | ) |
| | ) |
|     Plaintiff, | ) |
| | )   **Civ. Action No. 05-0992 (PLF)** |
|       v. | ) |
| | ) |
| ALPHONSO R. JACKSON, | ) |
|   Secretary Of Housing And | ) |
|   Urban Development, | ) |
| | ) |
|     Defendant. | ) |
| | ) |

<u>**PLAINTIFF'S MOTION FOR SANCTIONS**</u>

Plaintiff to the above action respectfully moves the Court, pursuant to Rule 37, Fed. R. Civ. P., to sanction defendant for its failure to make complete and timely disclosure and to make and supplement discovery responses.

Counsel for defendant has been advised of this Motion and has stated that it will be opposed.

The grounds in support of this Motion are explained in the accompanying Memorandum of Points and Authorities, to which the Court is respectfully referred.

A proposed Order accompanies this Motion, in accordance with LCvR 7(c).

Respectfully submitted,


_____/s/_____
Robert C. Seldon, Esq.
  D.C. Bar No. 245100


_____/s/_____
Molly E. Buie, Esq.
  D.C. Bar No. 483767
Robert C. Seldon & Associates, P.C.
1319 F Street, N.W.
Suite 305
Washington, D.C.  20004
(202) 955-6968

Counsel for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SAUNDRA G. ELION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civ. Action No. 05-0992 (PLF) |
| v. | ) | |
| | ) | |
| ALPHONSO R. JACKSON, | ) | |
| Secretary Of Housing And | ) | |
| Urban Development, | ) | |
| | ) | |
| Defendant. | ) | |
| ——————————————— | ) | |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR SANCTIONS

This case challenges defendant's decision to strip Saundra Elion, an African American woman who had previously filed an administrative EEO complaint, of her supervisory position and abolish the audit division she formerly headed, under Title VII and the ADEA. These adverse actions were effected by a Memorandum dated April 20, 2004, authored by HUD Assistant Inspector General for Audits James Heist (Att. A). That Memorandum became effective the next day, upon the approval of Deputy Assistant Inspector General Michael Stephens (Id.). It cited a number of alleged reasons for these actions, among them a supposed future "hiring freeze" on the Office of Audits (Id.).

With literally hours to go in discovery, Mr. Heist testified that two weeks earlier in April of 2004, he had received an e-mail from Mr. Stephens imposing a freeze (Att. B). This document (Att. C) was not disclosed by defendant (Att. D), or produced in response to specific Interrogatories and Requests for Production (Att. E, G). Neither did HUD management refer to it during the investigation of plaintiff's administrative complaint (Att. F).

The issue now before the Court is whether and, if so, how to sanction defendant for failing to produce this document while discovery was open. The answer is found in Rule 37(c)(1) of the Federal Rules of Civil Procedure, which provides that exclusion of evidence is the "self-executing sanction for failure to make a disclosure required" of a party. Committee Notes on Amendments to Federal Rules of Civil Procedure, 146 F.R.D. 401, 691 (1993). The Rule also provides for automatic exclusion when a party timely fails to amend a prior discovery response:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.

"Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove harmlessness." Yeti By Molly LTD v. Deckers Outdoor Corporation, 259 F.3d 1101, 1107 (9th Cir. 2001); accord Wilson v. Bradlees of New England, 250 F.3d 10 (1st Cir. 2001); Heidtman v. El Paso, 171 F.3d 1038 (5th Cir. 1999); Klonoski v. Mahlad, 156 F.3d 255 (1st Cir. 1998); Coles v. Perry, 217 F.R.D. 1, 6 (Facciola, J.).

Plaintiff respectfully submits that the automatic sanction of exclusion must be imposed by the Court. There is simply no denying that the Stephens e-mail was neither disclosed nor produced in timely fashion, and that defendant is incapable of making the twin showings of substantial justification and harmlessness required by Rule 37(c)(1) to avoid this sanction. Excluding the Stephens e-mail and related evidence offers the only sure means of preventing prejudice to plaintiff and avoiding a needless increase in her attorneys fees.

## STATEMENT OF THE CASE

### Background

Defendant's decision to abolish the audit division that Ms. Elion formerly headed, transfer her staff to other divisions, and reassign Ms. Elion to a non-supervisory, make-work position was effected by a Memorandum dated April 20, 2004, authored by Assistant Inspector General James Heist and approved by Deputy Inspector General Michael Stephens (Att. A).  Among the reasons cited in that Memorandum was a "hiring freeze" supposedly imposed on the Office of Audits[1] (Id.). Defendant's management produced no documents during the investigation of plaintiff's administrative complaint to corroborate this alleged "freeze" (Att. F).  For that reason, the discovery process focused intensively on whether any such documentation existed.

### Disclosure and Discovery Produced No Relevant Documents

It was immediately apparent to plaintiff and her counsel that no such documentation was disclosed by defendant (Att. C).

Not willing to leave open the possibility that disclosure of so important a document had been overlooked, plaintiff made a thorough and determined effort during discovery to prove that this alleged "hiring freeze" was unsupported by any study or documentation.  That effort began with an Interrogatory (No. 6), which was specifically designed to elicit "a complete and accurate account of the processes and actions leading up to" defendant's decision to abolish plaintiff's

---

[1]    Ms. Elion's former office was known as the Headquarters Audits Division and was located in the Office of Audits of the Office of Inspector General of the Department of Housing and Urban Development (Cplt./Answ., ¶1).

former decision, including an identification of "all documents, which refer or relate, to" that action (Att. E at 14-15). This Interrogatory was complemented by a Request for Production (No. 16) that sought "[a]ll documents which refer or relate, whether in whole or in part, to the Memorandum for Michael Stephens from James Heist entitled 'Proposed Realignment of the Office of Audit' dated April 20, 2004" (Id. at 32). In response, defendant produced no documents, other than a reference to the record of the investigation of plaintiff's administrative complaint (Att. E at 14-15, 32). It too contained no such documents (Att. F).

### Discovery Focuses On The Decisional Officials Identified By Defendant And Disproving The Existence Of Documentation Corroborating The Alleged "Hiring Freeze"

Plaintiff's effort to inquire about the alleged "hiring freeze" was complemented by two other discovery requests, the first being Interrogatory No. 6(b) which directed defendant to "identify all persons involved" in the decision to abolish plaintiff's former division. That inquiry only yielded the names of Deputy Inspector General Stephens, Assistant Inspector General Heist, and Deputy Assistant Inspector General Michael Phelps (Att. E at 14).

Request for Production No. 8 sought copies of all documents relating to the number of auditors and the funds budgeted for auditors in the Office of Audit for FY 2004 and other years (Att. E at 29). Voluminous and detailed documents were produced in response (Att. G[2]). The Stephens e-mail was not among them (Id.).

---

[2]    Attachment G contains a representative sample of defendant's response to Plaintiff's RFP No. 8, which in total was comprised of 150

These and other discovery responses were studied carefully by plaintiff's counsel and followed up with the depositions of Mr. Phelps, Mr. Stephens, and Mr. Heist (Att. B, H, I). Until the very last moment, defendant withheld mention of any documentation that related to its decision to abolish plaintiff's division and reassign her, including the Stephens e-mail.

### Defendant's Untimely Production

At the very end of his deposition, Mr. Heist claimed to have been in possession of an e-mail from Mr. Stephens that supposedly corroborated the need to take adverse employment action against Ms. Elion (Att. B). Mr. Heist testified that he had reviewed the document "a couple days ago," presumably in preparation for his deposition (Id. at 91). The Stephens e-mail was only after defendant's failure to disclose it or to provide it in responding to discovery was raised at the post-discovery status conference on August 16, 2006 (Att. B).

### Defendant's Untimely Production Is Highly Prejudicial

Production of the Stephens e-mail was unquestionably required in response to much of plaintiff's discovery, including RFP No. 8, which sought copies of all documents relating to the number of auditors and the funds budgeted for auditors in the Office of Audit for FY 2004 and other years (Att. E at 29). The e-mail document also suggests that the decision to abolish plaintiff's former division and reassign her subordinates was driven by officials other than the three identified by defendant in response to Interrogatory No. 6(b), Messers. Stephens,

---

pages of documents comparing the number of employees in the Office of Audits to its hiring ceiling.

Heist, and Phelps (Att. E at 14).  This much can easily be seen.

The Stephens e-mail began by referring to supposedly "new information" produced by a previously unidentified division, the Office of Management and Policy, that allegedly required a reduction in the budget for the Office of Inspector General (Att. C at 2).  The e-mail continues by referring to study that would be undertaken shortly by "budget specialists" from that office to ascertain where budget cuts might have to be made (Id.).

Even though it supposedly initiated a new "hiring freeze," the Stephens e-mail raised any number of questions about whether any such freeze would actually be or was actually implemented.  For example, the Stephens e-mail made no reference to the Office of Audits and specifically disavowed imposing a ceiling on the number of employees in the Inspector General's Office until an "analysis" of divisional "operating budgets" was "finished" (Att. B at 2).  Similarly, the e-mail stated that even new hiring could go ahead if it was approved by Mr. Stephens (Id.).

**ARGUMENT**

**DEFENDANT'S FAILURE TO DISCLOSE OR PRODUCE THE
STEPHENS E-MAIL IN A TIMELY MANNER
WARRANTS THE AUTOMATIC SANCTION OF EXCLUSION**

Rule 37 is clear: a party who fails to disclose a document or a witness it intends to rely upon in a timely manner will not be permitted to do so, unless the offending party bears the burden of showing that its failure was substantially justified <u>and</u> worked no harm on the opposing party. Rule 37(c)(1), Fed. R. Civ. P. Indeed:

> [E]ven absent a showing of bad faith or willfulness, exclusion is an appropriate remedy for failing to fulfill the required disclosure requirements of Rule 26(a).

<u>Yeti By Molly LTD</u>, 259 F.3d 1101, 1106 (9th Cir. 2001); <u>accord</u> <u>Wilson v. Bradlees of New England</u>, 250 F.3d 10 (1st Cir. 2001); <u>Heidtman v. County of El Paso</u>, 171 F.3d 1038 (5th Cir. 1999); <u>Klonoski v. Mahlad</u>, 156 F.3d 255 (1st Cir. 1998). Beyond imposing initial disclosure obligations, Rule 26 of the Federal Rules of Civil Procedure also requires a party "to supplement <u>at appropriate intervals</u>" its disclosures of documents as well as discovery responses about documents and witnesses that are materially "incomplete." Rule 26(e), Fed. R. Civ. P. (emphasis supplied); 6 <u>Moore's Federal Practice</u>, §26.131[d] at 26-301 (3rd ed.) (citing, among other authorities, <u>Alldread v. Grenada</u>, 988 F.2d 1425 (5th Cir. 1993); <u>Arthur v. Atkinson Freight Lines Corp.</u>, 164 F.R.D. 19 (S.D.N.Y. 1995)); <u>accord</u> <u>Cope v. McPherson</u>, 781 F.2d 207 (D.C. Cir. 1986) (applying the sanction of exclusion before Rule 26 was amended to require disclosures).

Defendant can not possibly contend that its failure to disclose the Stephens e-mail, produce it during discovery, or identify

witnesses who might testify about its actual workings was "substantially justified." E.g., Athridge v. Aetna Cas. & Surety Co., 184 F.R.D. 200, 205 (D.D.C. 1998). Responses to each of these subjects was explicitly sought in Plaintiff's Interrogatory No. 6, which sought a complete and accurate account of the process which culminated with the abolition of plaintiff's former division and the individuals who participated in that decision (Att. E at 14-15); RFP No. 16, which called for the production all documents relating to the Memorandum which abolished plaintiff's division and reassigned her (Att. E at 32); and RFP No. 8, which sought all documents pertaining to the number of and funds budgeted for full time auditors (Id. at 29). Moreover, even if plaintiff's discovery did not seek to explore these areas so pointedly, defendant was required to disclose all such documents, unless it did not intend to rely upon them in the defense of this action.

Defendant's failure to produce documents and identify witnesses was not only unjustified, it was also harmful to plaintiff, the second element that defendant would have to satisfy in order to ward off automatic exclusion under Rule 37(c)(1). In this context:

> The testimony of a witness or the introduction of a document will be deemed harmful if it was likely that a reasonable attorney, learning of the witness or the existence of the document, would have engaged in additional discovery or sought to meet the probative force of the testimony or document by creating countering evidence.

Coles v. Perry, supra, 217 F.R.D. at 6. Disclosure of the Stephens e-mail would have signaled defendant's intention to use it "to support its claims or defenses" in this action. Rule 26(a)(a)(A), Fed. R. Civ. P. Without disclosure or production during discovery,

depositions were never taken of agency officials who might know whether the Office of Audits' budget was actually reduced and, if so, whether a "hiring freeze" was imposed on that Office.  Discovery instead focused elsewhere.

Although Rule 37 permits a District Court to "impose other appropriate sanctions" in "addition to or in lieu of" automatic exclusion, that option does not apply here.  Rule 37(c)(1), Fed. R. Civ. P.  These are "alternative sanctions … primarily intended to apply when a party fails to disclose evidence helpful to an opposing party." Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co., 318 F.2d 592, 596 (4th Cir. 2003) (emphasis in original); accord Committee Notes, supra, 146 F.R.D. at 691-92).  Thus, they would be inadequate here, where the function of exclusion is to prevent defendant from benefiting by its failure to produce the Stephens e-mail.

Merely re-opening the depositions of Messers. Stephens, Heist, and Phelps, as defendant suggests, would not render its violation of Rules 26 harmless.  Plaintiff has already completed a carefully designed plan of discovery, after several extensions due to defendant's unavailability.  Defendant's failure to make required disclosures and discovery production has threatened to render much of the product of that plan ineffectual.  There is also extensive predicate discovery that would be required before depositions could be re-opened – including discovery from the outside office whose analyses supposedly necessitated a reduction in the budget of the Office of Audit and depositions of that office's officials – that would

needlessly delay this proceeding and drive up plaintiff's attorneys' fees.    For these reasons, plaintiff respectfully submits that automatic exclusion is the only sanction that would promote the "just, speedy, and inexpensive determination" of this action, as contemplated by Rule 1, Fed. R. Civ. P.

## CONCLUSION

For the foregoing reasons, plaintiff respectfully moves the Court to preclude defendant from offering into evidence any documents that it failed to timely disclose or to produce during discovery including, but not limited to the, Stephens e-mail of April 4, 2006, and from relying on the testimony of any witnesses related to any such documents or their subject matter.


Respectfully submitted,


_____/s/_____
Robert C. Seldon, Esq.
  D.C. Bar No. 245100


_____/s/_____
Molly E. Buie, Esq.
  D.C. Bar No. 483767
Robert C. Seldon & Associates, P.C.
1319 F Street, N.W.
Suite 305
Washington, D.C.  20004
(202) 955-6968

Counsel for Plaintiff

**ATTACHMENT A**

**U.S. Department of Housing and Urban Development**

## Office of Inspector General

451 7th St., S.W

Washington, D.C. 20410

*Ken D*

*Dennis R*
*Nancy H*
*Helen A*

April 20, 2004

**MEMORANDUM FOR:** Michael Stephens, Deputy Inspector General, G

**FROM:** James Heist, Assistant Inspector General for Audit, GA

**SUBJECT:** Proposal for Realignment of the Office of Audit

I am proposing to realign staff within Headquarters to best address our mission workload and our current and anticipated budget constraints. The realignment would involve disbanding the Headquarters Audits Division and moving staff to other mission critical functions within Headquarters, Office of Audit.

Roughly two years ago we made a decision to disband the Capital District and create the Headquarters Audits Division. That decision was made, in part, due to the level of work that was anticipated in program areas that were centralized in HUD Headquarters. The workload has not materialized to the extent anticipated and thus the need for a separate Headquarters Audits Division does not exist. Future workload can be assigned to one of the remaining Office of Audit divisions, a regional office, or the newly created inspection function, under the Deputy AIG for Management and Policy.

The budget constraints that we are now facing and will continue to face into the coming years are a stark reality of the problems all of government is facing. We are currently under a hiring freeze so I cannot hire more staff in the Financial Audits Division or the Technical Oversight and Planning Division to address staffing needs. Our current year budget has been reduced and we are searching for ways to absorb even greater cuts in FY 2005.

The Chief Financial Officers Act of 1990 placed a statutory responsibility on the Office of Inspector General. Recent changes to the statutory due date for the audit have forced us to begin what is almost a continuous financial audit process, throughout the year, here in Headquarters. The staffing required to perform this audit is such that during the few months prior to completion of the audit, the audit work that must be done in Headquarters is too much for the Financial Audit Division to complete without assistance. This work has been performed by detailing staff from our field offices, which has helped with staff development and provided staff with experience needed for CPA certification. However, there are travel costs associated with this and given our current budget situation, we need to minimize TDY travel as much as possible. I therefore propose to transfer the remaining three Headquarters Audits Division staff auditors to the Financial Audits Division.

We realigned the Technical Oversight and Planning Division in Headquarters to allow us to better monitor the field audit work to ensure timely and effective audit products. We increased the ceiling of that staff to 15, however, prior to the hiring freeze, we were unable to fill all the positions and currently the Division is two under ceiling. The workload is tremendous and it is very difficult for the current staff to keep up in a timely manner. I propose to move the current Assistant Director of the Headquarters Audits Division to a Desk Officer position in the Technical Oversight and Planning Division. The Assistant Director can be transferred to the Technical Oversight and Planning Division immediately. I propose that the Division Director be immediately reassigned as a Special Assistant in the Office of Audit.

We have discussed this matter with our Human Resources Division and this realignment can be accomplished without anyone's grade being affected.

The Division has only two ongoing assignments. These are audits of HUD purchase cards and travel cards. I propose transferring the supervision of these assignments and reporting responsibilities to the Information Systems Audit Division. This transfer is logical since much of the work on these audits has involved the use of CAATS techniques in analyzing HUD and credit card transaction databases. Moreover, the Information Systems Audit Division performed the previous audit of HUD purchase cards. As Special Assistant in the Office of Audit, the current Headquarters Audit Division Director will be available, if necessary, to assist in the orderly completion of these ongoing assignments. We expect the ongoing assignments to be completed in July or August. As the three staff auditors are freed up, they will begin reporting to the Financial Audits Division at that time. This timeframe coincides with when they will be needed to work on the FY 2004 financial statement audit.

If you approve of this proposal I will move forward with implementation.

APPROVE _____

4/20/04

DISAPPROVE _____

**ATTACHMENT B**

Page 1

1

2          UNITED STATES DISTRICT COURT

3          FOR THE DISTRICT OF COLUMBIA

4      - - - - - - - - - - - - - - -X

5     SAUNDRA G. ELION,              :

6              Plaintiff           :

7          v.                      : Case No. 05-0992(PLF)

8                                   :

9     ALPHONSO R. JACKSON,           :

10             Defendant          :

11     - - - - - - - - - - - - - - -X

12              DEPOSITION OF JAMES HEIST

13                     Washington, D.C.

14                  Monday, July 31, 2006

15          Deposition of JAMES HEIST, called for

16     examination at 9:45 a.m., at the law offices of Robert

17     C. Seldon & Associates, P.C., 1319 F Street, N.W., Suite

18     305, Washington, D.C., before Gary S. Howard, a notary

19     public in and for the District of Columbia, when were

20     present on behalf of the respective parties:

21

22

Page 90

1   for a moment.

2       A    I know I did not send this until after

3   Mr. Stephens approved it.

4       Q    Okay. I'd like you to tell me the process

5   in which Heist Exhibit 7, in which you sent that to

6   Mr. Stephens for his approval, process.

7       A    You said the process for sending the

8   memo?

9       Q    Before the memo was sent, I'd like to

10  know how this idea came into being.

11      A    There are a number of factors that had

12  occurred previous to my drafting of this memo.

13      Q    Okay.

14      A    It was early April, Mr. Stephens had sent

15  an e-mail advising -- and even before

16  then -- well --

17      Q    Let's stick with that e-mail.

18      A    Mr. Stephens had sent an e-mail advising

19  of budget constraints that had impacted the office

20  of inspector general.

21           Not just the office of audit, but OIG as

22  a whole, that there was a need to reduce our FTE

Page 91

1    level.  As a consequence, there was the imposition

2    of a hiring freeze.

3        Q     When was the last time you saw that e-

4    mail?

5        A     When was the last time I saw the e-mail?

6        Q     In hard copy or electronic copy.  Go

7    ahead.

8        A     Probably a couple days ago.

9        Q     Okay.

10       A     The e-mail also -- again, it was dated, I

11   think the 7th of April.

12             MR. SELDON:  John, I don't think you guys

13   have given that to us.

14             MR. TRUONG:  I will look into it.

15             MR. SELDON:  Because, obviously, it's

16   been the subject of three depositions, including

17   today's.

18             MR. TRUONG:  As I said, we'll look into

19   it.

20             MR. SELDON:  Good enough.

21             THE WITNESS:  It was a general e-mail

22   about our budget situation. In addition to calling

Page 92

1    for an FTE hiring freeze -- and I don't recall if

2    the e-mail gave numbers, but there was a need to

3    reduce by the end of the year, there was a target

4    FTE level that the organization needed to get to,

5    and Mr. Stephens had imposed a hiring freeze.

6              BY MR. SELDON:

7         Q    Okay. So let's define a few terms here.

8         A    If you look at my April 20th memo, it

9    says, we are currently under a hiring freeze.

10        Q    Yes, I know what you wrote.

11        A    Right.

12        Q    So why don't we defined first, what is an

13   FTE?

14        A    Full-time equivalent.

15        Q    Does HUD office of audits keep track of

16   those?

17        A    Primarily, it's the office of management

18   and policy that keeps track of the FTE level for

19   the organization.

20        Q    Okay. And exactly, when we say an FTE, is

21   that someone on board, someone who is potentially

22   on board?

**ATTACHMENT C**

**U.S. Department of Justice**

Kenneth L. Wainstein
United States Attorney

*District of Columbia*

---

*Judiciary Center*
*555 Fourth St., N.W.*
*Washington, D.C. 20530*

August 10, 2006

VIA FACSIMILE

Robert C. Seldon, Esq.
1319 F Street, N.W., Suite 305
Washington, D.C. 20004

      Re:   Elion v. Jackson, Civ. No. 05-992 (PLF)

Dear Mr. Seldon:

      Pursuant to Fed. R. Civ. P. 26(e), Defendant is supplementing its document production. Given the fact that I need to produce this document to you today, I did not have an opportunity to affix a proper bates number on this document. I will re-send to you this document, with a proper bates number, as soon as I can.

      This document is being produced subject to the Stipulated Protective Order, approved by the Court on March 9, 2006.

      Please do not hesitate to contact me if you have any questions.

                 Sincerely,
                 KENNETH L. WAINSTEIN
                 United States Attorney

      By    /s/
                 John C. Truong
                 Assistant United States Attorney

Enclosure

Michael
Stephens/WHQ/HUDOIG

04/07/2004 05:00 PM

To   OIG SENIOR EXECUTIVES

cc   kdonohue@hudoig.gov

bcc

Subject   New hiring freeze

Due to new information provided by OMAP and the proposed new pay raise of 3.5% for '05 coming out of hide, difficult decisions must be made. OMAP budget specialists will be contacting you in the near future to discuss your operating budgets and where cuts might be practical. Mr. Donohue has decided that it is extremely important not to target areas where our mission will be impacted negatively. In other words, we still need operational funds to travel and achieve our expected goals. We have already identified cuts to programs over and above operational funds such as IT and other administrative areas.

We believe with a new hiring freeze we will achieve a FTE level that will give us the flexibility needed and enter '05 well prepared. If we do this gradually thru attrition, we will avoid potential RIF's in '05. A costly buy out plan is not an option at this time.

Our projected deficit in '05 is $6, 580,530.

I am not prepared to announce a desired FTE level until the analysis of your operational budgets are finished but it is likely to be approximately 634. Currently we are approximately 660 with 6 months before the end of the fiscal year.

I also realize that some vacancy announcements are out and interviewing of applicants is under way. Please meet with me to review these vacancies and we will decide on a case by case basis our course of action.

Thank You

**ATTACHMENT D**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| SAUNDRA ELION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-0992 (PLF) |
| | ) | |
| ALPHONSO R. JACKSON, | ) | |
| Secretary of the | ) | |
| U.S. Dept. of Housing and | ) | |
| Urban Development, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**DEFENDANT'S RULE 26(a)(1) DISCLOSURES**

Pursuant to Fed. R. Civ. P. 26(a)(1) and the Court's Scheduling Order, Defendant

Alphonso R. Jackson, Secretary, U.S. Department of Housing and Urban Development,

in his official capacity, makes the following initial disclosures:

I    Individuals Likely to Have Discoverable Information.

        a)    Saundra Elion, Plaintiff

        b)    James A. Heist
              Assistant Inspector General for Audit
              451 7th St., S.W.
              Rm. 8286
              Washington, D.C.  20410
              (202) 708-1783

              Mr. Heist is Plaintiff's supervisor.  Mr. Heist has information
              relating to Plaintiff's allegation that she was subjected to
              discrimination and retaliation when she was removed from her
              position as Director of OIG (Office of Inspector General)
              Headquarters Audits Division and reassigned to a nonsupervisory
              position.  In addition, Mr. Heist has information relating to
              Plaintiff's allegation that she was subjected to discrimination and

1

retaliation when she was not reassigned to a supervisory position as a senior auditor in OIG Headquarters.  Finally, Mr. Heist has knowledge concerning Plaintiff claims that were raised in her previous EEO complaint.

c)     Michael R. Phelps
       Deputy Assistant Inspector General for Audit
       451 7th St., S.W.
       Rm. 8286
       Washington, D.C.  20410
       (202) 708-0364

       Mr. Phelps was previously Plaintiff's first level supervisor.  Mr. Phelps has knowledge concerning Plaintiff's claims that were raised in her previous EEO complaint, including that management did not restore her staff, that her authority with her subordinates was undermined, and that she was not given recognition or awards for her work.

d)     Michael P. Stephens
       Deputy Inspector General
       451 7th St., S.W.
       Rm. 8256
       Washington, D.C.  20410
       (202) 708-0430

       Mr. Stephens has information relating to Plaintiff's allegation in her complaint that she was subjected to discrimination and retaliation when she was removed from her position as Director of OIG Headquarters Audits Division and reassigned to a nonsupervisory position.  In addition, Mr. Stephens has information relating to Plaintiff's allegation that she was subjected to discrimination and retaliation when she was not reassigned to a supervisory position as a senior auditor in OIG Headquarters.  Finally, Mr. Stephens has information concerning Plaintiff's claims that were raised in her previous EEO complaint.

e)     Dennis Raschka,
       Director, Office of Management and Policy
       451 7th St., S.W.
       Rm. 8254
       Washington, D.C.  20410
       (202) 708-3635

       Mr. Raschka possesses information pertaining to the reduction of FTEs (full time employees) within the Office of Audit and the cost

2

savings associated with closing the Capital Region Office of Audit.

f)     Edward Kim
       Auditor
       451 7th St., S.W.
       Rm. 3162
       Washington, D.C.  20410
       (202) 708-1342

       Mr. Kim has information pertaining to the work environment of
       the Headquarters Audit Division.

g)     Joan Hobbs
       Regional Inspector General for Audit
       611 West 6th St.
       Suite 1160
       Los Angeles, CA  90017
       (213) 534-2470

       Ms. Hobbs' information pertains to her reasons for transferring
       from the Capital District Office of Audit to Region 9.

h)     Martin Irizarry
       Auditor
       451 7th St., S.W.
       Rm. 3162
       Washington, D.C.  20410
       (202) 708-0383

       Mr. Irizarry's information pertains to complaints that he made
       concerning the management of the Headquarters Audit Division.

i)     Robert Gwin
       Director, Technical Oversight & Planning
       451 7th St., S.W.
       Rm. 8180
       Washington, D.C.  20410
       (202) 708-0364

       Mr. Gwin has information pertaining to his selection for the
       Director of the Technical Oversight and Planning Division.

j)      Cynthia (Cindi) Nelson
        Former HUD OIG employee
        700 North Moore Street
        Suite 720
        Arlington, VA  22209
        703-284-2697

        Ms. Nelson has information pertaining to the work environment at
        the Capital Region Office of Audit

k)      Leslie Moreno
        451 7th St., S.W.
        Room 5162
        Washington, D.C.  20410
        (202) 708-2091

        Ms. Moreno's information pertains to the utilization and return of
        space at the North Capital Street location.

II.    Documents.

        a)      Official Personnel Folder of Saundra Elion, Maintained by the
                Bureau of   Public Debt, 200 3rd St., Parkersburg, WV  26106.

        b)       EEO Report of Investigation, held by the Agency's EEO Office.

        c)      Plaintiff's medical records in the Plaintiff's possession.

III.    Damages Computation.  N/A

IV..    Insurance Agreement.  N/A

Dated: October 28, 2005.            Respectfully Submitted,

                                    _____/s/_____
                                    KENNETH L. WAINSTEIN, D.C. BAR #451058
                                    United States Attorney

                                    _____/s/_____
                                    R. CRAIG LAWRENCE, D.C. BAR #171538
                                    Assistant United States Attorney

_____/s/_____
JOHN C. TRUONG, D.C. BAR #465901
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 307-0406

Attorneys for Defendant

**ATTACHMENT E**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SAUNDRA G. ELION,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **Civil Action No. 05-0992 (PLF)** |
| **v.** | ) |
| | ) |
| **ALPHONSO R. JACKSON, Secretary** | ) |
| **U.S. Department of Housing and** | ) |
| **Urban Development,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## DEFENDANT'S RESPONSE AND OBJECTION  TO PLAINTIFF'S FIRST SET OF INTERROGATORIES AND FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Defendant Alphonso R. Jackson, Secretary, Department of Housing and Urban Development, in his official capacity, hereby responds to Plaintiff's First  Set of Interrogatories and First Request for Production of Documents ("Discovery Requests") as follows:

### General Objections

1.      The Defendant objects to the instructions and definitions to the extent that they seek to impose burdens beyond those set forth in Rules 26 and 33 of the Federal Rules of Civil Procedure.  The Defendant's responses will be governed by the provisions of Rules 26 and 33.

2.      The Defendant objects to each and every Discovery Request to the extent that they are vague, ambiguous, overly broad, unduly burdensome and/or do not specify the information sought with sufficient particularity.

3.      The Defendant objects to each and every Discovery Request to the extent that they seek information or documents irrelevant or unrelated to the claims asserted in this action, and are not reasonably calculated to lead to the discovery of admissible evidence.

4.      The Defendant objects to each and every Discovery Request to the extent that they seek the disclosure of information or documents that would violate the privacy rights of any individual or otherwise would contravene the legal obligations of the Defendant pursuant to Title 5 United States Code § 552a et seq., or other applicable laws and regulations.

5.      The Defendant objects to each and every Discovery Request to the extent that they seek information that is privileged under law, whether under the attorney-client privilege, as attorney work product, and/or any other legally cognizable privilege.

6.      The Defendant objects to each and every Discovery Request to the extent that they seek information in the possession, custody, or control of the Plaintiff.

7.      The Defendant objects to any inference that can be drawn from any portion of Plaintiff's interrogatories or the answers to them that the information requested or events referred to in the interrogatories actually exist or occurred.  The failure to object to each such inference in no way constitutes an admission by the Defendant that such information exists or that such events actually occurred.

8.      The objections set forth above apply to each of the numbered paragraphs of the Plaintiff's Discovery Requests.  Each of the Defendant's specific answers to the Discovery Requests are made subject to and without waiving the General Objections, as if the General Objections were restated in full in the response.

## **INTERROGATORIES**

**INTERROGATORY NO. 1:  Provide a complete and accurate account of the basis for the First, Second, Third, and Fourth Affirmative Defenses in Defendant's Answer to the Complaint in this action including, but not limited to:**

**a.) a specific identification of all portions of the Complaint as to which this "Court lacks subject matter jurisdiction," which are "barred by the applicable limitations period;" as to which "Plaintiff has not properly exhausted her administrative remedies;" and which fail "to state a claim upon which relief may be granted;**

**RESPONSE No. 1(a)**:  Defendant objects to this request as it seeks legal theories and is not reasonably calculated to lead to relevant, material or admissible evidence.  Defendant further objects to this Interrogatory as irrelevant as it does not pertain to Plaintiff's allegations.  Defendant also objects to this Interrogatory as unduly burdensome as it seeks information protected by attorney-client communication and the attorney work product doctrine, or any other applicable privilege.

Subject to and without waiving the foregoing object, Defendant states that  this court lacks jurisdiction over any untimely claims or claims that Plaintiff failed to raise below in the administrative process. Any allegations alleging discrete events occurring more than 45 days before the Plaintiff filed her informal complaint with the Agency EEO Counselor, May 5, 2004, would be untimely.

Without waiving or limiting the ability of the Defendant to raise this defense on other allegations as they are recognized or become known, the Defendant identifies the following allegations as being untimely.  The Plaintiff is claiming she was denied awards and recognition in Allegation 19.  She also alleges at various points in her complaint that the Agency prevented her from hiring employees.  The Plaintiff also goes into detail

3

regarding her previous administrative complaint of discrimination which was withdrawn. The Defendant notes that this discovery propounds questions regarding the discrete action of closing the Capital District office and the cost savings associated with it. The court has no jurisdiction over these earlier allegations or damages arising from them.  In addition, the Plaintiff is claiming she has suffered adverse personnel actions when she was reassigned and when she was not selected to be Director of the Technical Oversight and Policy Division.  However, she admits she suffered no loss of pay, benefits, or grade, and she never applied for any supervisory position within OIG after the closure of the Headquarters Audit Division.

Plaintiff fails to state a claim with respect to any position to which she failed to apply or express an interest. The Plaintiff fails to state a claim on which relief may be granted if she fails to identify an adverse personnel action taken by the Agency on account of a protected basis.  The Plaintiff also fails to make a *prima facie* case regarding any personnel actions identified in Counts I through X on account of her sex, race, age, or retaliation.  The Defendant relates in support of its legal theories that the current Director of the Technical Oversight and Policy Division is a black female, over 40 years of age, and the two previous Directors were also over 40 years old.  The Plaintiff cannot make a *prima facie* case based on sex, age, or race.

b.) **the facts on which you rely in support of the First, Second, Third, and Fourth Affirmative Defenses of Defendant's Answer to the Complaint in this action**;

**RESPONSE No**. 1(b).  <u>See</u> response to Interrogatory No. 1(a) above.

c.) **all persons with knowledge, personal or otherwise, on which you rely in support of the First, Second, Third, and Fourth Affirmative Defenses of Defendant's Answer to the Complaint in this action**;

**RESPONSE No. 1(c)**:  Defendant incorporates by reference the objects set forth in

response to Interrogatory No. 1(a).  Subject to and without waiving the foregoing

objections, Defendant states that the following individuals may have information deemed

responsive to this Interrogatory: James Heist, Mike Phelps, Saundra Elion, Robert Gwin,

and Brenda Patterson.

> d.) **and all documents which refer or relate, whether in whole or in part, to your
> response to the foregoing Interrogatory**.

**RESPONSE No. 1(d)**.  Defendant incorporates by reference the objections and

responses in Response No. 1(a).  Pursuant to Fed. R. Civ. P. 33(d), Defendant refers

Plaintiff to documents previously provided to Plaintiff in the Agency's Report of

Investigation (ROI).  Plaintiff should have a copy of the ROI.  Other documents that may

be deemed responsive include the staffing documents for  supervisory vacancies for

which the Plaintiff failed to submit an application.

**INTERROGATORY NO. 2:    Provide a complete and accurate account of the
functions of the Capital District Office of Audit separately and on an annual basis
from January 1, 1998, until its abolition, including but not limited to, identifying:**

> a.) **the functions of the Capital District Office of Audit;**

**RESPONSE No. 2(a)**:  Defendant objects to this Interrogatory as overly broad and not

reasonably calculated to lead to the discovery of admissible evidence.  Defendant also

objects to this Interrogatory as irrelevant and beyond the scope of this litigation because

the information sought does not pertain to Plaintiff's underlying allegations of

discrimination.  Defendant also objects to this Interrogatory as harassing and unduly

burdensome because Plaintiff has in her possession information responsive to this

Interrogatory.  Specifically, Plaintiff used to work for the Capital District Office of Audit

as a GS-15 District Inspector General and should know the functions of this Office.

Subject to and without waiving the foregoing objections, Defendant states that the following information may be deemed responsive to this Interrogatory: According to James Heist, the Assistant Inspector General for Audit, the Capital District Office of Audit was one of eleven district (now regional) offices responsible for conducting and supervising internal and external audits of HUD-related operations and activities in accordance with established policies, standards, and procedures. The principal geographic region for external audits assigned to the Capital District was the Washington D.C. metropolitan area. The Capital District also performed internal audits at HUD Headquarters. While the Capital District normally had primary responsibility for audits in this geographic area, just as with all OIG district/regional offices, this jurisdiction was not exclusive. If circumstances warranted, any district/region could perform audits in any other district/region. Also other district/regions could and did from time to time perform audits at HUD headquarters. See also documents identified in e., below.

**b.) the duties and responsibilities of the District Inspector General for the Capital District Office of Audit;**

**RESPONSE No. 2(b)**: Defendant incorporates by reference its objections and responses to Interrogatory No. 2(a). Subject to and without waiving the foregoing objections, Defendant states that the following information may be deemed responsive: The District Inspector General for Audit (DIGA) of the Capital District would be the highest management position in the district and is responsible for conducting, managing, reviewing, and supervising all audits conducted by the Capital District.

**c.) all persons involved in determining the duties and work assignments of the Capital District Office of Audit;**

**RESPONSE No. 2(c)**:  Defendant incorporates by reference its objections and responses

to Interrogatory No. 2(a).  Subject to and without waiving the foregoing objections,

Defendant states that the following information may be deemed responsive: The

Assistant Inspector General for Audit and his Deputy are usually responsible for

determining the duties and work assignments for the Capital District Office.   In addition,

planning committees prepare a list of audits to be conducted during the following year.

The Technical Oversight and Planning Division (or its predecessor organization) and the

DIGAs  provided input into the selection of work assignment.  Finally, the Inspector

General and Deputy General could assign work and duties to any DIGA.

> **d.) all persons involved in determining the duties and work assignments of the District Inspector General for the Capital District Office of Audit**;

**RESPONSE No. 2(d)**: Defendant incorporates by reference its objections and responses

in Interrogatory No. 2(c).

> **e.) and all documents, which refer or relate, to your response to the foregoing Interrogatory.**

**RESPONSE No. 2(e)**: Defendant incorporates by reference its objections and responses

to Interrogatory No. 2(a).  Subject to and without waiving the foregoing objections,

pursuant to Fed. R. Civ. P. 33(d), Defendant refers Plaintiff to the affidavit of James

Heist, ROI, Exh. F-2.  Defendant also refers Plaintiff to documents that  will be produced

to Plaintiff once the Court approves the parties' Stipulated Protective Order.

**INTERROGATORY NO. 3:   Provide a complete and accurate account of the processes and actions leading up to and including your decision to abolish the Capital District Office of Audit including, but not limited to, identifying:**

> **a.) all personnel and human resource specialists and persons involved in the decision to abolish the Capital District Office of Audit;**

**RESPONSE No. 3(a)**:  Defendant objects to this Interrogatory as overly broad and unduly burdensome for failure to define the term "human resource specialist."  Defendant further objects to this Interrogatory as irrelevant and not calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, Defendant states that James Heist, Assistant Inspector General for Audit; David Williams, Acting Inspector General; and Saundra Elion, the DIGA were involved in the decision to abolish the Capital District Office of Audit.

**b.) all persons involved in the decision to abolish the Capital District Office of Audit;**

**RESPONSE No. 3(b)**:  Defendant incorporates by reference the response in Interrogatory No.  3(a).  In addition, Defendant also objects to Interrogatory No. 3(b) as harassing and cumulative because it seeks information previously requested in No. 3(a).

Subject to and without waiving the foregoing objections, Defendant refers Plaintiff to the response to Interrogatory No. 3(a).

**c.) each person's actions in abolishing the Capital District Office of Audit**;

**RESPONSE 3(c)**:  Defendant objects to this Interrogatory as irrelevant, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, Defendant states that according to James Heist, in late 2001, he recommended to then Acting Inspector General David Williams that the Office of Audit's Capital District office be disbanded. The Capital District was originally established to perform audit work in the Washington DC metropolitan area, including audits of HUD program participants and offices in HUD

8

headquarters.  The Department did not have a corresponding office for the Capital

District, rather the Department's Washington D.C. field office reported to the HUD

Region 3 office in Philadelphia.  Prior to the creation of OIG's Capital District, audits of

HUD program participants in the Washington D.C. metropolitan area had been the

primary responsibility of the OIG district office in Philadelphia.  OIG's organizational

structure failed to align with the Department's structure, which only had ten

districts/regions.  It also appeared that the majority of the Capital District's workload had

been in HUD headquarters or special projects.  James Heist felt it was logical to have the

Capital District office located in the HUD headquarters office building and at the same

time align the audit district with the Department's organizational structure.

Mr. Williams approved Mr. Heist's recommendation and the change was effective

approximately May 2002.  Plaintiff Saundra Elion selected the name for the new office,

which was the Headquarters Audit Division, and would have been responsible for the

transition.

Mr. Heist also believed that moving the office to the headquarters building would

result in a cost savings for OIG.  The Capital District was housed in leased office space.

There was sufficient vacant space in headquarters to accommodate the staff.  Mr. Heist

was not in a position to know the timing and extent of the savings.  Individuals involved

in releasing the leased space were John Harr, a former financial officer with OIG, who is

now retired; John Dupuy, a former OIG employee; one or two former real estate

specialists with HUD; and an employee of the General Services Administration (GSA).

  **d.) and all documents, which refer or relate, to your response to the foregoing
       Interrogatory.**

**RESPONSE No. 3(d)**:   Defendant objects to this Interrogatory as unduly, harassing, and cumulative as it seeks information requested in previous Interrogatory No. 3(a) and (b). Defendant also objects to this Interrogatory for not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, Defendant states: None.

**INTERROGATORY NO. 4:  Identify the positions to which incumbents in the Capital District Office of Audit were assigned immediately before and after that office was abolished including, but not limited to, identifying:**

   **a.)   the name, position, grade, race, sex, and age of each such incumbent immediately before you abolished the Capital District Office of Audit;**

**RESPONSE No. 4(a)**:   Defendant objects to this Interrogatory as vague, overly broad, and unduly burdensome as it seeks information not relevant to Plaintiff's underlying claims in this litigation.

Subject to and without waiving the foregoing objects, pursuant to Fed. R. Civ. P. 33(d), Defendant refers Plaintiff to documents that will be produced to Plaintiff after the Court approves the parties' Stipulated Protect Order.

   b.) **the name, position, grade, race, sex, and age of each such incumbent immediately after you abolished the Capital District Office of Audit**;

**RESPONSE** 4(b): Defendant incorporates by reference the objections and responses in Interrogatory No. 4(a).   Defendant further states that Plaintiff's title was changed from DIGA to Director.

   **c.)   and all documents, which refer or relate, to your response to the foregoing Interrogatory.**

**RESPONSE 4(c)**:  Defendant incorporates by reference the objections and responses in Interrogatory No. 4(a).

**INTERROGATORY NO 5:  Provide a complete and accurate account of the functions of the Headquarters Office of Audit, separately and on an annual basis from January 1, 1998, through the present, including but not limited to, identifying:**

a.)  **the functions of the Headquarters Office of Audit:**

**RESPONSE 5(a)**: Defendant objects to this Interrogatory as harassing and unduly burdensome because Plaintiff has the responsive information in her possession as she was "Director of the HUD OIG Headquarters Audits Division."  Compl. at para. 14.  As "Director of the HUD OIG Headquarters Audits Division," it is expected that Plaintiff knows or should have known the functions of the Headquarters Office of Audit. Defendant further objects to this Interrogatory as unduly burdensome as it seeks information dating eight years.  Defendant also objects to this Interrogatory as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, Defendant refers Plaintiff to documents that  will be produced to Plaintiff after the Court approves the parties' Stipulated Protective Order.  Defendant further states that the Headquarters Office of Audit is headed by the AIGA and a Deputy AIGA, who assists the AIGA and assumes AIGA responsibilities in the absence of the AIGA. The Office of Audit has/had the following divisions:

The Technical Oversight and Planning Division is responsible for providing technical expertise on program areas and liaison/oversight services for audit activities in the Regions and other Headquarters divisions.  The Division also conducts research and develops data for use by the AIGA.  Other services provided by the Division include developing and updating the Audit Plan, writing operational policy, and overseeing Office of Audit follow-up activities on a national basis.

The Information Systems Audits Division is responsible for performing audits of HUD's Automated Data Processing (ADP) systems and operations that support HUD programs. The Division also provides technical assistance to non-information system auditors in the Office of Audit in their program and financial statement audits and the Office of Investigation in its investigative efforts. In this capacity, the Division manages and supports the OIG Computer Aided Audit Techniques initiative. Additionally, the Division provides advisory services to HUD management covering a number of ADP system concerns such as security, development progress, and data quality.

The Financial Audits Division is responsible for performing the annual audit of HUD's consolidated financial statements. The Division oversees contract work related to the annual audits of the Federal Housing Administration and Ginnie Mae financial statements. These audits are performed in accordance with the Chief Financial Officers Act of 1990, Pub. L. No. 101-576 (codified in various sections of Titles 5, 31, 38, and 42 of the U.S. Code). The Division develops and recommends policies governing the issuance of audit reports by non-federal auditors to ensure they are in compliance with Government Auditing Standards. The Division maintains liaison with federal, state, and professional organizations related to the performance of audits of HUD programs by non-federal auditors. The Division Director is designated as the Hearing Auditor for debarment actions involving Independent Accountants.

From May 2002 to April 2004, the Headquarters Audit Division was responsible for conducting internal audits of Headquarters administrative and program offices in accordance with established policies, standards, and procedures. This was not an exclusive jurisdiction in that other divisions and district/regional offices were authorized

and did perform audits of HUD Headquarters offices.  The Director was responsible for

maintaining liaison on audit matters with HUD Headquarters directors, program

managers, and other Headquarters staff by providing them with related advice and

counsel.  The Division also performed special projects as directed by the DIGA.

**b.) the functions of each division and other component of the Headquarters Office of Audit;**

**RESPONSE No. 5(b)**: Defendant incorporates by reference the objections and responses

in Interrogatory No. 5(a).

**c.) all persons involved in determining the duties and work assignments of the functions of each division and other components of the Headquarters Office of Audit;**

**RESPONSE 5(c)**: Defendant incorporates by reference the objections and responses in

Interrogatory No. 5(a).  Defendant further states that the Inspector General, Deputy

Inspector General, Assistant Inspector General for Audit, and Deputy Assistant Inspector

General for Audit were usually responsible for determining the duties and work

assignments for the Headquarters Office of Audit.

**d.) all persons involved in determining the duties and work assignments of the Directors of each division and other components of the Headquarters Office of Audit**;

**RESPONSE** 5(d): Defendant incorporates by reference the objections and responses in

Interrogatory 5(c).

**e.) all documents, which refer or relate, to your response to the foregoing Interrogatory.**

**RESPONSE 5(e):** Defendant incorporates by reference the objections and responses in

Interrogatory No. 5(a).

**INTERROGATORY NO. 6:  Provide a complete and accurate account of the processes and actions leading up to and including your decision to abolish the Headquarters Audits Division including, but not limited to, identifying:**

> **a.) all personnel and human resource specialists and persons involved in the decision to abolish the Headquarters Audits Division and the position of the Director of the Headquarters Audits Division;**

**RESPONSE 6(a)**:  Defendant objects to this Interrogatory as overly broad and unduly burdensome for failure to define the term "human resource specialist."  Defendant further objects to this Interrogatory as irrelevant and not calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, Defendant states that James Heist, Michael Phelps, and Michael Stephens were involved.

> **b.) all persons involved in the decision to abolish the Headquarters Audits Division and the position of Director of the Headquarters Audits Division;**

**RESPONSE 6(b)**:  Defendant incorporates by reference the objections and responses in Interrogatory 6(a).  Defendant also objects to this Interrogatory as harassing and unduly burdensome as it is cumulative and duplicative of the previous Interrogatory.

> **c.) each person's actions in abolishing the Headquarters Audits Division and the position of Director of the Headquarters Audits Division;**

**RESPONSE 6(c)**:  Defendant objects to this Interrogatory as vague and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, pursuant to Fed. R. Civ. P. 33(d), Defendant refers Plaintiff to ROI, Exh. F2, affidavit of James Heist, pages 4-6, with three attachments; ROI, Exh. F4, affidavit of Michael Stephens, pages 4-5; and ROI, Exh. F16, memorandum from James Heist to Michael Stephens, in which Mr. Heist presents his recommendation and seeks approval for the proposed actions.

**d.) and all documents, which refer or relate, to your response to the foregoing Interrogatory**.

**RESPONSE 6(d)**: Defendant incorporates by reference the objections and responses in

Interrogatory No. 6(c).

**INTERROGATORY NO. 7:  Identify the positions to which incumbents in the Headquarters Audits Division were assigned immediately before and after that office was abolished including, but not limited to, identifying:**

**a.) the name, position, grade, race, sex, and age of each such incumbent immediately before you abolished the Headquarters Audits Division;**

**RESPONSE No. 7(a)**:  Defendant objects to this Interrogatory as irrelevant and not

reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, Defendant states that

**Saundra Elion** – Director/Supervisory Auditor – GS-15 – African American – female –

over 40; **Donna Hawkins** – Deputy Director/Supervisory Auditor – GS-14 – African

American – female --over 40; **Karmel Smith** – Auditor – GS-13 – African American –

female – under 40; **Sharon Brown**– Auditor – GS-13 – African American – female –

under 40; and **Seanna McGee** -- Auditor – GS-12 – African American – female – under

40.

**b.) the name, position, grade, race, sex, and age of each such incumbent immediately after you abolished the Headquarters Audits Division**;

**RESPONSE No. 7(b):**  Defendant incorporates by reference the objections and

responses in Interrogatory No. 7(a).  Subject to and without waiving the foregoing

objections, Defendant states that **Saundra Elion** – Special Assistant to the AIGA – GS-

15 – African American – female – over 40; **Donna Hawkins** – Senior Auditor – GS-14 –

African American – female --over 40; **Karmel Smith** – Auditor – GS-13 – African

American – female – under 40; **Sharon Brown** – Auditor – GS-13 – African American –

15

female – under 40; and **Seanna McGee** – Auditor – GS-12 – African American – female – under 40.

**c.) and all documents, which refer or relate, to your response to the foregoing Interrogatory.**

**RESPONSE 7(c):** None.

**INTERROGATORY NO. 8:** **Provide a complete and accurate account of your processes and actions in soliciting, considering, and selecting among candidates for the position of Division Director in the Headquarters Office of Audit identified in paragraph 41 of Defendant's Answer to the Complaint in this action including, but not limited to, identifying**

**a.) the successful candidate, his race, and his age at the time of your selection of him**;

**RESPONSE No. 8(a)**: Defendant objects to this Interrogatory as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this Interrogatory as it violates Fed. R. Civ. P. 33, which limits each party to 25 interrogatories, including subpart. This is Plaintiff's twenty-sixth Interrogatory.

Subject to and without waiving the foregoing objections, pursuant to Fed. R. Civ. P. 33(d), Defendant refers Plaintiff to the ROI, Exh. F2, affidavit of James Heist for the Defendant's actions with respect to the selection of Robert Gwin, race-Caucasian, date of birth, July 1945. This was a non-competitive placement action. See also OIGM Chapter 1335, Merit Staffing Plan (2002). These documents will be produced to Plaintiff after the Court approves the parties' Stipulated Protective Order.

**b.) the processes, guidelines, and procedures by which you interviewed, considered, and selected the successful candidate for the foregoing position**;

**RESPONSE No. 8(b)**: Defendant incorporates by reference the objections and responses in Interrogatory 8(a). Defendant further objects to this Interrogatory as it violates Fed. R.

Civ. P. 33, which limits each party to 25 interrogatories, including subpart.  This is

Plaintiff's twenty-seventh Interrogatory.

> **c.) all persons (including, but not limited to, human resources personnel)
> involved in interviewing, considering, and selecting the successful candidate
> for the foregoing position;**

**RESPONSE 8(c)**:  Defendant further objects to this Interrogatory as it violates Fed. R.

Civ. P. 33, which limits each party to 25 interrogatories, including subpart.  This is

Plaintiff's twenty-eighth Interrogatory.  Defendant further objects to this Interrogatory as

unduly burdensome and harassing as it requires Defendant to respond to more than 25

interrogatories.

Subject to and without waiving the foregoing objections, Defendant states that Mr.

James Heist was involved.

> **d.) all persons (including, but not limited to, human resources personnel)
> involved in the processes of interviewing, considering, and selecting the
> successful candidate for the foregoing position;**

**RESPONSE 8(d)**:  Defendant incorporates by reference the objections and responses in

Interrogatory No. 8(c).  Defendant further objects to this Interrogatory as it violates Fed.

R. Civ. P. 33, which limits each party to 25 interrogatories, including subpart.  This is

Plaintiff's twenty-ninth Interrogatory.  Defendant further objects to this Interrogatory as

unduly burdensome and harassing as it requires Defendant to respond to more than 25

interrogatories.

**e.) a complete and accurate account of each such person's actions;**
**RESPONSE No. 8(e)**:  Defendant further objects to this Interrogatory as it violates Fed.

R. Civ. P. 33, which limits each party to 25 interrogatories, including subpart.  This is

Plaintiff's thirtieth Interrogatory.  Defendant further objects to this Interrogatory as

unduly burdensome and harassing as it requires Defendant to respond to more than 25 interrogatories.

Subject to and without waiving the foregoing objections, pursuant to Fed. R. Civ. P. 33(d), Defendant refers Plaintiff to ROI, Exh. F2, affidavit of James Heist.

**f) a complete and accurate account of your reasons for selecting the successful candidate for the foregoing position;**

**RESPONSE No. 8(f)**: Defendant incorporates by reference the objections and responses in Interrogatory 8(e). Defendant further objects to this Interrogatory as it violates Fed. R. Civ. P. 33, which limits each party to 25 interrogatories, including subpart. This is Plaintiff's thirty-first Interrogatory. Defendant further objects to this Interrogatory as unduly burdensome and harassing as it requires Defendant to respond to more than 25 interrogatories.

**g) and all documents which refer or relate, whether in whole or in part, to your response to the foregoing Interrogatory**

**RESPONSE No. 8(g)**: Defendant incorporates by reference the objections and responses in Interrogatory 8(e). Defendant further objects to this Interrogatory as it violates Fed. R. Civ. P. 33, which limits each party to 25 interrogatories, including subpart. This is Plaintiff's thirty-second Interrogatory. Defendant further objects to this Interrogatory as unduly burdensome and harassing as it requires Defendant to respond to more than 25 interrogatories.

**INTERROGATORY NO. 9: Provide a complete and accurate account of your processes and actions in not selecting plaintiff for the position of Division Director in the Headquarters Office of Audit identified in paragraph 41 of Defendant's Answer to the Complaint in this action including, but not limited to, identifying**

**a.) all persons (including, but not limited to, human resources personnel) involved in your decision not to select plaintiff for the foregoing position;**

**RESPONSE 9(a)**: Defendant objects to this Interrogatory as unduly burdensome and harassing as it is nonsensical to seek information to prove a negative. Defendant further objects to this Interrogatory as it violates Fed. R. Civ. P. 33, which limits each party to 25 interrogatories, including subpart. This is Plaintiff's thirty-third Interrogatory. Defendant further objects to this Interrogatory as unduly burdensome and harassing as it requires Defendant to respond to more than 25 interrogatories.

Subject to and without waiving the foregoing objects, pursuant to Fed. R. Civ. P. 33(d), Defendant refers Plaintiff to ROI, Exh. F2, affidavit of James Heist.

**b.) a complete and accurate account of each such person's actions in your decision not to select plaintiff for the foregoing position;**

**RESPONSE No. 9(b)**: Defendant incorporates by reference the objections and responses in Interrogatory No. 9(a). Defendant further objects to this Interrogatory as it violates Fed. R. Civ. P. 33, which limits each party to 25 interrogatories, including subpart. This is Plaintiff's thirty-fourth Interrogatory. Defendant further objects to this Interrogatory as unduly burdensome and harassing as it requires Defendant to respond to more than 25 interrogatories.

**c.) a complete and accurate account of your reasons for not selecting plaintiff for the foregoing position; and**

**RESPONSE No. 9(c)**: Defendant incorporates by reference the objections and responses in Interrogatory No. 9(a). Defendant further objects to this Interrogatory as it violates Fed. R. Civ. P. 33, which limits each party to 25 interrogatories, including subpart. This is Plaintiff's thirty-fifth Interrogatory. Defendant further objects to this Interrogatory as unduly burdensome and harassing as it requires Defendant to respond to more than 25 interrogatories.

**d.) and all documents which refer or relate, whether in whole or in part, to your response to the foregoing Interrogatory.**

**RESPONSE**:  None.  Defendant further objects to this Interrogatory as it violates Fed. R. Civ. P. 33, which limits each party to 25 interrogatories, including subpart.  This is Plaintiff's thirty-sixth Interrogatory.  Defendant further objects to this Interrogatory as unduly burdensome and harassing as it requires Defendant to respond to more than 25 interrogatories.

**INTERROGATORY NO. 10:  Do you contend that you would have selected a candidate other than plaintiff for (sic) of Division Director in the Headquarters Office of Audit identified in paragraph 41 of Defendant's Answer to the Complaint even in the absence of discrimination, retaliation, or other impermissible factor.  If so, provide a complete and accurate account of your basis for this contention including, but not limited to, identifying**

**a.) the candidate(s) you would have selected instead of plaintiff, their sex(es), race(s), and their age(s) at the time of your selection for the foregoing position;**

**RESPONSE No. 10(a)**:  The Defendant objects to this Interrogatory as vague and speculative and not reasonably calculated to lead the discovery of admissible evidence.  Defendant further objects to this Interrogatory as it violates Fed. R. Civ. P. 33, which limits each party to 25 interrogatories, including subpart.  This is Plaintiff's thirty-seventh Interrogatory.  Defendant further objects to this Interrogatory as unduly burdensome and harassing as it requires Defendant to respond to more than 25 interrogatories.

Subject to and without waiving the foregoing, pursuant to Fed. R. Civ. P. 33(d), Defendant refers Plaintiff to Exh. F2 of the ROI.  In addition, Defendant states that Mr. Heist has recently noncompetitively selected Brenda Patterson, an African American female, for the same position (replacing Mr. Gwin), instead of selecting the Plaintiff.

**b.) all persons (including, but not limited to, human resources personnel) who would have been involved in the foregoing selection of a candidate other than plaintiff;**

**RESPONSE 10(b)**:  Defendant incorporates by reference the objections and responses in Interrogatory 10(a).  Defendant further objects to this Interrogatory as it violates Fed. R. Civ. P. 33, which limits each party to 25 interrogatories, including subpart.  This is Plaintiff's thirty-eighth Interrogatory.  Defendant further objects to this Interrogatory as unduly burdensome and harassing as it requires Defendant to respond to more than 25 interrogatories.

Subject to and without waiving the foregoing objections, Defendant states that Mr. James Heist was involved.

**(c)**    **a complete and accurate account of your basis for contending that such persons would have selected a candidate other than plaintiff for the foregoing position**;

**RESPONSE 10(c)**: Defendant incorporates by reference the objections and responses in Interrogatory 10(a).  Defendant further objects to this Interrogatory as it violates Fed. R. Civ. P. 33, which limits each party to 25 interrogatories, including subpart.  This is Plaintiff's thirty-ninth Interrogatory.  Defendant further objects to this Interrogatory as unduly burdensome and harassing as it requires Defendant to respond to more than 25 interrogatories.

Subject to and without waiving the foregoing objections, pursuant to Fed. R. Civ. P. 33(d), Defendant refers Plaintiff to ROI, Exh. F2, affidavit of James Heist.

**(d)**    **a complete and accurate account of your reasons for contending that you would have selected a candidate other than plaintiff for the foregoing position;**

**RESPONSE No. 10(d)**: Defendant incorporates by reference the objections and responses in Interrogatory 10(c). Defendant further objects to this Interrogatory as it violates Fed. R. Civ. P. 33, which limits each party to 25 interrogatories, including subpart. This is Plaintiff's fortieth Interrogatory. Defendant further objects to this Interrogatory as unduly burdensome and harassing as it requires Defendant to respond to more than 25 interrogatories.

> **(e)** **all evidence tending to prove your contention that you would have selected a candidate other than plaintiff for the foregoing position**;

**RESPONSE 10(e)**: Defendant incorporates by reference the objections and responses in Interrogatory 10(c). Defendant further objects to this Interrogatory as it violates Fed. R. Civ. P. 33, which limits each party to 25 interrogatories, including subpart. This is Plaintiff's forty-first Interrogatory. Defendant further objects to this Interrogatory as unduly burdensome and harassing as it requires Defendant to respond to more than 25 interrogatories.

> **(f)** **and all documents which refer or relate, whether in whole or in part, to your response to the foregoing Interrogatory**.

**RESPONSE**: Defendant incorporates by reference the objections and responses in Interrogatory 10(c). Defendant further objects to this Interrogatory as it violates Fed. R. Civ. P. 33, which limits each party to 25 interrogatories, including subpart. This is Plaintiff's forty-second Interrogatory. Defendant further objects to this Interrogatory as unduly burdensome and harassing as it requires Defendant to respond to more than 25 interrogatories.

**INTERROGATORY NO. 11:** **Do you contend that you would have abolished the Headquarters Audits Division of the Inspector General for Audit or reassigned plaintiff from her position as Director of the Headquarters Audits Division of the Inspector General for Audit to a nonsupervisory position even in the absence of**

**discrimination, retaliation, or other impermissible factor. If so, provide a complete and accurate account of**

      **(a)**      **your basis for any such contention;**

**RESPONSE 11(a)**: The Defendant objects to this request as vague and speculative and not reasonably calculated to lead the discovery of relevant or admissible evidence. Defendant further objects to this Interrogatory as it violates Fed. R. Civ. P. 33, which limits each party to 25 interrogatories, including subpart. This is Plaintiff's forty-third Interrogatory. Defendant further objects to this Interrogatory as unduly burdensome and harassing as it requires Defendant to respond to more than 25 interrogatories.

      Subject to and without waiving the foregoing objections, pursuant to Fed. R. Civ. P. 33(d), Defendant refers Plaintiff to Exh. F2 of the ROI.

      **(b)**      **all evidence tending to prove any such contention; and**

**RESPONSE 11(b)**: Defendant incorporates by reference the objections and responses in Interrogatory No. 11(a). Defendant further objects to this Interrogatory as it violates Fed. R. Civ. P. 33, which limits each party to 25 interrogatories, including subpart. This is Plaintiff's forty-fourth Interrogatory. Defendant further objects to this Interrogatory as unduly burdensome and harassing as it requires Defendant to respond to more than 25 interrogatories.

      **(c)**      **all documents which refer or relate, whether in whole or in part, to your response to the foregoing Interrogatory.**

**RESPONSE 11(c)**: Defendant incorporates by reference the objections and responses in Interrogatory 11(a). Defendant further objects to this Interrogatory as it violates Fed. R. Civ. P. 33, which limits each party to 25 interrogatories, including subpart. This is Plaintiff's forty-fifth Interrogatory. Defendant further objects to this Interrogatory as

unduly burdensome and harassing as it requires Defendant to respond to more than 25

interrogatories.

**INTERROGATORY NO. 12:  Provide a complete and accurate account of the positions to which plaintiff would have been entitled to be reassigned had plaintiff's termination from the service or reduction in grade been proposed in accordance with 5 C.F.R. Part 351 in connection with your Proposal for Realignment of the Office of Audit (Apr. 20, 2004) and the processes for ascertaining all such positions including, but not limited to, identifying:**

> (a) **plaintiff's competitive area as of April 20, 2004;**
>
> (b) **plaintiff's competitive level in her competitive area as of April 20, 2004;**
>
> (c) **all of your other employees occupying the same competitive area and competitive level as of April 20, 2004, including, but not limited to, each such employee's name, race, sex, age, position, and grade level;**
>
> (d) **the order of retention of plaintiff and each such employee; and**
>
> (e) **each Human Resources or employee relations specialist or personnel who provided information in response to this Interrogatory.**

**RESPONSE12(a)-(e)**:  The Defendant objects to this Interrogatory as unduly

burdensome, vague, overly broad, and not reasonably calculated to the discovery of

relevant or admissible evidence because it asks Defendant to speculate as to what

Plaintiff "would have been entitled" to.  Defendant further objects to this Interrogatory as

it violates Fed. R. Civ. P. 33, which limits each party to 25 interrogatories, including

subpart.  These are Plaintiff's forty-sixth through fiftieth interrogatories.  Defendant

further objects to this Interrogatory as unduly burdensome and harassing as it requires

Defendant to respond to more than 25 interrogatories.

Subject to and without waiving the foregoing objections, pursuant to Fed. R. Civ.

P. 33(d), Defendant refers Plaintiff to documents that will be produced to Plaintiff after

the Court enters the parties' Stipulated Protective Order.

## REQUEST FOR PRODUCTION OF DOCUMENTS

**DOCUMENT REQUEST NO. 1:  Organizational charts for or other documents from which the organization of the following can be ascertained separately, on an annual basis, from January 1, 1998, through the present:**

      **A.)**    **Your Office of Inspector General.**

      **B.)**    **Your Office of Assistant Inspector General for Audit.**

      **C.)**    **The Regional, District, and other local offices in your Office of Inspector General.**

      **D.)**    **The Regional, District, and other local offices in your Office of Assistant Inspector General for Audit.**

      **E.)**    **The Department of Housing and Urban Development.**

      **F.)**    **The Regional, District, and other local offices in the Department of Housing and Urban Development.**

**RESPONSE NO. 1**:  Defendant objects to this Request as overly broad, irrelevant, and not calculated to lead to the discovery of admissible evidence.  For instance, the organizational chart of the entire Department of Housing and Urban Development dating to 1998 is not relevant at all to Plaintiff's claims in this litigation.  Furthermore, the organization charts of "regional, district and other local offices" of HUD are similary irrelevant as there are no allegations that Plaintiff even worked for any of these "other local offices."  Defendant further objects to this Request as unduly burdensome as it seeks documents dating back eight years.

      Subject to and without waiving the foregoing objections, Defendant refers Plaintiff to documents that will be produced to Plaintiff after the Court approve the parties' Stipulated Protective Order.

**DOCUMENT REQUEST NO. 2:  Staffing charts or other documents from which positions as auditors; grade levels of the foregoing positions; and race, sex, and age**

of incumbents in the foregoing positions in the following entities can be ascertained separately, on an annual basis, from January 1, 1998, through the present:

     A.)    Your Office of Assistant Inspector General for Audit.

     B.)    The Regional, District, and other local offices in your Office of Assistant Inspector General for Audit.

**RESPONSE NO. 2**: Defendant incorporates by reference the objections and responses in

Request No. 1.  Defendant also objects to this Request as harassing and unduly

burdensome as it is cumulative and a duplication of Request No. 1

**DOCUMENT REQUEST NO. 3:  Documents from which the following information can be ascertained separately, on an annual basis, from January 1, 1998, through the present:**

     A.)    Standards or guidelines employed to evaluate your Office of Assistant Inspector General for Audit, and the divisions and components thereof, and your evaluations and rankings of your Office of Assistant Inspector General for Audit, and the divisions and components thereof.

     B.)    Standards or guidelines employed to evaluate the Regional, District, and other local offices in your Office of Assistant Inspector General for Audit and your evaluations and rankings of the Regional, District, and other local offices in your Office of Assistant Inspector General for Audit.

**RESPONSE NO. 3**:  Defendant objects to this Request as overly broad, irrelevant, and

not calculated to lead to the discovery of admissible evidence.  Defendant further objects

to this Request as unduly burdensome as it seeks documents dating back eight years.

     Subject to and without waiving the foregoing objections, Defendant refers

Plaintiff to documents that will be produced to Plaintiff after the Court approves the

parties' Stipulated Protective Order.

**DOCUMENT REQUEST NO. 4:  All documents which refer or relate, whether in whole or in part, to your responses to the foregoing Interrogatories**.

**RESPONSE NO. 4**:  Defendant incorporates by reference the objections and responsess

in Interrogatory Nos. 1-12 (including all subparts).  Defendant incorporates by reference

the objections and responses in Request Nos. 1-3.

**DOCUMENT REQUEST NO. 5:  All documents which refer or relate, whether in whole or in part, to the performance and conduct of plaintiff while in your employ including, but not limited to, her official and unofficial personnel files, performance appraisals, awards, commendations, salary history, position descriptions, individual development plans, records of work assignments, memoranda and e-mails concerning performance, and corrective, remedial, disciplinary or other personnel action involving her.**

**RESPONSE NO. 5:**  Defendant objects to this Request as unduly burdensome to the

extent that Plaintiff has in his possession or he could readily obtain the responsive

documents to this Request.  Defendant also objects to this Request as vague, overly broad

and ambiguous as it fails to define the term "unofficial personnel files."  Defendant

further objects to this Request as irrelevant and not reasonably calculated to lead to the

discovery of admissible evidence.  Defendant also objects to this Request as it fails to

define the relevant time period.  To the extent that the Request seeks documents from the

time that Plaintiff was employed with Defendant to the present, it is unduly burdensome.

Subject to and without waiving the foregoing objections, Defendant refers

Plaintiff to the documents that will be produced to Plaintiff after the Court approves the

parties' Stipulated Protective Order.

**DOCUMENT REQUEST NO. 6:  All documents which refer or relate, whether in whole or in part, to the performance and conduct of the Division Director in the Headquarters Office of Audit identified in paragraph 41 of Defendant's Answer to the Complaint while in your employ including, but not limited to, his official and unofficial personnel files, performance appraisals, awards, commendations, salary history, position descriptions, individual development plans, records of work assignments, memoranda and e-mails concerning performance, and corrective, remedial, disciplinary or other personnel action involving him.**

**RESPONSE NO. 6**:  Defendant objects to this Request as overly broad, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant also objects to this Request for failure to define the term "unofficial personnel files." Defendant further objects to this Request as unduly burdensome as it fails to specify the relevant time period.

Subject to and without waiving the foregoing objections, Defendant refers Plaintiff to documents that will be produced to Plaintiff after the Court approves the parties' Stipulated Protective Order.

**DOCUMENT REQUEST NO. 7:  All documents which refer or relate, whether in whole or in part, to complaints of discrimination based on race, sex, or age or retaliation (formal or informal); proceedings before the Equal Employment Opportunity Commission or the Merit Systems Protection Board involving complaints of discrimination based on race, sex, or age or retaliation; grievances involving allegations of discrimination based on race, sex, or age or retaliation; and suits in federal courts involving allegations of discrimination based on race, sex, or age or retaliation in which any of the following persons is alleged to have engaged in discrimination or retaliation:**

> **F.)     James Heist**
>
> **G.)     Michael Phelps**
>
> **H.)     Michael Stephens**

**RESPONSE:**  Defendant objects to this Request as overly broad, irrelevant, and not calculated to lead to the discovery of admissible evidence.  Defendant further objects to this Request as unduly burdensome as it seeks documents not relevant to Plaintiff's underlying claims.

Subject to and without waiving the foregoing objections, Defendant refers Plaintiff to documents that will be produced to Plaintiff after the Court approves the parties' Stipulated Protective Order.

**DOCUMENT REQUEST NO. 8:  Documents from which the following information can be derived separately, on a Fiscal Year basis, for each Fiscal Year beginning with FY 2001 and continuing through FY 2006**:

> A.)    **The number of FTE's for Auditors of the Inspector General for Audit of the Department of Housing and Urban Development budgeted by office, district, and/or region.**
>
> B)    **The funds budgeted for FTE's for Auditors of the Inspector General for Audit of the Department of Housing and Urban Development budgeted by office, district, and/or region.**

**RESPONSE No. 8(a)-(b)**:  Defendant objects to this Request as overly broad, irrelevant and not calculated to lead to the discovery of admissible evidence.  Defendant further objects to this Request as it seeks documents irrelevant to Plaintiff's underlying claims.

Subject to and without waiving the foregoing objections, with regards to No. 8(a), Defendant refers Plaintiff to documents that will be produced to Plaintiff after the Court approves the parties' Stipulated Protective Order.  With regards to 8(b), there are no responsive documents as the OIG does not budget FTEs by office, district or region.

> C.)    **The number of FTE's for Auditors of the Inspector General for Audit of the Department of Housing and Urban Development employed by office, district, and/or region**.
>
> D.)    **The funds budgeted for FTE's for Auditors of the Inspector General for Audit of the Department of Housing and Urban Development expended by office, district, and/or region.**

**RESPONSE No. 8(c)-(d):**  Defendant incorporates by reference the objections and responses in Request No. 8(a)-(b).

**DOCUMENT REQUEST NO. 9.:  Documents from which the following information can be derived separately, on a Fiscal Year basis, for each Fiscal Year beginning with FY 2001 and continuing through FY 2006:**

> A.)    **The funds budgeted for rent for the Capital District Office of Audit at 800 N. Capitol Street, N.W., in Washington, D.C.**

      **B.)**    **The funds expended for rent for the Capital District Office of Audit at 800 N. Capitol Street in Washington, D.C.**

      **C.)**    **The funds budgeted for rent for the Office of Inspector General at 800 N. Capitol Street in Washington, D.C.**

      **D.)**    **The funds expended for rent for the Office of Inspector General at 800 N. Capitol Street in Washington, D.C.**

**RESPONSE No. 9**: Defendant objects to this Request as overly broad, irrelevant and not calculated to lead to the discovery of admissible evidence. Defendant further objects to this Request as it seeks documents irrelevant to Plaintiff's underlying claims.

      Subject to and without waiving the foregoing objections, with regards to No. 8(a), Defendant refers Plaintiff to documents that will be produced to Plaintiff after the Court approves the parties' Stipulated Protective Order.

**DOCUMENT REQUEST NO. 10:  All documents which refer or relate, whether in whole of in part, to the reduction of FTE's within the Office of Audit and the cost savings associated with closing the "Capital Region Office of Audit" referred to in Defendant's Rule 26(a)(1) Disclosures**.

**RESPONSE No. 10**. Defendant incorporates by reference the objections and responses in Request No. 9.

**DOCUMENT REQUEST NO. 11:  All documents which refer or relate, whether in whole of in part, to the reduction of FTE's within the Office of Audit and the cost savings associated with closing the "Capital Region Office of Audit" not referred to in Defendant's Rule 26(a)(1) Disclosures**.

**RESPONSE No. 11**: Defendant incorporates by reference the objections and responses in Request Nos. 9-10.

**DOCUMENT REQUEST NO. 12:  All documents which refer or relate, whether in whole of in part, to the utilization and return of space at the North Capital Street location referred to in Defendant's Rule 26(a)(1) Disclosures**.

**RESPONSE No. 12**: Defendant incorporates by reference the objections and responses in Request No. 9.

**DOCUMENT REQUEST NO. 13:** All documents which refer or relate, whether in whole or in part, to the utilization and return of space at the North Capital Street location not referred to in Defendant's Rule 26(a)(1) Disclosures.

**RESPONSE No. 13**:  Defendant incorporates by reference the objections and responses

in Request No. 9.

**DOCUMENT REQUEST NO. 14:  Documents from which the following information can be derived:**
        **A.)     The reduction of FTE's within the Office of Audit associated with abolishing the Headquarters Audits Division.**

        **B.)     The cost savings within the Office of Audit associated with abolishing the Headquarters Audits Division**.

        **RESPONSE:  None.**

**DOCUMENT REQUEST NO. 15:  Documents from which the following information can be derived separately, on a Fiscal Year basis, for each Fiscal Year beginning with FY 2001 and continuing through FY 2006:**

    **A.)     The number of auditors detailed or temporarily assigned to the Financial Audit Division.**

    **B.)     The number of auditors detailed or temporarily assigned to the Headquarters Office of Audit other than the Financial Audit Division**.

**RESPONSE No. 15(a)-(b)**:  Defendant objects to this Request as overly broad, irrelevant

and not calculated to lead to the discovery of admissible evidence.  Defendant further

objects to this Request as it seeks documents irrelevant to Plaintiff's underlying claims.

      Subject to and without waiving the foregoing objections, Defendant refers

Plaintiff to documents that will be produced to Plaintiff after the Court approves the

parties' Stipulated Protective Order.

    **C.)     The funds budgeted to assign or temporarily detail auditors to the Financial Audit Division**.

**RESPONSE No. 15(c)**:  None. Funds are not separately budgeted for this activity.

D.)     **The funds budgeted to assign or temporarily detail auditors to the Headquarters Office of Audit other than to the Financial Audit Division**.

E.)     **The funds expended in assigning or temporarily detailing auditors to the Financial Audit Division**.

F.)     **The funds expended in assigning or temporarily detailing auditors to the Headquarters Office of Audit other than to the Financial Audit Division**.

**RESPONSE No. 15(c)-(f)**: Defendant incorporates by reference the objections and responses in Request No. 15(a)-(b).

**DOCUMENT REQUEST NO. 16: All documents which refer or relate, whether in whole or in part, to the Memorandum for Michael Stephens from James Heist entitled "Proposed Realignment of the Office of Audit" dated April 20, 2004.**

**RESPONSE**:  Defendant objects to this Request as overly broad, irrelevant and not calculated to lead to the discovery of admissible evidence.  Defendant further objects to this Request as it seeks documents irrelevant to Plaintiff's underlying claims.

Subject to and without waiving the foregoing objections, Defendant refers Plaintiff to documents that will be produced to Plaintiff after the Court approves the parties' Stipulated Protective Order.

Certifications as to the interrogatories are attached.

Dated: March 8, 2006.                    Respectfully submitted,

_____
KENNETH L. WAINSTEIN, D.C. Bar #451058
United States Attorney

_____
R. CRAIG LAWRENCE, D.C. Bar #171538
Assistant United States Attorney

_____
JOHN C. TRUONG, D.C. Bar #465901
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 307-0406

Attorneys for Defendant

## VERIFICATION

1.      I am the Deputy Counsel to the Inspector General, Office of Inspector General (OIG) for  the United States Department of Housing and Urban Development ("the Department").  I am also the OIG liaison for this litigation, Elion v. Jackson.  I have been tasked and have searched for documents and answers responsive to the Plaintiff's discovery requests.

2.      I  have reviewed the Defendant's Objections and First Response to Plaintiff's First Set of Interrogatories and Requests for Production, and know the contents thereof .

3.      The matters contained in the Defendant's Objections and First Responses to Plaintiff's First Set of Interrogatories and Requests for Production, are substantially correct and true and accurate to the best of my knowledge, information and belief.

4.      The source of my information and the grounds for my belief are my personal knowledge, my personal discussions and questioning of the principal witnesses in the

case, information provided by our servicing personnel office at the Bureau of Public

Debt and officials within the OIG, and the Department, and the official files and records

available to me.

      I declare under penalty of perjury that the foregoing is true and correct to the best

of my knowledge, information and belief.

Dated:                                _____

                                              Richard Johnson
                                              Deputy Counsel to the Inspector General
                                              Office of the Inspector General
                                              U.S. Department of Housing and Urban
                                              Development

**CERTIFICATE OF SERVICE**

I HEREBY certify that a copy of the foregoing <u>Defendant's Objections and</u>

<u>Responses to Plaintiff's First Set of Interrogatories and Request for Documents</u> has

been served on March 8, 2006, via e-mail in pdf format and First Class Mail in a

prepaid envelope, correctly addressed to the following:


Robert C. Seldon, Esq.
Robert C. Seldon & Associates, P.C.
Attorneys-At-Law
1319 F Street, N.W., Suite 305
Washington, D.C. 20004
E-mail: rcs@rcseldon-associates.com


_____/s/_____
John C. Truong

**ATTACHMENT F**

**ATTACHMENT F**

# REPORT OF INVESTIGATION

# OF THE COMPLAINT OF DISCRIMINATION

# FILED BY

# SAUNDRA ELION

# IG-04-04



### NOTICE OF RESTRICTED USAGE

*Access and usage of the EEO complaint file is RESTRICTED by both the Freedom of Information Act and the Privacy Act to: (1) the complainant (and his or her representative), and (2) government officials who must have access to the file to discharge their OFFICIAL duties. The file and its contents must be safeguarded. Willful violation of these requirements is subject to criminal penalties [5 U.S.C. 552a(1)].*

# U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

## REPORT OF INVESTIGATION

### EQUAL OPPORTUNITY COMPLAINT OF SAUNDRA ELION (IG-04-04)

**I.     Description of Complaint:**

**Title and grade of complainant's position:**

Special Assistant, GS-15

**Name and location of organization and unit involved in complaint:**

HUD
Office of the Inspector General
Office of Audit
452 7th Street, SW
Washington, DC 20410

**Nature of action, decision, or condition giving rise to complaint:**

Subjected to hostile work environment, reassignment to non-supervisory position

**Basis - type of discrimination alleged:**

Race, sex, age and reprisal

**Date of alleged discrimination:**

December 2002 through April 2004; April 21, 2004

**II.     Description of Investigation:**

**Identity of investigator:**

Tondalaya Williams
*Southwind*
1804 N. George Mason Drive
Arlington, Virginia 22205

**Date Report of Investigation submitted:**

March 11, 2005

**Places of Investigation:**

Washington, DC

**Dates of Investigation:**

October 2004 - February 16, 2005

**Method of Investigation:**

Taking of affidavits

## III.    Bases and Claims:

Whether Complainant was subjected to discrimination and continuous harassment because of her race (African-American), sex (female), age (56) and in reprisal (prior EEO activity), when the Deputy Inspector General, Assistant Inspector General for Audit, and the Deputy Assistant Inspector General for Audit, Office of Inspector General (OIG), Office of Audit, Washington, DC:

1.  Subjected her to a hostile work environment since December 2002 through April 2004.

2.  On April 21, 2004, reassigned her from the position of Director of the Headquarters Audit Division (HAD) of OIG to a non-supervisory position with significantly less responsibility, career exposure and opportunity for advancement.

3.  On August 30, 2004, she learned that she was not considered for the position of the Director, GS-15 Supervisory, TOP, OIG Headquarters.

## IV.    Summary:

Complainant (African-American female, age 56, reprisal for prior EEO activity), Special Assistant to the Inspector General fro Audit, GS-15, HUD, OIG claims she was subjected to discrimination and continued harassment after filing an initial complaint against management officials Michael Phelps (White male, age 59, prior EEO activity) and James Heist (White male, age 50, prior EEO activity). Complainant claims when management official Michael Stephens (White male, age 57, prior EEO activity) was informed of her complaint, an informal meeting was scheduled in December 2002 without a mediator or legal representation to discuss her concerns. She claims Mr. Phelps and Mr. Heist agreed to resolve several points of concern she raised and in view of the verbal agreement, the complaint was withdrawn. She claims; however, none of the proposed resolutions were implemented as agreed to by management and within six weeks after the meeting, her working environment deteriorated. She also claims there were other material and adverse changes in her employment that began in June 2001. Complainant sought EEO counseling on May 5, 2004. Informal resolution was not achieved and Complainant was issued a Notice of the Right to File a Formal Complaint (Exhibit B). She filed a formal complaint on July 6, 2004 (Exhibit A). On July 23, 2004, the agency accepted her complaint for processing (Exhibit C).

**Subjected to Hostile Work Environment from December 2002 – April 2004**

Complainant states that she was hired in June 1999 as the District Inspector General for Audit (GS-15) of the Capital District. In May 2002, Mr. Heist abolished the Capital District Office of Audit and created the Headquarters Audit Division (HAD), which significantly decreased the amount of responsibility under Complainant's leadership. Complainant claims the reason Mr. Heist gave for the reorganization was "to align the OIG with HUD's regional offices, reduce cost, and move the staff closer to its audit clients." HAD was later disbanded. In her testimony, Complainant cites subsequent events she alleges demonstrates the reasons Mr. Heist gave for the reorganization were neither valid nor based on objective analyses to include her inability to hire replacement staff and reassignment of existing staff to 2-month details.

Mr. James A. Heist (Management Official – White male, age 50, prior EEO participation), Assistant Inspector General for Audit, SES, HUD, OIG, Office of Audit, Washington DC and Complainant's supervisor, states he does not remember Complainant bringing any concerns to his attention regarding a hostile work environment. Mr. Heist states the rationale for his recommendation to the Deputy Inspector General to disband HAD was based on workload and resource issues. He states the functions of HAD were transferred to the Information Systems Audits Division. Further, Complainant retained responsibility for completing any remaining audit resolution activities associated with reports issues by HAD. Mr. Heist states that at the time of disbandment, the division had three staff auditors, a supervisory GS-14 assistant director and a supervisory GS-15 director, which resulted in a supervisor to staff ratio of 1 to 1.5.  Mr. Heist states such a ratio was inefficient, particularly in light of a government-wide emphasis on higher staff to supervisor ratios and eliminating unnecessary layers of management.  Mr. Heist states the action allowed him to eliminate two supervisory positions, redistribute staff to a function that was mission critical and statutorily mandated, and fill a critical senior auditor vacancy in TOP with an experienced GS-14.

Regarding Complainant's inability to hire replacement staff and not receiving awards and recognition even though her office was ranked 4th, Mr. Heist states Mr. Phelps was Complainant's immediate supervisor at the time and he was not involved in the action.

Mr. Heist states Complainant's race, age, sex or prior EEO activity were not factors in the actions referenced above (Exhibit F.2).

Michael R. Phelps (Management Official – White male, age 59, prior EEO participation), Deputy Assistant Inspector General for Audit, SES, HUD, OIG, Office of Audit, Washington DC, states Complainant never told him she had concerns about a hostile work environment. Mr. Phelps states he had no direct involvement in the reorganization but from conversations with Mr. Heist, he understood the decision was based on organizational workload and staffing implications. Mr. Phelps states as he understands it, the workload was transferred to the Information Systems Audits Division. Emphasizing that he had no involvement in the reorganization, Mr. Phelps states abolishment of Complainant's division allowed for the redistribution of staff to mission critical functions. He states to the best of his knowledge or belief, Complainant's race, sex, age or prior EEO activity was not a factor in the realignment.

Regarding Complainants inability to hire replacement staff, Mr. Phelps states staff reductions or reassignments would not impact a manager's ability to hire replacement staff. He states Complainant and her assistant director were responsible for recruiting and hiring activities and to the extent hiring was allowed, Complainant was treated the same as all managers. Mr. Phelps states the Office of Audit ceiling was cut from 315 to 301 for fiscal

year 2002 and downsizing began in July 2001. He states in February 2003 he authorized Complainant to fill three slots; however, she did not have success in her recruitment efforts. Mr. Phelps states reassignment of staff to 2-month details is related to the Department's Financial Audit. He states HAD provided part of the staff.

Mr. Phelps states that between June 2001 and October 2002 two staff members requested and were granted transfers out of Complainant's division due to issues with the way Complainant managed her staff. Regarding Complainant's reference to being ranked 4th, Mr. Phelps states Complainant's office was tied with another office. He states the manager of that office did not receive an award either. Further, an office's ranking was just one of the factors considered in the performance ratings of managers. Mr. Phelps states timely completion of audits, issuance of reports and managing overall office operations including personnel issues were also factors. He states that during his performance rating discussion with Complainant, he pointed out the need for improving the timeliness of reports. He states he also discussed his concerns with Complainant regarding staffing levels.

Mr. Phelps states Complainant's race, sex, age or prior EEO activity were not factors in her not receiving awards (Exhibit F.3).

Michael P. Stephens (Management Official – White male, age 57, prior EEO participation) Deputy Inspector General, SES, HUD, Office of the Inspector General, Washington, DC, states Complainant raised some concerns with him approximately one year ago, but he does not recall Complainant expressing concerns about the existence of a hostile work environment. He states Complainant indicated she was unhappy with management in the Office of Audit and she did not understand her "mission." Mr. Stephens states Complainant expressed concern that she was not provided the resources to do her job and her work was being monitored. He states he held a meeting with Mike Phelps and Jim Heist to discuss Complainant's concerns. Mr. Stephens states Complainant seemed pleased he had discussed her issues with Audit management and was willing to work together for a resolution.

Regarding the abolishment of Complainant's division, Mr. Stephens states based on his recollection, the workload for this division did not end up as significant as first thought. He states Mr. Heist discussed with him that the employees in Complainant's division could be utilized in other divisions that needed additional resources. Mr. Stephens states he respected Mr. Heist's opinion and agreed with him.

Regarding Complainant's inability to hire replacement staff, Mr. Stephens states he assumed his role in January 2002 and had no personal knowledge of Complainant's recruitment efforts prior to his arrival. He states since his arrival, he believes Complainant had some vacancies. Mr. Stephens states he did not get involved in the hiring process within the Office of Audit, Office of Investigations, OMAP or the Counsel's office and generally leave the decisions to the assistant inspectors to determine when and where to announce vacancies. He states a hiring freeze affected the entire OIG because of budget concerns between January 2002 and October 2002. He states the freeze caused a burden on all the affected locations due to the inability to backfill positions.

Regarding Complainant not receiving performance awards or recognition for the accomplishments of HAD under her leadership, Mr. Stephens states he did not get involved in the individual award decisions within the Office of Audit, Office of Investigations, OMAP or the Counsel's office.

Mr. Stephens states Complainant's race, sex, age or prior EEO activity was not a factor in the actions referenced above (Exhibit F.4).

Donna M. Hawkins (Witness – African-American female, age 42, prior EEO activity) currently Desk Auditor (former Senior Auditor, Capital District), HUD, TOP, OIG, Washington, DC, states Complainant brought to her attention concerns about working in an hostile work environment. She states after Complainant met with management officials Messrs Heist, Stephens and Phelps, Complainant was positive the proposed action outlined in the ADR session would resolve her concerns and withdrew her complaint. She states; however, it did not take Mr. Heist and Mr. Phelps long to resort to their old ways of unnecessarily reviewing and questioning Complainant's work and not providing a clear mandate or adequate staffing. Ms. Hawkins states it appeared to her that OIG management deliberately denied Complainant legal representation at the meeting so they would not be bound by their proposed resolutions and could continue to put her in a position where her productivity and effectiveness would decline. Ms. Hawkins cited a series of events she alleges took place to undermine Complainant's leadership as the Inspector Auditor for the Capital District. Ms. Hawkins states she and Complainant were the only two female African-American managers in OIG, Office of Audit that were adversely affected when management disbanded HAD. She cited an incident when one of Complainant's employees resigned. She states when Complainant initially brought the resignation to Mr. Phelps's attention, there was little concern shown; however, the next working day, Mr. Phelps completely changed his review of the resignation and elevated the matter to Mr. Stephens. She states Complainant was summoned to Mr. Stephen's office for questioning regarding the staff's opinion about her.

Ms. Hawkins states she and Complainant were not provided an opportunity to address the issues raised by staff. In addition, Mr. Stephens informed Complainant he planned to have the OIG Ombudsman review her division to address the staff's concerns. Ms. Hawkins states she believes the disbanding of HAD was in reprisal for her and Complainant's inquiries regarding the parameters of the Ombudsman's review of their operations and raising concerns regarding the continuous meetings between the HAD staff and OIG senior managers. Ms. Hawkins states the meetings took place without her or Complainant's knowledge. Further, approximately 43 days after the disbandment, Mr. Heist sent an email to the directors and regional inspector generals for Audit (RIGA) to solicit their input regarding under-performing offices. She states Mr. Heist allowed the offices to make recommendations on their fate; however, he did not provide the only two African-American females in the entire Office of Audit any input to the future of HAD.

Regarding Complainant's inability to hire replacement staff, Ms. Hawkins states she was primarily responsible for assisting Complainant with organizing, planning and implementing the recruitment strategy for the Capital District and HAD. She states during this period, OIG Office of Audit staffing levels were down; therefore, all divisions and regional offices except the Capital District and HAD were allowed to hire even if it meant exceeding their ceiling. Ms. Hawkins cites a series of personnel actions she alleges took place that hindered Complainant's ability to hire replacement staff.

Regarding Complainant not receiving recognition or performance awards although her staff ranked 4th overall in achieving performance goals, Ms. Hawkins states management reluctantly acknowledged the quality and significance of Complainant's audit results on a number of her assignments but never included her in monetary awards given to other

directors with fewer accomplishments. She cites several examples of Complainant's accomplishments she alleges warranted monetary awards.

Ms. Hawkins states Complainant's race; sex, age and prior EEO activity was a factor in management actions (Exhibit F.5).

Janet P. Bonds (Witness – African-American female, age 55, prior EEO activity) Senior Auditor, GS-511-14, HUD, TOP, Office of Audit, OIG, Washington, DC, states through her association with Complainant and Ms. Hawkins, she was aware that management was meeting secretly to discuss issues regarding Complainant's division. Ms. Bonds states several members of Complainant's group were arbitrarily transferred to other offices after complaining to Mr. Phelps. She cites an incident when management made a decision to transfer a White male with 30 years of experience who had worked for Complainant since her arrival at OIG. She states in spite of Complainant's objections, Edwards Bowles, an African-American male with less experienced was involuntarily transferred to Complainant's division as a replacement. Ms. Bonds states Mr. Bowles expressed concerns about his ability to conduct audits.   She states the transfer had a negative impact on Complainant's ability to meet reporting goals.  She states as a result of the transfer, Mr. Bowles filed an EEO complaint and left HUD OIG shortly thereafter.

Regarding the realignment of HAD, Ms. Bonds states it was a form of retaliation because management's decision was hasty and the action only involved Complainant's division. She states just before the realignment was announced, Complainant filed an EEO compliant. She states when the realignment was announced, Complainant was only given several hours' notice before the reorganization took place. In her testimony, Ms. Bonds cites several examples of actions taken by management she alleges were discriminatory against Complainant.

Regarding Complainant's inability to hire replacement staff, Ms. Bonds states every year, OIG conducts a financial audit of HUD that requires the reassignment of personnel from other divisions. She states, during the period June 2001 and October 2002, several of Complainant's staff was chosen to assist the Financial Audit Division in the audit. She states that even with this reduction in staff, Complainant was still required to meet her goals. Ms. Bonds states when Complainant's assistant retired, she was not allowed to replace him. She states Complainant had to serve as both the director and the assistant for about a year before management permitted her to hire anyone.  Ms. Bonds states that during the same period, other divisions and regions were allowed to hire staff. Regarding Complainant not receiving performance awards or recognition, Ms. Bonds states that other regional division managers who used significantly more calendar days and staff days to complete audits than Complainant received awards. Ms. Bonds states that Complainant's race; sex, age and prior EEO activity was a factor in management's actions (F.6).

Latesha Campbell-Waters (Witness – African-American female, age 30, prior EEO activity) former employee, currently Management Analyst, GS-12, HUD Training Division, OIG, Washington, DC, states she was transferred from under Complainant's supervision to Mr. Phelps' supervision. She states Mr. Phelps informed her Complainant could not employ an administrative officer and a secretary at the same time.   She states; however, she was aware that all of the other divisions were allowed to have both.

Ms. Campbell-Waters states Complainant received a lot of scrutiny about the audit reports prepared by her staff.  She states Complainant was constantly criticized about everything she did with her staff and could not manage without interference from Mr. Phelps.  She

states Mr. Phelps did not bother other managers regarding the resolution of problems with staff and in addition, he would not let Complainant hire new or replacement staff. Ms. Campbell-Waters states Complainant was given higher volumes of work with shorter time periods for completion. She states staff was called into meetings with Mr. Phelps where he would harassed Complainant throughout the meetings. Further, Mr. Phelps sided frequently with Complainant's staff and used their complaints against her. She states a wall was put up to block Complainant's staff from everyone else in the office, although, none of the other offices in the vicinity were treated the same. Ms. Campbell-Waters states race was more of a factor than gender in management's actions against Complainant. She states the African-American male who was in the job before Complainant was also harassed to the point he almost got fired. She states he also filed a complaint against management.

Regarding the realignment, Ms. Campbell-Waters states race, age and reprisal played a part in management's actions. Regarding Complainant's inability to hire replacement staff, she states Complainant was told by Mr. Phelps that she could not hire anyone else. She states staff were told the reorganization would not hinder the hiring of staff; however, once the division was relocated, Complainant was not allowed to hire new people. Ms. Campbell-Waters states with continued persistence, Complainant was allowed to hire an assistant but shortly after the group was disbanded. Regarding Complainant not receiving performance awards or recognition, Ms. Campbell-Waters states other individuals within the organization (predominately White males) received awards in amounts ranging from $2,500 to $4,000 (Exhibit F.7).

Edward R. Bowles (Witness – African-American male, age 49, prior EEO activity) former employee, currently Management Specialist, GS-14, Customs and Border Protection, Management Inspections Divisions, Washington, DC, states he witnessed several employees who were not African-American transferred out of Complainant's division after meetings with Mr. Phelps. He states; however, Mr. Phelps denied an African-American female's request to transfer to the Financial Accounting Division to enhance her career. Mr. Bowles states Mr. Phelps involuntarily transferred him into Complainant's division and replaced his position as desk officer with an inexperienced White male. He states prior to his transfer, if an employee transferred out of Complainant's division, either a new announcement was published for that vacant position or someone in-house was allowed to transfer; not to Complainant's division but to another division in OIG.

Mr. Bowles states Complainant's staff decreased even though the workload remained the same. He states after working for Complainant, he began to notice her division was the only one micro-managed by Mr. Phelps. He states prior to the transfer into Complainant's division, he was the desk auditor for Complainant's division. Mr. Bowles states he was given instruction from Mr. Phelps through his immediate supervisor to bring any errors (major or minor) to their immediate attention before discussing them with Complainant. However, he was allowed to discuss any error with other field directors first.

Regarding the reorganization, Mr. Bowles states race was a factor and the action was a form of retaliation against Complainant because Mr. Phelps asked co-workers to talk to him if they were not satisfied with working with Complainant. He states it was obvious Mr. Phelps was building a case against Complainant (Exhibit F.8).

In rebuttal, Complainant states management was aware of her concerns about working in a hostile environment. She states her concerns were outlined in memoranda pertaining to her original informal EEO complaint sent to senior OIG officials from the EEO counselor.

Further, she discussed her concerns with Messrs Heist and Phelps in meetings that took place in August and September 2002 and January 2003 (Exhibit F.1.1).

**Reassignment to Non-supervisory Position**

Regarding the reassignment to a non-supervisory position, Complainant claims on April 21, 2004, she was abruptly reassigned to a non-existent position and stripped of all supervisory duties. She claims her assistant director, who is also an African-American female, had filed an EEO complaint against OIG in October 2003 and was also reassigned and treated in this same manner. Complainant claims in April 2004, Mr. Heist gave her no indication he was considering the abolishment of her division and removing her from a managerial position. She claims her division was abolished even though her office issued quality reports in less time than the other nine audit offices and was ranked 4th overall of the 13 audit offices In terms of meeting performance goals established for the regions/divisions in FY 2003. Complainant claims that within six weeks of abolishing her division, Mr. Heist requested the regional audit managers analyze their staff, audit workload, and productivity to identify which, if any of the existing offices should be closed, disbanded or merged. She claims she was not given the same opportunity.

Complainant claims Mr. Heist cited "budget constraints and mission workload requirements" as his rationale for abolishing the office but the rationale could not have been the true objectives of the reorganization. She claims the changes made did not result on cost savings nor were there changes in the workload requirements. She contends the only accomplishment achieved by the abolishment of the Capital District Office was the removal of the only African-American females in OIG Headquarters from managerial positions, both of who had previously filed EEO complaints. Complainant claims she has experienced anxiety in noting the similarities between her experience and the individual who occupied the Special Assistant position previously. She states he was also African-American who was initially hired to be the District Inspector General for Audit of the Capital District before he was demoted to special assistant. She claims the individual was fired shortly before Mr. Heist relocated her division to Headquarters in 2002 but was subsequently reinstated and now works for the Department in another capacity.

Complainant claims the abrupt abolishment of her division and reassignment to a non-supervisory position has completed the process started in 2001 of undermining her career by placing her in a job with significantly less responsibility, career exposure and opportunity for advancement.

Mr. Heist states at the time the decision was made to disband HAD, it was his desire to place all the Division employees into positions where their grades would not be affected. He states Complainant's former position was a director at the GS-15 level and there were no supervisory GS-15 vacancies available in the Office of Audit. Mr. Heist states Complainant was the only GS-15 manager reassigned as a result of disbanding HAD. Further, the level of responsibility associated with Complainant's current position is comparable to that of her former position as director because they were at the GS-15 levels. Mr. Heist provided job descriptions for both positions (Exhibits F-2b and F-2c). Mr. Heist states the special assistant position was an existing position within the Office of Audit that had been staffed on two previous occasions, and in both instances, an assistant inspector general for Audits filled the position. He states subsequent to disbanding HAD, two supervisory GS-15 vacancies occurred in the Office of Audit; the Regional Inspector General for Audit in Region 1 and the Assistant Director of TOP in headquarters, but Complainant did not apply for either position. Mr. Heist states he

selected an African-American female for the Assistant Director, Technical Oversight and Planning Division.  He states there were no minority or female applicants for the Region 1 Inspector for Audit position; a Caucasian male was selected.

Mr. Heist states Complainant's race, sex, age or prior EEO activity was not a factor in the actions referenced above (Exhibit F.2).

Mr. Phelps states he did not have direct involvement in the reassignment; however, his understanding is Mr. Heist reassigned Complainant to an existing special assistant position because it was the only GS-15 position available and did not affect her grade. Mr. Phelps states Complainant was the only senior level manager reassigned as a result of disbanding HAD.  He states to the best of his knowledge, Complainant's race, sex, age or prior EEO activity did not play a factor in the reassignment (Exhibit F.3).

Mr. Stephens states he discussed Complainant's reassignment with Mr. Heist and he felt Complainant would be a valuable asset to him.  Further, as management officials, they have the authority and duty to reassign personnel to positions that would benefit the efficiency of the government. Mr. Stephens states several GS-15s were reassigned within the Office of Audit.  He states employees retired from federal service and there was a need to backfill these positions because of workload and oversight responsibilities.  He states other reassignment of senior level managers occurred in various OIG divisions throughout the history of the OIG. He states the special assistant's position was a new lateral position but is not unprecedented.  Mr. Stephens states in the past, Mr. Phelps has had several special assistants.  He states there was no vacancy at the time of Complainant's reassignment.  He states Mr. Heist has the discretion to place his managers in positions that best serve the OIG and he trusted Mr. Heist's decision.  He states Complainant's race, sex, age or prior EEO activity was not a factor in the reassignment (Exhibit F.4).

Ms. Hawkins states race, sex, age and reprisal were factors in Complainant's reassignment to a non-existent position as special assistant to Mr. Heist.  She states in 1999, an African-American male was removed from a headquarters audit manager position, reassigned to Mr. Phelps as a special assistant and assigned to work on an audit that was supervised by a lower grade auditor. She states she did not know of a White manager male or female who was stripped of his/her duties and responsibilities and placed in a non-supervisory position. She states Complainant's reassignment was management's deliberate attempt to retaliate against her by destroying her career, discrediting, embarrassing and humiliating her for filing an EEO complaint (Exhibit F.5).

Ms. Bonds cites the reassignment of Austin Groom, an African-American male as a similar action taken by management. She states in 1999, management removed Mr. Groom from a management position and reassigned him as a special assistant to Mr. Phelps.  She states in addition, Mr. Groom was assigned to an audit supervised by a lower-grade staff member. Ms. Bonds states management treated the only two African-American managers in the Office of Audit in a demeaning manner. She states if sex was not a factor in the reassignment, then it was race and reprisal (Exhibit F.6).

Ms. Campbell-Waters states she believes the reassignment was another way for management to set Complainant up to be fired.  She states this action was just a repeat of what they had done to other African-American employees prior to Complainant. Ms. Campbell-Waters states she is not sure if age was a factor; however race and reprisal were strong factors in management's actions (Exhibit F.7).

In rebuttal, Complainant states all of the named OIG management officials admit she was involuntarily reassigned to a non-supervisory position and she was the only senior manager reassigned as a result of the reorganization that abolished her division. Further, none of the management officials denied that her Assistant Director, Donna Hawkins (a similarly situated African-American female with prior EEO activity) was also reassigned involuntarily to a non-supervisory position. She states Mr. Heist's statement that he based his reorganization on concerns about workload and resource issues formed the basis for her original complaint in December 2002. She states management no more justified reorganizing her out of a supervisory position in 2004 any more than they provided a reason to diminish her work and professional accomplishments in 2002. She states when Mr. Heist abolished the Capital District Office of Audit in May 2002, no one within OIG had determined the potential workload to be addressed by the newly created HAD. She states she was not allowed to assess the potential workload at any time during the existence of HAD. Further, in July 2003 (in response to her request to implement the resolutions proposed during the meeting with Mr. Stephen six months prior), Mr. Phelps insisted and Mr. Heist concurred, that her division conduct credit card audits instead of researching potential audits for HAD. She states the credit card audits were not critical, significant or time-sensitive but had the affect of preventing her from establishing a workload for HAD.

Regarding resource issues, Complainant states her staffing levels decreased from 16 in June 2001 to five in April 2004. She states of the six positions vacated before the Capital District was abolished, she was only allowed to advertise one and Mr. Phelps cancelled the announcement. She states after HAD was created, four staff members were transferred out of her division and one auditor was replaced with someone less experienced. She states Mr. Phelps inaccurately stated she advertised and then cancelled the announcement. She states Mr. Phelps cancelled the announcements. Also, Mr. Phelps was incorrect in his statement about the recruitment of Norfolk State graduates. She states two of HAD's auditors were Norfolk State graduates; however after the move to Headquarters, she no longer recruited for the office because there were no vacancies for entry-level audit positions. Therefore, she helped the graduates to obtain employment with other agencies. Complainant states that during the transition to Headquarters, Mr. Phelps advised her she could hire more experienced auditors because the work would require interactions with senior HUD officials, and all other Headquarters division offices were staffed with GS-13 and 14 auditors.

Complainant states there are inconsistencies between the staffing level chart contained in Mr. Phelps' affidavit and the OIG Staffing Report. She states she was not aware of the two reductions in the ceiling for the Capital District or why the ceiling was lowered to 13 (June 29, 2002 staffing report). She states it was not until June 2003 when Mr. Phelps informed her the ceiling had been lowered to only nine employees. She states Mr. Phelps' statement regarding staff transfers due to the way she managed her staff was never reflected in her performance appraisals or discussed with her. She states Mr. Phelps prevented her from advertising in 2002 because of the anticipated moved to Headquarters. She states within 2 months of the relocation, the ceiling was lowered to nine. She states Mr. Phelps subsequently approved the advertisement of two positions; however, the candidates declined her offer because one had already accepted another position and the second because OIG would not pay moving expenses. She states during this time a hiring freeze was put into effect, but there were audit offices that continued to hire.

Complainant states the role and mission of HAD were never defined so there was no need for an official transition of any functions other than the two ongoing credit card assignments. She states particularly noteworthy is that Mr. Heist knew in early 2003 that the OIG planned

to establish an Inspections and Evaluations unit that could address the assignments being addressed by her unit. Complainant elaborates on additional actions by management to further support her contentions that the abolishment of HAD improved the organization is not credible.

Regarding statements made by management regarding awards and recognition, Complainant states the manager who tied for 4th did receive an award. She states the only other managers besides her who did not receive an award were those who had been in their managerial positions less than a year. Regarding Mr. Phelps comments about her timeliness in report submission, Complainant states only two of the 13 other audit offices issued reports in fewer days and in less time than she did in 2003 (Exhibit F.1.1).

### Failure to Restore to Supervisory Position

Regarding failure to restore her to a supervisory position, Complainant claims that in August 2004, four months after being reassigned, Mr. Heist announced he was transferring the Region 8 audit manager to Headquarters to assume the director's position in TOP when the director at the time retired in January 2005. She claims the Region 8 manager is a White male who planned to retire in the Washington area; therefore, the move was convenient for him. Complainant claims although she was fully qualified for the position, she was not given any consideration for the appointment which would have restored her to supervisory status. She contends that not considering her for the appointment further demonstrates OIG management has no intention of restoring her to a management position for which she was hired initially.

Complainant further alleges that as a result of the discrimination and retaliation she has been subjected to, she has had to seek the care of healthcare professionals. She also claims that under the advisement of her legal counsel, she is deferring submission of medical reports and medical evidence until HUD advises her it is necessary (Exhibit F.1).

Mr. Heist states Robert Gwin's reassignment to the Director of TOP was a non-competitive placement action, made pursuant to the authority of OIG Manual Chapter 1335, Merit Staffing Plan, Section 2-2C. He states he gave consideration to reassign Complainant to the position; however, he did not because in his judgment, Complainant did not possess the level of professional competence necessary for the position. He states he had concerns with Complainant's management of the two offices she lead as Director of the HAD and the District Inspector General for Audit, Capital Division.   Mr. Heist states on more than one occasion, Complainant's staff expressed concerns about the manner in which she managed the offices.  He states staff either left the organization or requested transfers to other OIG offices because they no longer wanted to work under Complainant's supervision.  Mr. Heist states he was concerned that reassigning Complainant to the Director of TOP would lead to similar results. He states another concern was Complainant's inability to consistently manage the completion of work products in a timely manner. Mr. Heist states the individual selected for the position (Mr. Gwin) commands a great deal of respect from all levels of the organization including the Inspector General, the Deputy Inspector General and his peer group of regional and headquarters audit managers.

Mr. Heist states Complainant's race, sex, age or prior EEO activity was not a factor in his decision to select Mr. Gwin over her (Exhibit F.2).

Mr. Phelps states he has no direct knowledge of this action; however, Complainant had not expressed interest in the position. Mr. Phelps states he believes Mr. Heist did not have a level of confidence that Complainant was capable of performing the duties of the position in an acceptable manner. He states to the best of his knowledge, Complainant's race, sex, age or prior EEO factor did not play a factor in this decision (Exhibit F.3).

Mr. Stephens states he was not aware if Complainant was considered for the position. He states Complainant did not advise him she was interested in the position. He states the selection was a directed reassignment, replacing a retiring GS-15 with a current GS-15. He states it was a lateral reassignment that did not require a vacancy announcement and states Mr. Heist made the decision based on his experience with Mr. Gwin. Mr. Stephens states he agreed with the decision and trusted Mr. Heist's judgment. He states Complainant's race, sex, age or prior EEO activity was not a factor in this decision (Exhibit F.4).

Ms. Hawkins states prior to the disbanding of HAD in April 2004, management knew the Director of TOP would be retiring in December 2004. She states in August 2004, Mr. Heist announced Mr. Gwin, who lived in the Washington area before taking the position of Regional Inspector General for Audit in Denver, would replace the retiring TOP Director. She states the position was not opened for competition. Referencing Complainant's background in comparison to that of the duties of the position, Ms. Hawkins states Complainant was qualified. She states management achieved their goal of eliminating Complainant from a supervisory position, destroyed her career, and discredited her reputation and contribution. She states Complainant's race, sex, age and prior EEO activity was a factor in management's action (Exhibit F.5).

Ms. Bonds states staff had prior knowledge of the former TOP director's planned retirement at the end of 2004. She states rumors started circulating prior to the director's retirement that Mr. Gwin had already been designated for the position. She states in early November and mid-December, Mr. Gwin made trips to Headquarters to sit in on meetings and learn the ropes of the division. She states management used the same process when another TOP manager retired. She states the replacement was another White male who had previously held the position of Regional Inspector General for the Kansas City Region (Exhibit F.6).

In rebuttal regarding management's statements related to the Director of TOP's position, Complainant states she did not apply for the positions as stated by Mr. Heist, but neither did the two White males Mr. Heist transferred. She states the assignments were made without advertising and because of the way they were handled, there were no procedures for her to follow to ensure consideration or appointment to the positions.

Regarding Mr. Heist's comment regarding consideration of Complainant for the Director, TOP position, Complainant states Mr. Heist offered no evidence to the fact. Further, any concerns about her management of both the Capital District and the Audits Division were not evident in her performance appraisals and is contrary to the citation on the plaque she received when the Capital District was abolished. Complainant states on at least two occasions, after he abolished HAD, Mr. Heist told her directly that the abolishment of the division was not based on her performance. She states Mr. Heist's comments appear to be made in an attempt to cast doubt about her management skills with identifying specific shortcomings and without acknowledgement that her division produced quality reports well within the established timeframes (Exhibit F.1.1).

## V.     Survey of the General Environment:

Prior to the realignment, Complainant was one of five Black females and one White male employed by the OIG, Mid-Atlantic Office of Audit. All but two of the employees were over 40 years of age. Complainant was also one of three females that filed EEO complaints in the office under the former organizational structure. After the realignment and reassignment, Complainant became one of three Black females and two White males in OIG, Headquarters Office of Audit. Under the current structure, Complainant and the two White males (management officials) are over 40 years of age. Complainant is the only employee within the office that has filed an EEO complaint against management (Exhibits F.9, F.10, and F.25).

## VI.     List of Exhibits:

**A.**     Formal complaint of discrimination dated July 6. 2004.

**B.**     EEO Counselor's Report dated July 14, 2004.

**C.**     Notice of receipt dated July 8, 2004, letter dated July 23, 2004 accepting complaint, and letter authorizing the investigation.

**D.**     RESERVED (Attempts at Resolution).

**E.**     RESERVED (Appellate Activity).

**F.**     Investigation (Evidence and documents):

F.1     Affidavit of **SAUNDRA G. ELION** (Complainant – African-American, age 56, female, prior EEO activity) Special Assistant to the Assistant Inspector General for Audit, GS-15, HUD, Office of the Inspector General, Office of Audit, Washington DC, dated December 6, 2004.

    F.1.1     Addendum in rebuttal dated January 27, 2005.

F.2     Affidavit of **JAMES A. HEIST** (Management Official – Caucasian, age 50, male, prior EEO participation) Assistant Inspector General for Audit, SES, HUD, Office of the Inspector General, Office of Audit, Washington, DC, dated December 17, 2004 with attachments.

    F.2.1     Memorandum dated April 20, 2004, subject: Proposal for Realignment of the Office of Audit.

    F.2.2     Complainant's former position description.

    F.2.3     Complainant's current position description.

F.3     Affidavit of **MICHAEL R. PHELPS** (Management Official – Caucasian, age 59, male, prior EEO participation) Deputy Assistant Inspector General, SES, HUD, Office of he Inspector General, Office of Audit, Washington, DC, dated December 17, 2004.

F.4    Affidavit of **MICHAEL P. STEPHENS** (Management Official – Caucasian, age 57, male, prior EEO participation) Deputy Inspector General, SES, HUD, Office of the Inspector General, Washington, DC, dated December 2, 2004.

F.5    Affidavit of **DONNA M. HAWKINS** (Witness – African-American, age 42, female, prior EEO activity) Desk Auditor, HUD, Technical Oversight and Planning Division, Office of Audit, Office of the Inspector General, Washington, DC, dated January 24, 2005.

F.6    Affidavit of **JANET P. BONDS** (Witness – African-American, age 55, female, prior EEO activity) Senior Auditor, GS-511-14, HUD, Technical Oversight and Planning Division, Office of Audit, Office of the Inspector General, Washington, DC, dated December 13, 2004.

F.7    Affidavit of **LATESHA CAMPBELL-WALTERS** (Witness – African-American, age 30, female, prior EEO activity) Management Analyst, GS-12, HUD, Training Division, Office of the Inspector General, Washington, DC, dated January 5, 2005.

F.8    Affidavit of **EDWARD R. BOWLES** (Witness – African-American, age 49, male, prior EEO activity) Management Analyst, GS-14, Customs and Border Protection, Management Inspections Divisions, Washington, DC dated January 4, 2005.

F.9    Workforce Profile for Office of Audit in June 2002, annotated by title, series/grade and race/sex.

F.10   Workforce Profile for Office of Audit in April 2004, annotated by title, series/grade and race/sex.

F.11   List of duties Complainant performed as a supervisory auditor.

F.12   Job Description for supervisory auditor (Complainant's former position) in the Office of the Inspector General, Office of Audit.

F.13   Job Description for special assistant (Complainant's current position) in the Office of the Inspector General, Office of Audit.

F.14   Notification of Personnel Actions on file for Complainant.

F.15   Complainant's resume.

F.16   Letter from James Heist, dated April 20, 2004 regarding Realignment of the Office of Audit.

F.17   Complainant's performance appraisals for period ending 1/31/01.

F.18   Complainant's performance appraisals for period ending 1/31/02.

F.19   Complainant's performance appraisals for period ending 1/31/03.

F.20   Complainant's performance appraisals for period ending 1/31/04.

F.21   OIG Ombudsman Program.

F.22   OIG EEO Process for HUD OIG.

F.23    Alternative Dispute Resolution (ADR).

F.24    HUD Promotion Plan.

F.25    HUD OIG reassignments for the past two years (July 2002-July 2004) that Mr. Stephens
was involved in the decision-making process annotated by DOB, race, sex and position.

**ATTACHMENT G**

02414

5502

# OFFICE OF AUDIT
# AUDIT STAFF

| REGION/OFFICE | CEILING 2002 | SCEP | ON BOARD 5/5/2002 | PENDING 5/5/2002 | PENDING STATUS | |
|---|---|---|---|---|---|---|
| | | | | | IN | OUT |
| **HEADQUARTERS AUDIT** | | | | | | |
| AIG | 4 | | 3 | | | |
| FINANCIAL AUDIT | 16 | | 15 | | | |
| REASERCH & PLANNING | 12 | | 10 | | | |
| IS AUDIT | 19 | | 20 | | | |
| **SUBTOTAL** | 51 | | 48 | 0 | | |
| **FIELD AUDIT** | | | | | | |
| DISTRICT 1 | 19 | 0 | 17 | 2 | burns, krailo | |
| DISTRICT 2 | 24 | 0 | 22 | 1 | ranzie5/5 | |
| DISTRICT 3 | 28 | 0 | 27 | | | |
| DISTRICT 4 | 41 | 2 | 41 | -1 | A | minnefield |
| DISTRICT 5 | 30 | 0 | 30 | 2 | kreps kulumani | |
| DISTRICT 6 | 28 | 0 | 28 | | | |
| DISTRICT 7 | 13 | 1 | 13 | 1 | zanderis, gish (scep) | |
| DISTRICT 8 | 13 | 0 | 14 | -1 | | |
| DISTRICT 9 | 29 | 0 | 25 | -1 | martin, | montana |
| DISTRICT 10 | 14 | 0 | 13 | 2 | vargas6/16 +2 | vargas 6/16, castro |
| DISTRICT 11 | 11 | 0 | 10 | | | maybee |
| **SUBTOTAL** | 250 | | 240 | 5 | | |
| **TOTAL** | 301 | 3 | 288 | 5 | | |

A--2 SCEPS 20 hours week each

02415

51902

## OFFICE OF AUDIT
## AUDIT STAFF

| REGION/OFFICE | CEILING 2002 | SCEP | ON BOARD 6/3/2002 | PENDING 6/3/2002 | PENDING STATUS | |
|---|---|---|---|---|---|---|
| | | | | | IN | OUT |
| **HEADQUARTERS/AUDIT** | | | | | | |
| AIG | 5 | | 4 | | | |
| FINANCIAL AUDIT | 16 | | 15 | | | |
| REASERCH & PLANNING | 12 | | 10 | | | |
| IS AUDIT | 19 | | 20 | -1 | | hsiao, 6/15 |
| HQ AUDIT | 9 | | 9 | | | |
| SUBTOTAL | 61 | | 58 | -1 | | |
| **FIELD AUDIT** | | | | | | |
| DISTRICT 1 | 19 | 0 | 18 | 1 | kralo, maluiski | king 6-3 |
| DISTRICT 2 | 24 | 0 | 23 | 1 | ZAUSEN | |
| DISTRICT 3 | 29 | 0 | 27 | | | |
| DISTRICT 4 | 41 | 2 | 40 | A | | persons |
| DISTRICT 5 | 30 | 0 | 30 | 4 | kulurani 6-16,MALANDRINO,houghton6-30, delgadedo, pole | |
| DISTRICT 6 | 28 | 0 | 28 | 2 | siddens, carter | |
| DISTRICT 7 | 13 | 1 | 13 | 1 | zanderis, gish (scep) | |
| DISTRICT 8 | 13 | 0 | 14 | -1 | | montana |
| DISTRICT 9 | 29 | 0 | 25 | 1 | brady, ng | vargas 6/16 |
| DISTRICT 10 | 14 | 0 | 12 | 3 | vargas6/16, mathew, sarmiento | |
| SUBTOTAL | 240 | 3 | 230 | 12 | | |
| TOTAL | 301 | 3 | 288 | 11 | | |

A--2 SCEPS 20 hours week each

02416

6302

# OFFICE OF AUDIT
## AUDIT STAFF

| REGION/OFFICE | CEILING 2002 | SCEP | ON BOARD 6/3/2002 | PENDING 6/3/2002 | PENDING STATUS IN | PENDING STATUS OUT |
|---|---|---|---|---|---|---|
| **HEADQUARTERS AUDIT** | | | | | | |
| AIG | 5 | | 4 | | | |
| FINANCIAL AUDIT | 16 | | 15 | | | |
| REASERCH & PLANNING | 12 | | 10 | | | |
| IS AUDIT | 19 | | 20 | -1 | | hsiao, 6/15 |
| HQ AUDIT | 9 | | 9 | | | |
| **SUBTOTAL** | 61 | | 58 | -1 | | king 6-3 |
| **FIELD AUDIT** | | | | | | |
| DISTRICT 1 | 19 | 0 | 18 | 1 | krailo, muluski | |
| DISTRICT 2 | 24 | 0 | 23 | 1 | ZAUSEN | |
| DISTRICT 3 | 29 | 0 | 27 | | | |
| DISTRICT 4 | 41 | 2 | 40 | A | A | persons |
| DISTRICT 5 | 30 | 0 | 30 | 4 | kukuman 6-16, MALANDRINO,houghton6-30, delgadedo, pote | |
| DISTRICT 6 | 28 | 0 | 28 | 2 | siddens, carter | |
| DISTRICT 7 | 13 | 1 | 13 | 1 | zanderis, gish (scep) | |
| DISTRICT 8 | 13 | 0 | 14 | -1 | | montana |
| DISTRICT 9 | 29 | 0 | 25 | 1 | brady, ng | |
| DISTRICT 10 | 14 | 0 | 12 | 3 | vargas6/16, mathew, sarmiento | vargas 6/16 |
| **SUBTOTAL** | 240 | 3 | 230 | 12 | | |
| **TOTAL** | 301 | 3 | 288 | 11 | | |

A--2 SCEPS 20 hours week each

Page 3

02417

63002

## OFFICE OF AUDIT
## AUDIT STAFF

| REGION/OFFICE | CEILING 2002 | SCEP | ON BOARD 6/30/2002 | PENDING 6/30/2002 | PENDING STATUS | |
|---|---|---|---|---|---|---|
| | | | | | IN | OUT |
| **HEADQUARTERS AUDIT** | | | | | | |
| AIG | 5 | | 4 | | | |
| FINANCIAL AUDIT | 16 | | 15 | | | |
| REASERCH & PLANNING | 13 | | 11 | | | |
| IS AUDIT | 18 | | 17 | | | |
| HQ AUDIT | 9 | | 9 | | | |
| SUBTOTAL | 61 | | 56 | 0 | | |
| **FIELD AUDIT** | | | | | | |
| DISTRICT 1 | 19 | 0 | 19 | | mutulski | |
| DISTRICT 2 | 24 | 0 | 23 | 1 | ZAUSEN | |
| DISTRICT 3 | 29 | 0 | 27 | | | |
| DISTRICT 4 | 41 | 2 | 39 | | A | |
| DISTRICT 5 | 30 | 0 | 31 | 3 | MALANDRINO, delgadedo, pole | |
| DISTRICT 6 | 28 | 0 | 28 | 2 | siddens, carter | |
| DISTRICT 7 | 13 | 1 | 15 | | | |
| DISTRICT 8 | 13 | 0 | 13 | | | |
| DISTRICT 9 | 29 | 0 | 24 | 1 | brady | |
| DISTRICT 10 | 14 | 0 | 15 | | | Blanchard 8/30 |
| SUBTOTAL | 240 | 0 | 234 | 7 | | |
| TOTAL | 301 | 3 | 290 | 7 | | |

A--2 SCEPS 20 hours week each

Page 4

71402

# OFFICE OF AUDIT
## AUDIT STAFF

| REGION/OFFICE | CEILING 2002 | SCEP | ON BOARD 7/14/2002 | PENDING 7/14/2002 | PENDING STATUS IN | OUT |
|---|---|---|---|---|---|---|
| **HEADQUARTERS AUDIT** | | | | | | |
| AIG | 5 | | 4 | | | |
| FINANCIAL AUDIT | 16 | | 15 | | | |
| REASERCH & PLANNING | 13 | | 11 | | | |
| IS AUDIT | 20 | | 17 | | | |
| HQ AUDIT | 9 | | 9 | | | |
| SUBTOTAL | 63 | | 56 | 0 | | |
| **FIELD AUDIT** | | | | | | |
| DISTRICT 1 | 19 | 0 | 19 | 0 | matulski | Blanchard 8/30 |
| DISTRICT 2 | 24 | 0 | 23 | 2 | ZAUSEN 8/12, yau | |
| DISTRICT 3 | 29 | 0 | 27 | | | |
| DISTRICT 4 | 41 | 1 | 39 | | | |
| DISTRICT 5 | 30 | 0 | 31 | 1 | mallandrino | |
| DISTRICT 6 | 28 | 0 | 29 | 1 | carter | |
| DISTRICT 7 | 13 | 1 | 15 | | | |
| DISTRICT 8 | 13 | 0 | 13 | | | |
| DISTRICT 9 | 29 | 0 | 25 | 0 | Ferm, lee, woltz | vaezazizi, will, williams-smith 8/11 |
| DISTRICT 10 | 14 | 0 | 15 | | | |
| SUBTOTAL | 240 | 2 | 236 | 4 | | |
| TOTAL | 303 | 2 | 292 | 4 | | |

02418

02419

72802

# OFFICE OF AUDIT
## AUDIT STAFF

| REGION/OFFICE | CEILING 2002 | SCEP | ON BOARD 7/28/2002 | PENDING 7/28/2002 | PENDING STATUS | |
|---|---|---|---|---|---|---|
| | | | | | IN | OUT |
| **HEADQUARTERS AUDIT** | | | | | | |
| AIG | 5 | | 4 | | | |
| FINANCIAL AUDIT | 16 | | 15 | -1 | | nelson |
| REASERCH & PLANNING | 13 | | 11 | | | |
| IS AUDIT | 20 | | 17 | | | |
| HQ AUDIT | 9 | | 9 | | | |
| **SUBTOTAL** | 63 | | 56 | -1 | | |
| **FIELD AUDIT** | | | | | | |
| DISTRICT 1 | 19 | 0 | 19 | 2 | mutulski,butler, mastorakis | Blanchard 8/30 |
| DISTRICT 2 | 24 | 0 | 23 | 2 | zausen,yau | |
| DISTRICT 3 | 29 | 0 | 27 | | | |
| DISTRICT 4 | 41 | 1 | 39 | 1 | espinosa | |
| DISTRICT 5 | 30 | 0 | 31 | 2 | saunders, orozco, torres 8/4 | espinoza |
| DISTRICT 6 | 28 | 0 | 28 | 1 | carter | |
| DISTRICT 7 | 13 | 1 | 15 | -1 | | noble9/30 |
| DISTRICT 8 | 13 | 0 | 13 | -1 | | stanford |
| DISTRICT 9 | 29 | 0 | 25 | 0 | Farm8/25, lee, woltz8/12 | vaeaza/zo, witt,smith-williams |
| DISTRICT 10 | 14 | 0 | 15 | | | |
| **SUBTOTAL** | 240 | 2 | 235 | 6 | | |
| **TOTAL** | 303 | 2 | 291 | 5 | | |

Page 6

02420

81202

## OFFICE OF AUDIT
## AUDIT STAFF

| REGION/OFFICE | CEILING 2002 | SCEP | ON BOARD 8/12/2002 | PENDING | PENDING STATUS IN | OUT |
|---|---|---|---|---|---|---|
| **HEADQUARTERS AUDIT** | | | | | | |
| AIG | 5 | | 4 | | | |
| FINANCIAL AUDIT | 16 | | 15 | -1 | | nelson |
| REASERCH & PLANNING | 13 | | 11 | | | |
| IS AUDIT | 20 | | 17 | | | |
| HQ AUDIT | 9 | | 9 | | | |
| **SUBTOTAL** | 63 | | 56 | -1 | | |
| **FIELD AUDIT** | | | | | | |
| DISTRICT 1 | 19 | 0 | 19 | 2 | mutulski, butler, maslorakis | Blanchard 8/30 |
| DISTRICT 2 | 24 | 0 | 24 | | | |
| DISTRICT 3 | 29 | 0 | 27 | | | |
| DISTRICT 4 | 41 | 1 | 38 | 1 | espinosa | |
| DISTRICT 5 | 30 | 0 | 34 | -1 | | espinoza |
| DISTRICT 6 | 28 | 0 | 28 | 1 | carter | |
| DISTRICT 7 | 13 | 1 | 15 | -1 | | noble9/30 |
| DISTRICT 8 | 13 | 0 | 13 | -1 | | stanford |
| DISTRICT 9 | 29 | 0 | 25 | 0 | Farm8/25, lee, | veezaza2, will, |
| DISTRICT 10 | 14 | 0 | 15 | 1 | | |
| **SUBTOTAL** | 240 | 2 | 238 | 1 | | |
| **TOTAL** | 303 | 2 | 294 | 0 | | |

# OFFICE OF AUDIT
## AUDIT STAFF

| REGION/OFFICE | CEILING 2002 | SCEP | ON BOARD 8/25/2002 | PENDING 8/25/2002 | PENDING STATUS | |
|---|---|---|---|---|---|---|
| | | | | | IN | OUT |
| **HEADQUARTERS AUDIT** | | | | | | |
| AIG | 5 | | | | | |
| FINANCIAL AUDIT | 16 | | 14 | -1 | | vianni |
| REASERCH & PLANNING | 13 | | 11 | 2 | decatur, vianni | |
| IS AUDIT | 20 | | 17 | | | |
| HQ AUDIT | 9 | | 9 | | | |
| **SUBTOTAL** | 63 | | 55 | 1 | | |
| **FIELD AUDIT** | | | | | | |
| DISTRICT 1 | 19 | 0 | 18 | 2 | butler, mastorakis | |
| DISTRICT 2 | 24 | 0 | 24 | | | |
| DISTRICT 3 | 29 | 0 | 27 | 0 | mills | panagiotino |
| DISTRICT 4 | 41 | 1 | 38 | 1 | espinosa | espinoza |
| DISTRICT 5 | 30 | 0 | 34 | 0 | bultigieg | |
| DISTRICT 6 | 28 | 0 | 29 | 1 | bucher | |
| DISTRICT 7 | 13 | 1 | 15 | 1 | wallace | noble8/30 |
| DISTRICT 8 | 13 | 0 | 13 | 2 | williams, vo, sharper-adams | stanford |
| DISTRICT 9 | 29 | 0 | 23 | 2 | Farris8/25, lee, | |
| DISTRICT 10 | 14 | 0 | 15 | | | |
| **SUBTOTAL** | 240 | 2 | 236 | 8 | | |
| **TOTAL** | 303 | 2 | 291 | 9 | | |

82502

9802

# OFFICE OF AUDIT
## AUDIT STAFF

| REGION/OFFICE | CEILING 2002 | SCEP | ON BOARD 9/8/2002 | PENDING | PENDING STATUS IN | PENDING STATUS OUT |
|---|---|---|---|---|---|---|
| **HEADQUARTERS AUDIT** | | | | | | |
| AIG | 5 | | 4 | | | vianni |
| FINANCIAL AUDIT | 16 | | 14 | -1 | | |
| REASERCH & PLANNING | 13 | | 12 | 1 | decatur, vianni | |
| IS AUDIT | 20 | | 17 | | | |
| HQ AUDIT | 9 | | 9 | | | |
| SUBTOTAL | 63 | | 56 | 0 | | |
| **FIELD AUDIT** | | | | | | |
| DISTRICT 1 | 19 | 0 | 18 | 2 | butler, mastorakis | |
| DISTRICT 2 | 24 | 0 | 24 | 0 | | paraplino |
| DISTRICT 3 | 29 | 0 | 27 | 0 | mills | sandiord |
| DISTRICT 4 | 41 | 1 | 38 | | espinosa | espinoza |
| DISTRICT 5 | 30 | 0 | 34 | 0 | butligieg | |
| DISTRICT 6 | 28 | 0 | 29 | 1 | bucher | |
| DISTRICT 7 | 13 | 1 | 15 | | wallace | noble9/30 |
| DISTRICT 8 | 13 | 0 | 13 | 2 | williams, vo, sharper-adams | |
| DISTRICT 9 | 29 | 0 | 22 | 2 | Farm825, lee, | stanford |
| DISTRICT 10 | 14 | 0 | 15 | | | |
| SUBTOTAL | 240 | 2 | 235 | 7 | | |
| TOTAL | 303 | 2 | 291 | 7 | | |

02422

02423

92202

# OFFICE OF AUDIT
## AUDIT STAFF

| REGION/OFFICE | CEILING 2002 | SCEP | ON BOARD 9/22/2002 | PENDING 9/22/2002 | PENDING STATUS | |
|---|---|---|---|---|---|---|
| | | | | | IN | OUT |
| **HEADQUARTERS AUDIT** | | | | | | |
| AIG | 5 | | 4 | | | |
| FINANCIAL AUDIT | 16 | | 13 | 1 | Llamas | |
| TECH ASST & OVERSIGHT | 13 | | 13 | | | |
| IS AUDIT | 20 | | 17 | 1 | hagan | |
| HQ AUDIT | 9 | | 9 | -1 | | white |
| SUBTOTAL | 63 | | 56 | 2 | | |
| **FIELD AUDIT** | | | | | | |
| DISTRICT 1 | 19 | 0 | 18 | 2 | butler, mastorakis | |
| DISTRICT 2 | 24 | 0 | 24 | | | |
| DISTRICT 3 | 29 | 0 | 27 | 0 | mills | |
| DISTRICT 4 | 41 | 1 | 37 | 4 | espinosa,Izquerdo, white, +1 | panaglino |
| DISTRICT 5 | 30 | 0 | 35 | -2 | espinosa, llamas | |
| DISTRICT 6 | 28 | 0 | 29 | 1 | bucher | |
| DISTRICT 7 | 13 | 1 | 15 | | wallace | |
| DISTRICT 8 | 13 | 0 | 13 | 2 | williams, vo, sharper-adams | noble9/30 |
| DISTRICT 9 | 29 | 0 | 22 | 2 | Farrell/25, lee, | stanford |
| DISTRICT 10 | 14 | 0 | 15 | | | |
| SUBTOTAL | 240 | | 235 | 9 | | |
| TOTAL | 303 | 2 | 291 | 11 | | |

Page 10

**ATTACHMENT H**

Page 1

1          UNITED STATES DISTRICT COURT

2          FOR THE DISTRICT OF COLUMBIA

3     - - - - - - - - - - - - - - -X

4     SAUNDRA G. ELION,            :

5              Plaintiff          :

6          v.                      : Case No. 05-0992(PLF)

7                                   :

8     ALPHONSO R. JACKSON,          :

9              Defendant           :

10    - - - - - - - - - - - - - - -X

11              DEPOSITION OF MICHAEL STEPHENS

12                   Washington, D.C.

13               Wednesday, July 19, 2006

14

15         Deposition of MICHAEL STEPHENS, called for

16    examination at 9:45 a.m., at the law offices of Robert

17    C. Seldon & Associates, P.C., 1319 F Street, N.W., Suite

18    305, Washington, D.C., before Gary S. Howard, a notary

19    public in and for the District of Columbia, when were

20    present on behalf of the respective parties:

21

22