*The U.S. Equal Employment Opportunity Commission*

# CHAPTER 3

# ALTERNATIVE DISPUTE RESOLUTION

I.  INTRODUCTION

Statutes enforced by EEOC and executive orders encourage the use of Alternative Dispute Resolution (ADR) in resolving employment disputes.

EEOC's revised regulations at 29 C.F.R. § 1614.102 (b)(2) require agencies to establish or make available an alternative dispute resolution program. The ADR program must be available during both the pre-complaint process and the formal complaint process. The Commission has developed an ADR Policy which sets forth core principles regarding the use of ADR. A copy of the EEOC's ADR Policy Statement is included as Appendix H to this Management Directive. EEOC regulations extend the counseling period where ADR is used. See § 1614.105 (f).

Agencies and complainants have realized many advantages from utilizing ADR. ADR offers the parties the opportunity for an early, informal resolution of disputes in a mutually satisfactory fashion. ADR usually costs less and uses fewer resources than do traditional administrative or adjudicative processes, particularly processes that include a hearing or litigation. Early resolution of disputes through ADR can make agency resources available for mission-related programs and activities. The agency can avoid costs such as court reporters and expert witnesses. In addition, employee morale can be enhanced when agency management is viewed as open-minded and cooperative in seeking to resolve disputes through ADR.

EEOC will review an agency's program and its ADR policies, upon request, for consistency with 29 C.F.R. Part 1614 and is available to provide guidance to assist agencies in developing their ADR programs. If you would like assistance in the development of an ADR program from the EEOC, please contact the Director of Special Services, Office of Federal Operations, at 202-663-4599 (TDD (202) 663-4593).

II.  DEVELOPING ADR PROGRAMS

A.  Program Design - Flexibility and Incorporating Core Principles

Agencies may be flexible in designing their ADR programs to fit their environment and workforce, provided the programs conform to the core principles set forth in EEOC's policy statement on ADR. Additionally, programs should be designed to provide the maximum opportunity for all parties to freely express their positions and interests in resolving disputes. Agency managers must be aware that they have a duty to cooperate in an ADR

process once the agency has determined that a matter is appropriate for ADR.

Agencies must build fairness into their programs. Fairness requires voluntariness, neutrality, confidentiality, and enforceability. In addition, an ADR program must be flexible, and include training and evaluation components. These "core principles" are derived from EEOC's ADR Policy Statement (located at Appendix H) and are discussed more fully in Section VII of this Chapter.

In designing an ADR program, the following factors should be considered.

1. Choosing Among ADR Techniques

While mediation is the most popular form of ADR currently being used in the federal sector, there are numerous other forms available for consideration (see Section VIII of this Chapter). Agencies should carefully consider the needs of their workforce when selecting among techniques and choose the technique or techniques that are most likely to result in the earliest successful resolution of work place disputes.

EEOC does not mandate the use of a particular ADR technique, e.g., mediation, in an agency's ADR program. The Commission does require that, regardless of the ADR technique(s) an agency selects, the method be used in a manner that is consistent with the core principles outlined in Section VII of this Chapter. Further, the ADR program must not diminish an individual's right to pursue his or her claim under the 1614 process should ADR not resolve the dispute. For example, an ADR program may not require an individual to waive his/her right to an investigation, a hearing, or to appeal the final decision to the EEOC.

2. Time Frames

An ADR program must be designed around the time frames of the EEO regulations. For example, section 1614.105(f) provides that where an agency has an established dispute resolution procedure and the aggrieved individual agrees to participate in the procedure, the pre-complaint processing period shall be ninety (90) days. This time frame must be met to be consistent with the regulation. If the dispute is not resolved in this time frame, the aggrieved must be advised of the right to file a formal complaint and that the Part 1614 process will continue. Similarly, if an individual enters into an ADR procedure after a formal complaint is filed, the time period for processing the complaint may be extended by agreement for not more than 90 days. If the dispute is not resolved, the complaint must be processed within the extended time period.

3. Representation of the Parties

Aggrieved individuals have the right to representation throughout the complaint process, including during any ADR process. While the purpose of ADR is to allow the parties to fashion their own resolution to a dispute, it is important that any agency dispute resolution procedure provide all parties the opportunity to bring a representative to the ADR forum if they desire to do so.

4. <u>Dealing with Non-EEO Issues</u>

Although agency EEO ADR programs are designed to address disputes arising under statutes enforced by the EEOC, the Commission has found that many work place disputes brought to the process often include non-EEO issues. In designing their ADR programs, agencies may provide sufficient latitude for the parties to raise and address both EEO and non-EEO issues (issues that do not fall under the jurisdiction of EEO laws, statutes and regulations) in the resolution of their disputes. However, if resolution of the matter is unsuccessful in ADR, non-EEO issues and issues not brought to the attention of the Counselor cannot be included in the formal complaint unless the issue is like or related to issues raised during EEO counseling.

Nothing said or done during attempts to resolve the complaint through ADR can be made the subject of an EEO complaint. Likewise, an agency decision not to engage in ADR, or not to make ADR available for a particular case, or an agency failure to provide a neutral, cannot be made the subject of an EEO complaint.

5. <u>Matters Inappropriate for ADR</u>

The Administrative Dispute Resolution Act of 1996 (ADRA) and the EEOC ADR Policy Statement recognize that there are instances in which ADR may not be appropriate or feasible. <u>See</u> 5 U.S.C. § 572(b). Agencies have discretion to determine whether a given dispute is appropriate for ADR. Agencies may decide on a case-by-case basis whether it is appropriate to offer ADR. Agencies may also limit ADR in other ways, such as geographically (if extensive travel would be required), or by issue. However, agencies may not decline to offer ADR to particular cases because of the bases involved (<u>i.e.</u>, race, color, religion, national origin, sex, age, disability, or retaliation).

6. <u>Collective Bargaining Agreements and the Privacy Act</u>

Agencies must be mindful of obligations they may have under collective bargaining agreements to discuss development of ADR programs with representatives of appropriate bargaining units. Agencies must also be mindful of the prohibitions on the disclosure of information about individuals imposed by the Privacy Act. All pre- and post-complaint information is contained in a system of records subject to the Act. Such information, including the fact that a particular person has sought

counseling or filed a complaint, cannot be disclosed to a union unless the complaining party elects union representation or gives his/her written consent.

B. Offering ADR During the Counseling Stage

Under § 1614.102(b)(2), agencies are required to establish or make available an alternative dispute resolution program including during the pre-complaint processing period. As mentioned in Section III of this Chapter, § 1614.105(b)(2) requires that the agency fully inform aggrieved persons of their right to choose between participation in an ADR program and the counseling activities provided for by paragraph C of this section. (See Chapter 2 of this Management Directive for additional guidance concerning the election between EEO Counseling and ADR.)

C. ADR After the Complaint is Filed

The EEOC encourages agencies to focus their ADR programs on resolving work place disputes as early in the process as possible. Agencies must design their ADR programs to allow the parties to pursue ADR techniques after an EEO complaint is filed or during or at the end of the investigation. Section 1614.108(b) states: "Agencies are encouraged to incorporate alternative dispute resolution techniques into their investigative efforts in order to promote early resolution of complaints."

D. ADR Throughout the Complaint Process

Unless the agency has determined that a particular case is inappropriate for ADR, the agency must offer ADR at all stages of the EEO process: counseling, after filing formally and prior to a hearing. Agencies are encouraged to design their ADR programs to make dispute resolution procedures available to the parties throughout the complaint process. The Commission also suggests that agencies actively encourage the parties, particularly management, to continue attempting to resolve disputes throughout the complaint process, whether through ADR or any other means of informal settlement.

ADR attempts may also be made by EEOC Administrative Judges prior to arranging a hearing. (See Chapter 7 in this Management Directive.) ADR techniques and neutrals may be employed at this point in the process as well. ADR may even be beneficial at the appellate stage of the administrative process. These attempts also must comport with the core principles set forth in this Chapter.

E. Explanation of Procedural and Substantive Alternatives

Agency ADR programs should be designed to ensure that parties are informed of all of the various steps in the EEO process before beginning the actual ADR proceeding. An informed choice is necessary to the success of the ADR

proceeding, but an additional value is that once parties choose ADR over other alternatives, they have made a commitment to its success.

The aggrieved individual has already received substantial information from an EEO Counselor about the administrative EEO process and about other appropriate statutory or regulatory forums, such as the Merit Systems Protection Board or a negotiated grievance process. Both parties need to know that litigation or further administrative adjudication generally costs more than ADR. Also, both parties should be informed that the ADR process is more flexible. In addition, the parties should know that the outcome in other forums will be decided not by the parties but by a third person, while in ADR the parties maintain considerable control over the process and decide their own outcome.

III.  PROVIDING INFORMATION

The information provided to aggrieved individuals at the counseling stage largely determines whether they will utilize the ADR process. Aggrieved individuals need information about all aspects of ADR in order to make an informed choice between ADR and the administrative process.

A.  Agencies Must Fully Inform the Employees About the Counseling Process and the ADR Program

Section 1614.105(b)(2), which covers pre-complaint processing, requires that the EEO Counselor advise the aggrieved person that s/he may choose between participation in the ADR program offered by the agency and the traditional EEO counseling procedures provided for in the regulation. Before the aggrieved person makes a choice between counseling and ADR, the Counselor must fully inform the person about the counseling process and the ADR program. (See Chapter 2 of this Management Directive for additional guidance concerning the election between EEO Counseling and ADR.) If the agency's ADR program allows aggrieved individuals to go directly into the ADR process without first meeting with the Counselor, the meeting with the agency's ADR contact person will serve as the meeting with the Counselor. The ninety (90) day pre-complaint processing period will begin to run from the first contact with the ADR contact person. The agency's ADR contact person must provide to the aggrieved individual the same information EEO Counselors are required to provide to the aggrieved individuals.

An ADR contact person who serves in lieu of an EEO counselor may not serve as a neutral in those cases where s/he has provided EEO counseling and must meet all of the training requirements of an EEO counselor and fully carry out the Counselor's roles and responsibilities. (See Chapter 2 of this Management Directive for guidance on the qualifications, roles, and responsibilities of an EEO Counselor.)

B.  Providing Information About the Agency ADR Program

1. The EEO Counselor should provide the aggrieved person with information about the agency ADR program, including but not limited to the following:

   a. A definition of the term "Alternative Dispute Resolution (ADR)" - the definitions in this Chapter can be used;

   b. An explanation of the stages in the EEO process at which ADR is available;

   c. A thorough description of the particular ADR technique(s) used in the agency's program;

   d. A thorough description of how the program is consistent with the ADR core principles in ensuring fairness (including the right to representation), which requires voluntariness, neutrality, confidentiality, and enforceability;

   e. An explanation of procedural and substantive alternatives, as described in this Chapter; and

   f. Information regarding all of the time frames involved in both the administrative process and the ADR process.

   g. Information about the agency's ADR program may be provided to the aggrieved person through discussions, memoranda, video presentations, booklets or pamphlets.

C. Informing the Employee about Filing Rights

At the time the aggrieved person chooses to participate in the agency's ADR program, the person shall have been advised by the Counselor of his or her rights and responsibilities in the EEO complaint process, as set forth in § 1614.105(b).

If the agency's ADR program allows aggrieved individuals to go directly into the ADR process without first meeting with the Counselor, the meeting with the agency's ADR contact person will serve as the meeting with the Counselor. The ninety (90) day pre-complaint processing period will begin to run from the first contact with the ADR contact person. The agency's ADR contact person must also advise the aggrieved of his or her rights and responsibilities in the EEO complaint process, as set forth in § 1614.105(b) as well as determine the issues and bases of the matter and matters affecting timeliness and jurisdiction.

D. The Role of the Counselor

When an individual elects to participate in the ADR process, the Counselor who advised the aggrieved of his/her rights and responsibilities is precluded from attempting to resolve the matter.

1. If ADR is Chosen

   The Counselor (or the ADR contact) of the aggrieved individual should provide the following information to the aggrieved person once ADR is chosen.

   a. Successful resolution

      The Counselor shall advise the aggrieved person that if the dispute is resolved during the ADR process, the terms of the agreement must be in writing and signed by both the aggrieved person and the agency. See § 1614.603.

   b. Unsuccessful Resolution

      The Counselor shall advise the aggrieved person that if the matter concludes without a resolution under the ADR program, or if the matter has not been resolved ninety (90) days from the contact with the EEO Counselor, the aggrieved person will receive a final interview and have the right to file a formal complaint.

      In the event there is no resolution, the agency must ensure that a Counselor's report is prepared and the aggrieved person is given a final interview and informed of the right to file a formal complaint. In addition to the usual items required by the report, with respect to ADR the report must indicate that ADR failed. No other information regarding the ADR session is to be provided.

      Nothing said or done during attempts to resolve the complaint through ADR, including the failure by the agency to provide a neutral, can be made the subject of an EEO complaint.

      The Counselor should have no further involvement in resolving the matter until he or she is advised of the outcome of the ADR process.

2. If ADR is not chosen

   The Counselor must advise the aggrieved person that if s/he does not choose to participate in the agency's ADR program, the dispute(s) about which he/she contacted the EEO Counselor will be handled through the agency's traditional EEO counseling procedures.

IV. **NEUTRALS**

The ADRA defines a neutral as "an individual who, with respect to an issue in controversy, functions specifically to aid the parties in resolving the controversy." 5 U.S.C. § 571(9). The Act further states that a neutral is a

permanent or temporary officer or employee of the Federal Government or any other individual who is acceptable to the parties to a dispute resolution proceeding. A neutral shall have no official, financial, or personal conflict of interest with respect to the issues in controversy, unless such interest is fully disclosed in writing to all parties and all parties agree that the neutral may serve.

5 U.S.C. § 573 (a).

a. Sources

The Commission, in its policy statement on ADR, provides that ADR proceedings are most successful where a neutral or impartial third party, with no vested interest in the outcome of a dispute, allows the parties themselves to attempt to resolve their dispute. An agency should also consider the aggrieved person's perception of the third party's impartiality in appointing a neutral for an ADR proceeding. In order to be effective, the participants in an ADR program must perceive the neutral as completely impartial. Therefore, agencies are strongly encouraged to go outside the agency in obtaining the services of a neutral. An external neutral provides the best assurance of impartiality and the greatest likelihood of a successful mediation. In the event that an agency uses one of its own employees as a neutral, it must assure the neutrality and impartiality of the neutral. If EEO Counselors are used as neutrals, the agency must assure that a Counselor must never serve as a neutral in the same matter in which he or she has served as a Counselor. The Alternative Dispute Resolution Act (ADRA), imposes certain requirements on neutrals which may not apply to EEO Counselors. Furthermore, agencies should also be aware that having EEO Counselors switching roles between performing traditional EEO counseling and performing in other ADR programs can be confusing both to complainants and Counselors as to what their role is in a particular case. To avoid this confusion, agencies must clearly communicate to the complainant the function being performed by the agency employee, whether EEO counseling or ADR. To the extent possible, agencies are encouraged to designate individuals as either EEO Counselors or ADR neutrals, and limit the switching of roles between the EEO and ADR programs.

An agency may use neutrals for its ADR program, subject to their qualifications, from the following sources:

1. Other federal agencies (through a federal neutral sharing program or other arrangement); or

2. Private organizations, private contractors, bar associations, or individual volunteers.

   EEOC discourages EEO Counselors from acting as neutrals because of the perception of bias in favor of the agency. Additionally, neutrals are often privy to confidential information, which may compromise their ability to serve as a Counselor. Therefore, EEOC recommends against

using Counselors as neutrals except as a last resort and only where the Counselor meets the qualifications required in this directive. Counselors may not serve as neutrals in a dispute in which they have provided counseling to the aggrieved individual. Additionally, investigators may not serve as a neutral in a case they are investigating. Likewise, neutrals should not serve as Counselors or investigators in cases in which they serve as neutrals.

With increasing frequency, Federal Executive Boards (FEB) throughout the nation are developing pools of neutrals who are available for federal agency EEO dispute resolution. Information about FEBs and other associations who may be able to provide neutrals can be obtained by contacting the ADR representative in one of EEOC's District Offices. EEOC recommends that agencies disclose their source of neutrals to the parties.

b. Qualifications

1. Training in ADR Theory and Techniques

Any person who serves as a neutral in an agency's ADR program must have professional training in whatever dispute resolution technique(s) the agency utilizes in its program. The Commission will accept as sufficient such training as is generally recognized in the dispute resolution profession. For example, the Interagency Program on Sharing Neutrals administered by the Department of Health and Human Services requires the following expertise: 1) at least 20 hours of basic mediation skills training; 2) at least three co-mediations with a qualified mediator or five independent mediations and positive evaluations from a qualified trainer/evaluator; and 3) at least two references from two qualified mediators or trainer/evaluators.

- Knowledge of EEO Law

Any person who serves as a neutral in an agency's ADR program must be familiar with the following EEO laws and areas:

a. The entire EEO process pursuant to 29 C.F.R. Part 1614, including time frames;

b. The Civil Service Reform Act and the statutes that EEOC enforces (including Title VII of the Civil Rights Act of 1964, as amended, the Rehabilitation Act of 1973, as amended, the Age Discrimination in Employment Act of 1967, as amended, and the Equal Pay Act of 1963, as amended);

c. The theories of discrimination (e.g. disparate treatment, adverse impact, harassment and reasonable accommodation); and

Case 1:05-cv-00992-PLF     Document 37-26     Filed 04/13/2007     Page 10 of 18

    d.  Remedies, including compensatory damages, costs and attorney's fees.

c.  <u>Role of the Neutral</u>

In any ADR proceeding conducted under this Directive, the neutral's duty to the parties is to be "neutral, honest, and to act in good faith." EEOC Policy Statement. The neutral must also act consistently with the ADRA and:

1.  Ensure that ADR proceedings are conducted consistent with EEO law and Part 1614 regulations, including time frames;

2.  Ensure that proceedings are fair, consistent with the core principles in Section VII of this Chapter, particularly providing the parties the opportunity to be represented by any person of his/her choosing throughout the proceeding;

3.  Ensure that an agency representative participating in the ADR proceeding has the authority and responsibility to negotiate in good faith and that a person with authority to approve or enter into a settlement agreement is accessible to the agency's representative;

4.  Ensure enforceability of any agreement between the parties, including preparation of the written settlement agreement if the parties reach resolution and ensuring that the agreement includes the signatures of the appropriate agency representative and aggrieved person;

5.  Ensure confidentiality, including destroying all written notes taken during the ADR proceeding or in preparation for the proceeding; and

6.  Ensure neutrality, including having no conflict of interest with respect to the proceeding (<u>e.g.</u>, material or financial interest in the outcome, personal friend or co-worker of a party, supervisory official over a party) unless such interest is fully disclosed in writing to all parties and all parties agree that the neutral may serve.

d.  <u>Promoting Trust</u>

Trust fosters the open and frank communication between the parties that is an essential factor in reaching a fair resolution of an EEO complaint. Once the individual has chosen ADR to attempt resolution, the ADR neutral can develop the parties' trust by:

1.  Providing full information about the ADR proceeding as soon as possible, including information on its impartiality, the relative merits of ADR as compared with the traditional form of complaint processing, and the confidentiality of the ADR process;

2.  Giving the parties the opportunity to request and obtain relevant information from one another, so that they have sufficient information to

make informed decisions; and

3.  Explaining the safeguards that are in place to protect parties from pressures to resolve the complaint (see Section VII A, below).

## V.  **RESOLUTIONS MUST BE IN WRITING**

If the agency and the aggrieved person agree to a resolution of the matter, EEOC regulations require that the terms of the resolution be reduced to writing and signed by both parties in order that the agency and the aggrieved person have the same understanding of the terms of the resolution. See § 1614.603. The written agreement must state clearly the terms of the resolution and contain the procedures available under § 1614.504 in the event that the agency fails to comply with the terms of the resolution. Written agreements must comply with EEOC's Enforcement Guidance on non-waivable employee rights under EEOC enforced statutes. Additionally, any written agreement settling a claim under the Age Discrimination in Employment Act (ADEA) must also comply with the requirements of the Older Workers Benefit Protection Act of 1990 (OWBPA) Pub. L. 101- 433 (1990), the ADEA, subsection (f), 29 U.S.C. § 626(f) and EEOC's regulations regarding Waiver of Rights and Claims Under the ADEA at 29 C.F.R. Part 1625. Neither the ADRA nor EEOC's core principles require the parties to agree that a settlement must be confidential.

The agency representative shall transmit a signed and dated copy of the resolution to the EEO Director. The EEO Director shall retain the copy for one year or until the EEO Director is certain that the agreement has been fully implemented, whichever is later.

## VI.  **OPERATION OF ADR PROGRAMS**

### A.  **Written Procedures**

The agency must establish written procedures detailing the operation of its ADR program. The written procedures should include, at a minimum, the following information:

1.  The type or types of ADR that the agency offers;

2.  The stages of the EEO process at which ADR is being made available, e.g. at the pre-complaint stage, post-complaint stage etc.;

3.  The time frames involved in both the administrative process and the ADR process;

4.  The source or sources of neutrals;

5.  Those matters where ADR is not available;

6.  Assurance to the aggrieved party that ADR is voluntary and that she or he may terminate the ADR procedure at any time and return to the EEO

process;

7. Assurance to the aggrieved party that its ADR program is fair and that she or he has the right to representation;

8. An assurance to the aggrieved party with respect to confidentiality, neutrality and enforceability;

9. An assurance that the agency will make accessible an individual with settlement authority and that no responsible management official or agency official directly involved in the case will serve as the person with settlement authority.

B. **Training Managers and Supervisors**

In order to encourage the successful operation of ADR throughout the agency, all managers and supervisors should receive ADR training, either through an agency-conducted program or through an external source such as another federal agency or a private contractor. The ADR training should include the following:

1. The ADR Act and its amendments, with emphasis on the federal government's interest in encouraging mutual resolution of disputes and the benefits associated with utilizing ADR;

2. The EEOC's regulations and Policy Guidance with respect to ADR: §§ 1614.102(b)(2), 1614.105(f), 1614.108(b), and 1614.603 (voluntary settlement attempts);

3. The operation of the ADR method or methods that the agency employs;

4. Exposure to other ADR methods, including interest-based mediation, if this method is not already in use by the agency; and

5. Drafting the settlement agreement, including the notice provision pursuant to § 1614.504 where the aggrieved party believes the agency failed to comply with the terms of the settlement agreement.

C. **Recordkeeping**

Pursuant to the EEOC's authority set forth in 29 C.F.R. § 1614.602(a) to collect Federal complaints processing data and pursuant to the agency's obligation to report EEO activity to the EEOC, the Commission requires agencies to maintain a record of ADR activity for annual reporting to the EEOC no later than October 31st of each year. This information will be provided to EEOC on Form 462.

VII. **ADR CORE PRINCIPLES**

Through use of ADR, it has been found that there are certain requirements that are

absolutely necessary for the successful development of any ADR program. These requirements are sometimes referred to as "core principles." These core principles are derived from EEOC's ADR Policy Statement, located at Appendix H.

A. **Fairness**

Any program developed and implemented by an agency must be fair to the participants, both in perception and reality. Fairness should be manifested throughout the ADR proceeding by, at a minimum: providing as much information about the ADR proceeding to the parties as soon as possible; providing the right to be represented throughout the ADR proceeding; and providing an opportunity to obtain legal or technical assistance during the proceeding to any party who is not represented. Fairness also requires the following elements:

1. Voluntariness

Parties must knowingly and voluntarily enter into an ADR proceeding. An ADR resolution can never be viewed as valid if it is involuntary. Nor can a dispute be actually and permanently resolved if the resolution is involuntary. Unless the parties have reached a resolution willingly and voluntarily, some dissatisfaction may survive after the ADR proceeding. Such dissatisfaction could lead to dissatisfaction with other aspects of the workplace, or even to charges that the resolution was coerced or reached under duress.

In addition, aggrieved parties should be assured that they are free to end the ADR process at any time, and that they retain the right to proceed with the administrative EEO process if they decide that they prefer that process to ADR and resolution has not been reached. Both parties should be reassured that no one can force a resolution on them, not agency management or EEO officials, and not the third party neutral. Finally, parties are more likely to approach a resolution voluntarily when they know of their right to representation at any time.

2. Neutrality

To be effective, an ADR proceeding must be impartial and must be independent of any control by either party, in both perception and reality. Using a neutral third party as a facilitator or mediator assures this impartiality. A neutral third party is one who has no stake in the outcome of the proceeding. For example, he or she might be an employee of another federal agency who knows none of the parties and whose type of work differs from that of the parties. Or he or she may be an employee within the same agency as long as he or she can remain neutral regarding the outcome of the proceeding. The agency must ensure at all times the independence and objectivity of the neutral.

3. Confidentiality

Confidentiality is essential to the success of all ADR proceedings. Congress recognized this fact by enhancing the confidentiality provisions contained in § 574 of ADRA, specifically exempting qualifying dispute resolution communications from disclosure under the Freedom of Information Act. Parties who know that their ADR statements and information are kept confidential will feel free to be frank and forthcoming during the proceeding, without fear that such information may later be used against them. To maintain that degree of confidentiality, there must be explicit limits placed on the dissemination of ADR information. For implementation and reporting purposes, the details of a resolution can be disseminated to specific offices with a need to have that information. As noted above in Section V, neither the ADRA nor EEOC's core principles require the parties to agree that a settlement must be confidential.

Confidentiality must be maintained by the parties, by any agency employees involved in the ADR proceeding and in the implementation of an ADR resolution, and by any neutral third party involved in the proceeding. The EEOC encourages agencies to issue clear, written policies protecting the confidentiality of what is said and done during an ADR proceeding.

4. Enforceability

Enforceability is a key principle upon which a successful ADR program depends. Section 1614.504 provides that: "Any settlement agreement knowingly and voluntarily agreed to by the parties, reached at any stage of the complaint process, shall be binding on both parties." The regulation sets forth specific procedures for enforcing such a settlement agreement. Agreements resolving claims of employment discrimination reached through ADR are enforceable through this procedure.

B. **Flexibility**

The ADR program must be flexible enough to respond to the variety of situations individual agencies face. There is not necessarily one ADR model which will work for all of an agency's programs or all of its offices within the same program. Because agencies have different missions and cultures, they have flexibility in designing their ADR programs. Agencies must also exercise flexibility in implementing the ADR program. This flexibility will allow agencies to adapt to changing circumstances that could not have been anticipated or predicted at the time the program was initially implemented.

C. **Training and Evaluation**

An ADR program, to be successful, will require that the agency provide appropriate training and education on ADR to its employees, managers and supervisors, neutrals and other persons protected under the applicable laws.

Case 1:05-cv-00992-PLF     Document 37-26     Filed 04/13/2007     Page 15 of 18

An evaluation component is essential to any ADR program and should be in place before an ADR program is implemented. The evaluation will assist in determining whether the ADR program has achieved its goals and will provide feedback on how the program might be made more efficient and achieve better results.

## /III.   ADR TECHNIQUES AND DEFINITIONS

As stated previously, § 1614.102(b)(2) requires that all agencies establish or make available an ADR program for the equal employment opportunity process. Numerous ADR techniques are available for use by agencies in their programs. All agencies should be familiar with the following terms and techniques utilized by ADR professionals.

### A.   Alternative Dispute Resolution

Alternative Dispute Resolution is a term used to describe a variety of approaches to resolving conflict rather than traditional adjudicatory methods or adversarial methods. Examples of traditional adjudicatory methods include litigation, hearings, and agency administrative processing and appeals.

### B.   Mediation

Mediation is presently the most popular form of ADR in use by agencies in employment related disputes. Mediation is the intervention in a dispute or negotiation of an acceptable, impartial and neutral third party, who has no decision-making authority. The objective of this intervention is to assist the parties to voluntarily reach an acceptable resolution of the issues in dispute.

A mediator, like a facilitator, makes primarily procedural suggestions regarding how parties can reach agreement. Occasionally, a mediator may suggest some substantive options as a means of encouraging the parties to expand the range of possible resolutions under consideration. A mediator often works with the parties individually, in caucuses, to explore acceptable resolution options or to develop proposals that might move the parties closer to resolution.

Mediators differ in their degree of directiveness or control in their assistance in disputing parties. Some mediators set the stage for bargaining, make minimal procedural suggestions, and intervene in the negotiations only to avoid or overcome a deadlock. Other mediators are much more involved in forging the details of a resolution. Regardless of how directive the mediator is, the mediator performs the role of catalyst that enables the parties to initiate progress toward their own resolution of issues in dispute.

### C.   Facilitation

Facilitation involves the use of techniques to improve the flow of information

in a meeting between parties to a dispute. The techniques may also be applied to decision-making meetings where a specific outcome is desired (e.g., resolution of a conflict or dispute). The term "facilitator" is often used interchangeably with the term "mediator," but a facilitator does not typically become as involved in the substantive issues as does a mediator. The facilitator focuses more on the process involved in resolving a matter.

The facilitator generally works with all of the participants at once and provides procedural directions as to how the group can efficiently move through the problem-solving steps of the meeting and arrive at the jointly agreed upon goal. The facilitator focuses on procedural assistance and remains impartial to the topics under discussion.

D.  **Fact Finding**

Fact finding is the use of an impartial expert (or group) selected by the parties, by the agency, or by an individual with the authority to appoint a fact finder, in order to determine what the "facts" are in a dispute. The fact finder may be authorized only to investigate or evaluate the matter presented and file a report establishing the facts in the matter. In some cases, he or she may be authorized to issue either a situation assessment or a specific procedural or substantive recommendation as to how a dispute might be resolved. If used as an ADR technique, the findings of fact must remain confidential in order to comply with the core principles mentioned above.

Fact finding used as an agency ADR technique is different from the many fact finding methods referred to in § 1614.108(b) that agencies may employ to investigate formal complaints in the administrative process. For example, oral or written communications which occur during an ADR proceeding such as fact finding (or some other ADR technique) are generally treated as confidential. 5 U.S.C. § 574. However, information which is developed during the investigation of a complaint through the use of fact finding methods mentioned in § 1614.108(b) is not treated as confidential.

E.  **Early Neutral Evaluation**

Early Neutral Evaluation uses a neutral or impartial third party to provide an objective evaluation, sometimes in writing, of the strengths and weaknesses of a case. Under this method, the parties will usually make informal presentations to the neutral party to highlight their respective cases or positions.

F.  **Ombuds**

Ombuds are individuals who rely on a number of techniques to resolve disputes. These techniques include counseling, mediating, conciliating, and fact finding. Usually, when an ombud receives a complaint, s/he interviews parties, reviews files, and makes recommendations to the disputants. Typically, ombuds do not impose solutions. The power of the ombud lies in

his/her ability to persuade the parties to accept his/her recommendations. Generally, an individual not accepting the proposed solution of the ombud is free to pursue a remedy in other forums for dispute resolution.

G. **Settlement Conferences**

Settlement Conferences may be conducted by a settlement judge (for example an EEOC Administrative Judge) or referee and attended by representatives for the opposing parties and/or the parties themselves in order to reach a mutually acceptable settlement of the disputed matter. Agencies are not precluded from having their own settlement conferences without an Administrative Judge provided the parties agree. Attendance is mandatory at a settlement conference ordered by an Administrative Judge. The failure of any party to comply with an order of an Administrative Judge may result in sanctions.

The role of a settlement judge is similar to that of a mediator in that s/he assists the parties procedurally in negotiating an agreement. Such judges may have much stronger authoritative roles than mediators, since they may provide the parties with specific substantive and legal information about what the disposition of the case might be if it were to go to court or hearing. They also provide the parties with possible settlement ranges for their consideration. In the event a settlement is not reached, the case is then processed by Administrative Judges other than the settlement judge. Because these conferences are not conducted by the Administrative Judge hearing the case on the merits, the traditional ex parte constraints are not applicable.

H. **Minitrials**

Minitrials involve a structured settlement process in which each side to a dispute presents abbreviated summaries of their case before the parties and/or their representatives who have authority to settle the dispute. The summaries contain explicit data about the legal bases and the merits of a case.

The process generally follows more relaxed rules for discovery and case presentation than might be found in a court or other administrative proceedings and usually the parties agree on specific limited periods of time for presentations and arguments.

I. **Peer Review**

Peer Review is a problem-solving process where an employee takes a dispute to a group or panel of fellow employees and managers for a decision. The decision is usually not binding on the employee, and s/he would be able to seek relief in traditional forums for dispute resolution if dissatisfied with the decision. The principal objective of peer review is to resolve disputes early before they become formal complaints or grievances.

Case 1:05-cv-00992-PLF     Document 37-26     Filed 04/13/2007     Page 18 of 18

Typically, the panel is made up of employees and managers who volunteer for this duty and who are trained in listening, questioning, and problem-solving skills as well as the specific policies and guidelines of the panel. A peer review panel may be a standing group of individuals who are available to address whatever disputes employees might bring to the panel at any given time. Other panels may be formed on an ad hoc basis through some selection process initiated by the employee, e.g., blind selection of a certain number of names from a pool of qualified employees and managers.

J.  **Combinations of Techniques**

Often techniques may be combined to provide advantageous aspects of more than one method. For example, if in a mediation the mediator finds that the parties are able to speak directly to each other in a productive way, the mediator may utilize the facilitator role and follow-up with the mediator role later. In some cases, fact finding may precede a facilitation or mediation session. Agencies are not limited to using only one method or technique in their ADR programs. They may find that using various methods in combination may also yield fruitful results and be very effective in reaching resolution.

Chapter 2 | Table of Content | Chapter 4

*This page was last modified on September 30, 2003.*

 Return to Home Page