*The U.S. Equal Employment Opportunity Commission*

# Appendix H EEO-MD-110

## EEOC NOTICE
## Number 915.002
## Date 7/17/95

1 . <u>SUBJECT:</u> Equal Employment Opportunity Commission's Alternative Dispute Resolution Policy Statement

2. <u>PURPOSE:</u> This policy statement sets out the Commission's policy on Alternative Dispute Resolution

3. <u>EFFECTIVE DATE</u>: Upon receipt

4. <u>EXPIRATION DATE</u>: As an exception to EEOC Order 205.001, Appendix 6, Attachment 4, a(5), this Notice will remain in effect until rescinded or superseded.

5. <u>ORIGINATOR:</u> Legal Services, Office of Legal Counsel

6. <u>INSTRUCTIONS:</u> File in Volume 11 of the Compliance Manual.

7. <u>SUBJECT MATTER.</u>

   I. **Introduction**

   The Equal Employment Opportunity Commission (EEOC) is firmly committed to using alternative methods for resolving disputes in all of its activities, where appropriate and feasible. Used properly in appropriate circumstances, alternative dispute resolution (ADR) can provide faster, less expensive and contentious, and more productive results in eliminating workplace discrimination, as well as in Commission operations.

   The use of ADR is fully consistent with EEOC's mission as a law enforcement agency. It is squarely based in the statutes creating and enforced by the Commission Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Equal Pay Act and the Americans with Disabilities Act. The use of ADR is also predicated on the Administrative Dispute Resolution Act (ADRA), pursuant to which this policy is being adopted, Executive Orders 12778 and 12871, and the National Performance Review. Finally, the Commission's 1995 ADR Task Force Report made a strong and persuasive case for the use of ADR programs.

   II. **Core Principles Governing Commission ADR Programs**

Any use of ADR under Commission auspices will be governed by certain core principles. Above all, any Commission ADR program must further the agency's mission. It must also be fair, which requires voluntariness, neutrality, confidentiality, and enforceability. Recognition of the differing circumstances that obtain in the Commission's District Offices suggests that ADR be flexible enough to respond to varied and changing priorities and caseloads. In addition, any EEOC ADR programs must have adequate training and evaluation components.

A. **Furthering the Commission's Mission**

   First and foremost, an effective ADR program must further the EEOC's dual mission: vigorously enforcing federal laws prohibiting employment discrimination and resolving employment disputes. ADR will complement current systems in operation by facilitating early resolution of disputes where agreement is possible, thereby freeing up resources for identifying, investigating, settling, conciliating or litigating other matters.[1] These improvements in our enforcement efforts should, in turn, enhance the Commission's credibility as a law enforcement agency, encourage victims to come forward, and make the process of filing a charge less daunting. However, as a law enforcement agency, the Commission will vigorously enforce the statutes over which it has jurisdiction and will not hesitate to seek appropriate legal remedies through litigation when warranted.[2]

B. **Fairness**

   Any ADR enterprise developed and implemented by the EEOC must be fair to the participants. both in perception and reality. Fairness should be manifested throughout all Commission ADR proceedings by incorporating each of the core principles identified in this policy as well as by providing as much information about the ADR proceeding to the parties as soon as possible. Fairness requires that the Commission provide the opportunity for assistance during the proceeding to any party who is not represented. Fairness also requires that any Commission-sponsored program include the following elements:

   1. Voluntariness

      ADR programs developed by the Commission will be voluntary for the parties because the unique importance of the laws against employment discrimination requires that a federal forum always be available to an aggrieved individual. The Commission believes that parties must knowingly, willingly and voluntarily enter into an ADR proceeding. Likewise, the parties have the right to voluntarily opt out of a proceeding at any point prior to resolution for any reason, including the exercise of their right to file a lawsuit in federal district court. In no circumstances will a party be coerced into accepting the other party's offer to resolve a dispute. If the parties reach an agreement, the parties will be allowed to settle as long as the proposed agreement is lawful, enforceable, and both parties are informed of their rights and remedies under the

applicable statutes.

2. Neutrality

   Commission ADR proceedings will rely on a neutral third party to facilitate resolution of the dispute. ADR proceedings are most successful where a neutral or impartial third party, with no vested interest in the outcome of a dispute, allows the parties themselves to attempt to resolve their dispute. Neutrality will help maintain the integrity and effectiveness of the ADR program.

   The facilitator's duty to the parties is to be neutral, honest, and to act in good faith. Those who act as neutrals under EEOC auspices should possess a thorough knowledge of EEO law, and must be trained in mediation theory and techniques.[(3)]

3. Confidentiality

   Maintaining confidentiality is an important component of any successful ADR program. Subject to the limited exceptions imposed by statute or regulation, confidentiality in any ADR proceeding must be maintained by the parties, EEOC employees who are involved in the ADR proceeding, and any outside neutral or other ADR staff. This will enable parties to ADR proceedings to be forthcoming and candid, without fear that frank statements may later be used against them. To accomplish this purpose, the Commission will be guided by the nondisclosure provisions of Title VII and the confidentiality provisions of ADRA which impose limitations on the disclosure of information. In order to encourage participation in a Commission sponsored ADR program, the Commission will include confidentiality provisions in all of its ADR programs or projects, and will notify the parties to the dispute of the protection offered by confidentiality provisions.

   In order to ensure confidentiality, those who serve as neutrals for the Commission should be precluded from performing any investigatory or enforcement function related to charges with which they may have have been involved. The dispute resolution process must be insulated from the investigative and compliance process.

4. Enforceability

   Any agreement reached during an ADR proceeding must be enforceable. An allegation that an ADR settlement agreement has been breached should be brought to the attention of the EEOC official responsible for that program function. The Commission will review and investigate the allegation and determine whether it will utilize its authority and resources to seek enforcement of the agreement.

C. **Flexibility**

The ADR program must be flexible enough to respond to the variety of challenges the Commission and its individual offices face. The Commission recognizes that there cannot be one ADR model which will work for all of its programs or all of its offices within the same program. Within the parameters set by the Commission, Commission staff should be able to adapt ADR techniques to fit specific program needs. Because offices operate in different cultures and milieus, and because the nature of the workload varies from office to office, Commission offices will need maximum flexibility in implementing an ADR program.

D. **Training and Evaluation**

Commission-sponsored ADR programs should include training and evaluation components. A successful ADR scheme requires that EEOC provide appropriate training and education on ADR to its own employees, the public, persons protected under the applicable laws, employers and neutrals. In addition, an evaluation component is essential to any ADR program in order to determine whether the program has achieved its goals, and how the program might be improved to be more efficient and achieve better results.

III. **CONCLUSION**

Through this Policy Statement, the Commission affirms its commitment to the use of ADR techniques throughout its programs, where appropriate and feasible, including charge processing, litigation, federal sector EEO complaint processing, internal EEO complaint processing, labor-management relations and contract administration.

---

1. These procedures will continue to be governed by current standards except as specifically discussed in this document.

2. The Commission remains cognizant that there are instances in which ADR may not be appropriate or feasible, such as in cases in which there is a need to establish policies or precedents, where resolution of a dispute would have a significant effect on non-parties, where a full public record is important, where the agency must maintain continuing jurisdiction over a matter, or where it would otherwise be inappropriate.

3. The Commission will accept as sufficient such training as is generally recognized in the dispute resolution profession.

---

*This page was last modified on November 8, 1999.*