1      **AFFIDAVIT**

2      Location: Washington, DC

3              I, James A. Heist, solemnly swear to the truth of the following statement,

4      which is in response to questions posed by Tondalaya Williams, Equal Employment

5      Opportunity (EEO) Investigator, Southwind, and provides information pertaining to

6      the formal complaint of discrimination, filed against the U.S. Department of

7      Housing and Urban Development on June 23, 2004, by Saundra Elion, Case No. IG-

8      04-04. The following claims have been accepted for investigation:

9      *Whether Ms Elion was subjected to discrimination and continuous harassment because of*
10     *her race (African-American), sex (female), age (56) and in reprisal, when the Deputy*
11     *Inspector General, Assistant Inspector General for Audit and the Deputy Assistant*
12     *Inspector General for Audit, Office of Inspector General (OIG), Office of Audit,*
13     *Washington, DC.*
14
15         1.  *Subjected her to a hostile work environment since December 2002 through April*
16             *2004.*
17
18         2.  *On April 21, 2004, reassigned her from the position of Director of the Headquarters*
19             *Audits Division of OIG to a non-supervisory position with significantly less*
20             *responsibility, career exposure and opportunity for advancement.*
21
22         3.  *On August 30, 2004, she learned that she was not considered for the position of the*
23             *Director, GS-15 Supervisory, Technical Oversight and Planning Division, OIG*
24             *Headquarters*
25
26
27     Q    Please state your full name.
28
29     A    James Alan Heist

30     Q    Please state your title and grade.

31     A    Assistant Inspector General for Audit, SES

32     Q    Please state the name of the agency for which you work, the organizational

33     unit to which you are assigned, and the address of your duty station.

34     A    HUD, OIG, Office of Audit, Washington, DC


Initials

Page 1 of 18

1    Q    How long have you held your current position?

2    A    3 years, 9 months

3    Q    Please state your race.

4    A    Caucasian

5    Q    Please state your gender.

6    A    male

7    Q    Please state your age (date of birth).

8    A    50 years old (date of birth June 8, 1954).

9    Q    Have you previously participated in the EEO process?  If so, when and in

10   what way?

11   A    Yes, I have in the past, been named as an alleged discriminating official and I

12   have been management's representative in ADR sessions.

13   Q    Were you aware Complainant had participated in the EEO process?  If so,

14   when and how did you become aware?

15   A    I don't recall the dates but I do recall the complainant previously had an

16   informal complaint that she dropped and did not pursue before it reached the

17   formal stage.  I became aware of the complaint that is the subject of this affidavit

18   shortly after it was filed as an informal complaint.  Although I do not specifically

19   recall, I believe that it was my supervisor, Mr. Michael Stephens who informed me.

20   Q    Please identify your first and second level supervisors by name and title.

21   A    1st level – Michael Stephens, Deputy Inspector General

22        2nd level – Kenneth Donohue, Inspector General

23   Q    What is your organizational relationship to Complainant?

24   A    I am the complainant's supervisor

Initials 

1. **1. Subjected to hostile work environment from December 2002 to April 2004**

2. Q Ms Elion contends she was subjected to a hostile work environment from

3. December 2002 to April 2004. Did she ever bring to your attention concerns of a

4. hostile work environment? If so, what were her concerns? What action did you take

5. in regards to her concerns?

6. A I do not remember or believe the complainant ever bringing to my attention

7. any concerns that she was being subjected to a hostile work environment.

8. Q To your knowledge, does the Agency have a policy regarding raising

9. concerns of harassment/hostile work environment? If so, what is your

10. understanding of that policy?

11. A The Department has policies relating to the EEO program and prohibitions

12. against harassment. Also, OIG maintains an ombudsman program to provide a

13. mechanism for employees to informally and confidentially address concerns.

14. Q Have all management personnel within your office received the appropriate

15. training in the policy?

16. A Training on sexual harassment was provided through on line training. In

17. addition, all managers received training at a managers' conference in May 2003.

18. Q Has the policy been communicated to all employees? If yes, how?

19. A See above. Also, information on the ombudsman program was

20. communicated through distribution of policy manual and Email announcements.

21. Please note that drafting and issuing OIG policy regarding HR matters is the

22. responsibility of OIG's Office of Management and Policy and that organization is in

23. a better position to respond to this question.

 Initials

1    Q    Ms. Elion contends the reorganization was used as a form of retaliation
2    against her. Please state specific reasons for the abolishment of Ms. Elion's former
3    office, the Headquarters Audits Division of OIG.

4    A    The rationale for my recommendation to the Deputy Inspector General to
5    disband the Headquarters Audits Division is set forth in a memorandum dated
6    April 20, 2004. (see Attachment 1)  In summary, it made business sense to disband
7    the Headquarters Audits Division of OIG because of workload and resource issues.

8    Q    Were the functions of the Headquarters Audits Division transitioned to
9    another office / division?  If so, where were they transitioned?

10   A    Yes. Responsibility for the Headquarters Audits Division's two ongoing
11   assignments was transferred to the Information Systems Audits Division. The
12   complainant retained responsibility for completing any remaining audit resolution
13   activities associated with reports issued by the Headquarters Audits Division.  As
14   necessary and as requested on a case by case basis, the complainant was provided
15   with staff support to assist her in carrying out this responsibility.

16   Q    Please provide the name of the individual(s) that assumed the overall
17   responsibility of the duties performed by Ms. Elion's former office.

18   A    No specific designations were necessary. The workload of the Headquarters
19   Audit Division was reactive in nature and driven by requests or complaints that
20   were assigned to the Office of Audit.  As future requests and complaints are
21   assigned to the Office of Audit, they will be assigned to a regional office or one of
22   the remaining headquarters divisions. It is possible that the type of assignments
23   that historically went to the Headquarters Audits Division will not even come to the

Initials _____

1    Office of Audit but will instead be routed to a newly created OIG inspection

2    function.

3    Q      Were other divisions/offices impacted by the reorganization? If so, please

4    provide the names of the offices and how they were impacted.

5    A      There has been minimal or no impact on the other organizations within the

6    Office of Audit, particularly as the other regional offices or headquarters divisions

7    already had staff with the qualifications and experience necessary to perform the

8    type of work that had been assigned to the Headquarters Audits Division. In other

9    words, the Headquarters Audit Division staff was not uniquely qualified to perform

10   the work.

11   Q      Please explain how the abolishment of Ms. Elion's office helped to improve

12   the organization.

13   A      At the time the Headquarters Audits Division was disbanded, the division

14   had three staff auditors, a supervisory GS-14 assistant director and a supervisory

15   GS-15 director, which resulted in a supervisor to staff ratio of 1 to 1.5. Such a ratio is

16   inefficient, particularly in light of government-wide emphasis on higher staff to

17   supervisor ratios and eliminating unnecessary layers of management. The action

18   allowed me to eliminate two supervisory positions, redistribute staff to a function

19   that was mission critical and statutorily mandated (i.e., the audit of HUD's financial

20   statements), and fill a critical senior auditor vacancy in the Technical Oversight and

21   Planning Division with an experienced GS-14.

22   Q      Was Ms. Elion's race a factor in reorganization/abolishment of her position?

23   A      No.

24   Q      Was her gender a factor?

Initials _M/f_

1   A    No.

2   Q    Was her age a factor?

3   A    No.

4   Q    Was the reorganization/abolishment of Ms. Elion's position an act of reprisal

5   for her filing an EEO complaint?

6   A    No.

7   Q    Ms. Elion contends that during the period June 2001 and October 2002, her

8   ability to hire replacement staff was hindered by a reduction in staffing and

9   reassignment of existing staff to 2-month details.  Ms. Elion also contends that,

10  during this same period, there was a nationwide recruitment campaign in place.

11  Was Ms. Elion hindered from hiring replacement staff during the period in

12  question? If so, what were the reasons?

13  A    During the period in question, Mr. Phelps, Deputy Assistant Inspector

14  General for Audit, was the complainant's supervisor and had direct responsibility

15  for overseeing all of the regions' and headquarters divisions' staff ceilings and

16  hiring. He can provide the details to answer this question as I had no involvement

17  in this issue.

18       With respect to detailing of staff to other offices, such details are not without

19  precedence and are generally done when the priority of the assignment warrants.

20  While the complainant does not specify the assignment, the only occasions I can

21  recall detailing the complainant's staff was to provide staffing for either a

22  legislatively required audit or a congressionally requested audit, both of which are

23  high priorities.

Initials 

1    Q      During the same period, were other divisions within OIG restricted in

2    hiring? If so, please provide the names of the divisions and explain how they were

3    similarly impacted. If not, why?

4    A      During the period in question, Mr. Phelps, Deputy Assistant Inspector

5    General for Audit was the supervisor for all of the Regional Inspectors General for

6    audit and headquarters division directors, and had direct responsibility for

7    overseeing all of the region's and headquarters divisions' staff ceilings and hiring

8    and I had no involvement. He can provide the details to answer this question.

9    Q      Was Ms. Elion's race a factor in not being allowed to hire replacement staff?

10   A      In my role as Mr. Phelps' supervisor, regarding his responsibility for

11   overseeing the complainant's hiring, I am not aware of anything that would suggest

12   that race was a factor in any of his hiring decisions, and thus, no.

13   Q      Was her gender a factor?

14   A      In my role as Mr. Phelps' supervisor, regarding his responsibility for

15   overseeing the complainant's hiring, I am not aware of anything that would suggest

16   that gender was a factor in any of his hiring decisions, and thus, no.

17   Q      Was her age a factor?

18   A      In my role as Mr. Phelps' supervisor, regarding his responsibility for

19   overseeing the complainant's hiring, I am not aware of anything that would suggest

20   that age was a factor in any of his hiring decisions, and thus, no.

21   Q      Was not being allowed to hire replacement staff an act of reprisal for her

22   filing an EEO complaint?

23   A      In my role as Mr. Phelps' supervisor, regarding his responsibility for

24   overseeing the complainant's hiring, I am not aware of anything that would suggest

Initials _____

1    that any of his hiring decisions were the result of reprisal for the complainant's filing

2    an EEO complaint. Also, I am advised by Mr. Phelps that the period in question was

3    prior to the complainant's filling an EEO complaint, and thus, no.

4    Q      Ms. Elion contends that although the Headquarters Audit Division ranked

5    4th, she did not receive recognition or any awards or bonuses for the

6    accomplishments of the Headquarters Audits Division under her leadership.  She

7    further states other managers received not only recognition but also monetary

8    awards.  Was Ms. Elion given awards or bonuses for the accomplishments of the

9    Headquarters Audits Division under her leadership?  If so, what type of award(s)

10   did she receive?  If not, please explain your reason(s) for not awarding Ms. Elion for

11   her accomplishments.

12   A      During the period in question, Mr. Phelps was the complainant's supervisor

13   and can respond to this issue while I had no involvement.

14   Q      Was Ms. Elion's race a factor in her not receiving awards and bonuses?

15   A      In my role as Mr. Phelps' supervisor, I am not aware of anything that would

16   suggest that race was a factor in any of his decisions regarding award

17   recommendations, and thus, no.

18   Q      Was her gender a factor?

19   A      In my role as Mr. Phelps' supervisor, I am not aware of anything that would

20   suggest that gender was a factor in any of his decisions regarding award

21   recommendations, and thus, no.

22   Q      Was her age a factor?

Initials 

1    A      In my role as Mr. Phelps' supervisor, I am not aware of anything that would
2    suggest that age was a factor in any of his decisions regarding award
3    recommendations, and thus, no.

4    Q      Was Ms. Elion's not receiving awards and bonuses an act of reprisal for her
5    filing an EEO complaint?

6    A      In my role as Mr. Phelps' supervisor, I am not aware of anything that would
7    suggest that any of his decisions regarding award recommendations were motivated
8    out of reprisal for the complainant's filing an EEO complaint, and thus, no.

9    Q      Ms. Elion contends that she was directed to take action against another Black
10   female employee (Donna Hawkins) for alleged alcohol and leave abuse when she
11   did not consider it appropriate. She contends this incident is a form of retaliation.
12   Was Ms. Elion directed to take disciplinary action against Ms. Hawkins? If so, what
13   action was she directed to take?

14   A      I did not direct the complainant to take any such action nor do I have any
15   knowledge of anyone else directing the complainant to take disciplinary action
16   against Ms. Hawkins for alleged alcohol and leave abuse.

17   Q      Did Ms. Elion inform you that she did not consider it appropriate to take
18   action against Ms. Hawkins? If so, what were her reasons for not wanting to take
19   action?

20   A      No.

21   Q      Was Ms. Elion's race a factor in directing her to take disciplinary action
22   against Ms. Hawkins?

23   A      n/a; no.

24   Q      Was her gender a factor?

Initials

1    A    n/a; no.

2    Q    Was her age a factor?

3    A    n/a; no.

4    Q    Was directing Ms. Elion's to take disciplinary action against Ms. Hawkins an

5    act of reprisal for her filing an EEO complaint?

6    A    n/a; no.

7    Q    Would you like to add anything else regarding this claim?

8    A    No.

9    **2.    Reassigned to non-supervisory position**

10   Q    Ms. Elion contends that on April 21, 2004, she was reassigned to the position

11   of Special Assistant, Office of Inspector General without supervisory responsibility.

12   Was Ms. Elion reassigned? If so, to what position?

13   A    Yes, the complainant was reassigned to the position of Special Assistant to

14   the Assistant Inspector General for Audit. The position is not supervisory.

15   Q    Please state the specific reason(s) for reassignment and whether the

16   reassignment was to a position without supervisory responsibility.

17   A    At the time the decision was made to disband the Headquarters Audits

18   Division, it was my desire to place all the Division employees into positions where

19   their grades would not be affected. The complainant's former position as Director,

20   Headquarters Audits Division was a GS-15 and there were no supervisory GS-15

21   vacancies in the Office of Audit. The reassignment was to a position without

22   supervisory responsibility.

 Initials

1   Q    Was Ms. Elion the only senior level manager reassigned? If not, please
2  provide the name(s) of the individuals who were reassigned and the reasons for the
3  reassignments.

4   A    Ms. Elion was the only GS-15 manager reassigned as a result of the
5  disbanding of the Headquarters Audits Division.

6   Q    Please describe the differences in the level and duties Ms. Elion performed
7  prior to the reassignment and in her new assignment.

8   A    The level of responsibility associated with the complainant's current position
9  as Special Assistant is comparable to that of her former position as Director,
10  Headquarters Audits Division, by virtue of the fact that both positions were at the
11  GS 15 grade level. The duties are different – see Attachment 2 for the position
12  description of the complainant's former position of Director, Headquarters Audits
13  Division, and Attachment 3 for the position description of the complainant's current
14  position of Special Assistant to the Assistant Inspector General for Audit.

15   Q    Was the reassignment an existing position within the OIG or created
16  specifically for Ms. Elion?

17   A    A Special Assistant position within the Office of Audit has been staffed on
18  two previous occasions that I am aware of. (In both instances a previous Assistant
19  Inspector General for Audit filled the position). The complainant was reassigned to
20  an existing Special Assistant position that had not been filled after the last
21  incumbent left the organization. The position was not created specifically for the
22  complainant.

Initials

1    Q    Please explain why Ms. Elion was not given a lateral reassignment (with

2    supervisory responsibility and a similar level of work) to another area of OIG or

3    within the agency.

4    A    This question, in part, is based on the incorrect premise that the complainant

5    was not laterally assigned. As noted previously, the level of responsibility associated

6    with the complainant's current position as Special Assistant is comparable to that of

7    her former position as Director, Headquarters Audits Division, by virtue of the fact

8    that both positions were at the GS-15 grade level (i.e., a lateral reassignment). As

9    noted previously, at the time the Headquarters Audits Division was disbanded,

10   there were no supervisory GS-15 vacancies in the Office of Audit.

11   Q    Was Ms. Elion's race a factor in her reassignment?

12   A    No.

13   Q    Was her gender a factor?

14   A    No.

15   Q    Was her age a factor?

16   A    No.

17   Q    Was Ms. Elion's reassignment an act of reprisal for her filing an EEO

18   complaint?

19   A    No.

20   Q    Would you like to add anything else regarding this claim?

21   A    Yes. Subsequent to the disbanding of the Headquarters Audits Division, two

22   supervisory GS-15 vacancies occurred in the Office of Audit: the Regional Inspector

23   General for Audit in Region 1 and the Assistant Director, Technical Oversight and

24   Planning Division in headquarters. The complainant did not apply for either

Initials 

Case 1:05-cv-00992-PLF Document 37-33 Filed 04/13/2007 Page 13 of 28

1     position. With respect to the Assistant Director, Technical Oversight and Planning

2     Division, I selected an African American female for the position. There were no

3     Minority or female applicants for the Region 1 Inspector General for Audit position

4     and I selected a Caucasian male.

5     **3.     Not given consideration for position of Director, Technical Oversight and**

6     **Planning Division.**

7     Q     Ms. Elion contends she was not given consideration for the position of

8     Director, Technical Oversight and Planning Division. Was Ms. Elion considered for

9     the position? If not, why?

10     A     The Director, Technical Oversight and Planning Division will become vacant

11     in January 2005 with the planned retirement of Stanley McLeod, the incumbent to

12     that position. Coincident with a decision to consolidate the Office of Audit's regions

13     7 (Kansas City) and 8 (Denver), I announced my intention to reassign Robert Gwin,

14     the current Regional Inspector General for Audit for Region 8, to the position of

15     Director, Technical Oversight and Planning Division, effective upon the incumbent's

16     retirement. This is to be a non-competitive placement action, made pursuant to the

17     authority in OIG Manual Chapter 1335, Merit Staffing Plan, Section 2-2, G.

18     I did consider whether it would be appropriate to reassign the complainant

19     to the position of Director, Technical Oversight and Planning Division, upon the

20     incumbent's retirement. Such a reassignment would not have been appropriate for a

21     number of reasons. The position of Director, Technical Oversight and Planning

22     Division, is an especially critical position within the Office of Audit. The director of

23     this division is responsible for overseeing the audit activities of all of the regional

24     offices as well as the other two headquarters divisions. This division also produces

Initials

Case 1:05-cv-00992-PLF Document 37-33 Filed 04/13/2007 Page 14 of 28

1     the Office of Audit's portion of the IG's Semiannual report to the Congress, prepares

2     testimony for the IG and provides comments on Departmental issuances, just to

3     name a few responsibilities. The position is extremely demanding and the Director,

4     Technical Oversight and Planning Division has to work under tight deadlines on a

5     daily basis. Moreover, as a peer of the regional and division audit managers (i.e., all

6     are GS-15 supervisory auditors), the Director, Technical Oversight and Planning

7     Division has to command the respect of those audit managers if he or she is to be

8     effective. In addition, the Director, Technical Oversight and Planning Division

9     directly supervises two other GS-15 supervisory auditors (Assistant Directors) and is

10     second level supervisor for a group of highly qualified GS-14 senior auditors.

11     In my judgment, the complainant does not possess the level of professional

12     competence that is necessary for this position. As Director, Headquarters Audits

13     Division, and previous to that as District Inspector General for Audit, Capital

14     District, both the Deputy Assistant Inspector General for Audit and I had concerns

15     with her management of both of those offices. On more than one occasion, staff

16     under the supervision of the complainant expressed concerns about the manner in

17     which the complainant managed those offices. Moreover, staff under her

18     supervision either left the organization or requested transfers to other OIG offices

19     because they no longer wanted to work under her supervision. I was concerned that

20     reassigning the complainant to the position of Director, Technical Oversight and

21     Planning Division would lead to similar results.

22     Another concern with the complainant's level of competence for the Director,

23     Technical Oversight and Planning Division position is her inability to consistently

24     manage the completion of work products in a timely manner. As noted above, the

Initials 

Case 1:05-cv-00992-PLF    Document 37-33    Filed 04/13/2007    Page 15 of 28

1    Director, Technical Oversight and Planning Division has to operate under tight

2    deadlines, and both the Deputy Assistant Inspector General for Audit and I have

3    had concerns with the complainant's ability to manage the completion of work

4    products in a timely manner.

5    Another consideration was the relative qualifications of Robert Gwin, the

6    individual I ultimately decided to reassign to the position of Director, Technical

7    Oversight and Planning Division. Mr. Gwin, in my judgment, commands a great

8    deal of respect from all levels of the organization including the Inspector General,

9    the Deputy Inspector General and his peer group of regional and headquarters audit

10    managers. He has served with distinction at HUD-OIG in positions in headquarters

11    and, for the past 6½ years, as Regional Inspector General for Audit in Region 8. He

12    was named Audit Manager of the Year for 2002, an award that is determined not by

13    me, but by the Inspector General based on the consensus recommendation of the

14    Deputy IG; the Assistant Inspectors General for Audit, Investigation, and

15    Management and Policy; and the IG Counsel. Moreover, Mr. Gwin is a Certified

16    Public Accountant, which is of added benefit to me because one of the headquarters

17    divisions that the Director, Technical Oversight and Planning Division oversees is

18    the Financial Audits Division, which is responsible for auditing HUD's financial

19    statements. The Director, Assistant Director and all senior auditors in the Financial

20    Audits Division are Certified Public Accountants.  Because Mr. Gwin is also a

21    Certified Public Accountant, he will have greater credibility in carrying out his role

22    as it relates to overseeing the Financial Audits Division.  Mr. McLeod, the outgoing

23    Director, Technical Oversight and Planning Division, is also a Certified Public

24    Accountant. It is my understanding that the complainant is not a Certified Public

Initials

1    Accountant, nor has she ever informed me that she is a Certified Public Accountant.

2    Further, I have been advised that the complainant's official personnel file shows no

3    evidence that she is a Certified Public Accountant.

4         Another advantage Mr. Gwin has demonstrated is his proven ability to

5    complete and manage the completion of work products in a timely manner. Prior to

6    his tenure as Regional Inspector General for Audit, Region 8, he was a senior auditor

7    in the Financial Audits Division where he had to meet statutory-based due dates for

8    completing his portion of the audit of HUD's financial statements.  As Regional

9    Inspector General for Audit, Region 8, he directed the completion of a nationwide

10   congressionally mandated audit in a timely manner. Finally, in managing Region 8

11   during fiscal year 2004, Region 8 exceeded the goal for issuing reports within the

12   OIG's 240 calendar day standard.

13   Q    If Ms. Elion was considered for the position, why was she not selected?

14   A    As noted above, Mr. Gwin was better suited for the position.

15   Q    What role did you play in the request or approval of the reassignment of

16   Robert Gwin to the referenced position?

17   A    With the Deputy IG's concurrence, I approved Mr. Gwin's reassignment to

18   be the Director, Technical Oversight and Planning Division.

19   Q    Was there a selection process? If so, what was the processed used?

20   A    As stated above, this is to be a non-competitive placement action, made

21   pursuant to the authority in OIG Manual Chapter 1335, Merit Staffing Plan, Section

22   2-2, G.

23   Q    What were the criteria used to determine the best-suited candidate for the

24   position?

Initials 

1    A    See above.

2    Q    Was Ms. Elion's race a factor in her not being selected for the position of

3    Director, Technical Oversight and Planning Division?

4    A    No.

5    Q    Was her gender a factor?

6    A    No.

7    Q    Was her age a factor?

8    A    No.

9    Q    Was Ms. Elion's reassignment an act of reprisal for her filing an EEO

10   complaint?

11   A    No.

12   Q    Would you like to add anything else regarding this claim?

13   A    Yes.    The complainant never expressed to me that she wished to be

14   considered for reassignment to the Director, Technical Oversight and Planning

15   Division position.

16   Q    Would you like to add anything else to your statement?

17   A    No.

18

19

Initials

1   I have read this statement consisting of 18 pages plus attachments, and I have made

2   all the necessary changes, additions or corrections, and I have signed or initialed

3   every page.

4        I hereby declare under penalty of perjury that the foregoing statement is true,

5   correct, and complete to the best of my knowledge and belief.

6   Signature: _James C. Hewt_

7   Date: _12/17/04_

8   Subscribed and sworn to before me this ____ day of _____ 2004.

9   _____

10  EEO Investigator, Southwind

11  Or

12  _____

13  Notary Public

14  My commission expires: _____

15

16

Witnessed: Agnes Matthews 12/17/04

Initials _HH_

**U.S. Department of Housing and Urban Development**
**Office of Inspector General**
451 7th St., S.W
Washington, D.C. 20410

April 20, 2004

MEMORANDUM FOR: Michael Stephens, Deputy Inspector General, G

FROM: James Heist, Assistant Inspector General for Audit, GA

SUBJECT: Proposal for Realignment of the Office of Audit

I am proposing to realign staff within Headquarters to best address our mission workload and our current and anticipated budget constraints. The realignment would involve disbanding the Headquarters Audits Division and moving staff to other mission critical functions within Headquarters, Office of Audit.

Roughly two years ago we made a decision to disband the Capital District and create the Headquarters Audits Division. That decision was made, in part, due to the level of work that was anticipated in program areas that were centralized in HUD Headquarters. The workload has not materialized to the extent anticipated and thus the need for a separate Headquarters Audits Division does not exist. Future workload can be assigned to one of the remaining Office of Audit divisions, a regional office, or the newly created inspection function, under the Deputy AIG for Management and Policy.

The budget constraints that we are now facing and will continue to face into the coming years are a stark reality of the problems all of government is facing. We are currently under a hiring freeze so I cannot hire more staff in the Financial Audits Division or the Technical Oversight and Planning Division to address staffing needs. Our current year budget has been reduced and we are searching for ways to absorb even greater cuts in FY 2005.

The Chief Financial Officers Act of 1990 placed a statutory responsibility on the Office of Inspector General. Recent changes to the statutory due date for the audit have forced us to begin what is almost a continuous financial audit process, throughout the year, here in Headquarters. The staffing required to perform this audit is such that during the few months prior to completion of the audit, the audit work that must be done in Headquarters is too much for the Financial Audit Division to complete without assistance. This work has been performed by detailing staff from our field offices, which has helped with staff development and provided staff with experience needed for CPA certification. However, there are travel costs associated with this and given our current budget situation, we need to minimize TDY travel as much as possible. I therefore propose to transfer the remaining three Headquarters Audits Division staff auditors to the Financial Audits Division.

2

We realigned the Technical Oversight and Planning Division in Headquarters to allow us to better monitor the field audit work to ensure timely and effective audit products. We increased the ceiling of that staff to 15, however, prior to the hiring freeze, we were unable to fill all the positions and currently the Division is two under ceiling. The workload is tremendous and it is very difficult for the current staff to keep up in a timely manner. I propose to move the current Assistant Director of the Headquarters Audits Division to a Desk Officer position in the Technical Oversight and Planning Division. The Assistant Director can be transferred to the Technical Oversight and Planning Division immediately.  I propose that the Division Director be immediately reassigned as a Special Assistant in the Office of Audit.

We have discussed this matter with our Human Resources Division and this realignment can be accomplished without anyone's grade being affected.

The Division has only two ongoing assignments. These are audits of HUD purchase cards and travel cards. I propose transferring the supervision of these assignments and reporting responsibilities to the Information Systems Audit Division. This transfer is logical since much of the work on these audits has involved the use of CAATS techniques in analyzing HUD and credit card transaction databases. Moreover, the Information Systems Audit Division performed the previous audit of HUD purchase cards. As Special Assistant in the Office of Audit, the current Headquarters Audit Division Director will be available, if necessary, to assist in the orderly completion of these ongoing assignments. We expect the ongoing assignments to be completed in July or August. As the three staff auditors are freed up, they will begin reporting to the Financial Audits Division at that time. This timeframe coincides with when they will be needed to work on the FY 2004 financial statement audit.

If you approve of this proposal I will move forward with implementation.

_Michael P Stephens_
_____                    _____
APPROVE                                        DISAPPROVE
     4/20/04

## INTRODUCTION

The Inspector General heads an independent organization responsible for audit, investigation, fraud control, and designated security services related to all Department of Housing and Urban Development (HUD) programs and operations. The Inspector General provides leadership and coordination and recommends policies for activities designated to promote economy, efficiency, and effectiveness in the administration of programs and operations, as well as to prevent and detect fraud and abuse in such operations.

## DUTIES

Serves as the Director of the Headquarters Audit Division in the Office of Audit. In accomplishing the Division audit plan, the Director reports to the Deputy Assistant Inspector General for Audit or the Assistant Inspector General for Audit, and is responsible for managing, organizing, directing, staffing, and controlling all work in the Division and for effective and efficient use of resources consistent with OIG policy and directives and in accordance with generally accepted government auditing standards.

## RESPONSIBILITIES

**1. Audit Operations.** Responsible for conducting day-to-day audit operations and reviews of Headquarters activities. This responsibility covers the full range of duties involved in the audit process: Planning, executing, reporting, and liaison:

    **a. Planning.** Has overall responsibility for the Division's audit planning.

        **(1)** Directs the preparation of audit suggestions from audit staff and program officials.

        **(2)** Develops the Division's audit program giving consideration to:

            -Headquarters plan, goals, and objectives.

            -Required audit coverage.

            -Requests received from program staff.

            -Program guidance provided by Headquarters.

        **(3)** Maintains a Division audit plan that is balanced with staff capabilities and considers OIG guidance and priorities.

        **(4)** Develops solutions to accommodate program changes during the year, especially priority requests.

(5) Periodically evaluates the Division's audit plan and identifies actions required to bring schedule in balance with staff and funding capabilities.

**b. Program Execution.** Responsible for the day-to-day execution of the Division's audit program including providing directions, making audit assignments, ensuring work meets standards, and resolving complex technical problems.

(1) Develops a balanced auditor staffing plan giving consideration to audit complexities and individual auditor development needs.

(2) Participates in high level entrance and exit conferences.

(3) Approves nationwide audit guides and coordinates with AIGA, Deputy AIGA, and Research and Planning Director.

(4) Selectively visits audit sites giving priority to nationwide audits and highly complex, short timeframe and/or sensitive single location audits.

(5) As the Division's technical audit authority, resolves complex technical audit questions or issues.

(6) Approves requests for increases in audit staff days.

(7) Approves findings and ensures appropriate coordination.

(8) Periodically evaluates technical audit supervision (quantity and quality) being applied to ongoing audits and resolves any conflicts impacting the amount of supervision required by standards.

(9) Monitors subordinate auditors to make sure clear and effective lines of communication are in place.

(10) Evaluates statistical and other data pertaining to Division audit operations and identifies any areas requiring immediate attention, e.g., a trend of increasing number of elapsed days on ongoing audits.

**c. Audit Reports.** Responsible for the overall quality of audit reports produced by the Division including adherence to standards.

(1) Evaluates final audit reports including reported monetary benefits and makes final quality check for technical sufficiency, with special attention to auditee nonconcurrences. Signs report/report package.

Case 1:05-cv-00992-PLF     Document 37-33     Filed 04/13/2007     Page 23 of 28

(2) Approves draft audit reports for submission to Deputy AIGA and Research and Planning Director.

**d. Liaison/Coordination.** Accomplishes liaison and coordination responsibilities:

(1) Maintains sound relationships with auditees and program officials through continuing liaison visits and briefings.

(2) Pursues implementation of and adherence to the Single Audit Act through coordination with program officials and non-Federal auditors.

(3) Maintains coordination with audit, investigation, and professional organizations that are located within the HUD Headquarters. Is a member and participates in local governmental or professional organizations such as:

-Intergovernmental Audit Forum.

-Association of Government Accountants.

-AICPA and State CPA Societies.

-Institute of Internal Auditors.

**e. Advanced Techniques.** Is the Division's focal point on advanced audit techniques. Also makes sure new or improved techniques are identified, provided to Headquarters, and publicized within the Division.

**2. Division Management Responsibilities.** Provides leadership, technical expertise, and staff development in order to balance audit production with professional development of the audit staff. The Director manages the assigned staff and provides day-to-day direction in planning and assigning work, and establishing priorities and deadlines giving consideration to the relative difficulty of the work and the capabilities of the staff. In addition, the Director accomplishes, participates and/or provides resources for:

**a.** Preparing/reviewing appraisals and counseling staff. Makes recommendations for appropriate awards or other recognition.

**b.** Approving all recommendations for promotions and awards

**c.** Rating appraisals and approving individual development plans for Division staff.

**d.** Administering adverse personnel actions and disciplinary actions.

**e.** Periodically evaluating the Division's EEO/Affirmative Action programs.

**f.** Monitoring and controlling the Division's budget.

g. Evaluating the Division's auditor training needs, participates in the development of the training program of instruction.

g. Developing/directing the development of material and/or serving as an instructor at auditor schools.

h. Making presentations to organizations or schools and to professional organizations.

i. Managing an effective audit follow-up system.

j. Managing an accurate and timely administrative reporting/record keeping system.

# AUDITOR (SPECIAL ASSISTANT)
## GS-0511-15

## I. Introduction

This position is located in the Office of Inspector General, Office of Audit, Washington, DC.  The incumbent serves as Special Assistant to the Assistant Inspector General for Audit (AIGA) and the Deputy Assistant Inspector General for Audit (DAIGA).  As a senior auditor, the incumbent provides technical expertise in a wide variety of responsible and complex assignments covering a broad range of Departmental programs and activities.

## II. Duties and Responsibilities

Under the direction of the AIGA/DAIGA, the auditor plans and conducts a variety of responsible and complex assignments covering Departmental programs.  Assignments are highly sensitive and complex and the incumbent must remain current on audit professional standards, policies, and practices and OIG policies and procedures in order to perform the duties of the position.  In addition, the incumbent carries out special activities which differ from traditional OIG work.

Serves as principal advisor to the AIGA/DAIGA on all matters relating to the Office of Audit's compliance to the Government Performance and Results Act of 1996 (GPRA).  This includes developing an action plan to help monitor and improve the office's performance management cycle.  The incumbent assists headquarters and field staff to set performance standards, accumulates and compiles the results of performance measures and assists in meeting the GPRA reporting requirements.

Serves as principal advisor to the AIGA/DAIGA on all staff recruiting issues.  Represents the OIG with colleges and universities in matters related to recruiting.  Also, collaborates with national organizations in an effort to positively effect the recruiting efforts of the OIG.

Identifies and coordinates outreach activities in order to foster cooperative, informative, and mutually beneficial relationships with agencies and organizations relating to the accomplishment of HUD-OIG's mission.

Serves as troubleshooter and problem solver which requires defining the problem, researching and developing factual information and recommending options or alternatives for solutions or correction of problems.

Provides liaison with Congressional staff, other OIGs and agency personnel (GAO, PCIE, etc.) and professional organizations (e.g. AGA, AICPA, IIA, etc.) in various audit matters for the AIGA/DAIGA, meanwhile exercising sensitivity, discretion, tact, and diplomacy, since policy matters are often involved and confidentiality must be maintained.

Prepares in collaboration with the AIGA/DAIGA, speeches, presentations,  position papers, reports of studies, etc., and conducts special studies to give a basis for reports and papers.

Assists in the review of existing and proposed legislation and regulations and evaluates impact on OIG's ability to perform its audit responsibilities and the effective and efficient utilization of OIG resources as required by the Inspector General Act.

Accompanies and assists the AIGA/DAIGA in meetings to keep fully aware of the AIGA/DAIGA's plans, proposals, commitments, and viewpoints.  Participates in staff conferences called by the AIGA/DAIGA and contributes to the program discussion and developments.

Assembles and coordinates material for use at meetings and prepares reports to the AIGA/DAIGA on subjects in which the incumbent believes the AIGA/DAIGA should be informed, both of an inter-agency and intra-

PD# 00G503

agency nature or arranges for the preparation of such reports by others.

Performs a variety of high-level special projects and assignments involving matters of policy for the AIGA/DAIGA. Such duties encompass the responsibility for developing plans and regulations and obtaining required approvals within and outside the OIG.

Provides audit services to all management levels within the Department, including special reviews at the request of the AIGA/DAIGA, Inspector General and Congress.

Promotes compliance to EEO objectives in diversity in the workforce by assisting OIG management in their recruiting, hiring, and retention efforts. Fosters liaison with professional and ethnic organizations to support the OIG's recruitment strategy for a diverse workforce.

Performs other duties as assigned.

## III.  Factors

### 1.  Knowledge Required by the Position

Professional knowledge of auditing principles, concepts, and techniques that will allow the incumbent to serve as an expert on the interpretation and application of auditing theory and methodology, as applied in a complex environment.

Expert knowledge of auditing or evaluation concepts and principles defined in the "Government Auditing Standards" issued by the Comptroller General of the United States.

Ability to plan, coordinate, and direct complex special projects.

Effective oral communication skill for the purpose of serving as an expert on the interpretation and application of auditing theory and methodology, as applied in a complex environment.

Written communication skill to evaluate final reports and ensuring technical sufficiency.

Knowledge of personnel management policies relative to EEO, employee relations, recruitment, hiring, selection and retention of staff.

Ability to interact with others at all levels.

Ability to provide technical guidance and leadership to a staff of professionals during special assignment.

### 2.  Supervision and Guidance Received

Incumbent is supervised by the Assistant Inspector General for Audit, who is in consultation with the Deputy Assistant Inspector General for Audit or higher level manager who defines policy and assigns priorities and projects. Incumbent is expected to plan and direct analytical functions and auditing studies independently, and to make professional determinations required. Incumbent is expected to assume responsibility for defining and carrying out research and analysis projects. The incumbent's work is evaluated for adequacy and policy implications covering such matters that effect the advice and influence on overall Department and HUD/OIG operations.

### 3.  Guidelines

Guidelines consist of broad agency policy statements and basic legislation which require extensive interpretation. The incumbent uses judgment and ingenuity in interpreting the intent of conflicting guidelines or program objectives. The incumbent is recognized as a technical expert in the field of auditing with

PD# 00G503

responsibility for assisting the AIGA/DAIGA with the development of policies or revisions of new programs and legislative intent, as well as the implementation of standards and guidelines used by other auditors or functional areas crossing Department lines.

## 4. Complexity

The work requires resolving extremely complex and unyielding problems of vital importance to the Department and HUD/OIG where there are conflicting demands from such conditions as economic interest, public interest, constitutional protections, or equivalent concerns. The incumbent is involved in problem solving and extensive research and analysis that result in recommendations having a Department-wide, Government-wide, or Nationwide impact.

Assignments are also characterized by the completion of highly complex special studies or surveys of programs, projects, or program implementation in which available guidance or precedents are significantly lacking and from which new approaches and techniques will evolve. The incumbent is expected to have expertise in all aspects of audit operations for the purpose of advising the AIGA/DAIGA on general administrative matters affecting the audit operations of the Office of Inspector General.

Furthermore, the incumbent's assignments involve a variety of research and/or analytical duties such as fact finding, review and analysis of pertinent documents, conducting research with both electronic and traditional tools, and preparing written documentation. Incumbent is responsible for the collection, assembly and maintenance of computer files and databases. Each assignment requires the incumbent to select the most effective and efficient tools appropriate for the task in terms of data available, difficulty in obtaining data, and time restraints.

## 5. Scope and Effect

Since the IG Act is involved in the review of legislation, regulations, and policy issues, Congress is placing greater reliance on stop gap funding measures and implementing more program changes through the appropriation process. These types of actions have created a heavy volume of new or changed regulations and directives. The incumbent is involved in problem solving and extensive research and analysis that result in recommendations having a Department-wide, Government-wide, or Nationwide impact. Assignments are characterized by the completion of highly complex special studies or surveys of programs, projects or program implementation in which available guidelines or presidents are significantly lacking and from which new approaches and techniques will evolve. The incumbent is expected to have expertise in all aspects of audit operations for the purpose of advising the AIGA/DAIGA on administrative matters affecting the audit operations of the Office of the Inspector General. Incumbent's written reports, summaries and analysis will generally be provided in draft form for review, with a final product being prepared after feedback.

## 6. Personal Contacts

A high degree of tact, diplomacy, and confidentiality are key attributes in performing the duties of the position. Contacts are with senior managers and employees working in a variety of program and functional areas within the agency, including agency top management. The incumbent represents the OIG in dealing with Congress, high-ranking officials in other Federal agencies, U.S. Attorney's Offices, PCIE, GAO and state and local government officials. In addition to HUD personnel and other government organizations, contacts are with persons outside the government such as contractors, members of the general public, consultants, attorneys, representatives of large industries, and national professional organizations. The incumbent may also represent the AIGA/DAIGA on committees, workshops, seminars, task forces, etc., both within and outside the agency.

## 7. Purpose of Contacts

The purpose of contacts is to obtain or to provide information relating to the OIG plans, policies, procedures,

01/06/2005  09:44    2024012488          HQ AUDIT DU                    PAGE  29
Case 1:05-cv-00992-PLF    Document 37-33    Filed 04/13/2007    Page 28 of 28

PD# 00G503

and practices. In addition, contact must be maintained for the purpose of keeping the AIGA/DAIGA apprised of matters relative to audit initiatives and administrative matters. Contacts take place either in person, over the telephone, through computer medium or written correspondence. In addition, personal contacts will involve policy matters, exchanges of information, development of new programs to meet special needs and similar matters, and negotiating satisfactory resolution of divergent interests on highly sensitive/controversial audit results.

## 8. Physical Demand

The work is sedentary, however, there is occasional travel on an extended basis to distant locations.

## 9. Work Environment

This position usually operates in an office setting; however, the work requires, on a nationwide basis, research and analysis of audit operations, plans, policies, and procedures.

4