# REPORT OF INVESTIGATION

# OF THE COMPLAINT OF DISCRIMINATION

# FILED BY

# SAUNDRA ELION

# IG-04-04



---

**NOTICE OF RESTRICTED USAGE**

*Access and usage of the EEO complaint file is RESTRICTED by both the Freedom of Information Act and the Privacy Act to: (1) the complainant (and his or her representative), and (2) government officials who must have access to the file to discharge their OFFICIAL duties. The file and its contents must be safeguarded. Willful violation of these requirements is subject to criminal penalties [5 U.S.C. 552a(1)].*

---

EEO Complaint in HUD

| | | |
|---|---|---|
| 1. Name<br>Saundra G. Elion | 2. SSN<br>[redacted] | Case No. (For HUD Use Only)<br>IG-04-0 |
| 3. Mailing Address<br>7237 Devereux Ct<br>Alexandria, VA 22315 | 4. Home Phone [redacted]<br>5. Work Phone 202-708-1342 | 6. Are You Now Working for Federal Government?<br>☒ Yes ☐ No |
| 6. Position Title<br>Special Asst | 7. Grade & Series<br>GS-15, 511 | |
| 9. Office Where You Believe Discrimination Occurred (Include Division, Office, City, State, and ZIP)<br>Office of the Inspector General Headquarters<br>Washington, DC 20410 | 10. Name, Title and Organizational Unit of Person(s) Who Took the Action(s) You Allege Was Discriminatory (e.g., Mary Smith, Asst Dir of Housing)<br>Michael Stephens, Deputy IG<br>James Heist, Asst IG for Audit<br>Michael Phelps, Deputy Asst IG fo | |
| 11. Name and Address of Agency Where You Work.<br>OIG - Office of Audit<br>451 7th St SW<br>Washington, DC | 12. Date Notice of Right to File Complaint Received<br>June 23, 2004 | |
| 13. I designate this person to be my representative.<br>a. Name & Title<br>Robert C Seldon, Esq. | b. Address<br>1319 F St. NW<br>Suite 305<br>Washington, D.C. 20004 | c. Home Phone<br><br>d. Work Phone<br>202-955-6968 |
| 14. Type of Discrimination Alleged<br>☒ Race (Specify): African American<br>☐ Color (Specify):<br>☐ Religion (Specify):<br>☐ National Origin (Specify):<br>☒ Sex (Specify): Female<br>☒ Age (Specify): 56<br>☐ Handicap (Specify):<br>☒ Reprisal (Specify): prior Administrative complaint | | 15. Date each Alleged Act of Discrimination Took Place<br>Mid 2001 through April 2 |

16. Explain the specific actions or situation that resulted in your allegation(s) that you were treated differently than other employees...

See attachment

| 17. I have discussed the issues in Section 16 with an EEO counselor<br>☐ Yes Date of initial contact: 5/4/04<br>Date of final interview: 5/13/04 | 18. Name of EEO Counselor<br>Florine Williams |
|---|---|

19. Corrective Action Sought

See attachment

RECEIVED JUL 6 2004

| 20. Signature of Complainant<br>Saundra G Elion | 21. Date of Complaint<br>7/6/04 |
|---|---|

PAGE 2 OF 6

I, Saundra G. Elion, am filing a formal complaint of discrimination based on my race (African American), my sex (female), and/or my age (56), and retaliation due to my prior use of the administrative complaints process (complaint filed December 10, 2002). My purpose in filing this complaint is to contest my reassignment, the on-going hostile work environment to which I have been subjected, and other material and adverse changes in my employment with the Office of Inspector General (OIG).

Until the most recent act of discrimination that prompted this complaint, I was the Director of the Headquarters Audits Division of OIG. On April 21, 2004, I was reassigned to a previously non-existent position and stripped of my supervisory duties as part of a precipitous and unnecessary reorganization of the division. My Assistant Director, Donna Hawkins, also an African American female, had filed an earlier EEO complaint against the OIG and was also reassigned and treated in this same manner. Ms. Hawkins and I were the only African-American female managers in the Headquarters Office of Audit, and we were the only members of the Office of Audit adversely affected by the reorganization.

The agency officials in my immediate chain of command who are responsible for the discrimination and retaliation against me are Michael Stephens (Deputy Inspector General), James Heist (Assistant Inspector General for Audit), and Michael Phelps (Deputy Assistant Inspector General for Audit). These same officials were involved in the actions underlying my earlier complaint of discrimination and its unsuccessful resolution.

My earlier complaint was based on the diminution of my duties and responsibilities, dilution of my staff resources, and undermining of my professional authority. I was hopeful that it would be resolved in an informal and private session with my management led by Mr. Stephens in January of 2003. However, within six weeks of that session, my working environment returned to its previous state. The abolishment of my Division and reassignment to a nonsupervisory position has completed the process of undermining my career by placing me in a job with significantly less responsibility, career exposure, and opportunity for advancement, in an unnecessary reorganization that abolished my office even though we ranked 4th overall out of 13 audit offices in achieving performance goals in FY 2003.

### Background

This statement contains a summary of the discrimination and retaliation to which I have been subjected. I will elaborate upon in greater detail as the formal complaints process moves forward.

### Staffing

By way of background, in June of 1999, I accepted the position with HUD OIG as the District Inspector General for Audit (GS-15) of the Capital District. My assigned area of responsibility included audits for all HUD programs and funds awarded to entities within the Washington, DC metropolitan area, as well as Headquarters programs. When I first took over the Capital District, it was understaffed and unproductive. By June of the following year, it had exceeded its authorized staffing ceiling of 14 and had produced 4 audit reports.

*Saundra G. Elion*

The reinvigoration of my office was undermined with the appointment of Mr. Heist to the position of Assistant Inspector General for Audit in mid-2001 and Mr. Stephens to Deputy Inspector General in early 2002. They restricted my ability to fill vacant positions. In fact, I was the only office not allowed to hire any auditors during a period when the Office of Audit was under its authorized ceiling and there was a vigorous nationwide recruitment effort underway throughout the OIG. I even had staff reassigned to other divisions and Mr. Phelps refused to allow me to hire an Assistant for over a year.

Specifically, between June 2001 and October 2002, eight auditors left the division and only one was replaced. Mr. Phelps cancelled the two job announcements (in October 2001 and January 2002) to replace 2 Assistants, one transferred to another region and the other retired. In June 2002, Mr. Phelps arbitrarily reduced the division's ceiling from 14 to 9. Furthermore, the division's lack of staff was exacerbated in June 2003 when Mr. Heist sent 2 of the 5 staff auditors on a 2-month detail to assist another region conduct an audit of a Headquarters activity. Then in August 2003, Mr. Phelps transferred the senior most auditor out of the division.

These inequities in staffing resources can be fully appreciated by noting that the Headquarters Audits Division, one of four headquarters divisions, was managed by an African American female. The other three headquarters divisions were all managed by white males. And of the 10 regional offices, only one was managed by an African American.

<u>Diminution of Authority and Lack of Recognition for Accomplishments</u>

OIG management, and in this respect Mr. Phelps was the most active, repeatedly diminished my authority by implementing managerial procedures never imposed on any of the white male directors. His efforts including having subordinate auditors and other managers at my level review the work of my division against more stringent standards in an attempt to discredit my ability to manage. In one instance, Mr. Phelps insisted that I follow the instructions of a GS-13 auditor for writing a report. Mr. Phelps and Mr. Heist also met individually with Headquarters Audits Division staff members subordinate to me and took action based on information conveyed during those meetings without input from me.

Although the Headquarters Audits Division ranked 4th by the standards approved by Mr. Stephens, Mr. Heist, and Mr. Phelps, I did not receive any recognition or any awards or bonuses for our accomplishments. All other managers received not only recognition but also monetary awards.

Additionally, Mr. Phelps and Mr. Heist all but directed me to take disciplinary action against employees that I did not consider appropriate. In one instance, Mr. Heist suggested (purportedly at the request of the Inspector General) that I counsel my secretary about her possible "alcohol abuse," even though there was no reason to believe that she was abusing alcohol. In another instance, Mr. Phelps advised me that my secretary was a leave abuser and should be put on leave restrictions. At his insistence, I researched her leave usage and learned that she had needed time to cope with the deaths of her spouse, his twin brother, a co-worker, and her mother. I felt that verbal counseling was the most action that was called for. Mr. Phelps admonished me for not taking his advice and directed me to put her on leave restriction.

7/6/2004                                                                                               Page 2 of 4

## Harassment, Retaliation, And Interference With The Complaints Process

I was represented by counsel in my earlier administrative complaint. At my counsel's recommendation, I requested Alternative Dispute Resolution ("ADR") rather than an investigation at the informal stage. Mr. Stephens responded through official channels that the OIG shared my interest in mediation and that he was prepared to participate.

Given Mr. Stephens' seniority, I was initially hopeful that ADR would result in a prompt resolution of my complaint. But Mr. Stephens conditioned his participation on my agreeing to attend mediation without an attorney. I participated in the ADR in January 2003, but with misgivings which unfortunately turned out to be well-founded. Because I did not have an attorney present, there was no written agreement produced at the end of mediation, and no enforceable commitment by OIG management to take corrective action.

By the summer of 2003, it became clear to me that the OIG was not going to give the Headquarters Audits Division a clear mandate, restore its depleted staff, and respect my supervisory authority as had been promised in ADR.

That fall, my Assistant, Donna Hawkins, filed an EEO complaint of discrimination based on race. In December 2003, Mr. Stephens directed me to accompany Ms. Hawkins to a meeting with him. His purpose was to solicit information about Ms. Hawkins' EEO complaint against the OIG. She would not answer his inquiries outside the presence of her attorney.

In early April 2004, an employee who had complained to Mr. Phelps 6 months earlier about Ms Hawkins' management of an assignment tendered his 2-week notification of resignation. I immediately notified Mr. Phelps of the employee's proposed resignation and Mr. Phelps told me that "he can leave today…he doesn't have to wait."

Three days later, Mr. Stephens called me to his office and, with Mr. Phelps present, questioned me in an aggressive manner about Ms. Hawkins' treatment of the staff and whether they "liked" her. During the 45-minute meeting, Mr. Stephens raised his voice and pointed his finger at me, seemingly because I would not provide negative information about Ms. Hawkins' management. Mr. Stephens abruptly ended the meeting by stating that he would reassign the employee who had tendered his resignation in order to dissuade him from resigning and did so without further consultation with me. Mr. Stephens also announced that he intended to appoint an ombudsman to interview my staff and explore the supposed "morale" problem on my staff, without discussing the need for doing so or the impact on my staff with me.

Before the month ended, Mr. Stephens approved the reorganization which abolished the Headquarters Audits Division as well as the reassignment of myself and Ms. Hawkins to previously non-existent, non-supervisory positions.

*Saundra G. Elion*

### Remedies

By way of remedies, I seek an enforceable written agreement which: a.) restores the supervisory and other duties removed from me; b.) returns me to a managerial position consistent with my grade, experience, and background; c.) ensures that the discriminatory, hostile, and retaliatory actions against me are ceased; and d.) establishes mandatory EEO counseling and training for managers who have discriminated and retaliated against me. I also seek an award of compensatory damages and the attorneys fees and costs I incurred in the pursuit of both of my administrative complaints.

*Saundra J. Elion*
Saundra G. Elion
July 6, 2004