UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - -X

SAUNDRA G. ELION,                :

        Plaintiff        :

      v.                         :

                    :

ALPHONSO R. JACKSON,             :

        Defendant        :

- - - - - - - - - - - - - - -X

DEPOSITION OF AUSTIN GROOM

Washington, D.C.

Tuesday, April 18, 2006

Deposition of AUSTIN GROOM, called for examination at 3:00 p.m., at the law offices of Robert C. Seldon & Associates, P.C., 1319 F Street, N.W., Suite 305, Washington, D.C., before Gary S. Howard, a notary public in and for the District of Columbia, when were present on behalf of the respective parties:

APPEARANCES:

On behalf of the Plaintiff:

ROBERT C. SELDON, Esq.

1  the answer, you need to give it. If you think you

2  know it or have reason to know it, you need to give

3  it.

4        The only place you draw the line is at a

5  guess or speculation.

6        I use some of the following examples that

7  are helpful in figuring this out.

8        If I say to you, Mr. Groom, how many

9  people are there in this room, you can look around

10  and count and know that there are six.

11        If I say to you, Mr. Groom, what's the

12  weather like outside, you can say, well, I can't

13  see outside, but it was a clear, mild day in early

14  spring and I assume it still is.

15        And if I put a document in front of you

16  that you recognize because you recognize the

17  person's signature, or the form that it's in, or

18  anything, you should say, yes, I recognize this as

19  standard HUD form blank.

20        But if I said to you, Mr. Groom, how many

21  cars are there parked in front of the building, you

22  should say, that would be a guess or speculation,

1    A    Can you repeat that again?

2    Q    Sure. Is there anyone who hold that job

3    now?  And it's special assistant to Mr. Phelps?

4         MR. TRUONG: Objection. Speculation.

5         BY MR. SELDON:

6    Q    If you know.

7    A    I can only assume, at this point in time.

8

9         Like I said, after I left the IG in 2002,

10   I never kept in total contact with people. And I

11   know that there was a number of positions --I know

12   at the time when I left the position back in 2000,

13   Sandy was then selected for the job.

14   Q    No, I'm going forward -- as special

15   assistant to Mr. Phelps.

16   A    I didn't really keep in contact with what

17   was going on.

18   Q    Okay. And you don't know now -- do you

19   know now?

20   A    No, I wouldn't know now.

21   Q    Okay. You were -- is it district

22   inspector general for the audit of the capital

efad6148-1812-40e2-8f97-4f6b96415ed6

1    district?

2        A    At that time, that's what it was called.

3    There were district inspector generals. I think

4    that they're titled different now, but at that

5    time, it was.

6        Q    Okay. '96 to 2000, I take it. Right?

7        A    I think that's correct.

8        Q    How is it that you came to leave that

9    position?

10       A    The district inspector general position?

11       Q    Yes.

12       A    I was reassigned to work with Mike

13   Phelps.

14       Q    Did you solicit that reassignment?

15       A    No, I didn't.

16       Q    Was it involuntary?  Was it directed,

17   rather?

18            I'm sorry.

19       A    It was directed. It was a reassignment,

20   direct reassignment by Cathy Inkling.

21       Q    Who was who?

22       A    Who was the assistant inspector general

Page 16

1    for audit. It was Mike Phelps' immediate

2    supervisor.

3        Q    You know what I forgot to put on the

4    record?

5            Your race is African-American, I take it.

6        A    It is.

7        Q    And who do you know was involved with

8    in making the decision to reassign you?

9        A    I think Mike participated in it. To what

10   level -- but, again, it was Cathy Inkling -- Pat

11   Inkling?

12       Q    Cathy Kulick.

13       A    Cathy Kulick Inkling, who actually called

14   me and actually particularly made the reassignment.

15           MR. TRUONG: Mike?  Is that Mike Phelps?

16           THE WITNESS:  Mike Phelps.

17           MR. TRUONG: Thank you.

18           BY MR. SELDON:

19       Q    And at the time before your reassignment,

20   was Mr. Phelps your supervisor in any way?

21       A    No. Most of the district inspector

22   generals for audit reported to Cathy directly.

efad6148-1812-40e2-8f97-4f6b96415ed6

1    Q    At the time of your reassignment, what

2    reason -- or after that, what reason or reasons

3    were given to you for reassigning you?

4    A    At that time, Cathy thought that my

5    management skills were lacking in the particular

6    position, and thought it was in the best interest

7    to move me into the headquarters unit.

8    Q    Did you believe that that was correct?

9    A    At that time, no.

10    Q    Do you believe it now?

11    A    No, at that time, no.

12    Q    Sorry?

13    A    No.

14    Q    Did you have a belief about whether

15    discrimination or retaliation was involved in that

16    decision to reassign you?

17    A    Not in Cathy's decision.

18    Q    Okay. Any other aspect of it -- Phelps'

19    role or anybody's?

20    A    No. At that time, it was just a

21    disagreement in philosophies on management.

22    Q    Okay. And then, from 2000 to '02, you

efad6148-1812-40e2-8f97-4f6b96415ed6

1    worked as Mr. Phelps' special assistant, I take it.

2        A    That's correct.

3        Q    What was your working relationship -- and

4    I take it he was your immediate supervisor.

5        A    He was my immediate supervisor.

6        Q    And would you have a second-level

7    supervisor?

8        A    No. It was Mike. And then the second

9    level was Jim Heist that Mike reported to.

10            He replaced Cathy Inkling.

11       Q    Okay. And before that, Mr. Heist was or

12   was not in your supervisory chain?

13       A    Not before then. We were peers.

14       Q    Okay. What were your recurrent duties and

15   responsibilities and job functions as special

16   assistant to Mr. Phelps?

17       A    If I can remember, basically, Mike

18   oversaw a lot of special projects for the various

19   regional directors.

20            And one was performance measurements.

21       Q    Okay.

22       A    And that was basically my job of

efad6148-1812-40e2-8f97-4f6b96415ed6

Page 22

1    what you're doing.

2              MR. TRUONG: Well, hang on for a second.

3    Just let me finish my objection and then you can

4    say whatever you want to say.

5              I intend to instruct the Witness not to

6    answer pursuant to Judge Kaye's oral order of

7    yesterday, April 17th.

8              With that in mind, I would like for you

9    to rephrase the question, and if I  think it is

10   outside the scope of the issues that we talked with

11   Judge Kaye yesterday, then I'll allow the Witness

12   to answer.

13             So go ahead and rephrase your question.

14             BY MR. SELDON:

15        Q    Was your removal proposed from the

16   federal service, Mr. Groom?

17             MR. TRUONG: Go ahead and answer the

18   question.

19             THE WITNESS:  Yes.

20             BY MR. SELDON:

21        Q    When was that?

22        A    Without speculation, it's either late

1    January or February. I'm not particular. But it's

2    in that period.

3        Q    Of what?

4        A    Of 2002.

5        Q    Were you ever removed from the federal

6    service?

7        A    Yes, I was.

8        Q    Approximately when was that?

9        A    I think that was -- again, I think the

10    proposal was in January. The removal was in

11    February.

12        Q    Okay. To your knowledge, who proposed

13    your removal from the federal service?

14        A    Mike Phelps.

15        Q    Was it on performance grounds?

16        A    Correct.

17        Q    Is it correct that you took an appeal to

18    the Merit Systems Protection Board?

19        A    Correct.

20        Q    Did your appeal also include a claim of

21    discrimination or retaliation?

22        A    Not at that time.

efad6148-1812-40e2-8f97-4f6b96415ed6

Page 28

1    issuance of the removal letter, to your

2    recollection?

3        A    I think it was Jim Heist. I think once he

4    made the proposal, Jim Heist actually issued a

5    final removal.

6        Q    Did you believe -- I'm not sure if you

7    testified to this or not. I'm sorry -- that

8    discrimination or retaliation figured either in the

9    removal proposal or the removal decision?

10       A    Discrimination, yes.  The retaliation, I

11   can't -- I'd be speculating.

12       Q    Okay. What makes you say discrimination?

13   And by this, I mean racial discrimination.

14       A    Racial discrimination.

15       Q    What makes you say that?

16       A    I know it was three -- race --

17            MR. TRUONG: Age.

18            THE WITNESS:  Age. I don't know what the

19   third one was.

20            (Pause.)

21            MR. SELDON:  I've got race and color

22   here, sex and age.

1          MR. TRUONG: Why don't you introduce

2     the --

3          MR. SELDON:  I will in one minute. Let's

4     leave out the bases for it for a minute.

5          BY MR. SELDON:

6     Q     Did you believe that racial

7     discrimination was involved in the decision to

8     remove you, or the decision to propose your

9     removal?

10    A     Not in the proposal for removal. In the

11    action prior to that.

12    Q     In the decision to remove you.

13    A     Yes.

14    Q     You believed there was racial

15    discrimination involved.

16    A     No, not in the actual final decision of

17    the proposal or removal. But prior to that, the

18    events that led to that.

19    Q     And the events, were they the subject of

20    your original EEO complaint?

21    A     That's correct.

22    Q     Okay. So now -- let's just go off the

efad6148-1812-40e2-8f97-4f6b96415ed6

1    part of your complaint or just were in the same

2    file that was given to us.

3            So what we're going to do is we're going

4    to go through some of these and figure out exactly

5    where we are.

6            This first page, 1666 of Groom Exhibit

7    1, do you recognize this document?

8        A    No, I don't.

9        Q    Okay. Now we've got the second page,

10   which is 1670.  This looks to be the cover sheet of

11   a formal complaint of discrimination filed by you.

12           Is that what it is?

13       A    That's correct.

14       Q    Okay. And then what were the subjects of

15   this complaint, in your own words?

16       A    Why it occurred?

17       Q    Yes. What do you think was going on?

18       A    At the time, again, like I said, I

19   thought that, based on Mike Phelps' decision, the

20   supervisor, it might have been related to some

21   biases and prejudices of an African-American

22   person.

Page 34

1          And again, at age, at that time, 46.

2      Q    Okay. And so we look in box 16 -- first

3  of all, let's go through the date on this.

4          If we look in 17, you made the initial

5  contact with an EEO counselor on May 4th of '01.

6          Does that conform with your recollection?

7      A    That's correct.

8      Q    And then you filed this formal complaint

9  on June 20th, '01.  Is that right?

10      A    That's correct.

11      Q    And here, you named, at least at that

12  time, as the officials you believed discriminatory,

13  is Mr. Heist.

14          Right?

15      A    That's correct.

16      Q    Mr. Phelps.

17          MR. TRUONG: Box no. 10?

18          MR. SELDON:  Good.

19          BY MR. SELDON:

20      Q    Mr. Phelps, right?

21      A    That's right.

22      Q    Ms. Carroll?

IG 01 01 – AUSTIN GROOM

You alleged that you were discriminated against because of your race (African American), age (46), color (Black) and sex (male), when the Department rated your performance as Unacceptable on the annual appraisal you received on May 1, 2001.

Rmo Phelps



4-18-06

EXHIBIT NO. 1
GROOM
MGB REPORTING

EEO Complaint Discrimination

| | | |
|---|---|---|
| 1. Name<br>Austin B. Groom, Jr. | 2. SSN | Case No. (For HUD Use Only) |

| | | |
|---|---|---|
| 3. Mailing Address | 4. Home Phone | 8. Are You Now Working for the Federal Government? |
| | 5. Work Phone (202) 708-0364 | ☒ Yes<br>☐ No |
| 6. Position Title<br>Special Assistant | 7. Grade & Series<br>GS 511 15 | |

| | |
|---|---|
| 9. Office Where You Believe Discrimination Occurred (Include Division, Office, City, State, and ZIP)<br>Office of Inspector General<br>Office of Audit<br>Washington, DC    20410 | 10. Name, Title and Organizational Unit of Person(s) Who Took the Action(s) You Allege Was Discriminatory (e.g., Mary Smith, Asst Dir, Ofc of Housing)<br>James Heist, AIGA (Appraisal Reviewer)<br>Michael Phelps, DAIGA (Appraisal Rater)<br>Theresa Carroll, ADIGA, Southwest District<br>C. Lon Keister, AIC, Southwest District |
| 11. Name and Address of Agency Where You Work.<br>U.S. Department of HUD<br>Office of Inspector General<br>Office of Audit, Room 8286<br>451 7th Street<br>Washington, DC    20410 | 12. Date Notice of Right to File Complaint Received<br><br>6/6/01 |

| | | |
|---|---|---|
| 13. I designate this person to be my representative. | b. Address | c. Home Phone |
| a. Name & Title<br>Person(s) to be name at later date. | | d. Work Phone |

| | | |
|---|---|---|
| 14. Type of Discrimination Alleged | | 15. Date each Alleged Act of Discrimination Took Place |
| ☒ Race (Specify): African American<br>☒ Color (Specify): Black<br>☐ Religion (Specify):<br>☐ National Origin (Specify): | ☒ Sex (Specify): Male<br>☒ Age (Specify): 46<br>☐ Handicap (Specify):<br>☐ Reprisal (Specify): | 3/22/01 End of Job<br>        Evaluation<br>5/1/01 Annual Performance<br>        Appraisal & Rating |

16. Explain the specific actions or situation that resulted in your allegation(s) that you were treated differently than other employees or applicants because of race, color, religion, national origin, sex, age, handicap, or reprisal. If your complaint involves more than one allegation of discrimination, list and number each allegation separately and furnish specific, factual information in support of each. Additional pages may be used to explain the alleged act of discrimination.

See Attahhed.

| | |
|---|---|
| 17. I have discussed the issues in Section 16 with an EEO counselor.<br>☒ Yes Date of initial contact: 5/4/01<br>        Date of final interview: 6/6/01 | 18. Name of EEO Counselor<br>Doris Carey |

19. Corrective Action Sought

See Attached.

RECEIVED

| | |
|---|---|
| 20. Signature of Complainant | 21. Date of Complaint<br>6/20/01 |

01670

Austin B. Groom, Jr., ███████
EEO Complaint of Discrimination in HUD
June 20, 2001
Response to Number 19:

The corrective actions that I am seeking are included below but not limited to the following:

1.    The end of assignment performance rating that Ms. Carroll prepared with input from Mr. Keister be overturned and disallowed because of their discriminatory practices and actions in generating the rating.

2.    The "Unacceptable" performance rating that Mr. Phelps issued be overturned and disallowed because of his discriminatory practices and actions in generating the rating.

3.    Remove from my Official Personnel File any information that documents the detrimental results from Mr. Heist, Mr. Phelps, Ms. Carroll, and Mr. Keister's discriminatory actions.

4.    Sensitivity and Diversity training for Mr. Heist, Mr. Phelps, Ms. Carroll, and Mr. Keister and that they demonstrate and implement the positive results from this specialized training.

5.    Direct Mr. Heist, Mr. Phelps, Ms. Carroll, and Mr. Keister to actively participate and support minority and diversity activities as a show of their sincerity in rectifying their discriminatory actions.

6.    Reinstate all leave that occurred during Mr. Heist, Mr. Phelps, Ms. Carroll, and Mr. Keister period of discrimination resulting from undue stress and anxiety created by this environment.

7.    Reimburse all attorney costs and legal fees that were incurred in preparation, during, and in completion of my EEO complaint process.

8.    Reassignment or transfer to another office outside of HUD OIG which would remove me from my hostile environment within the OIG and prevent adverse actions from OIG management specifically my immediate supervisor, Mr. Phelps.  This action should include consideration for participation in the OPM Intergovernmental Personal Act (IPA) Mobility Program.

9.    Provide me sufficient training to continue to improve and enhance my skills, knowledge, and abilities, thereby eradicating the slanderous damage on my work ethics, reputations, creditability and value to the OIG that Mr. Heists, Mr. Phelps, Ms. Carroll, and Mr. Keister have created through their discriminatory actions.



U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
THE OFFICE OF THE SECRETARY
WASHINGTON, DC 20410-0001

Office of Departmental
Equal Employment Opportunity

AUG 23 2001

**CERTIFIED MAIL**
**RETURN RECEIPT NUMBER:** 7001 0360 0000 5361 2479

Austin B. Groom, Jr.



SUBJECT:  **Notice of Acceptance** in Austin B. Groom, Jr. v. Mel Martinez, Secretary,
U. S. Department of Housing and Urban Development, Case Number IG 01 01

Dear Mr. Groom:

This refers to your Equal Employment Opportunity (EEO) discrimination complaint filed on June 21, 2001.  After reviewing the complaint and the EEO Counselor's Report, I have accepted the following claim for investigation:

Whether the Department discriminated against you because of your race (black), sex (male), and age (46) when it rated your performance as Unacceptable on the annual performance appraisal that you received on May 1, 2001.  You identified the following incidents to support your claim of discrimination:

- Michael Phelps, (white, male, age: 55), Deputy Assistant Inspector General for Audit, rated your performance for the period September 1, 2000 to January 31, 2001 as Unacceptable on the annual appraisal he gave you on May 1, 2001.  The annual appraisal did not include the Satisfactory rating he gave you for your performance during the period April 10, 2000 to August 30, 2000, even though the annual performance period covers February 1, 2000 through January 31, 2001.

- Mr. Phelps assigned you to work on the nationwide GPRA audit under the direction of employees who hold lower graded positions than do you.

- Teresa Carroll (white, female, age: unknown), Assistant District Inspector for Audit, rated your performance on the nationwide GPRA audit as Unacceptable.  Her "End of Job Evaluation" formed the sole basis for Mr. Phelps' annual appraisal.  Ms. Carroll's rating was based on input from C. Lon Keister (white, male, age: 56), Auditor-In-Charge.[1]

---

[1] Mr. Keister, is a GS 13 non-supervisory, non-managerial employee.

- James Heist (white, male, age: 47), Assistant Inspector General for Audit, concurred with Mr. Phelps' rating of your performance. [2]

Your complaint contains a claim for compensatory damages. To address you claim, you must provide objective proof of the damages suffered because of the alleged discrimination. Additionally, please submit objective proof of the causal connection between the damages and the alleged unlawful discrimination. Proof can take the form of receipts and/or bills for medical care, medication and transportation to the doctor, as well as statements concerning your emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to professional standing, injury to character or reputation, injury to credit standing, loss of health and any other non-pecuniary losses that the Department caused you due to the alleged discriminatory conduct. You may also provide statements from others; including family members, friends, health care providers, other counselors; including clergy, who can address the outward manifestations or physical consequences of your emotional distress.

Please submit the required documentation to the assigned investigator upon their contact with you.

Mr. Groom, you must notify me in writing, within fifteen (15) calendar days of your receipt of this letter, if the statement above does not correctly identify the claim. You must specify why the statement is incorrect. I will consider your response timely filed if postmarked, or delivered in person, on or before the fifteen (15) day period expires.

I have assigned your complaint to Russell D. Barger of the EEO Division for processing. Please contact him at 202.708.5921, to address any questions or concerns regarding the processing of this complaint.

If I do not hear from you regarding the accuracy of the statement identifying the claim, I will assign the claim, as stated above, for investigation.

Sincerely,

Sandra L. Hobson, Director
Equal Employment Opportunity Division

cc: Nick B. Kehoe, GF

---

[2] Your allegation that Mr. Heist discriminated against you in his response to your administrative grievance is not actionable under the EEO statutes. Such an allegation is considered a collateral attack of the grievance process that is not within the purview of the EEO statutes.

DATE:  June 4, 2001

SUBJECT: Notice of Right to File a Discrimination Complaint

FROM:  Doris Carey , EEO Counselor

TO:  Austin Groom
     Aggrieved Person

     Under Equal Employment Opportunity Regulations, pre-complaint processing is required before a formal complaint may be filed.  This is to inform you that because the dispute you brought to the attention of the Office of Departmental Equal Employment Opportunity (ODEEO) on May 4, 2001 has not been resolved to your satisfaction, you are now entitled to file a discrimination complaint based on race, color, religion, sex, national origin, physical and/or mental disability, age, and/or reprisal.

     If you file a complaint, it must be in writing, signed by you or your attorney, and  filed, in person or by mail within  fifteen (15) calendar days after receipt of this notice. The complaint must be filed with the Director of Equal Employment Opportunity (EEO) at the following address:

               DHUD, Room 2106
               451 7th Street, S.W.
               Washington, D.C.  20410

     Your complaint shall be deemed timely if it is received or postmarked before the expiration of the 15-day filing period, or, in the absence of a legible postmark, if it is received by mail within five calendar days of the expiration of the filing period.

     The complaint must be specific and contain only those issues either specifically discussed with me or issues that are like or related to the issues that you discussed with me.  It must also state whether you have filed a grievance under a negotiated grievance procedure or an appeal to the Merit Systems Protection Board (MSPB)  on the same claims. If you have filed a grievance or an MSPB appeal, please submit a copy of your grievance or MSPB appeal with your complaint.

     You must immediately notify the Director of EEO, in writing, if you change your address and/or telephone number, or  retain an attorney or any other person to represent you.  You and/or your representative will receive a written notice of receipt of your discrimination complaint from the appropriate agency official.

     If you file a complaint, you must name Mel Martinez, Secretary of the Department, as defendant.

From:

_Doris A. Carey 6/4/01_
Signature of EEO Counselor/Date

Received by:

_Austin B. Groom 6/6/01_
Signature of Aggrieved Person/Date

ODEEO 11/00

01674





01676