Page 1

1          UNITED STATES DISTRICT COURT

2          FOR THE DISTRICT OF COLUMBIA

3     - - - - - - - - - - - - - -X

4     SAUNDRA G. ELION,                    :

5              Plaintiff          :

6          v.                      :        COPY

7                                  :

8     ALPHONSO R. JACKSON,         :

9             Defendant           :

10    - - - - - - - - - - - - - -X

11              DEPOSITION OF AUSTIN GROOM

12                   Washington, D.C.

13              Tuesday, April 18, 2006

14         Deposition of AUSTIN GROOM, called for

15    examination at 3:00 p.m., at the law offices of Robert

16    C. Seldon & Associates, P.C., 1319 F Street, N.W., Suite

17    305, Washington, D.C., before Gary S. Howard, a notary

18    public in and for the District of Columbia, when were

19    present on behalf of the respective parties:

20         APPEARANCES:

21         On behalf of the Plaintiff:

22              ROBERT C. SELDON, Esq.


GOVERNMENT
EXHIBIT
Reply 2

1      A      Mike Phelps, the deputy assistant

2    inspector general for audit.

3      Q      **How long had you held that job?**

4      A      I was there with Mike two years.

5      Q      **That would have taken you back to about**

6    **2000?**

7      A      That's correct.

8      Q      **And do you recall when in 2000, you**

9    **started that job?**

10     A      That I don't recall.

11     Q      **Okay. And were you employed before you**

12   **started that job?**

13     A      Yes.

14     Q      **In what capacity?**

15     A      I was still in the HUD office of the

16   inspector general.

17     Q      **Okay. As what?**

18     A      I held the job as -- I think at that time

19   they called it district inspector general for

20   audit.

21     Q      **Was that for the capital district?**

22     A      That's correct.

Page 13

1       Q       How long did you hold that job?

2       A       I started that job in 1996. I can't

3    remember the particular month. It was March of '96.

4       Q       And so, you held that job to 2000.

5       A       Correct.

6       Q       Okay. And then from 2000 to 2002, you

7    were a special assistant to DAIGA Phelps.

8               Is that right?

9       A       That's correct.

10      Q       And then beginning in August of 2002, you

11   went to work in FHEO.

12      A       That's correct.

13      Q       Okay. Is it correct to say that when you

14   vacated the job as district inspector general for

15   audit of the capital district, it was Ms. Elion who

16   followed you as, if you know, a permanent basis in

17   that job?

18      A       Correct. They advertised the job, I

19   think, and Sandy was selected.

20      Q       Okay. And the job that you previously

21   held as special assistant to Mr. Phelps, is there

22   anyone who encumbers that job now?

1    district?

2        A      At that time, that's what it was called.

3    There were district inspector generals. I think

4    that they're titled different now, but at that

5    time, it was.

6        Q      Okay. '96 to 2000, I take it. Right?

7        A      I think that's correct.

8        Q      How is it that you came to leave that

9    position?

10       A      The district inspector general position?

11       Q      Yes.

12       A      I was reassigned to work with Mike

13   Phelps.

14       Q      Did you solicit that reassignment?

15       A      No, I didn't.

16       Q      Was it involuntary?  Was it directed,

17   rather?

18              I'm sorry.

19       A      It was directed. It was a reassignment,

20   direct reassignment by Cathy Inkling.

21       Q      Who was who?

22       A      Who was the assistant inspector general

1    issuance of the removal letter, to your

2    recollection?

3        A    I think it was Jim Heist. I think once he

4    made the proposal, Jim Heist actually issued a

5    final removal.

6        Q    Did you believe -- I'm not sure if you

7    testified to this or not. I'm sorry -- that

8    discrimination or retaliation figured either in the

9    removal proposal or the removal decision?

10        A    Discrimination, yes.  The retaliation, I

11    can't -- I'd be speculating.

12        Q    Okay. What makes you say discrimination?

13    And by this, I mean racial discrimination.

14        A    Racial discrimination.

15        Q    What makes you say that?

16        A ,    I know it was three -- race --

17            MR. TRUONG: Age.

18            THE WITNESS:  Age. I don't know what the

19    third one was.

20            (Pause.)

21            MR. SELDON:  I've got race and color

22    here, sex and age.

1               MR. TRUONG: Why don't you introduce

2      the --

3               MR. SELDON: I will in one minute. Let's

4      leave out the bases for it for a minute.

5               BY MR. SELDON:

6      Q      Did you believe that racial

7      discrimination was involved in the decision to

8      remove you, or the decision to propose your

9      removal?

10     A      Not in the proposal for removal. In the

11     action prior to that.

12     Q      In the decision to remove you.

13     A      Yes.

14     Q      You believed there was racial

15     discrimination involved.

16     A      No, not in the actual final decision of

17     the proposal or removal. But prior to that, the

18     events that led to that.

19     Q      And the events, were they the subject of

20     your original EEO complaint?

21     A      That's correct.

22     Q      Okay. So now -- let's just go off the