VOLUME II

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SAUNDRA ELION,                    x
                                  :
              Plaintiff,          :
   vs.                            :  Civil No. 05-0992
                                  :
ALPHNSO R. JACKSON and HUD,       :
                                  :
              Defendants.         x

Monday, October 2, 2006

Washington, D.C.

DEPOSITION OF:

SAUNDRA ELION,

the plaintiff, was called for further examination by counsel for the defendants, pursuant to continuance from Monday, August 7, 2006, Notice and agreement of the parties as to time and date, beginning at approximately 10:24 o'clock, a.m., taken at the U.S. Department of Justice, 510 3rd Street, Northwest, Washington, D.C., before Ronnie C. Palmer, a court reporter and Notary Public in and for the District of Columbia when were present on behalf of the respective parties:

GOVERNMENT EXHIBIT
Reply G

Page 78

1  Q  I think we covered that in the last
2  deposition?
3      MR. SELDON: Yes, we did.
4      BY MR. TRUONG:
5  Q  You spoke to —
6  A  Dan Temme. Dan Temme was a RIGA.
7  Q  I understand. You spoke to Mr. Temme
8  before the April 20th memo. So, it could have not
9  have been about your demotion to special assistant,
10 right?
11 A  Before April? No. Not then. But I had
12 been moved from the Capital District to headquarters.
13 Q  I was asking you to give me all the
14 individuals you spoke to about your special assistant
15 position.
16 A  Excuse me. What Dan and I talked on were
17 a routine basis. But definitely after the April
18 memo, he and I visited and talked about that, as
19 well.
20 Q  What did he say about your special
21 assistant position?
22 A  There really wasn't much more for him to

Page 79

1  say.
2  Q  Let's go back to and I don't think I
3  asked you this question. Let me ask you this before
4  we move on to your interrogatory responses.
5      What or tell me what do you think
6  Mr. Stevens discriminated or retaliated against you?
7      MR. SELDON: You mean in addition to
8  interrogatories?
9      MR. TRUONG: No. I just want to know —
10     MR. SELDON: All right. I will object to
11 that. The interrogatory answers I will say for the
12 record —
13     MR. TRUONG: It does not say in her
14 interrogatory Mr. Steven did A, B, C.
15     MR. SELDON: It does not have to. She
16 incorporated her affidavit and everything else she
17 said in the EEO process.
18     BY MR. TRUONG:
19 Q  Let me reask the question. What did
20 Mr. Stevens do to lead you to believe he
21 discriminated or retaliated against you?
22 A  For starters, when I had my initial

Page 80

1  complaint and I had selected to do ADR, a mediator
2  had been assigned, but he requested a meeting with me
3  to discuss the issues.
4      He at that point knew there was a
5  mediator, but he believed that we could discuss it
6  and we would get -- we could better communicate if I
7  didn't have counsel present.
8      He thought that it was just a matter of
9  miscommunication, that there was no deliberate
10 discrimination, the issues that I had about the
11 hostile work environment.
12     He convinced me to meet with him, and we
13 did that. Michael Phelps and Jim Heist. We met, and
14 we identified four things that we were going to do to
15 resolve my issues.
16     And I believed that everything was going
17 to work out except that within a couple of months we
18 were back to the same way of doing business.
19 Q  So, let me understand this correctly.
20 The fact that Mr. Stevens asked you to meet with him
21 without counsel to resolve these issues is that some
22 sort of a discriminatory act against you?

Page 81

1  A  That was not discriminatory. It's when
2  nothing was resolved and he, you know, allowed that
3  to go on.
4  Q  So, nothing was resolved and he allowed
5  that to go on. I see. Okay. Anything else?
6  A  That was the first one.
7  Q  The first one was that somehow you met
8  with Mr. Heist, Mr. Phelps, and Mr. Stevens. You
9  identify three or four objections that should be
10 resolved.
11 A  Remedies that could be made.
12 Q  Somehow those remedies were not
13 materialized. So, you believe that was Mr. Stevens'
14 discrimination against you?
15     Let me ask you this, though. What did he
16 do or didn't do to make sure those remedies were
17 materialized? That you believe somehow discriminated
18 against you.
19 A  He did not insure because the basic --
20 The basic premise for that entity had not been
21 defined. And that being whether it was going to be a
22 proactive or reactive entity. So, that was the