IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAUNDRA ELION,                        ) | |
|                                       ) | |
|     Plaintiff,                               ) | |
|                                       ) | |
|     v.                                          ) | Civil Action No. 05-0992 (PLF) |
|                                       ) | |
| ALPHONSO R. JACKSON,       ) | |
|     Secretary of the                    ) | |
|     U.S. Dept. of Housing and    ) | |
|     Urban Development,            ) | |
|                                       ) | |
|     Defendant.                            ) | |
| _____) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO
DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE**

Defendant replies to the Plaintiff's responses to Defendant's Statement of Material Facts Not in Genuine Dispute:

The Plaintiff admitted Defendant's Material Facts numbered 1, 2, 3, 10, 15, and 18. As to the Material Facts that the Plaintiff disputes, she also provides further answers which are addressed below.

    4. She did not suffer any loss of rank, pay, status, or privileges of employment when she became the Director of HAD.

    RESPONSE: The Plaintiff objected to this statement answering that the transfer was an adverse action that removed significant managerial duties, reduced her scope of work and work assignments, and reduced her professional exposure and standing. Defendant denies Plaintiff's

1

conclusory answer, and reiterates that Plaintiff admits in her deposition that this was simply a lateral transfer.  See Elion 1 Depo. at 78-80.

     5.  On December 18, 2002, Plaintiff filed an administrative discrimination complaint alleging a hostile work environment on the basis of her sex, race, and age, complaining of a diminution of duties and responsibilities, dilution of staff resources, and an undermining of her professional authority.

     RESPONSE:  Plaintiff objected to this statement, answering with a more detailed recitation of the diminution of duties and responsibilities, dilution of staff resources, and an undermining of her professional authority.  Plaintiff also ends by stating that the legitimacy of Plaintiff's allegations is not disputed by Defendant.  Defendant denies Plaintiff's answer, and reiterates that Plaintiff admits to the above fact in her Amended Complaint at para. 21.  Defendant also specifically denies that "the legitimacy of these allegations is not disputed by Defendant."  Although Mr. Heist testified that he had "no reason to doubt the Plaintiff's sincerity" in bringing her first discrimination complaint, nowhere in his deposition did he testify that Plaintiff's allegations were legitimate.  See Heist Depo. at 76-77.  In fact, Plaintiff's cited record does not support the purported fact presented.

     6.  On January 30, 2003, Plaintiff met with Mr. Stephens (Deputy Inspector General), and her two supervisors - Mr. James Heist (Assistant Inspector General for Audit (AIGA)), and Mr. Michael Phelps (Deputy AIGA) to address Plaintiff's concerns.

RESPONSE:  Plaintiff objected to this statement.  Plaintiff also claimed that the meeting was orchestrated to intentionally interfere with Plaintiff's civil rights.  She also claimed that Defendant admits Plaintiff's allegations of discrimination were legitimate.

Defendant incorporates by reference its response to SOF No. 5 above. Defendant also denies that Deputy Inspector General Stephens insisted that he would only meet with Plaintiff, outside the presence of her counsel. In fact, her counsel's January 16, 2003 letter specifically agreed to allow her to meet with Mr. Stephens, without counsel present. See Gov. Exh. B.

7. Mr. Stephens engaged in this informal process in lieu of the formal Alternative Dispute Resolution process to address what he perceived to be a communications and management issue. Plaintiff also believed that Mr. Stephens thought her complaint was "just a matter of miscommunication, that there was no deliberate discrimination."

RESPONSE: Plaintiff objected to this statement, repeating the previous answer that the meeting was orchestrated to intentionally interfere with Plaintiff's civil rights, making several conclusory allegations, and stating that Defendant admits Plaintiff's allegations of discrimination were legitimate. Defendant incorporates by reference its response to SOF No. 6.

8. The January 30th meeting was not intended to be a mediation session, but an attempt by management to establish better relations with Plaintiff to address her concerns.

RESPONSE: Plaintiff objected to this statement, and answered further making the conclusory allegation that this meeting was supposed to be a mediation session and part of the administrative processing of Plaintiff's complaint, and that Defendant admits Plaintiff's allegations of discrimination were legitimate.

The record shows Plaintiff testified that Mr. Stephens "thought that it was just a matter of miscommunication" and that they should meet to resolve the issues, outside the mediation process. Elion 2 Depo. p. 80-81 (Reply Gov. Exh. G). Defendant also incorporates by reference the response in SOF No. 5 above.

9. On March 20, 2003, Plaintiff withdrew her December 2002 administrative discrimination complaint. In the Memorandum withdrawing her December 2002 EEO complaint, Plaintiff stated, "The issues have been resolved to my satisfaction at this time."

RESPONSE: Plaintiff admits the quote from the Memorandum is correct but objected to the remaining facts, and answered further, claiming she was deceived into surrendering her civil rights. Plaintiff, however, fails to cite any evidence in the record of deceit or coercion by the Agency officials or that Plaintiff was forced to withdraw her complaint.

10. On April 7, 2004, Mr. Stephens sent out an email to senior executives in the OIG (including Mr. Heist), informing them that there was a hiring freeze and OIG had a projected budget deficit of $6.5 million.

RESPONSE: Plaintiff admits that Mr. Stephens dispatched the foregoing email, but argues that the contents of the email were untrue. Plaintiff, however, fails to point to any evidence to show that the projected deficit of $6.5 million was or the imposition of the hirign freeze was untrue.

11. On April 12, 2004, Mr. Heist informed his managers, which included Plaintiff, that the hiring freeze would continue for the foreseeable future.

RESPONSE: Citing to the Beard Declaration, Plaintiff denies receiving the April 12, 2004 email. It appears that the email referenced in Mr. Beard's declaration was an April 7th email, not April 12th. Plaintiff also fails to cite to any evidence in the record to refute the existence of a hiring freeze in April 2004.

12. In April 2004, there were only 5 employees in HAD. The five employees were Plaintiff (GS-15), the Assistant Director (GS-14), and three auditors. (Exhibit C, pp. 114-115).

HAD was disbanded on April 21, 2004.

RESPONSE: Plaintiff admits the above fact and also makes a number of conclusory statements that are neither relevant nor material to the underlying issues here. See Nails v. England, 311 F. Supp.2d 116, 121 (D.D.C. 2004) (noting that a statement is not a material fact in that it does not "affect the outcome of the case under governing law.").

13. On April 20, 2004, Mr. Heist recommended that the HAD be disbanded.

RESPONSE: Although Plaintiff "denies the allegation" in SOF No. 13, read in full context, her response actually concedes that Mr. Heist recommended the disbanding of the HAD in an April 20, 2004 Memorandum.

14. There was a need to increase the staffing of auditors at the Financial Audit Division because of the new deadline for submitting the agency's audit report. Every executive agency is required to conduct a financial audit each fiscal year. Under the President's Management Agenda, the Office of Management and Budget (OMB) accelerated financial reporting dates for the executive agencies.

RESPONSE: Plaintiff denies this fact, although she admits in the next paragraph that the due date for the FY 2004 financial audit was November 15 and also admits that this was a new due date. Plaintiff's remaining answer is an argument that Mr. Heist's reasons for disbanding the HAD are untrue or that the recommendation was a pretext for discrimination or retaliation. "Legal conclusions cloaked as facts are not sufficient to create a genuine issue of material fact." Colbert v. Chao, 2001 WL 710114, * 7 (D.D.C. June 19, 2001).

16. Mr. Heist transferred three staff auditors to the Financial Audits Division, Ms. Donna Hawkins to Technical Oversight and Planning Division, and Plaintiff to become a Special

5

Assistant to the AIGA.

RESPONSE:  Plaintiff objects to the April 21, 2004 e-mail cited as support for the assertion for the above facts, claiming that it is not part of the record on summary judgment. This email was introduced into the record by Plaintiff's counsel at Mr. Heist's deposition as Heist Exhibit No. 8, and in Mr. Phelps' Deposition at Phelps Exhibit 3.

17.  Mr. Stephens approved Mr. Heist's proposal on April 21, 2004.

RESPONSE: Although Plaintiff "denies the allegations" in SOF No. 17, read in context, Plaintiff actually concedes that Mr. Stephens approved the proposal on April 21, 2004.

18.  Plaintiff's reassignment to become Special Assistant did not affect her pay or grade.

RESPONSE:  Plaintiff admits this and by way of further answer alleges that the reassignment was actually two adverse employment actions.  Plaintiff's statement is a "[l]egal conclusion[] cloaked as facts" and, therefore, it is "sufficient to create a genuine issue of material fact."  Colbert v. Chao, 2001 WL 710114, * 7 (D.D.C. June 19, 2001).

19.  As a result of the HAD's dissolution, on May 5, 2004, Plaintiff filed her second EEO complaint alleging discrimination and retaliation.

RESPONSE:  Plaintiff objected to this statement stating that the record cited does not support the assertion, and further answering with a more detailed recitation of the reasons she filed her EEO complaint.  However, Para. 43 of Plaintiff's Amended Complaint alleges this same fact.

Dated: May 8, 2007.  Respectfully Submitted,


   /s/   Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


   /s/   Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


   /s/   John C. Truong
JOHN C. TRUONG, D.C. BAR #465901
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 307-0406

Attorneys for Defendant


Of Counsel:

Maxine Sharpe
U.S. Department of Housing and Urban Development
Washington D.C.

Richard Johnson
Office of Inspector General
Washington D.C.