UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAUNDRA G. ELION,               ) | |
| ) | |
| Plaintiff,     ) | |
| ) | |
| v.               ) | Civ. Action No. 05-0992 (PLF) |
| ) | |
| ALPHONSO R. JACKSON,        ) | |
|  Secretary Of Housing And       ) | |
|  Urban Development,             ) | |
| ) | |
| Defendant.     ) | |
| ) | |

**PLAINTIFF'S MOTION TO STRIKE OR, IN THE ALTERNATIVE,
FOR ORAL HEARING**

Plaintiff to the above action respectfully moves the Court, pursuant to Rule 7, Fed. R. Civ. P., to strike the Reply in Support of Defendant's Motion for Summary Judgment and to order defendant to submit a Reply that does not contain argument and evidence beyond the scope of defendant's opening Motion.[1]  Plaintiff also moves the Court to strike defendant's Response to Plaintiff's Statement of Genuine Issues its Reply to Plaintiff's Response to Defendant's Statement of Material Facts, because these submissions are impermissible on summary judgment.

In the alternative, plaintiff respectfully moves the Court, pursuant to LCivR 7(f), to schedule an oral hearing on defendant's motion for summary judgment.

---

[1] Plaintiff further submits that defendant's Reply has needlessly burdened the Court by incorrectly citing the Attachments accompanying Plaintiff's Opposition.

The grounds in support of this Motion are explained fully in the accompanying Memorandum of Points and Authorities. A proposed Order has also been submitted, in accordance with LCivR 7(c).

Counsel for defendant has been advised of this Motion and stated that defendant opposes having its reply stricken but takes no position with respect to an oral hearing.

                                              Respectfully submitted,

                                              _____/s/_____
                                              Robert C. Seldon, Esq.
                                               D.C. Bar No. 245100

                                              _____/s/_____
                                              Molly E. Buie, Esq.
                                               D.C. Bar No. 483767
                                              Robert C. Seldon & Associates, P.C.
                                              1319 F Street, N.W.
                                              Suite 305
                                              Washington, D.C.  20004
                                              (202) 955-6968

                                              Counsel for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAUNDRA G. ELION, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ALPHONSO R. JACKSON, )<br>  Secretary Of Housing And )<br>  Urban Development, )<br>)<br>Defendant. )<br>                                              ) | Civ. Action No. 05-0992 (PLF) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE, OR IN THE ALTERNATIVE, FOR ORAL HEARING**

**INTRODUCTION**

Every "Court highly disfavors parties creating new arguments at the Reply stage." Public Citizen Health Research Group v. National Institutes of Health, 209 F.Supp.2d 37, 43-44 (D.D.C. 2002). The reason is simple: "considering an argument advanced for the first time in a reply brief . . . is not only unfair . . . but also entails the risk of an improvident or ill-advised opinion." Kappus v. Comm'r of Internal Revenue, 337 F.3d 1053, 1058 n.4 (D.C. Cir. 2003) (citing McBride v. Merrell Dow Pharmaceuticals, Inc., 800 F.2d 1208, 1211 (D.C. Cir. 1986)). There is no exception to this rule of motions practice on summary judgment which, from the perspective of the non-moving party, already allows an adversary two bites at the apple when honored. See LCivR 56.1. Defendant not only breached this elemental rule, it prejudiced plaintiff in the process. For these reasons, Defendant's Reply Memorandum should be stricken, as should the two unauthorized supplements to its Statement of Material Facts; or an oral hearing should be scheduled to address the new arguments and evidence raised by defendant in reply.

1

**ARGUMENT**

**THE COURT SHOULD EITHER STRIKE DEFENDANT'S REPLY
AND THE UNAUTHORIZED SUPPLEMENTS TO ITS
STATEMENT OF MATERIAL FACTS OR SCHEDULE ORAL HEARING[1]**

This case, as the Court is aware, has been brought by Saundra G. Elion, who formerly served as the Director of the Headquarters Audits Division of the HUD Office of Inspector General ("OIG") and as the District Inspector General for Audit for Washington, D.C. (Elion Decl., ¶2). Ms. Elion was the only African American woman and one of only three African Americans ever to hold positions at this level in HUD OIG since its creation in 1979, until a second African American woman was appointed well after the Complaint here was filed (Id., ¶6[2]). In April of 2004, Ms. Elion was stripped of her supervisory duties and reassigned involuntarily to a make-work position as a "special assistant" in a pretextual reorganization that abolished her office, 13 months after her earlier EEO complaint concluded (Id., ¶¶12-13 & Att. 1-4).

The record in this case contains an overwhelming body of evidence that defendant's adverse actions toward Ms. Elion were pretexts to discriminate and retaliate. For example, Austin Groom, Ms. Elion's African American predecessor as District Inspector General for Audit, was fired after he filed an EEO complaint after being reassigned involuntarily as a "special assistant" (Id. ¶29; Groom Dep. at 6, 14-16, 22-23, 33-34 & Exh. 1). The only other audit manager at their level reassigned over his objection, D. Michael Beard, was also removed

---

[1] By way of relief, plaintiff also seeks an order requiring defendant to submit a Reply that does not contain argument and evidence beyond the scope of defendant's opening Motion, and which correctly cites the Attachments accompanying Plaintiff's Opposition.

[2] The Declarations cited in this Memorandum were filed with Plaintiff's Opposition to Defendant's Motion for Summary Judgment. The Court's ECF system has linked Materials identified as lettered Exhibits to this Motion. Numbered Attachments were linked to Plaintiff's Opposition. Except as otherwise indicated, all deposition excerpts were filed with Plaintiff's Opposition.

from his position and reassigned to a make-work special assistant position after he filed an EEO complaint (Heist Dep. at 67-69, 75, 142-48; Elion Decl., ¶30; Beard Decl., ¶16).

In Fiscal Year 2004, Ms. Elion's former office was ranked third out of HUD OIG's thirteen operational Regional and Headquarters audit offices (Elion Decl., ¶¶34-36 & Att. 5; Beard Decl., ¶¶20-23).  The worst performing office, also located in Washington, D.C., was left unaffected by the "reorganization" (Elion Decl., ¶36; Beard Decl., ¶24).  Unlike Ms. Elion, the director of that office was white and had never filed an EEO complaint (Elion Decl., ¶36; Beard Decl., ¶16).

The purported "new hiring freeze" did not make the Headquarters Audits Division superfluous; in the two preceding years, OIG Headquarters audit divisions were never fully staffed up even once (Elion Decl., ¶40 & Att. 6).  That was true even though during much of that time OIG management was exhorting the Office of Audit to accelerate its hiring, ostensibly to avoid the possibility that its personnel ceiling would be lowered (Id., ¶44 & Att. 7-9).  Moreover, the workload of the two offices that supposedly had "new" needs for Ms. Elion's staff were unchanged for several years (McLeod Dep. at 5-6, 12-15, 76; Elion Decl., ¶45 & Att. 10-13).

Despite this uncontroverted evidence, briefing on the inevitable summary judgment motion was delayed for over eight months.  Largely, although not entirely, this was caused by the failure of defendant's management to appear for depositions (Exh. A); the months of lead time needed to re-schedule their depositions (Exh. B-D); the additional time needed by defendant to provide complete discovery responses (Exh. A); other casework of defendant's counsel (Exh. E; Mot. to Am. Sch. Order June 6, 2006); and personal obligations of defendant's counsel (Exh. F).  When defendant finally moved dispositively, it addressed only one of the factual issues identified above.

3

Essentially, defendant presented but three arguments: first, that plaintiff's prima facie case of discrimination was legally deficient due to the absence of any comparator (Def. Mot. at 9); second, that the lapse of time between plaintiff's initial recourse to the administrative complaints process and defendant's adverse actions defeated her prima facie case of retaliation (id. at 1-2); and third, that the exigencies of a hiring freeze that allegedly led to plaintiff's reassignment and removal from supervisory ranks could not be genuinely disputed (Id. at 2).

Plaintiff's Opposition demonstrated that defendant's two legal arguments about her prima facie cases of discrimination and retaliation were contrary to persuasive legal authority (Pl. Opp. at 23-24, 26-29). Plaintiff also showed that there were many similarly situated supervisory auditors and that they were all treated disparately from her (Pl. Opp. at 23-24), and that any doubt about their comparability "present[ed] a question of fact for the jury." George v. Leavitt, 407 F.3d 405, 415 (D.C. Cir. 2005). Plaintiff also identified many genuine issues of fact about the existence of and rationale underlying defendant's supposed hiring freeze, and offered no fewer than eight other categories of unexplained evidence demonstrating that defendant's decision to disband plaintiff's former division was discriminatory and retaliatory (Pl. Opp. at 10-18) and that the omission of this evidence alone warranted the denial of defendant's motion (Id. at 34-36).[3] In accordance with LCivR 56.1, Plaintiff's Opposition was accompanied by a Statement of Genuine Issues, which specifically responded to the allegations in defendant's Statement of Material Facts and identified specific factual disputes precluding summary judgment.

---

[3]   See also Aka v. Washington Hospital Center, 156 F.3d 1284, 1292 (D.C. Cir. 1998) (en banc) (when "the only explanations set forth in the record have been rebutted," a "jury is permitted to search for others.").

Despite knowing that all these matters were going to be at issue, defendant waited until its Reply before addressing them. Doing so was impermissible and prejudiced plaintiff. The remedy, plaintiff respectfully submits, is an order that either strikes the large majority of defendant's reply submission and directs defendant to file a proper reply; or one that schedules an oral hearing, so plaintiff has the opportunity to respond to the erroneous legal and factual arguments that defendant advanced for the first time in reply.

**I.     Defendant's Reply Contains New Argument About
        Temporal Proximity and an Inference of Retaliation**

Plaintiff responded to defendant's principal argument about retaliation by demonstrating that the passage of time does not immunize retaliatory action from challenge under Title VII. E.g., Shirley v. Chrysler First, Inc., 970 F.2d 39, 44 (5th Cir. 1992). Unlike defendant, plaintiff referred the Court to specific precedent in this judicial district which reached this same conclusion, Gipson v. Wells Fargo, N.A., 460 F.Supp.2d 15, 25 (D.D.C. 2006) (Opp. at 4, 26). In its Reply, defendant addressed Gipson for the first time and, in an attempt to bolster its position, mischaracterized the decision.

Gipson v. Wells Fargo concerned not one but "two adverse employment actions." Gipson v. Wells Fargo, N.A., 460 F.Supp.2d at 24. The first was plaintiff's nonselection for a managerial position several months after the parties settled her internal EEO complaint. Id. at 24-25. The second adverse action was plaintiff's termination, which occurred five years after her protected activity. Id. at 21-22, 28-29. Discussing the second, Gipson decisively held that although close temporal proximity between protected activity and adverse action establishes a prima facie case of retaliation, the absence of a close relationship in time is not a defense.

> This Court has repeatedly acknowledged the need for temporal proximity when serving as the only evidence of causality for retaliation. [Plaintiff], however, relies on evidence beyond any reference to temporal proximity.

5

460 F.Supp.2d at 29. Despite this clear holding, Defendant's Reply attempted to distinguish Gipson on other grounds (Def. Reply at 18-19). Because defendant did not address Gipson until its Reply, its mischaracterization of that decision and the record in that case have gone uncorrected.

Defendant argued that the plaintiff in Gipson surmounted the supposed absence of temporal proximity over her non-promotion – for that claim, several months – by "pointing to direct evidence of retaliation" (Def. Reply at 19). That is simply untrue. Direct evidence of prohibited intent consists of statements that specifically disparage an employee's protected status or protected activity. E.g., Lindahl v. Air France, 930 F.2d 1434, 1439 (9th Cir. 1991); Grant v. Hazelett Strip-Casting Corp., 880 F.2d 1564, 1569 (2nd Cir. 1989); Sennello v. Reserve Life Ins. Co., 872 F.2d 393, 394 (11th Cir. 1989). There was decidedly none in Gipson.[4]

Defendant next contends that the plaintiff in Gipson defeated summary judgment despite the supposed lapse of time between her original protected activity and her termination – five years – with evidence of disparate treatment and violations of company policy (Def. Reply at 19). This amounts to nothing short of abject retreat from defendant's original position, that to "establish causation, a plaintiff must pair knowledge with proximity" (Def. Mot. at 17) (emphasis supplied). It is also an improper characterization of Gipson.

The Gipson decision enumerated many types of evidence other than temporal proximity that could support a prima facie case of retaliation, including the central involvement of the same decision-maker in the settlement of an EEO complaint and the decision to take adverse action; the possibility that a jury could find a plaintiff and a co-worker comparable; and the deviation

---

[4] Counsel for plaintiff unquestionably knows more about the record in Gipson than defendant's counsel, since he also served as plaintiff's counsel in Gipson.

from unwritten personnel practices in taking adverse action. Gipson v. Wells Fargo, N.A., 460 F.Supp.2d at 29-32. At no point did Gipson hold that evidence in each category is essential to establish a prima facie case. In any event, there is evidence of every single one of these types in the record here, and many others, as well (Pl. Opp. at 8-15).[5]

## II. Defendant's Reply Is Based On Many New Factual Arguments

### A. Treatment of Plaintiff's Predecessor.

Defendant's termination of Austin Groom, plaintiff's African American predecessor as District Inspector General for Audit, is persuasive evidence of retaliation. Mr. Groom's administrative EEO complaint was in the very early stage in August of 2001. Several months later, presumably while it was still in the investigative stage, Mr. Groom was terminated (Groom Dep. at 6, 14-16, 22-23, 28-29, 33-34 & Dep. Exh. 1 at 1-3).

Defendant certainly knew that its treatment of Mr. Groom was a central issue in this litigation. Mr. Groom's termination was the subject of his deposition (id.), and the circumstances surrounding his appeal and reinstatement triggered a discovery dispute (Exh. G; Order of Apr. 13, 2007; Order of May 19, 2007). Nonetheless, defendant made no mention of Mr. Groom's termination in moving for summary judgment. Its discussion of this subject on Reply was misleading.

Plaintiff's Opposition demonstrated that Mr. Groom's treatment was highly relevant, circumstantial evidence of retaliation. E.g., Jones v. WMATA, 946 F. Supp. 1011, 1019 (D.D.C. 1996) (Lamberth, J.); Rule 404(b), Fed. R. Evid. From this legal predicate, plaintiff argued that

---

[5] Defendant's Reply (at 2, n.1) again erroneously contends that the time between plaintiff's commencement of the protected EEO process and defendant's subsequent adverse action is the measure of temporal proximity. As demonstrated in Plaintiff's Opposition (at 1 & 29, n.8), that time is calculated from the end of the original complaints process, not its beginning. Singletary v. District of Columbia, 351 F.3d 519, 525 (D.C. Cir. 2003).

after Mr. Groom "filed an EEO complaint against Assistant Inspector General Heist and Deputy Assistant Inspector General Phelps … the two fired him" (Groom Dep. at 22-23, 28-29 & Dep. Exh. 1) (Pl. Opp. at 11; accord, Pl. Opp. at 27). In Reply, defendant contended that plaintiff "insinuates that Defendant involuntarily reassigned" Mr. Groom "due to his EEO activity. This is inaccurate" and "[t]herefore not evidence of retaliation" (Def. Reply at 8) (citing Opp. at 11, 27). Plaintiff's Opposition never suggested that defendant reassigned Mr. Groom in retaliation for filing an EEO complaint, but instead that it fired him for filing one. Therefore, defendant's treatment of Mr. Groom – termination following protected activity – provides powerful evidence of retaliation.[6]

### III. Defendant's Reply Contains Many Contradictions Between Its Sworn Testimony and Other Evidence

Several related principles of summary judgment were not highlighted in Plaintiff's Opposition because, until Defendant's Reply, they were not of great importance. The first specifies that a jury is well within its province to "conclude that an employer who fabricates a false explanation has something to hide" and "that 'something' may well be discriminatory intent." Aka, supra, 156 F.3d at 1294. The second recognizes that federal courts including the Supreme Court "have held with virtual unanimity that "a party cannot create a genuine issue of fact sufficient to survive summary judgment" – much less be awarded summary judgment – "simply by contradicting his or her own previous sworn statement." Cleveland v. Policy Management Systems, Corp., 526 U.S. 795, 806 (1999).[7] A third holds that failing "to contest" a

---

[6] The most that can said of defendant's argument is that it disagreed with plaintiff's aside that Mr. Groom filed an EEO complaint shortly after being reassigned (Pl. Opp. at 1).

[7] Citing Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d 1, 5 (1st Cir. 1994); Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2nd Cir. 1996); Hackman v. Valley Fair, 932 F.2d 239, 241 (3rd Cir. 1991); Barwick v. Celotex Corp., 736 F.2d 946, 960 (4th Cir. 1984); Albertson v. T.J. Stevenson & Co., 749 F.2d 223, 228 (5th Cir. 1984); Davidson & Jones Development Co. v.

8

plaintiff's "evidence" and offering "'shifting rationales'" for adverse employment provide grounds for denying summary judgment. Kalinoski v. Gutierrez, 435 F.Supp.2d 55, 68 (D.D.C. 2006) (Bates, J.); accord, Aka, supra, 156 F.3d at 1292. New evidence offered by defendant in reply breached these principles and provided further grounds for denying summary judgment.

### A. Deviation From Standard Personnel Practices

Plaintiff's Opposition (at 13-14) demonstrated that defendant's sworn interrogatory responses admitted that neither of OIG's servicing personnel offices was consulted about the decision to abolish plaintiff's former division (Elion Decl., Att. 13 at 11; Att. 20 at 2; & Att. 21 at 1). Failing to do so deviated from the procedure that the OIG Office of Audit followed in at least the last ten reorganizations (Phelps Dep. at 44-45). On Reply, defendant argued that it did consult with personnel officials (Def. Reply at 8). Defendant's contradictions to its own sworn interrogatory answers do not provide a basis for summary judgment. E.g., Cleveland v. Policy Management Systems, Corp., supra 526 U.S. at 806.

### B. The Basis For Defendant's Adverse Actions

Defendant specifically disavowed that any alleged deficiencies in plaintiff's performance provided grounds for abolishing her former division, removing her supervisory duties, and reassigning her (Def. Mot. at 1). In fact, the first page of Defendant's Motion announced that the "<u>only</u> issue here is whether Defendant" did so "because of a hiring freeze and other work priority" (Id.) (emphasis supplied). It had no choice, because of the admissions that Mr. Heist made in his deposition:

---

Elmore Development Co., 921 F.2d 1343, 1352 (6th Cir. 1991); Slowiak v. Land O'Lakes, Inc., 987 F.2d 1293, 1297 (7th Cir. 1993); Camfield Tires, Inc. v. Michelin Tire Corp., 719 F.2d 1361, 1365-1366 (8th Cir. 1983); Kennedy v. Allied Mutual Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991); Franks v. Nimmo, 796 F.2d 1230, 1237 (10th Cir. 1986); Tippens v. Celotex Corp., 805 F.2d 949, 953-954 (11th Cir. 1986); Pyramid Securities Ltd. v. IB Resolution, Inc., 924 F.2d 1114, 1123 (D.C. Cir.), cert. denied, 502 U.S. 822 (1991).

> Q: So are you saying, then, that her performance or conduct was related to your reasons for abolishing the headquarters audit division?
>
> Objection. Mischaracterizes ….
>
> Q: Are you saying that?
>
> A: No.

(Heist Dep. at 115-16[8]). Nonetheless, Defendant's Reply asserted that Deputy Inspector General Stephens "was rightly concerned about" plaintiff's management of her division because "an employee was so desperate to escape … that he had to resign" (Def. Reply at 13). By contradicting Mr. Heist's deposition testimony, this post hoc fabrication created issues of material fact and credibility that can only be resolved at trial. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 147, 150 (2000).

### C. Performance of Plaintiff's Former Division

Plaintiff's Opposition (at 12-13) demonstrated that in FY 2004, her former Division ranked third among the thirteen audit producing HUD OIG offices nationwide (Heist Dep. at 123-25; Beard Decl., ¶¶20-24; Elion Decl., ¶¶33-34 & Att. 5). According to Mr. Phelps, this was to be reflected in "performance ratings" (Elion Decl., ¶34 & Att. 5). The ranking of plaintiff's former Division was especially noteworthy, because her office was disbanded halfway though the Fiscal Year (Id., ¶35 & Att. 4).

The fact that OIG's rankings of its Audit Divisions and Offices would be at issue was signaled by plaintiff's supplemental disclosure of defendant's FY 2004 rankings (Exh. H). Nonetheless, this issue went unmentioned in defendant's motion for summary judgment. In reply, defendant points to a different ranking, which it contends is supposedly so persuasive that it eliminates any genuine factual dispute about its performance rankings (Def. Reply at 9-10 &

---

[8]  These pages from the Heist Deposition have been filed with this Motion.

Phelps Decl., Exh. 1).

Defendant's argument is absurd. The rankings that plaintiff pointed to were the year end FY 2004 rankings circulated by Mr. Phelps on January 1, 2005 (Elion Decl., ¶34 & Att. 5). The one submitted by defendant on reply was an interim composite compiled early in the fiscal year (Phelps Decl., Exh. 1). And unlike plaintiff's final ranking, defendant's interim one carried no promise that it would be relied upon in the performance evaluation process (Compare Elion Decl., Att. 5 with Phelps Decl., Exh. 1).

### D.   Comparators

Plaintiff's Opposition (at 1) demonstrated that she was the lone African American female among OIG's thirteen Headquarters Audit Division Directors and Regional Inspectors General (Elion Decl., ¶6). It also showed (at 4) that the only other Audit Division office head reassigned over his objection, Michael Beard, was removed after he filed an EEO complaint (Heist Dep. at 67-69, 75, 142-48; Elion Decl., ¶30; Beard Decl., ¶16). Plaintiff also established that by HUD OIG's own system of ranking, her former Office was ranked third for FY 2004, even though it was only in existence for half a year (Pl. Opp. at 2) (Elion Decl., ¶34 & Att. 5). By contrast, the worst performing of the thirteen offices, one headed by a white male, had not met its performance goals for years (Id.; Beard Decl., ¶26).

These thirteen Division Directors and Regional Inspectors General are all comparators (Pl. Opp. at 23, 32). They are all similarly situated to plaintiff, a conclusion based on evidence including defendant's own admissions, because they all have the same supervisory chain; serve at the same grade level; are supervisors who manage audit Divisions and offices; and have the same basic duties and responsibilities (Heist Dep. at 4, 27-29; Elion Decl., ¶¶3-5 & Att. 13 at 2-10; Beard Decl., ¶¶9-11; Phelps Dep. at 3, 10-11). E.g., Neuren v. Adduci, Mastriani, Meeks &

11

Schill, 43 F.3d 1507, 1514 (D.C. Cir. 1995) (quoting Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 802 (6th Cir. 1994)); Radue v. Kimberly Clark Corp., 219 F.3d 612, 617-18 (7th Cir. 2003).

Defendant's motion for summary judgment failed to address the issue of comparators, except for posturing that plaintiff had none (Def. Mem. at 9). For the first time, its Reply offers several arguments on this score (Def. Reply at 5-6). One is beside the point; two are ridiculous. And the fourth contravenes the basic rule that any dispute about comparator status is "a question of fact for the jury." George v. Leavitt, supra, 407 F.3d at 415; accord, Gipson v. Wells Fargo, N.A., supra, 460 F.Supp.2d at 30.

Defendant first argues that plaintiff has not pointed to a specific Division Director or Regional Inspector General as a comparator (Def. Reply at 5). That is because plaintiff, former Regional Inspector General Michael Beard, the Assistant Inspector General for Audit, and the Deputy Assistant Inspector General for Audit gave declarations and deposition testimony that all thirteen office heads were comparators (Heist Dep. at 4, 27-29; Elion Decl., ¶¶3-5 & Att. 13 at 2-10; Beard Decl., ¶¶9-11; Phelps Dep. at 3, 10-11).

Next, defendant pretends not to know which of the three Headquarters Audit Division Directors plaintiff identifies as the worst performing office head in FY 2004, but boasts that it "*surmises*" who it was (Def. Mem. at 6, n.3)(emphasis in original). The director of the Division in question, the Information Systems Division, is clearly identified as GAA on defendant's own chart for FY 2004 (Elion Dec., Att. 5), which was identified by name by the Assistant Inspector General for Audit during his deposition (Heist Dep. at 125-26).[9] No guesswork was needed for defendant to deduce that the Information Systems Division, left untouched when defendant

---

[9] These pages from the Heist Deposition have also been filed with this Motion.

12

selected plaintiff's former Division for dissolution, was OIG's worst performing audit office.

Defendant continues by stating that plaintiff did not "point[] to any evidence in the record" demonstrating that she was similarly situated to any other Division Director or Regional Inspector General (Def. Reply 6, n.3). Actually, she went far beyond identifying one comparator, and showed that the heads of all 13 of OIG's Divisions and offices that generate audit reports are comparators (Pl. Opp. at 23, 32). This was proven by Mr. Beard's declaration, which attested to the fact that: "All of the incumbents in these positions are accomplished auditors; all are supervisors; and all of their positions are functionally equivalent … The differences were in geographical location and areas of emphasis" (Beard Decl., ¶¶9-10). Plaintiff herself confirmed that:

> The program activities they manage are essentially the same, with the only meaningful distinction being that Regional offices concentrate on field audits and operations and Headquarters Divisions focus on activities at HUD Headquarters.

(Elion Decl., ¶3). Defendant's own top management officials also admitted in their depositions that these auditors were similarly situated (Heist Dep. at 4, 27-29; Phelps Dep. at 3, 10-11). Materials such as these are unquestionably recognized as evidence by Rule 56(c), Fed. R. Civ. P.

In a footnote, defendant argued that the Director of the Information Systems Division, the worst performing OIG audit division, was not a comparator because that Division focuses on computer systems and some of its auditors have certifications (Reply at 6, n.3). By the admission of the Deputy Assistant Inspector General at his deposition, the audits of plaintiff's former Division were transferred to the Information Systems Division once it was abolished (Phelps Dep. at 74-75). Furthermore, the declarations of plaintiff and Mr. Beard unquestionably provided firm evidence that she and this Division Director were comparators (Elion Decl., ¶3; (Beard Decl., ¶¶9-10). This evidence sets up a question of fact for a jury. E.g., George v.

Leavitt, supra, 407 F.3d at 415. It was impermissible for defendant to contend otherwise for the first time in reply. E.g., Public Citizen Health Research Group, supra, 209 F.Supp.2d at 43-44.

### IV. Defendant's Reply Was Accompanied By Two Unauthorized Supplements to Its Statements of Material Facts

LCivR 56.1 specifies that a motion for summary judgment shall be accompanied by a Statement of Material Facts and that an Opposition shall be accompanied by a Statement of Genuine Issues. On reply, defendant filed a Response to Plaintiff's Statement of Genuine Issues and a Reply to Plaintiff's Response to Defendant's Statement of Material Facts Not In Genuine Dispute. These submissions are not authorized by the Local Rules of the Court. They are nothing but another attempt by defendant to make new factual arguments on reply and deprive plaintiff of the opportunity to rebut.

### V. Defendant's Reply Confused The Record By Needlessly Numbering the Attachment to Plaintiff's Opposition

The Court's ECF system, as reflected by the docket sheet in this case, linked numbered Attachments to Plaintiff's Opposition, which used the same numbers assigned to them in plaintiff's declaration (Compare Elion Decl., ¶46(a)-(z) with Exh. I at 6-7).[10] The ECF system also linked declarations, deposition excerpts, the statement of material facts, and proposed order to Plaintiff's Opposition (Exh. I). This method of filing, which does not rely on separate exhibit covers, is frequently used by the U.S. Attorneys Office, e.g., Pendleton v. Gonzales, Civ. Action No. 04-1838 (RJL); the D.C. Attorney General's Office, e.g., Howard v. District of Columbia, Civ. Action No. 04-2082 (PLF); and private employers, e.g., Gipson v. Wells Fargo, Civ. Action Nos. 00-2865, 05-1184 (JMF).

For reasons best known to defendant, it took great exception to this system of filing.

---

[10] As stated in n.2, supra, the Court's ECF system has linked lettered Exhibits to this Motion.

14

Rather than referring to the materials that accompanied Plaintiff's Opposition by their given numbers, defendant instead used ECF numbers which reflect nothing more than the sequence in which they were filed (Def. Reply at 3, n.2). In other words, instead of using the numbers assigned to the Attachments assigned in Plaintiff's Opposition, defendant's Reply cites plaintiff's Attachments Nos. 1 through 25 as ECF 37-10 through ECF 37-25. This, counsel for defendant asserts, was done "for the sake of consistency" and without first contacting plaintiff's counsel (Def. Reply at 3, n.2).

Concerned that the absence of cover pages might cause confusion, counsel for plaintiff immediately contacted the Civil ECF Help Desk. The ECF clerk then on duty assured counsel that the system of numbering and filing employed by plaintiff was correct and that filing a sheet cross-referencing Plaintiff's Attachment numbers to the numbers assigned by the ECF system would create difficulty for Chambers. The ECF clerk also had a message to be delivered to defendant's counsel which, in diplomatic terms, was intended to advise counsel that he erred.[11] Despite being given this message and being asked to correct defendant's reply, counsel refused.

---

[11] If requested by the Court, counsel for plaintiff will share the text of the ECF clerk's message.

15

## **CONCLUSION**

For the foregoing reasons, plaintiff respectfully moves the Court to strike the Reply in Support of Defendant's Motion for Summary Judgment; defendant's Response to Plaintiff's Statement of Genuine Issues; and defendant's Reply to Plaintiff's Response to Defendant's Statement of Material Facts, and to order defendant to submit a Reply that does not contain argument and evidence beyond the scope of defendant's opening Motion.  In the alternative, plaintiff respectfully moves the Court, pursuant to LCivR 7(f), to schedule an oral hearing on defendant's motion for summary judgment.

Respectfully submitted,

_____/s/_____
Robert C. Seldon, Esq.
  D.C. Bar No. 245100


_____/s/_____
Molly E. Buie, Esq.
  D.C. Bar No. 483767
Robert C. Seldon & Associates, P.C.
1319 F Street, N.W.
Suite 305
Washington, D.C.  20004
(202) 955-6968

Counsel for Plaintiff