**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

SAUNDRA ELION,                    )
                                  )
        Plaintiff,                )
                                  )
        v.                        ) Civil Action No. 05-0992 (PLF)
                                  )
ALPHONSO R. JACKSON,              )
Secretary of the                  )        ECF
U.S. Dept. of Housing and         )
Urban Development,                )
                                  )
        Defendant.                )
_____ )

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE OR,**
**IN THE ALTERNATIVE, FOR ORAL HEARING (DKT No. 41)**

**I.    Introduction.**

Plaintiff's Motion[1] is a thinly veiled, disguised "sur-reply" to Defendant's Reply in

Support of Motion for Summary Judgment.  A month after Defendant's Reply, Plaintiff moved

to strike Defendant's Reply arguing that the memorandum raised issues not previously advanced

in Defendant's Motion for Summary Judgment.  Plaintiff's Motion does nothing to advance the

litigation of this case; rather, it imposes unnecessary demands on Defendant to respond to

Plaintiff's Motion and wastes limited judicial resources for the Court to decide the issue.  Indeed,

Plaintiff's Motion raises the same unsubstantiated factual and legal arguments – albeit in a more

condensed format – as in her Opposition to Defendant's Motion for Summary Judgment.

Perhaps knowing that Plaintiff's motion for leave to file a sur-reply would certainly be

_____

[1]        Plaintiff's Motion to Strike or, in the alternative, for Oral Hearing ("Motion").
<u>See</u> Dkt. No. 41.

denied, Plaintiff engages in a pretext by filing this Motion to Strike to have the "last word" on Defendant's Motion for Summary Judgment.[2]  The Court should not condone this maneuver and should summarily deny Plaintiff's Motion.

As shown below, Plaintiff fails to articulate a procedural basis for her Motion to Strike because Fed. R. Civ. P. 12(f) does not apply to briefs and legal memoranda.  Moreover, Plaintiff's Motion, citing Defendant's Reply out of context, maintains that Defendant raised new factual and legal arguments for the first time in its Reply.  Plaintiff is mistaken.  Defendant's arguments in the Reply merely refuted and addressed the issues that Plaintiff raised in her Opposition, which is precisely the purpose of a reply brief.

For these reasons and those elaborated below, the Court should deny Plaintiff's Motion to Strike Defendant's Reply.  Moreover, the Court should also deny Plaintiff's alternative request for a motions hearing because it is unnecessary.

---

[2]    It appears that this is not Plaintiff's counsel's first time employing this tactic to get the last word.  In fact, in two other cases Plaintiff's counsel filed similar motions to strike reply briefs and other memoranda.  Specifically, in Baloch v. Norton, Civ. No. 03-1207 (RMU/AK) (D.D.C.), Plaintiff's counsel filed a "Motion to Strike Reply To Opposition to Summary Judgment and Defendant's Response to Plaintiff's Statement of Genuine Issues."  See Baloch v. Norton, Civ. No. 03-1207 (RMU/AK) (Dkt. No. 59).  The motion to strike is pending.

Similarly, in Pendleton v. Ashcroft, Civ. No. 04-1838 (RJL) (D.D.C.), Plaintiff's counsel filed a motion for leave to file a sur-reply and a motion to strike.  Pendleton v. Ashcroft, Civ. No. 04-1838 (RJL) (Dkt. No. 25).  Judge Leon summarily denied the motion even before an opposition was filed.  Id. (June 28, 2007 Minute Order).

This present Motion, therefore, is counsel's third such motion.

II.    **Argument.**

   A.    **Plaintiff Does Not Have A Procedural Basis to Move to Strike Defendant's Reply.**

As an initial matter, Plaintiff has not articulated a legal standard for the Court to use in evaluating Plaintiff's Motion.  Indeed, the only conceivable legal standard is embodied in Fed. R. Civ. P. 12(f) – Motion to Strike.  Therefore, it appears that the only procedural mechanism for Plaintiff to move to strike Defendant's Reply is set forth in Rule 12(f).

Fed. R. Civ. P. 12(f) does not apply here because Defendant's Reply is not one of the types of submission that can be stricken under Rule 12(f).  "A motion to strike is a vehicle to strike a complaint, answer, reply to a counterclaim, answer to a cross-claim, third-party complaint, or third-party answer."  Naegele v. Albers, 355 F. Supp. 2d 129, 142 (D.D.C. 2005). Motions to strike cannot be used to strike a summary judgment motion or a reply thereto because motions and replies are not "pleadings" as defined in Fed. R. Civ. P. 7(a).  Id. (citing cases which note that Rule 12(f) motions only apply to pleadings and not to motions).  Indeed, "[o]nly material included in a 'pleading' may be the subject of a motion to strike and courts have been unwilling to construe the term broadly.  Motions, briefs or memoranda, objections, or affidavits may be not be attacked by the motion to strike."  2 *Moore's Federal Practice*, §12.37[2] (Matthew Bender 3d ed.).  Moreover, "[m]otions to strike are a drastic remedy, which courts generally disfavor."  Naegle, 355 F. Supp. 2d at 142.  Under this legal standard, Plaintiff's current Motion is improper and the Court should summarily deny it.

**B.     Plaintiff's Motion Is Meritless**.

**1.     Defendant Did Not Raise New Argument On Temporal Proximity**.

Plaintiff's Motion argues that Defendant's Reply addressed <u>Gipson v. Wells Fargo, N.A.</u>, for the first time and that Defendant mischaracterized the decision.  Pl. Mot. 5-6.  Plaintiff's assertion lacks merit.

Plaintiff's Opposition principally cited <u>Gipson</u> to oppose Defendant's Motion for Summary Judgment on Plaintiff's retaliation claim.  <u>See</u> Opp. at 29-30.[3]  Unsurprisingly, in the Reply, Defendant distinguished <u>Gipson</u> and argued that the principles enunciated in <u>Gipson</u> do not apply to this case.  <u>See</u> Def. Mot. at 18-10.  In short, Defendant addressed <u>Gipson</u> "for the first time" only because Plaintiff relied on that case in her Opposition.  Under these facts, Defendant did not improperly raise new arguments on temporal proximity for the first time in its Reply.

Plaintiff, however, devotes three pages in her current Motion discussing <u>Gipson</u> and attempts to rehabilitate her flawed argument that there was a nexus between her prior protected activity and the alleged retaliatory conduct –  despite the fact that there was a 16-month gap between the two events.  Pl. Mot. at 5-7.  Plaintiff's argument reveals its true color – namely, an attempt to sneak in a sur-reply.

**2.     Treatment of Plaintiff's Predecessors.**

Plaintiff's Motion asserts that Defendant's treatment of Messrs. Austin Groom (African-American male) and Michael Beard (White male) was evidence of pretext for discrimination and

---

[3]     Plaintiff's Opposition to Defendant's Motion for Summary Judgment (" Opp.").
Dkt. No. 37.

retaliation against Plaintiff.  Pl. Mot. at 2, 7-8.  Plaintiff raised this precise argument in her

Opposition.  See Opp. at 11-12, 24, 27.

Mr. Groom was involuntarily reassigned to a different position two years *prior* to his

filing of a discrimination complaint in May 2001.  Def.  Reply at 8.  Therefore, Mr. Groom's

complaint could not be the protected activity that formed the basis for Defendant's alleged

retaliatory conduct.  Furthermore, Mr. Groom filed his complaint after being placed on a

Performance Improvement Plan (PIP) and was subsequently terminated when he failed the PIP.

Mr. Groom testified in his deposition that his removal, after he failed the PIP, was not

discriminatory. Def. Reply ( Groom Depo.at 29:6-21) (Gov. Reply Exh. E ).  Mr. Groom's

reassignment and termination are not evidence of retaliation against Plaintiff.

Mr. Beard was reassigned in January 2005 because management no longer wanted him to

supervise Region VI.  The reassignment occurred more than two years after his discrimination

complaint was settled.  Def. Reply at  8.  More importantly, Mr. Beard's reassignment in January

2005 took place approximately 13 months *after* the disbanding of the Headquarters Audit

Division ("HAD") that led to Plaintiff's reassignment.  Id.  Mr. Beard's reassignment does not

support Plaintiff's discrimination and retaliation claims.

It should be clear to the Court that Plaintiff raised these red-herring arguments to distract

from the core issue in this case: whether Defendant discriminated and retaliated against Plaintiff

when – because of a hiring freeze and other work priority – Defendant disbanded the

Headquarters Audit Division and reassigned her and other employees of the HAD to other

divisions.

### 3. Defendant's Sworn Statements Did Not Contradict Other Evidence.

### a. Deviation from Standard Practices.

Plaintiff's Motion states that "Plaintiff's Opposition (at 13-14) demonstrated that defendant's sworn interrogatory responses admitted neither of OIG's servicing personnel offices was consulted about the decision to abolish plaintiff's former division." Pl. Mot. at 9. Plaintiff's argument reveals her true intention with this Motion – namely, to have the last word. If Plaintiff had previously made the argument in her Opposition, she should not be allowed to reiterate it here in her Motion to Strike.

In any event, Plaintiff's Motion (like her Opposition) cited Plaintiff's attachment 13, 20, and 21 to support her argument that Defendant's sworn interrogatory is contradictory. Pl. Mot. at 9. These documents, however, do not support Plaintiff's argument. For example, Plaintiff cites "Att. 13 at 11" (see Dkt. No. 37-23), which is Defendant's interrogatory responses. The cited pages neither discuss Defendant's compliance nor deviation from any procedure. The cited pages merely discuss the functions of the Headquarters Office of Audit. See Dkt. No. 37-23 (Defendant's Interr. Responses).

Plaintiff then cites "Att. 20 at 2" (see Dkt. No. 37-30), which is a letter from Plaintiff's counsel to Defendant's counsel disputing Defendant's responses to Plaintiff's written discovery request. See Dkt. NO. 37-30 (March 14, 2006 Letter from Seldon to Truong). A letter from Plaintiff's counsel is not substantive evidence. Finally, Plaintiff cites "Att. 21" (see Dkt. No. 37-31), which is a response from Defendant to Plaintiff's correspondence on discovery issues. See Dkt. No. 37-31 (March 28, 2006 Letter from Truong to Seldon). Like Defendant's interrogatory responses, these two letters do not mention whether "OIG's servicing personnel offices was

consulted."

In his Memorandum proposing to disband HAD in April 2004, Mr. Heist stated that he consulted with the Human Resources Division ("HR") to ensure the realignment could be accomplished without adversely affecting any employees' grade or benefits. Def. Reply at 11 (citing Heist Deposition). Mr. Phelps confirmed that his standard of practice was to consult HR. Def. Reply at 11 (citing Phelps Deposition).

Comparing the documents cited by Plaintiff and the depositions of Messrs. Heist and Phelps do not show any contradiction. Simply put, the documents cited by Plaintiff addressed entirely different sets of issues and do not speak to the issue of consulting with HR when Defendant disbanded the HAD. Therefore, these documents do not contradict statements given by Messrs. Heist and Phelps in their depositions.

### b.     Plaintiff's Job Performance Was Irrelevant.

Plaintiff's Motion attempts to twist the facts to show that Plaintiff's job performance played a role in Defendant's decision to disband the HAD, which led to her reassignment to a non-supervisory position. Pl. Mot. at 9-10. Plaintiff's Motion argues that Defendant provided contradictory reasons for the disbanding of the HAD. Id. Plaintiff raises this argument for the first time in this Motion. The Court should summarily reject this new argument as untimely.

In any event, there is no contradiction. Mr. Heist explained the reasons for disbanding the HAD in his memorandum of April 20, 2004. Deputy Inspector General Stephens questioned the Plaintiff about Donna Hawkins' management style, not that of Plaintiff's, because he had received complaints about Ms. Hawkins' management style. Def. Reply at 13. He was upset not with Plaintiff but because of the possibility that OIG had managers (Hawkins) who treated

employees so poorly that the employees chose to resign.  Id.

This argument is another red-herring because it is irrelevant to Plaintiff's sex, age, or race, or her retaliation claims.  There is no nexus between Mr. Stephens' reaction and Mr. Heist's decision to disband the HAD.

### c.    Performance of Plaintiff's Former Division Is Irrelevant.

Plaintiff's Motion states that "Plaintiff's Opposition (at 12-13) demonstrated that in FY-2004, her former Division ranked third among the thirteen audit producing HUD OIG nationwide."  Pl. Mot. at 10.  Again, Plaintiff had previously made this argument in her Opposition and, therefore, she should not be allowed to repeat it in her Motion to Strike.  Plaintiff's current argument on this issue further highlights her true intention with this Motion – namely, to submit a sur-reply.

Defendant will not address Plaintiff's contention in detail as it previously refuted this same argument in the Reply.  See Def. Reply at 9-10.   In short, the relative performance of Plaintiff's former Division was not considered by Mr. Heist when he proposed to disband the HAD.  Id. (citing Apr. 20, 2004 Memorandum) (Gov. Exh. F).  Mr. Heist set forth the rationale for the dissolution of the HAD in the April 20, 2004 Memorandum.  Id.

### d.    Plaintiff Failed to Identify Proper Comparators.

Plaintiff's Opposition failed to identify an appropriate comparator who was given preferential treatment over her.  Recognizing her Opposition's infirmity, Plaintiff attempts to bolster her case by devoting more than three pages of her current Motion to argue that all thirteen Division Directors and Regional Inspectors General are comparators.  Pl. Mot. at 11-14. Plaintiff improperly attempts to homogenize all the GS-15 auditors and broadly asserts that these

offices were somehow fungible.  Plaintiff should not be allowed to make this new argument here.

In any event, it is inconceivable to suggest that the Office of Audit would close any of its regional offices.   As to the offices at Headquarters, the undisputed evidence is that only the Plaintiff's unit had five employees assigned to it.  Also, the undisputed evidence shows that Mr. Heist wanted to "beef up" the Technical Oversight and Policy Division (TOP), which the Plaintiff admits was understaffed, and he did so by disbanding the HAD and reassigning Ms. Hawkins to the TOP.  See Def. Reply at 14-15.

As  explained in Defendant's Reply, the Financial Audits Division (FAD) and Information Systems Audit Division (ISAD) could not be disbanded because they perform statutorily-mandated audits.  See Def. Reply 6-7 n. 3.  The FAD and ISAD conduct the annual financial statement audit and, in addition, the ISAD conducts the FISMA review.  Id. (explaining the differences between Plaintiff's HAD and the ISAD).  In short, Plaintiff still has not identified a proper comparator who received preferential treatment.

Plaintiff's Motion is designed to distract the Court from the real issue in this case: namely, whether Defendant discriminated and retaliated against Plaintiff when Defendant disbanded the HAD and reassigned her to a non-supervisory position.   As explained in Defendant's Motion and Reply, Defendant disbanded the HAD for legitimate, non-discriminatory/non-retaliatory business reasons.

Specifically, on April 7, 2004, Mr. Stephen sent an email to all OIG executives, including Mr. Heist, informing them that the agency had a projected deficit of $6.5 million and it would be under a hiring freeze.  Def. Mot. at 4.  Mr. Heist understood from this e-mail that he could not hire anyone without specific justifications and approval from Mr. Stephens.  Id.  In an e-mail

sent on April 12, 2004, Mr. Heist told his managers that there were budgetary issues and that "[w]e will continue to be under a hiring freeze for the foreseeable future."  Def. Mot. at 4-5 (Gov. Exh. E).  The Plaintiff does not dispute that these e-mails were sent.

In his Memorandum of April 20, 2004, proposing to disband HAD, Mr. Heist explained that disbanding HAD was the best way to address mission workload and the current and anticipated budget constraints.  Def. Mot. at 5, 13-15.   The Technical Oversight and Planning ("TOP") Division was understaffed and the Financial Audits Division ("FAD") was engaged in a continuous audit process because of an accelerated due date.  Def. Mot. at 14.  Mr. Heist also recognized that the HAD was down to two supervisory auditors and three staff auditors, and he anticipated detailing the staff auditors to the FAD to assist on the financial statement audit.  Id. at 5, 15.   Based on these facts, Mr. Heist thought it made business sense to disband HAD and reassign the resources.  Def. Mot. at 15.

**4.    Defendant's Reply to Plaintiff's Statement of Material Fact Is Proper.**

Plaintiff's Motion argues that the Local Rules 7(h) and 56.1 do not allow Defendant to respond to Plaintiff's Statement of Genuine Issues and reply to Plaintiff's responses to Defendant's Statement of Material Facts Not In Genuine Dispute.  Pl. Mot. at 14.  By the same token, neither Local Rules 7(h) nor 56.1 *dis*allow Defendant from filing these submissions.

Indeed, Defendant's response to Plaintiff's statement of genuine issues clarifies the issues for the Court by pointing out that Plaintiff's statement of genuine issues are (1) not in dispute; (2) not material to the case; or (3) simply inaccurate.  See Defendant's Response to Plaintiff's Statement of Genuine Issues.  Plaintiff's assertion here is only a smoke screen designed to mask the real issue in this case, which is whether Defendant disbanded the HAD in April 2004 to

discriminate against Plaintiff on account of her race, sex or age, or to retaliate against her for her December 2002 EEO complaint, which she voluntarily dismissed in March 2003. Def. Mot. at 4.

### 5. Plaintiff Failed To Label Her Attachments.

It is unclear what specific relief, if any, that Plaintiff seeks from the Court in Section V of her Motion. It appears Plaintiff is unhappy because Defendant's Reply cited Plaintiff's "Attachments" by using the ECF numbering system. This is a "tempest in a teapot."

It is not disputed that Plaintiff failed to label her "Attachments." Plaintiff, however, submitted a "declaration" that describes each "Attachment" and its respective numbers. See Dkt. No. 37-4. However, using Plaintiff's "declaration" to match up with the *un*labeled attachments requires much detective work. Therefore, for ease of reference and to avoid misunderstandings, Defendant used the ECF document number when referring to Plaintiff's attachments. It is unfortunate that Plaintiff requires court intervention on this simple issue.

### 6. Oral Argument Is Not Necessary.

Plaintiff alternatively argues that the Court should hold oral argument to address "new argument and evidence raised by defendant's reply." Pl. Mot. 1. Although oral argument is, of course, at the Court's discretion, such a hearing is not necessary.

As shown above, Plaintiff's Motion reiterates arguments that she previously raised in her Opposition. Furthermore, Defendant did not raise any new arguments in the Reply, it merely addressed assertions made by Plaintiff in her Opposition. Finally, the parties have submitted voluminous documentation in support of their respective positions. A hearing will only plough over old ground and waste judicial resources and time. Accordingly, the Court should deny Plaintiff's alternative request for oral argument.

**III.    Conclusion**.

For the foregoing reasons, the Court should deny Plaintiff's Motion to Strike or, in the

alternative, for Oral Hearing.

Dated: July 10, 2007.                          Respectfully Submitted,


                                   ___/s/   Jeffrey A. Taylor_____
                                   JEFFREY A. TAYLOR, D.C. BAR # 498610
                                   United States Attorney


                                   ___/s/   Rudolph Contreras_____
                                   RUDOLPH CONTRERAS, D.C. BAR #434122
                                   Assistant United States Attorney


                                   ___/s/   John C. Truong_____
                                   JOHN C. TRUONG, D.C. BAR #465901
                                   Assistant United States Attorney
                                   555 Fourth Street, N.W.
                                   Washington, D.C.  20530
                                   (202) 307-0406

                                   Attorneys for Defendant

**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SAUNDRA ELION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 05-0992 (PLF) |
| | ) |
| ALPHONSO R. JACKSON, | ) |
| Secretary of the | )        ECF |
| U.S. Dept. of Housing and | ) |
| Urban Development, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

**ORDER**

Upon consideration of Plaintiff's Motion to Strike or, in the alternative, for Oral Hearing

and Defendant's Opposition thereto, it is this _____ day of _____, 2007,

ORDERED that Plaintiff's Motion to Strike or, in the alternative, for Oral Hearing be and

is hereby DENIED.

SO ORDERED.


_____
U.S. District Judge