**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **SAUNDRA ELION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 05-0992 (PLF)** |
| | ) | |
| **ALPHONSO R. JACKSON,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**JOINT PRETRIAL STATEMENT**

### Plaintiff's Statement of Remaining Parties, Claims and Defenses

The plaintiff in this action is Saundra G. Elion, an African American woman who engaged in protected EEO activity.  Ms. Elion is employed by the Office of Audit of the Office of Inspector General ("OIG") of the Department of Housing and Urban Development ("HUD").  During the events underlying this litigation, Ms. Elion was the Director of the Headquarters Audits Division of that organization.

Ms. Elion claims that defendant discriminated against her on account of her race and her sex, and retaliated against her because of her use of the administrative discrimination complaints process, when defendant removed her from her position as the Director of the Headquarters Audits Division on April 21, 2004, disbanded her former Division, relieved her of management duties, and/or reassigned her involuntarily to a materially less desirable position.

The actions at issue were taken by senior management of HUD OIG; the Secretary of Housing and Urban Development remains the nominal defendant.

Ms. Elion's claims arise under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-16.[1]

---

[1]     Ms. Elion also claims that defendant discriminated against her on account of her age and retaliated against her in taking these employment actions, in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§621 et seq.  As a federal employee, Ms. Elion does not have the right to a jury trial on these claims.

**a.  Defendant's Description of Remaining Parties and Claims.**

The Court denied Defendant's Motion for Summary Judgment.  As a result, Plaintiff's claims of race and gender discrimination under Title VII and age discrimination under the ADEA remain.  See Amended Complaint at Counts II, III and IV.  Furthermore, Plaintiff's retaliation claims under Title VII and the ADEA also survive summary judgment and remain for trial.  See Amended Complaint at Counts I and V.  Plaintiff previously voluntarily dismissed Counts VI to IX of her First Amended Complaint.  See Dkt. No. 34.

Plaintiff's claims under the ADEA are tried before the Court.

## Plaintiff's Statement of Facts and Claims

Saundra G. Elion is the plaintiff in this case. Ms. Elion is an African American woman, who engaged in protected EEO activity between December of 2002 and March of 2003. Ms. Elion is employed by the Office of Audit of the Office of Inspector General ("OIG") of the Department of Housing and Urban Development ("HUD"). When defendant took the employment actions that are the subjects of this suit, Ms. Elion was the Director of the Headquarters Audits Division of that organization. At the time, the Headquarters Audits Division was among the highest performing Divisions and Regions in the Office of Audit.

Ms. Elion began serving as Director of the Headquarters Audits Division in May of 2002. That Division was one of four Headquarters Divisions in the HUD OIG Office of Audit in Washington, D.C., until defendant took the actions underlying this suit, when it abolished Ms. Elion's former Division. The Office of Audit itself is either the largest or among the largest organizational components of HUD OIG.

Ms. Elion claims that she was discriminated against on account of her race (African American) and her sex (female), and retaliated against because of her use of the administrative discrimination complaints process, when defendant removed her from her position as the Director of the Headquarters Audits Division on April 21, 2004, disbanded her former Division, relieved her of management duties, and/or reassigned her involuntarily to a materially less desirable position.

HUD OIG is organized as follows, insofar as is relevant to this suit.

The Deputy Inspector General is second in command in the HUD OIG, serves as its chief operating officer, and answers directly to the Inspector General. During the events

underlying this litigation, the Deputy Inspector General was Michael Stephens. One of the immediate subordinates of the Deputy Inspector General is the Assistant Inspector General for Audit, who heads the Office of Audit. During the events underlying this litigation, that individual was James Heist. During the events underlying this litigation, Michael Phelps served as the Deputy Assistant Inspector General for Audit. Mr. Phelps' first line supervisor was James Heist, and his second line supervisor was Michael Stephens.

These are the individuals who were in the chain-of-command above Ms. Elion until defendant took the employment actions that are at issue in this suit and who remain in the chain-of-command of all similarly situated senior managers in the Office of Audit.

Mr. Heist, Mr. Phelps, and Mr. Stephens are all Caucasian men. One or more of them are responsible for the employment actions that Ms. Elion claims were discriminatory and retaliatory.

In her position as Director of the Headquarters Audits Division, Ms. Elion managed the OIG audit division primarily responsible for internal audits and the preparation of audit reports for HUD Headquarters programs and activities. Ms. Elion was also personally responsible for performing audits and issuing audit reports in more complicated and sensitive areas involving HUD officials.

Until the events giving rise to this suit, the Office of Audit had four Headquarters Divisions, each headed by a Division Director; and ten Regional field offices (formerly District offices), each headed by Regional Inspectors General for Audits. Like Ms. Elion, Headquarters Division Directors and Regional Inspectors General for Audits report to the same management officials; are Grade 15's; are accomplished auditors; and supervisors.

Headquarters Division Directors and Regional Inspectors General for Audits are responsible for managing the audit programs of HUD, there are no other managers at their level, and they are all similarly situated.

Until this suit was filed, Ms. Elion was the only African American female to have served as either a Headquarters Division Director or a Regional Inspector General for Audit in the Office of Audit.

Ms. Elion was one of only two Headquarters Division Directors and Regional Inspector Generals for Audit to have utilized the protected EEO discrimination complaints process. After doing so, both were removed as managers and reassigned involuntarily to special assistant positions. No other Headquarters Division Directors or Regional Inspectors General for Audits have ever been reassigned involuntarily.

Ms. Elion claims that defendant discriminated against her on account of her race and her sex, and retaliated against her because of her use of the administrative discrimination complaints process, when defendant removed her from her position as the Director of the Headquarters Audits Division on April 21, 2004, disbanded her former Division, relieved her of management duties, and/or reassigned her involuntarily to a materially less desirable position.[1]

---

[1]    Ms. Elion also claims that defendant discriminated against her on account of her age and retaliated against her in taking these employment actions, in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§621 et seq. As a federal employee, Ms. Elion does not have the right to a jury trial on these claims.

**b. Defendant's Statement of Defenses.**

Defendant asserts that there was no discrimination or retaliation in the decision at issue. Specifically, Defendant had non-discriminatory, non-retaliatory, and legitimate business reasons for dissolving the Headquarters Audit Division in the Office of Audit ("HAD") and reassigned Plaintiff to become the Special Assistant to the Assistant Inspector General of Audit ("AIGA"). Due to budgetary constraints and a hiring freeze in the Spring of 2004, Defendant had to dissolve the HAD to reallocate personnel and resources to meet other agency's needs. Defendant had to reassign three auditors from the HAD to the Financial Audits Division to help the agency meet its financial audit obligation under the Chief Financial Officers Act of 1990. As a result of this reassignment, HAD was left with a GS-14 Assistant Director and Plaintiff, a GS-15 Director. However, the Technical Oversight and Planning Division ("TOP") needed more resources. As a result, Defendant reassigned the GS-14 Assistant Director to TOP. After this reassignment, the HAD was left with only the Plaintiff. It made no business sense to keep a division with only the Director and there were no other supervisory positions to which Plaintiff could have been reassigned. The reassignment did not affect Plaintiff's grade, salary or any other benefits and in fact moved Plaintiff up one level in the reporting chain as she now reports directly to the Assistant Inspector General for Audit, one of only 3 people who report directly at that level. Therefore, a reasonably jury could find that Plaintiff's reassignment may not constitute an adverse employment action. Furthermore, a reasonable jury would find that Defendant has legitimate, non-discriminatory and non-retaliatory for the reassignment.

Defendant also asserts that to the extent that the jury concludes that Plaintiff's reassignment was motivated by discrimination or retaliation, nonetheless Defendant would have taken the

same action even in the absence of any discrimination or retaliation.  See Fogg v. Gonzales, 492

F.3d 447, 451 (D.C. Cir. 2007).

**Parties' Stipulations of Fact**

1.)     Saundra G. Elion is the plaintiff in this action.

2.)     Ms. Elion is an African American woman.

3.)     Ms. Elion was first employed by the Office of Inspector General ("OIG") of the Department of Housing and Urban Development ("HUD") in June of 1999 as the District Inspector General for Audit of the HUD OIG Capital District in Washington, D.C., at the Grade GS-15.

4.)     Ms. Elion began serving as Director of the HUD OIG Headquarters Audits Division in May of 2002.

5.)     From that point, until the events underlying this litigation occurred, the Headquarters Audits Division was one of four Headquarters Divisions in the HUD OIG Office of Audit in Washington, D.C.

6.)     The Deputy Inspector General is second in command in the HUD OIG, serves as its chief operating officer, and answers directly to the Inspector General.  During the events underlying this litigation, the Deputy Inspector General was Michael Stephens.

7.)     One of the immediate subordinates of the Deputy Inspector General is the Assistant Inspector General for Audit.

8.)     The Office of Audit is headed by the Assistant Inspector General for Audit. During the events underlying this litigation, that individual was James Heist.

9.)     During the events underlying this litigation, Michael Phelps served as the Deputy Assistant Inspector General for Audit.  Mr. Phelps' first line supervisor was James Heist, and his second line supervisor was Michael Stephens.

10.)    Effective April 21, 2004, HUD OIG disbanded of the Headquarters Audits Division, removed Ms. Elion from a management position, reassigned Ms. Elion's staff to other Divisions, and reassigned Ms. Elion to a special assistant position.

11.)    Thereafter, there were three Headquarters Divisions in the HUD OIG Office of Audit in Washington, D.C.

12.)    Before the administrative complaints process that gave rise to this suit, Ms. Elion engaged in protected EEO activity when she filed an informal EEO complaint against HUD OIG in December of 2002; that process ran until March 20, 2003.

13.)    Ms. Elion's claims at trial arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-16 (incorporating 42 U.S.C. §§2000e-2, 2000e-3).

14.)    The Court has jurisdiction over Ms. Elion's claims at trial under 42 U.S.C. §2000e-5 (incorporated into 42 U.S.C. §2000e-16).

## Plaintiff's Witnesses[1]

Saundra G. Elion
C/o Robert C. Seldon & Associates, P.C.

Ms. Elion is the plaintiff in this action and will testify to all aspects of liability and damages including, but not limited to, her work history as Director of the HUD OIG Headquarters Audits Division and before; her prior protected activity and its outcome; the discrimination and harassment she continued to be subjected to after that process; the disbanding of her former division; her removal as a manager; her involuntary reassignment to a non-supervisory position that had significantly less responsibility, exposure, and opportunity for professional advancement; and the effects of defendant's unlawful actions on her. The estimated time for Ms. Elion's direct testimony is 3 to 4 hours. She will be called as a witness.

James Heist:
C/o HUD Office of Inspector General

Mr. Heist is the Assistant Inspector General for Audits and was one of the officials responsible for disbanding Ms. Elion's former division, relieving her of supervisory duties; and reassigning her to a make-work position as a Special Assistant. Mr. Heist was also involved in Ms. Elion's original EEO complaint. The estimated time for Mr. Heist's direct testimony is 45 minutes. He will be called as a witness.

Michael Stephens:
C/o HUD Office of Inspector General

Mr. Stephens is the Deputy Inspector General and was one of the officials responsible for disbanding Ms. Elion's former division, relieving her of supervisory duties; and reassigning her to a make-work position as a Special Assistant. Mr. Stephens was the management official who

---

[1]    Plaintiff respectfully reserves the right to call any witnesses listed by defendant and one or more custodians of defendant's records.

refused to engage in efforts to mediate or settle Ms. Elion's original EEO complaint unless she participated without counsel and was responsible for the outcome of that process. The estimated time for Mr. Stephens' direct testimony is 30 minutes. He will be called as a witness.

Michael Phelps:
3903 Croydon Lane
Bowie, Maryland 20715.

Mr. Phelps was the Deputy Assistant Inspector General for Audit to Mr. Heist and is aware of many of the issues surrounding defendant's alleged need to disband Ms. Elion's former division, relieve her of supervisory duties, and reassign her to a make-work position as a Special Assistant including, but not limited to, the alleged need for her staff in other audit divisions, defendant's departures from standard business practices in disbanding Ms. Elion's former division. Mr. Phelps was also involved in Ms. Elion's original EEO complaint. The estimated time for Mr. Phelps' direct testimony is 30 minutes. He will be called as a witness.

Austin Groom:
C/o Department of Housing and Urban Development

Mr. Groom is an African American and was Ms. Elion's predecessor as District Inspector General for Audit and answered to the same senior officials in the Office of Audit. Mr. Groom will testify that he was reassigned involuntarily from that position as a special assistant, filed an EEO complaint, and was eventually fired by these same management officials. The estimated time for Mr. Groom's direct testimony is 10 minutes. He will be called as a witness.

Stanley McLeod:
11015 Kenilworth Avenue
Garrett Park, Maryland, 20896

Mr. McLeod was the Director of the Division of Technical Oversight and Planning, one of the two Headquarters Divisions to which Mr. Elion's staff was reassigned. Mr. McLeod will

testify about the alleged need for additional personnel in his Division.  The estimated time for

Mr. McLeod's direct testimony is 10 minutes.  He will be called as a witness.

> Donna Hawkins:
> C/o HUD Office of Inspector General

Ms. Hawkins is an African American and was Ms. Elion's Assistant Director when the

Headquarters Audits Division was disbanded and Ms. Hawkins, like Ms. Elion, was removed

from a supervisory position and reassigned to the Division of Technical Oversight and Planning.

Ms. Hawkins has knowledge of defendant's unlawful acts towards Ms. Elion leading up the

disbanding of the Headquarters Audits Division including, but not limited to, Mr. Elion's

accomplishments as Director of the Headquarters Audits Division and the Division itself;

defendant's reduction of staff from that Division after Ms. Elion filed her original EEO

complaint; the absence of need for Ms. Elion's former staff in the Division of Technical

Oversight and Planning and elsewhere; and the discrimination and retaliation that defendant

subjected Ms. Hawkins' to before and after she filed an EEO complaint.  The estimated time for

Ms. Hawkins' direct testimony is 30 minutes.  She will be called as a witness.

> D. Michael Beard:
> C/o HUD Office of Inspector General

Mr. Beard was a senior official in the HUG OIG Office of Audit, specifically Regional

Inspector General for Audit for the HUD OIG in Texas, from 1992 through 2005.  Mr. Beard's

work brought him into repeated contact with other Regional Inspectors General for Audit and

Headquarters Division Directors and can attest to their comparability, to Ms. Elion's capabilities

as a Division Director, and to the ranking and superior performance of her former office.  Mr.

Beard will also testify about the alleged hiring freeze that led to Ms. Elion's former Division

being disbanded, and the absence of need for her staff in other divisions.  Mr. Beard will also

testify that he was involuntarily transferred to a special assistant position after he filed an EEO complaint and, after being relocated to a cubicle next to Ms. Elion's, has observed that she has little work to perform. The estimated time for Mr. Beard's direct testimony is 30 minutes. He will be called as a witness.

Janet Bonds:
C/o HUD Office of Inspector General

Ms. Bonds is a Senior Auditor in the Division of Technical Oversight and Planning both before and after the Headquarters Audits Division was disbanded. Ms. Bonds, a desk officer in the Division of Technical Oversight and Planning, has knowledge of Mr. Elion's accomplishments as Director of the Headquarters Audits Division and the Division itself in comparison to other Regions and Divisions in the Office of Audits; the continuing need for the Headquarters Audits Division to perform HUD programmatic audits; and the alleged need for additional personnel in her Division when the Headquarters Audits Division was disbanded. The estimated time for Ms. Bonds' direct testimony is 15 minutes. She will be called as a witness.

Latesha Campbell-Waters:
C/o HUD Office of Inspector General

Ms. Campbell-Waters was an Administrative Officer in the Headquarters Audits Division when it was disbanded and was under Ms. Elion's supervision. Ms. Campbell-Waters witnessed the disparaging treatment of Ms. Elion by Mr. Phelps, his refusal to allow Ms. Elion's division to be fully staffed, and his solicitation of complaints by her staff. Ms. Campbell-Waters is African American and will also testify that Mr. Phelps discriminated against her. The estimated time for Ms. Campbell-Waters' direct testimony is 10 minutes. She will be called as a witness.

Daniel Salas:
C/o HUD Office of Inspector General

Mr. Daniel Salas is the former Deputy Assistant Inspector General for Investigations, who will testify, via video-deposition, that he was reassigned involuntarily after he filed a formal EEO complaint.  The estimated time for Mr. Salas' direct testimony is 5 minutes.  He will be called as a witness.

Richard Johnson, Esq.
C/o HUD Office of Inspector General

Mr. Johnson is the individual at HUD OIG who verified defendant's responses to plaintiff's written discovery including, but not limited to, responses related to hiring ceilings and the number of auditors in the Office of Audit before and after plaintiff's former Division was abolished, assignments of auditors to particular Divisions and Regions, and salaries available for auditors.  In so doing, Mr. Johnson stated under penalty of perjury that defendant's discovery responses "are substantially correct and true and accurate to the best of my knowledge, information and belief.  The source of my information and the grounds for my belief are my personal knowledge, my personal discussions and questioning of the principal witnesses in the case, information provided by our servicing personnel office … and officials within the OIG, and the Department, and the official files and records available to me."  Mr. Johnson's testimony is needed to explain the significance of certain documents produced by defendant and certain of its discovery responses.  The estimated time for Mr. Johnson's direct testimony is 10 minutes.  He will be called as a witness.

Victor Elion
C/o Robert C. Seldon & Associates, P.C.

Mr. Elion is plaintiff's husband and will testify about the effects of defendant's unlawful actions on Ms. Elion and on their family life. The estimated time for Mr. Elion' direct testimony is 15 minutes. He will be called as a witness.

d. **Defendant's Witnesses**[1]

1. James Heist – Mr. Heist will testify to the facts surrounding his decision to propose dissolving the Headquarters Audit Division in the Office of Audit ("HAD") in April 2004, which led to the reassignment of several other employees, including Plaintiff, within the HAD to other divisions within the agency.  Mr. Heist will testify to the reassignment of Plaintiff to become his Special Assistant to the Assistant Inspector General for Audit. (Approximately 1.5 hours)

2. Michael P. Stephens – Mr. Stephens will testify to the facts surrounding his decision to approve Mr. Heist's proposal to disband the HAD in April 2004 and the reassignment of the employees within the HAD (Approximately 1.5 hours)

3. Michael R. Phelps – Mr. Phelps will testify to the facts surrounding the decision to disband the HAD and the reassignment of the employees within the HAD (approximately 1.5 hours).

4. Dennis Raschka   Mr. Raschka will testify as to the facts and circumstances regarding the budgetary issues faced by HUD OIG that led in part to the disbanding of HAD (approximately 30-45 mins.)

5. Sharelle Higgins   Ms. Higgins will testify as to matters related to career progression with the federal government, including entry into the Senior Executive Service and other human resources matters as appropriate depending upon the testimony of Plaintiff's witnesses (approximately 30-45 mins).

---

[1]     Defendant reserves the right to call the individuals listed on Plaintiff's list of witnesses.

6.  Brenda Patterson  Ms. Patterson, depending upon what witnesses Plaintiff calls and what evidence is adduced from those witnesses, will testify about her personal knowledge of and experience with how HUD OIG within the Office of Audit treats its minority employees with respect to promotion and career progression, and to any other matters necessary to rebut inferences or evidence provided by Plaintiff through her witnesses or exhibits (approximately 30-45 mins.)

7.  Joan Hobbs  Ms. Hobbs, depending upon what witnesses Plaintiff calls and what evidence is adduced from those witnesses, will testify about her personal knowledge of and experience with how HUD OIG within the Office of Audit treats its female employees with respect to promotion and career progression, and to any other matters necessary to rebut inferences or evidence provided by Plaintiff through her witnesses or exhibits.  Ms, Hobbs may also testify as to her personal knowledge and experience as a subordinate of Plaintiff while at Capital District (approximately 30-45 mins).

8.  Saundra Elion (Plaintiff), who will testify about claims against Defendant (approximately 1-2 hours).

## Plaintiff's Exhibits

Pl. Exh. 1:    Phelps E-mail, Fiscal Year 2004 Office of Audit Rankings 1//05

Pl. Exh. 2:    Elion Informal Complaint & ADR Request 1/18/02

Pl. Exh. 3:    Matthews, E-mail Cancelling ADR 3/06/03

Pl. Exh. 4:    Elion, Memo Withdrawing Inf. Cplt. 3/20/03

Pl. Exh. 5:    Stephens, email 4/07/04

Pl. Exh. 6:    Heist, Memo 4/20/04, with Stephens approval 4/21/04

Pl. Exh. 7:    OIG Verified Resp. to Pl. 1st Interrogatories and RFP's, Production Chart, and Documents re: RFP No. 8 3/08/06

Pl. Exh. 8    E-mail, Below Ceiling, Raschka, 4/02/03

Pl. Exh. 9:    E-mail, Below Ceiling, Phelps, 11/08/02

Pl. Exh. 10:    E-mail, Below Ceiling, Stephens, 02/04/03

Pl. Exh. 11:    OMB Bulletin No. 01-09 9/25/01

Pl. Exh. 12:    OMB Financial Reporting, 12/21/04

Pl. Exh. 13:    Memo Accountability of Tax Dollars, 12/6/06

Pl. Exh. 14:    OMB, OFFM Financial Reporting (undated0

Pl. Exh. 15:    Elion Performance Review, 1/31/01

Pl. Exh. 16    Elion Performance Review, 1/31/02

Pl. Exh. 17    EEOC MD 110, Ch.3, Alternative Dispute Resolution

Pl. Exh. 18    EEOC MD 110 Appendix H, Alternative Dispute Resolution

Pl. Exh. 19    OIG Manual Chapter 1099

Pl. Exh. 20    Letter, Request for Supp. Resp. re: Personnel Specialists and Retention Order 3/14/06

Pl. Exh. 21     Letter, Supp. Resp. to Req. for Supp. Resp. re: Personnel Specialists and Retention Order 3/28/06

Pl. Exh. 22:     Def. Verified Supp. Resp. to Pl. 1st Interrogatories and RFP's 4/25/06

Pl. Exh. 23:     Watson, E-mail OIG Refusal of ADR 6/6/04

Pl. Exh. 24     Organization Chart, OIG, Senior Management 2/08

Pl. Exh. 25     Workforce Profile of Regional IG Office, 12/01/04

Pl. Exh. 26     Donahue Testimony, 12/06/04

Pl. Exh. 27     Letter to Hon. Mel Martinez, 6/21/02

Pl. Exh. 28     Letter in Resp. to letter to Hon. Mel Martinez from Haban, 6/24/02

Pl. Exh. 29     OIG Manual Chapter 1351

e.  **Defendant's Proposed  Trial Exhibits**

1.  April 7, 2006 Email from Mr. Michael Stephens: the email describing budget cuts and hiring freeze (MSJ Gov. Exh. D)

2.  April 12, 2004 Email from Mr. James Heist: the email discusses budget cuts, hiring freezes, and reduction in full time employees (FTEs) (MSJ Gov. Exh. E)

3.  April 20, 2004 Memorandum: Mr. Heist proposed the dissolution of the HAD and reassignment employees within HAD to other divisions and Mr. Stephens approved the proposal  (MSJ Gov. Exh. F)

4.  December 21, 2001 Memorandum for Chief Financial Officers and Inspector Generals: This Memorandum set for a more accelerated deadline for the agencies, including HUD, to submit its accounting reports to the OMB  (MSJ Gov. Exh. G)

5.  April 21, 2004 Email from Mr. James Heist: In this email, Mr. Heist informed the employees, including Plaintiff, within the HAD  of the reasons for disbanding the HAD and their respective assignments. (MSJ  Gov. Exh. G)

6.  The organizational charts of the agency.

**7.**  Plaintiff's Service Record, which lists Plaintiff's annual salary from 2002 to the present**.**

**8.**  Plaintiff's self-described accomplishments from 2005 to 2007**.**

9.  Sept. 13, 2001 Email from Michael Phelps pertaining to Martin Iriza's transfer (Elion I Depo. Exh. 1)

10. Sept. 23, 2002 Email from Michael Phelps regarding the Norfolk State University Career Fair & Cluster (Elion I Depo. Exh. 2)

11. Nov. 13, 2002 Email from Michael Phelps regarding the need to hire more staff (Elion I Depo. Exh. 3)

12. Nov. 29, 2002 Email from Michael Phelps regarding staffing (Elion I Depo. Exh. 4)

13. Jan. 14, 2003 Email from Saundra Elion attaching spreadsheet on status of staffing (Elion I Depo. Exh. 5)

14. Jan. 21, 2003 Email from Saundra Elion attaching spreadsheet with updates on staffing (Elion I Depo. Exh. 6)

15. Jan. 28, 2003 Email from Saudra Elion regarding hiring of potential employee for HAD (Elion I Depo. Exh. 7).

16. Jan. 31, 2003 Email from Michael Phelps attaching Promotion Certificates for the Supervisory Auditor located in the HAD (Elion I Depo. Exh. 8)

17. Feb. 19, 2003 Email from Michael Phelps attaching Promotion Certificates for  a position the HAD (Elion I Depo. Exh. 9)

18. Feb. 26, 2003 Email from Michael Plelps telling Ms. Elion that she could hire 3 additional employees (Elion I Depo. Exh. 10)

19. Status Check List and Merit Staffing Certificate for potential hires (Elion I Depo. Exh.11)

20. Merit Staffing Certificate for potential hires (Elion I Depo. Exh.12)

21. April 7, 2003 Email exchange between Elion and Phelps regarding recruiting at Prince George's County  Community College (Elion I Depo. Exh. 13)

22. April 8, 2003 Email from Saundra Elion on the selection of staff auditors (Elion I Depo. Exh. 14)

23. June 13, 2003 Email from Saundra Elion attaching spreadsheet on the staffing status (Elion I Depo. Exh. 15)

24. June 23, 2003 Email from Saundra Elion attaching spreadsheet on the staffing status (Elion I Depo. Exh. 16)

25. July 2, 2003 and June 1, 2003 Emails from Saundra Elion regarding status of a new hire (Elion I Depo. Exh. 17)

26. July 8, 2003 Email from Michael Phelps cancelling vacancy announcement (Elion I Depo. Exh. 18)

27. Oct. 15, 2003 Email from Saundra Elion discussing issues surrounding Edward Kim (Elion I Depo. Exh. 19)

28. April 2, 2004 Edward Kim's resignation letter (Elion I Depo. Exh. 20)

29. May 14, 2004 Saundra Elion's handwritten notes meeting with Michael Phelps (Elion I Depo. Exh.23)

30. FY 2003 Ranking (Elion I Depo. Exh. 24)

31. Feb. 4, 2003 Email from Michael Phelps regarding budget and vacancy issues (Heist Depo. Exh. 15)

32. April 2, 2003 Email from Dennis Raschka regarding authorization to pay for relocation and hiring new employees (Heist Depo. Exh. 16)

33. HUD Federal Executive Institute Attendees from 1994-2006, which identifies Ms. Elion as an attendee in 2002.

34. The Position Description for the Director of the Headquarters Audit Division in the Office of Audit (ROI Tab F2.2).

35. The Position Description for the Director of the Headquarters Audit Division in

the Office of Audit (ROI Tab F2.2).

36. The Position Description for the Special Assistant as to the Assistant Inspector General for Audit (ROI Tab F2.3).

37. OMAP budget documents 2004, which are spreadsheets setting forth the budget of HUD's OIG for FY 2004-05.

**Depositions**

Plaintiff will present the video-taped depositionn testimony of Daniel Salas, the former Deputy Assistant Inspector General for Investigations, who will testify that he was reassigned involuntarily after he filed a formal EEO complaint. Mr. Salas currently works and resides in Texas and is thus unavailable for trial. Mr. Salas was deposed on August 10, 2006, in <u>Malloy v. Jackson</u>, No. 04-1117 (RCL).[1] Plaintiff intends to present the following portions of his video-deposition at trial:

> 1:12:15 through 1:13:08
> (p.4, ln. 2, through p.5, ln. 7)
>
> 1:14:36 through 1:16:13
> (p.7, ln. 10, through p.9, ln. 5)

---

[1] The facts underlying Mr. Salas' involuntary reassignment were alleged in paragraph 9 of the Amended Complaint and admitted by defendant in paragraph 9 of the Amended Answer. The same agency counsel who served as co-counsel attended Mr. Salas' deposition and Ms. Elion's; and Mr. Salas' deposition was disclosed in writing to defendant on March 21, 2007;

**f.  Defendant's Designation of Depositions**

Defendant does not intend to designate any deposition.

## **Parties' Estimate of Trial Time**

The parties estimate that presentation of the evidence will take less than four days and that the trial will take no more than five days in total.

**Parties' Statement of Settlement Efforts**

The parties engaged in one mediation session under the auspices of the Court's Alternative Dispute Resolution Program.  Although that session was not successful, the mediator is continuing to work with the parties.

## **Plaintiff's Itemization of Damages**

Plaintiff seeks to be awarded compensatory damages by the jury and in the maximum amount permitted by law for the violation of her civil rights; and for the pain, suffering, mental anguish, emotional distress, anxiety, career injuries and losses, and loss of enjoyment of life that she experienced as a consequence of defendant's discrimination.

## **Plaintiff's Request for Relief Other than Damages**

Plaintiff will seek the following equitable relief if she prevails at trial:

A.      Reinstatement as a Supervisory Division Director in the HUD OIG Office of

Audit in its Headquarters in Washington, D.C.

B.      Record correction.

C.      Post-judgment interest.

D.      Declaratory and injunctive relief.

E.      Attorneys fees and costs.

## **Plaintiff's Pre-Trial Motions**

Plaintiff has filed the following five Motions In Limine:

Plaintiff's First Motion In Limine (ADR Involving Austin Groom And Groom's Reinstatement).

Plaintiff's Second Motion In Limine (Plaintiff's Performance and Conduct).

Plaintiff's Third Motion In Limine (Other Claims).

Plaintiff's Fourth Motion In Limine (Personnel Specialists).

Plaintiff's Fifth Motion In Limine (Testimony By Undisclosed Witnesses and Evidence of Treatment of Women and Minorities After and Unrelated to Employment Actions At Issue).

**i.  Defendant's Motions *in Limine* to Be Decided.**

1.  To exclude Plaintiff from introducing "me too" testimony evidence regarding Michael Beard, Janet Bond, Edward Bowles, Latesha Campbell-Waters, Donna Hawkins, Daniel Salas, and Austin Groom.

2.  To exclude testimony from Michael Beard, Janet Bond, Latesha Campbell-Waters, Donna Hawkins, Daniel Salas, and Austin Groom because those individuals lack personal knowledge regarding the claims at issue in the instant case.

3.  To exclude as exhibits or deposition testimony in other civil actions.

4.  To exclude testimony of the events that gave rise to Plaintiff's December 2002 EEO complaint as unduly prejudicial.

5.  To exclude testimony on alleged hostile work environment from December 2002 to April 2004 because Plaintiff did not make such an allegation in her First Amended Complaint

6.  To exclude testimony and exhibits surrounding the mediation in January 2003 that led to Plaintiff's voluntary dismissal of her December 2002 administrative complaint. As a related issue, we move to exclude the agency's decision to engage in mediation of the May 2004 EEO complaint.

7.  To exclude testimony and any exhibits that Plaintiff failed to get an award/bonus even though her division ranked fourth

8.  To exclude testimony of the reasons surrounding the abolishment of the Capital District Office of Audit in May 2002

9.   To exclude Victor Elion from identifying himself as a health care provider with expertise in the area of mental health and testifying as an expert with respect to Plaintiff's physical and/or mental condition.

10. For an order that Ms. Elion's age discrimination claims will be tried prior to jury selection in this case.  Plaintiff is not entitled to a jury trial for her age discrimination claims.  Even if the age claims are not submitted to the jury for resolution, having the jury hear the testimony of witnesses on Ms. Elion's age claims may confuse or mislead the jury as to the claims that the jury will decide.

Dated: February 15, 2008.                    Respectfully Submitted,


    /s/  Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


    /s/  Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


    /s/  John C. Truong
JOHN C. TRUONG, D.C. BAR #465901
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 307-0406

Attorneys for Defendant


       //s//
Robert C. Seldon, Esq.
D.C. Bar No. 245100


       //s//
Molly E. Buie, Esq.
D.C. Bar No. 483767
Robert C. Seldon & Associates, P.C.
1319 F Street, N.W., Suite 200
Washington, D.C.  20004
(202) 393-8200

Counsel for Plaintiff