## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SAUNDRA ELION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-0992 (PLF) |
| | ) | |
| ALPHONSO R. JACKSON, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## DEFENDANT'S MOTION *IN LIMINE*

Defendant files this motion *in limine* in advance of the trial of this case, currently scheduled for March 3, 2008. For the reasons set forth in the attached Memorandum of Points and Authorities, Defendant moves the Court:

1.     To exclude Plaintiff from introducing "me too" testimony evidence regarding Michael Beard, Janet Bond, Latesha Campbell-Waters, Donna Hawkins, Daniel Salas, and Austin Groom.

2.     To exclude testimony from Stanley McLeod, Michael Beard, Janet Bond, Latesha Campbell-Waters, Donna Hawkins, Daniel Salas, and Austin Groom because those individuals lack personal knowledge regarding the claims at issue in the instant case.

3.     To exclude exhibits or deposition testimony from other civil actions.

4.     To exclude testimony of the events that gave rise to Plaintiff's December 2002 EEO complaint as unduly prejudicial.

1

5.    To exclude testimony on alleged hostile work environment from December 2002 to April 2004 because Plaintiff did not make such an allegation in her First Amended Complaint.

6.    To exclude testimony and exhibits surrounding the mediation in January 2003 that led to Plaintiff's voluntary dismissal of her December 2002 administrative complaint. As a related issue, we move to exclude the agency's decision not to engage in mediation to resolve Plaintiff's May 2004 EEO complaint.

7.    To exclude testimony and any exhibits that Plaintiff failed to get an award/bonus even though her division ranked fourth in HUD's Office of Inspector General.

8.    To exclude testimony of the reasons surrounding the abolishment of the Capital District Office of Audit in May 2002.

9.    To exclude Victor Elion from identifying himself as a health care provider with expertise in the area of mental health and testifying as an expert with respect to Plaintiff's physical and/or mental condition.

10.    For an order that Plaintiff's claims under the ADEA will be tried before jury selection in this case.

Dated: February 15, 2008.                Respectfully Submitted,


  /s/  Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


  /s/   Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

  /s/   John C. Truong
JOHN C. TRUONG, D.C. BAR #465901
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 307-0406

Attorneys for Defendant

3

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **SAUNDRA ELION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 05-0992 (PLF)** |
| | ) | |
| **ALPHONSO R. JACKSON,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION *IN LIMINE***

**A.    Introduction**.

The Plaintiff, Saundra Elion ("Plaintiff"), a Federal employee, brings suit against the

Secretary of the United States Department of Housing and Urban Development (HUD), alleging

that the Office of Inspector General (OIG) discriminated against her on the basis of her race, sex,

and age, and in reprisal in violation of Title VII of the Civil Rights Act of 1964, as amended, and

the Age Discrimination in Employment Act (ADEA), when the Defendant disbanded the

Headquarters Audit Division (HAD) and reassigned her to become a Special Assistant to the

Assistant Inspector General for Audit (AIG) in April 2004.  The Plaintiff's prayer for relief

includes, *inter alia*, compensatory damages, reinstatement to a supervisory position, attorney's

fees, and such other relief as may be just and appropriate.  The Plaintiff voluntarily dismissed

counts VI through XI of her First Amended Complaint (discriminatory selection) during the

discovery process.  *See* Dkt. No. 34.

1

The Court denied Defendant's Motion for Summary Judgment. As a result, Plaintiff's claims of race and gender discrimination under Title VII and age discrimination under the ADEA remain. See First Amended Complaint (FAC) at Counts II, III and IV. Furthermore, Plaintiff's other retaliation claims under Title VII and the ADEA also survive summary judgment and remain for trial. See FAC at Counts I and V.

A jury trial is scheduled for March 3, 2008.

**B.      Background**.

Most of the facts relevant to the upcoming trial are discussed at length in the Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment (Dkt. No. 33) and Reply Brief in support of same (Dkt. No. 39), and therefore need not be repeated in detail here. Plaintiff's Initial Disclosures (Gov. Exh. A) and witness list indicate that she intends to call witnesses and introduce documents addressing several issues that, for a variety of reasons, should not be presented to the jury as Plaintiff intends.

**C.      Argument.**

**1.      The Court Should Exclude "Me Too" Evidence.**

Defendant moves to exclude testimony and documentary evidence by agency employees who claim that they have been discriminated or retaliated against by the agency as irrelevant, misleading to the jury and unfairly prejudicial to Defendant, and moves to exclude Plaintiff's testimony and documentary evidence concerning the complaint of other OIG employees. These agency employees include: D. Michael Beard, Janet Bond, Latesha Campbell-Walters, Donna Hawkins, Daniel P. Salas, and Austin Groom (collectively "OIG employees"). See Plaintiff's Initial Disclosures (Gov. Exh. A) (describing these employees' claims that the agency also

2

discriminated and retaliated against them).  Mr. Austin Groom separately gave deposition

testimony claiming that Defendant discriminated against him when it reassigned him to a special

assistant position.

The Federal Rules of Evidence call for the admission of only "relevant evidence."  <u>See</u>

Fed. R. Evid. 402.  "Relevant evidence" is defined as "evidence having any tendency to make the

existence of any fact that is of consequence to the determination of the action more probable or

less probable than it would be without the evidence."  <u>See</u> Fed. R. Evid. 401; <u>United States v.</u>

<u>Carter</u>, 522 F.2d 666, 685 (D.C. Cir. 1975).   Equally important, the Federal Rules also provide for

the exclusion of evidence "if its probative value is substantially outweighed by the danger of unfair

prejudice, confusion of the issues, or [the likelihood of] misleading the jury, or by considerations

of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid.

403; <u>see also</u> Wright & Graham, Federal Practice and Procedure: Evidence § 5200.  "Unfair

prejudice" has been defined as an undue tendency to suggest a decision on an improper basis,

commonly an emotional one.  <u>Id</u>. § 5209.  Confusion of issues generally occurs when the proffered

evidence has a tendency to lead to litigation of collateral issues.  <u>See e.g.</u>, <u>Caldera v. Eastern</u>

<u>Airlines</u>, 705 F.2d 778 (5th Cir. 1983).

Plaintiff in this case has stated an intention to introduce testimony and exhibits concerning

complaints against the OIG by other OIG employees.  Moreover, certain of Plaintiff's

documentary exhibits consist of, or relate to, other OIG employees' discrimination complaints

against the agency.  Pursuant to the Federal Rules, evidence from other OIG employees who claim

that they have been discriminated or retaliated against should be excluded.  The fact that, for

example, Ms. Hawkins, Messrs. Salas, Groom and Beard filed complaints does not substantiate

Plaintiff's allegations.

Courts have frequently excluded such "me too" evidence, recognizing in many different contexts that it has no probative value, and would only serve to prolong the trial and confuse the jury about side issues. See, e.g., Kelly v. Boeing Petroleum Services, Inc., 61 F.3d 350, 357 (5th Cir. 1995); Schrand v. Federal Pacific Electric Co., 851 F.2d 152, 156 (6th Cir. 1988); Coles v. Perry, 217 F.R.D. 1, 10 (D.D.C. 2003) (excluding "other bad acts" evidence under Rule 403). Indeed, there is the very real possibility here that the admission of testimony from these OIG employees would confuse the issues before the jury and mislead them into believing that they can find for Plaintiff based solely on perceptions and opinions of other employees. Even if the allegations of discrimination by these OIG employees were fully discredited at trial, the mere fact that others came forward to testify, or were referenced in documentary exhibits, on this issue, would serve to suggest to the jury that these individuals felt "wronged." This would unnecessarily muddle the issue at hand, i.e., whether Plaintiff suffered intentional discrimination or retaliation. See Ramos-Melendez v. Valdejully, 960 F.2d 4, 6 (1st Cir. 1992) (in an employment discrimination action, the exclusion of testimony of other employees about their pending suits was proper under Rule 403, since the admission of the testimony would require that their cases be tried as well); Kinan v. City of Brockton, 876 F.2d 1029, 1034-35 (1st Cir. 1989) (in civil suit against city and its police officers alleging civil rights violations the court did not err in excluding evidence of two prior civil rights actions against the city because the evidence was not relevant and trying the facts of the other cases would result in confusion and a waste of time).

The Court must balance the possible relevancy or probative value of the testimony against the countervailing factors, such as undue prejudice, confusion of issues, misleading the jury, and

4

the possible litigation of collateral issues.  The testimony is not helpful to an understanding of the

claims in this case but merely provides an opportunity for the witnesses to expound upon about

their own separate grievances.  Such testimony, serves only to in appropriately inflame the jury

against Defendant by raising unrelated allegations of improper conduct.  The potential for unfair

prejudice of such testimony is obvious and inevitable, and thus, it should be excluded.

If these OIG employees were allowed to testify, Defendant will be compelled to litigate the

merit of their respective claims and create multiple "trials within a trial" about other OIG

employees' EEO complaints.  These mini-trials will consume an enormous amount of time,

improperly confuse the jury, and unduly prejudice Defendant.  See Fed. R. Evid. 403.  For these

same reasons, Plaintiff's exhibits associated with the testimony of these OIG employees should not

be admitted because they are irrelevant to Plaintiff's claims and would confuse, mislead or

prejudice the jury.  Again, the exhibits create the likelihood of creating a "trial within a trial" about

alleged discrimination at the OIG generally.

    **2.**     **The Court Should Exclude Testimony by Stanley McLeod,Michael Beard,**
            **Janet Bond, Latesha Campbell-Waters, Donna Hawkins, Daniel Salas, and**
            **Austin Groom For Lack of Personal Knowledge.**

Defendant moves to exclude any testimony by Stanley McLeod, Michael Beard, Janet

Bond, Edward Bowles, Latesha Campbell-Waters, Donna Hawkins, and Daniel Salas as those

witnesses lack personal knowledge of the claims and allegations in this case.

Rule 602 requires that witnesses possess "personal knowledge" of the facts to which their

testimony is sought.  Plaintiff has made no showing that these witnesses possess such knowledge,

or that their testimony will be relevant.  Moreover, Defendant expects that, for example, the

testimony of Ms. Hawkins and Messrs. Beard, Salas, and Groom and their knowledge are based

entirely on their respective cases against OIG, <u>not</u> this case.  Except for Mr. Groom,1 these

individuals were not deposed  in this case and Plaintiff has not shown that they possess personal

knowledge of the facts leading up to Defendant's decision to disband the HAD and reassign

Plaintiff to become the Special Assistant to the AIG.  Their general knowledge of the dissolution

of the HAD and reassignment of staff does not necessarily mean that they have any personal

knowledge of Defendant's decision.   Thus, these witnesses' testimony will be mostly hearsay,

inadmissible under Fed. R. Evid. 801.

### 3.    The Court Should Exclude Testimony and Other Material From Other Actions

Defendant moves to exclude as exhibits any pleadings or other evidence (including

deposition testimony) filed in other civil actions on the basis of relevance and under Fed. R. Ev.

403.

Plaintiff indicates that she intends to designate certain portions of Mr. Daniel P. Salas'

deposition in another civil action, <u>Malloy v. Jackson</u>, No. 04-1117  (D.D.C.) (Leon, J.), relating to

Defendant's answer to Para. 9 of her First Amended Complaint ("FAC").  It is unclear how Mr.

Salas's deposition testimony is even relevant to this case.  Specifically, Para. 9 of Plaintiff's FAC

alleges that "in April of this year [i.e., 2006]" Mr. Salas was reassigned to a non-supervisory

position in OIG Headquarters and that Mr. Salas previously filed an EEO complaint against HUD.

 <u>See</u> FAC at ¶ 9 (Dkt. No. 15) (filed July 6, 2006).  Defendant responded to Para. 9 by admitting

that Mr. Salas as reassigned to a newly created management position within OIG Headquarters.

<u>See</u> Def.'s Answer at ¶ 9 (Dkt. No. 16).  Defendant clarified that Mr. Salas was reassigned in April

---

1        Mr.Groom's deposition merely discusses his <u>own</u> employment circumstances at the HAD.
He left OIG in 2002, two years prior to Defendant's decision to disband the HAD.  Therefore, his

2005. Id. Under these facts, Mr. Salas' circumstances are irrelevant to this case. Mr. Salas' deposition testimony will only cause jury confusion and would compel Defendant to defend this collateral issue.

The separate claims in Malloy v. Jackson, in which Mr. Salas is not even a party, brought under Title VII have nothing to do with Plaintiff's claims that she was allegedly discriminated and retaliated against by certain supervisors, at certain times, with respect to certain actions having to do with her. Moreover, deposition testimony or documentary evidence about the issues in Malloy v. Jackson or any other civil actions will simply confuse, mislead, or prejudice the jury and has the potential to create a trial within a trial about wholly collateral issues. The Court, therefore, should exclude Plaintiff from using the deposition testimony of Mr. Salas or any othe testimony and exhibits from other civil actions.

**4. Testimony of the Events that Gave Rise to Plaintiff's December 2002 EEO Complaint**

In December 2002, Plaintiff filed an administrative discrimination complaint alleging a hostile work environment on the basis of her sex, race, and age, complaining of a diminution of duties and responsibilities, dilution of staff resources, and an undermining of her professional authority. See FAC at Paragraph 21. On March 20, 2003, Plaintiff voluntarily withdrew this complaint. See FAC at paragraph 27. In a memorandum withdrawing her complaint, Plaintiff stated, "The issues have been resolved to my satisfaction at this time." March 20, 2003 Memo (Def. MSJ Gov. Ex.C).

In the present case, the relevant alleged discriminatory and retaliatory conduct occurred in April 2004, when HAD was disbanded, approximately 16 months after Plaintiff filed her

---

testimony adds nothing to this trial but will only create confusion and has the potential to mislead

December 2002 administrative complaint.  The December 2002 administrative complaint

contained stale allegations that are irrelevant with respect to the present complaint and, thus,

evidence concerning these allegations is inadmissible.  For example, the United States Supreme

Court, when addressing the causation element of a retaliation claim under Title VII has observed

that temporal proximity of any protected activity and the alleged retaliatory act must be "very

close," meaning a matter of months, not years.  Clark County School District v. Breeden, 532 U.S.

268, 273 (2001).  Thus, not only would this evidence be unfairly prejudicial and misleading under

Fed. R. Evid. 403, but it is also irrelevant because it is so far removed in time from decisions

actually at issue in the trial of this case.

        The Court must balance the possible relevancy or probative value of the testimony against

the countervailing factors, such as undue prejudice, confusion of issues, misleading the jury, and

the possible litigation of collateral issues.  The facts in this matter clearly warrant exclusion of

such testimony.  The testimony is not helpful to an understanding of the claims in this case but

merely provides an opportunity for Plaintiff to testify about earlier treatment by OIG officials that

is not probative to the issues in the current case.  The potential for unfair prejudice of such

testimony is obvious and inevitable, and thus, it should be excluded.

   **5.  The Court Should Exclude Testimony on Plaintiff's Alleged Hostile Work
       Environment from December 2002 to April 2004.**

        Plaintiff claims that Defendant allegedly harassed her by undermining and diminishing her

authority.  See FAC ¶ 20 and 29.   Plaintiff also claims Defendant failed to allow her to restore

the level of her staff and aggressively questioned her about her staff members.  See FAC at

¶30-32.  The Court should exclude testimony on these allegation as irrelevant and unduly

the jury.

prejudicial.

Testimony about these allegations must be excluded under Rules 402 and 403 because they bear no relevance to Defendant's decision to disband the HAD and reassign Plaintiff to become a Special Assistant to AIG. Even if these allegations had some arguable relevance, the testimony about them would be far outweighed by the undue and extraordinary prejudice that the documents would have upon Defendant. Federal Rule of Evidence 403 allows the Court to exclude evidence which, in the Court's view, is likely to prolong the trial, confuse the issues, mislead the jury, and cause unfair prejudice to Defendant.

**6. The Court Should Exclude Testimony About the Parties' Mediation Efforts in 2003 and 2004.**

In resolving Plaintiff's December 2002 EEO complaint, Plaintiff claims that Defendant would not meet with her for mediation unless she participated without counsel. See FAC at ¶ 3. Plaintiff further alleges that, based on the representation by Defendant that the agency would rectify her claims of hostile work environment, she voluntarily dismissed her December 2002 EEO claim. Id. at ¶ 4. Plaintiff then claims that, after she dismissed her complaint, she again experienced a hostile work environment. Id. at ¶ 5. The Court should prohibit Plaintiff from giving testimony about these stale allegations as they are not relevant to the agency's alleged discrimination and retaliation when it dissolved the HAD and assigned Plaintiff to become the Special Assistant to AIG.

Specifically, the Court must exclude evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or [the likelihood of] misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403; *see also Wright & Graham*, Federal Practice and

9

Procedure: Evidence § 5200.  "Unfair prejudice" has been defined as an undue tendency to suggest a decision on an improper basis, commonly an emotional one.  Id. § 5209.

Here, Plaintiff's testimony about these stale allegations will only confuse the jury on the remaining issues for trial – namely, alleged discriminatory and retaliatory reassignment. Furthermore, if Plaintiff is allowed to testify and introduce evidence relating to the mediation process in 2003, this will only prolong the trial on a collateral issue as Defendant will be forced to introduce its own witnesses and introduce its own exhibits to rebut Plaintiff's testimony. Therefore, in light of the undue prejudice, the potential for jury confusion, and unnecessarily prolonging the trial, the Court should exclude testimony on these allegations.  Essentially for the same rationale, the Court should similarly exclude evidence and testimony that Defendant did not engage in mediation with Plaintiff to resolve her current claims when they were at the administrative level.

### 7.  The Court Should Exclude Testimony On Plaintiff's Failure to Receive an Award/Bonus

Defendant seeks to exclude testimony or other evidence related to the fact that Plaintiff did not receive a bonus/award for 2003.  Plaintiff seemingly contends that her not receiving an award/bonus that year, when her District was ranked fourth best within HUD OIG, is evidence of some hostile intent held by, or of an improper personnel practice by HUD OIG management. (FAC at  Para. 19).  However, this matter is not an issue in any of the specific causes of action.  In fact, of the 23 supervisory GS 15s in 2003, only 13 received awards/bonuses, 10 did not, including the Director of Plaintiff's District.  The ranking system referenced by Plaintiff in her Complaint was but one of many factors that impacted the decision as to granting awards or bonuses. Accordingly, the fact that Plaintiff did not receive an award in 2003, as did 9 other supervisory GS

10

15s, most of whom were non-minority, is irrelevant and is not probative of discrimination,

retaliation or disparate treatment.  Furthermore, weighing any remote probative value, of which

Defendant asserts there is none, against the potential prejudice to Defendant, the balancing should

be in favor of exclusion of any evidence relating to Plaintiff not receiving an award/bonus for

2003.

**8.    The Court Should Exclude Testimony On The Abolishment of the Capital District Office of Audit in May 2002**

Although Plaintiff references the closure of the HUD OIG Capital District and the transfer of

those personnel, including herself, to the HUD OIG Headquarters building in Washington, D.C,

(Amended Complaint para. 14) she makes no allegations that the closure of the Capital District

and the creation of the Headquarters Audit Division (HAD) of which Plaintiff was the Director,

constituted any form of discrimination, retaliation, or other impermissible action and makes no

claim as to this management decision.  In fact, Plaintiff characterized the move from Capital

District to HAD as being a lateral transfer with no impact on her salary or benefit but rather one

which resulted in enhancing her status in the sense of professional exposure as HAD was a

Headquarters Division.  (Elion depo. Pg. 78, ln. 18 – pg. 80, ln. 14) Accordingly, this entire area is

irrelevant to any matter at issue in the present case, could confuse the trier of fact, and should

therefore be excluded.

**9.    The Court Should Exclude Victor Elion (Plaintiff's Husband) From Identifying Himself As A Forensic Psychologist.**

Plaintiff intends to call her husband, Mr. Victor Elion, to testify on the "injury and

emotional distress she sustained as a result of defendant's action."  Plaintiff's Initial Disclosures at

p. 2 (Gov. Exh. A).  Mr. Elion is a forensic psychologist who specializes in, *inter alia*, treating adults with anxiety and depression.  (Gov. Exh. B).  Therefore, it would be unduly prejudicial to Defendant for Mr. Elion to identify himself as a forensic psychologist when testifying about Plaintiff's "injury and emotional distress."  The jury may receive Mr. Elion's testimony – although testifying as Plaintiff's husband – as a psychological diagnosis of her alleged injury.  Therefore, Plaintiff should be precluded from asking questions that would allow Mr. Elion to identify himself as a forensic psychologist or to provide responses that reflect his professional opinion of her injury and its cause.

Furthermore, Plaintiff in this case has not submitted an expert report under Federal Rule of Civil Procedure 26, and has not otherwise identified Mr. Elion or anyone else as an expert witness in this case.  Under Fed. R. Evid. 701-03, all witness testimony, including Victor Elion,  should be limited to his/her own personal knowledge of the facts of this case and witnesses should not be allowed to opine generally about medical issues.  In Coles v. Perry, 217 F.R.D. 1, 4 (D.D.C. 2003), Magistrate Judge Facciola observed that the "interest served by requiring the disclosure of expert opinions is self evident.  It is to prevent unfair surprise at trial . . . ."  In Coles, Judge Facciola excluded expert testimony for which no expert report had been timely served during the discovery period.

Courts and the Advisory Committee guidance interpreting the expert disclosure requirements under Fed. R. Civ. P. 26(a)(2)(B) insist on complete disclosure in all particulars of the Rule.  Reed v. Binder, 165 F.R.D. 424, 428-29 (D.N.J.1996) (citing the Advisory Committee Notes to the 1993 Amendments and Fed. R. Civ. P. 26(b)(4)(A)).  Furthermore, Rule 26(a)(2)(B),

"when coupled with Rule 37(a)(3)," appears "to require exact compliance in all particulars with the disclosures" requirement. <u>Sullivan v. Glock, Inc.</u>, 175 F.R.D. 497, 503 (D.Md. 1997).

An expert report "is intended to set forth the substance of the direct examination of the expert witness." Fed. R. Civ. P. 26(a)(2) advisory committee notes (1993 amend.). Its purpose is to notify the opposing party of the scope and content of the expert's proposed trial testimony. "The reason for requiring expert reports is 'the elimination of unfair surprise to the opposing party and the conservation of resources.'" <u>Elgas v. Colorado Belle Corp.</u>, 179 F.R.D. 296, 299 (D. Nev. 1998) (quoting <u>Reed</u>, 165 F.R.D. at 429). "The test of a report is whether it was sufficiently complete, detailed and in compliance with the Rules so that surprise is eliminated, unnecessary depositions are avoided, and costs are reduced." <u>Id.</u> The expert disclosure requirements also assist the court in "making rulings limiting or restricting expert testimony[.]" <u>Reed</u>, 165 F.R.D. at 429 n.9 (citing Fed. R. Evid. 104(a) and 702). Rule 37(c)(1) of the Federal Rules of Civil Procedure provides that:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2) is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.

Fed. R. Civ. P. 37(c)(1).

Compliance with Rule 26, in particular with the requirement of total disclosure, is emphasized in the Advisory Committee comments. The "incentive for total disclosure" is the threat that expert testimony not disclosed in accordance with the rule can be excluded pursuant to Rule 37(c)(1). Fed. R. Civ. P. 37, Advisory Committee Notes (1993 Amendments, Subdivision (c)). Rule 37(c)(1) "provides a self-executing sanction for failure to make a disclosure required by Rule 26(a) . . . [and] prevents a party from using as evidence any witnesses or information that,

13

without substantial justification, has not been disclosed as required by Rules 26(a) and 26(e)(1)."

Id; see also Bonds v. District of Columbia, 93 F.3d 801, 807-08 (D.C. Cir. 1996), cert. denied, 117

S.Ct. 2453 (1997) (court may prohibit introduction of party's evidence where party does not abide

by discovery rules).[2]

Since Plaintiff has not offered any expert disclosures in this case, Mr. Elion's testimony,

like that of all witnesses, must be limited to that of a lay witness concerning his/her direct

involvement, if any, with respect to the facts of the case.

In addition, the Court should not allow Mr. Elion to testify that the OIG, Plaintiff's

employer, "caused" any emotional injuries.  Mr. Elion has not been to the OIG or, to the best of

the Defendant's knowledge, interviewed any OIG staff or managers.  He has not investigated the

OIG or conducted any tests concerning Plaintiff's work environment, nor has he produced any sort

of report concerning Plaintiff's employment at the OIG.  Defendant's objection goes to Mr. Elion

testifying as to any connection or causation between any alleged symptoms and purported

discrimination or retaliation at the OIG.

**10.    Plaintiff's Claims Under the ADEA Should Be Tried Separately.**

Defendant moves the Court for an order that Plaintiff's discrimination and retaliation claims

under the ADEA will be tried prior to jury selection in this case.  It is clear that Plaintiff is not

entitled to a jury trial for her age discrimination claims.  See Lehman v. Nakshian, 453 U.S. 156,

160-65 (1981) (no right to trial by jury in age discrimination suits against the federal government);

see also Lex K. Larson, 8 Employment Discrimination (2d ed.) § 146.02, at 146-16 (1998) ("the

---

[2]  While most of the law cited above addresses the Court's responsibility when expert
reports are deficient, the analyses represented are clearly appropriate where, as here, no expert
report has been provided at all.

Circuit Courts are unanimous in ruling that [compensatory damages] are not available under the ADEA.").

Even if the age claims are not submitted to the jury for resolution, having the jury hear the testimony of witnesses on Plaintiff's age claims may confuse or mislead the jury as to the claims that the jury will decide and may prejudice Defendant as to the non-age claims that would be tried to the jury. Fed. R. Ev. 402, 403. Therefore, the Court should have a trial on the age claims prior to jury selection in this case.

**D. Conclusion**

For the foregoing reasons, the Court should grant Defendant's Motion *in Limine*.


Dated: February 15, 2008.                    Respectfully Submitted,


  /s/  Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


  /s/   Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


  /s/   John C. Truong
JOHN C. TRUONG, D.C. BAR #465901
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 307-0406
Attorneys for Defendant

16

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| SAUNDRA ELION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-0992 (PLF) |
| | ) | |
| ALPHONSO R. JACKSON, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**ORDER GRANTING DEFENDANT'S MOTION *IN LIMINE***

Upon consideration of Defendant's Motion *in Limine*, Plaintiff's Opposition thereto, and the entire record herein, it is this _____ day of _____, 2008,

ORDERED that Defendant's Motion *in Limine* be and is hereby GRANTED; it is

ORDERED that Plaintiff be and is hereby excluded from offering "me too" testimony evidence regarding Michael Beard, Janet Bond, Edward Bowles, Latesha Campbell-Waters, Donna Hawkins, Daniel Salas, Austin Groom; and it is

. ORDERED that Plaintiff be and is hereby excluded from offering testimony from Michael Beard, Janet Bond, Edward Bowles, Latesha Campbell-Waters, Donna Hawkins, Daniel Salas, Austin Groom because those individuals lack personal knowledge regarding the claims at issue in the instant case; and it is

ORDERED that Plaintiff be and is hereby excluded from offering exhibits or testimony from other civil actions; and it is

ORDERED that Plaintiff be and is hereby excluded from offering testimony of the events

17

that gave rise to Plaintiff's December 2002 EEO complaint; and it is

ORDERED that Plaintiff be and is hereby excluded from offering testimony on an alleged hostile work environment from December 2002 to April 2004; and it is

ORDERED that Plaintiff be and is hereby excluded from offering testimony and exhibits surrounding the mediation in January 2003 that led to Plaintiff's voluntary dismissal of her December 2002 administrative complaint; and it is

ORDERED that Plaintiff be and is hereby excluded from offering the agency's decision to engage in mediation of her May 2004 EEO complaint; and it is

ORDERED that Plaintiff be and is hereby excluded from offering testimony and any exhibits that Plaintiff failed to get an award/bonus; and it is

ORDERED that Plaintiff be and is hereby excluded from offering testimony of the reasons surrounding the abolishment of the Capital District Office of Audit in May 2002; and it is

ORDERED that no party or witness may identify Mr. Victor Elion as a health care provider, nor that he has expertise in the area of mental health, and he is prohibited from offering expert testimony and evidence; and it is

ORDERED that Plaintiff's age discrimination claims be tried prior to jury selection in this case.


SO ORDERED.

_____
U.S. District Judge

18