# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **SAUNDRA G. ELION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civ. Action No. 05-0992 (PLF)** |
| | ) | |
| **ALPHONSO R. JACKSON,** | ) | |
| **Secretary Of Housing And** | ) | |
| **Urban Development,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## PLAINTIFF'S PROPOSED JURY INSTRUCTIONS

**Robert C. Seldon, Esq.**
  **D.C. Bar No. 245100**
**Molly E. Buie, Esq.**
  **D.C. Bar No. 483767**
**Robert C. Seldon & Associates, P.C.**
**1319 F Street, N.W., Suite 200**
**Washington, D.C.  20004**
**(202) 393-8200**

**Counsel for Plaintiff**


**February 20, 2008.**

## **Plaintiff's Proposed Standard Jury Instructions**

Plaintiff respectfully requests that the Court utilize the following District of Columbia Standard Civil Jury Instructions.


Functions of the Judge and Jury:

Nos. 1-1, 2, 3[1], 4, 5, 6, 7, 8, 9, 10, 11 (substitute "government agency" for "corporation"), 12.

Weighing the Evidence:

Nos. 2-1, 2 (if needed), 3[2], 4, 5, 6, 9.

Evaluating Witnesses:

Nos. 3-1, 2, 5, 8, 9, 10 (if applicable).

Government Party's Agents and Employees:

No. 4-5 (substitute "government agency" for "corporation" on the three occasions where the latter appears).

---

[1]     Plaintiff respectfully submits that the last sentence of this instruction should read:  "A party must prove every element of his or her claim and every element of its defense by a preponderance of the evidence before being entitled to prevail."

[2]     Plaintiff respectfully submits that the words "and exhibits" should be added to the end of the second sentence.

**PLAINTIFF'S PROPOSED NON-STANDARD INSTRUCTIONS**

**ADDITION TO PRELIMINARY INSTRUCTIONS**

I have given you preliminary instructions about your role as jurors, including the fact that you are the exclusive finders of the facts. Some facts in litigation are stipulated to by the parties, which means that they are undisputed for purposes of a case. You are to treat these facts as having been established and not subject to dispute for all purposes in this case including your deliberations .

I am going to read to you from the parties' stipulated facts to assist you in following the evidence at trial [and provide copies when you retire for your deliberations].

1.    Saundra G. Elion is the plaintiff in this action.

2.    Ms. Elion is an African American woman.

3.    Ms. Elion was first employed by the Office of Inspector General ("OIG") of the Department of Housing and Urban Development ("HUD") in June of 1999 as the District Inspector General for Audit of the HUD OIG Capital District in Washington, D.C., at the Grade GS-15.

4.    Ms. Elion began serving as Director of the HUD OIG Headquarters Audits Division in May of 2002.

5.    From that point, until the events underlying this litigation occurred, the Headquarters Audits Division was one of four Headquarters Divisions in the HUD OIG Office of Audit in Washington, D.C.

6.    The Deputy Inspector General is second in command in the HUD OIG, serves as its chief operating officer, and answers directly to the Inspector General. During the events underlying this litigation, the Deputy Inspector General was Michael Stephens.

7.      One of the immediate subordinates of the Deputy Inspector General is the Assistant Inspector General for Audit.

8.      The Office of Audit is headed by the Assistant Inspector General for Audit.  During the events underlying this litigation, that individual was James Heist.

9.      During the events underlying this litigation, Michael Phelps served as the Deputy Assistant Inspector General for Audit.  Mr. Phelps' first line supervisor was James Heist, and his second line supervisor was Michael Stephens.

10.     Effective April 21, 2004, HUD OIG disbanded the Headquarters Audits Division, removed Ms. Elion from a management position, reassigned Ms. Elion's staff to other Divisions, and reassigned Ms. Elion to a special assistant position.

11.     Thereafter, there were three Headquarters Divisions in the HUD OIG Office of Audit in Washington, D.C.

12.     Before the administrative complaints process that gave rise to this suit, Ms. Elion engaged in protected EEO activity when she filed an informal EEO complaint against HUD OIG in December of 2002; that process ran until March 20, 2003.

    Source:        Parties' Stipulations of Fact (Joint Pre-Trial Statement).

## FINAL INSTRUCTIONS

Ladies and gentlemen of the Jury, now that you have had all of the evidence in this case presented to you, it is my duty and responsibility to give you instructions as to the law applicable to the evidence so that your verdict will be true and just.  It is your duty as jurors to follow the law as I give it to you and to apply that law in this case as you find the facts from the evidence.  It is your sworn duty to base your verdict upon the law given in these instructions and upon the evidence that has been admitted in this case.  I will note for you now, and instruct you about this in greater detail later, that there are six separate claims at issue in this case.

Source:      Howard v. District of Columbia, C.A. No. 04-2082 (PLF); Standardized Jury Instructions for the District of Columbia, 4-3, 4-4.

## 1-1  FUNCTION OF THE COURT

The function of the Court is to conduct the trial of the case in an orderly, fair, and efficient manner; to rule on questions of law that arise during the trial; and to tell you the law that applies to this case.

It is your duty to accept the law as I state it to you without questioning the wisdom of these instructions.  In other words, even if you disagree or do not understand the reasons for any of the instructions, you are bound to follow them.

Source:        Howard v. District of Columbia, C.A. No. 04-2082 (PLF); Standardized Jury  Instructions for the District of Columbia, 1-1

## 1-2 FUNCTION OF THE JURY

Your function as jurors is to decide the facts. You are the sole and exclusive judges of the facts. You alone determine the weight, the effect and the value of the evidence, and the credibility or believability of the witnesses.

You should decide the facts only from a fair evaluation of all of the evidence, without prejudice, sympathy, fear or favor.

Source:        Howard v. District of Columbia, C.A. No. 04-2082 (PLF); Standardized

Jury Instructions for the District of Columbia, 1-2.

## 1-3  SIGNIFICANCE OF PARTY DESIGNATIONS

During the course of the trial, you have heard references to the terms plaintiff and defendant. To put it as simply as possible, the plaintiff is the person who starts a lawsuit and the defendant is the person who is sued by the plaintiff.

During your deliberations, however, you must not attach any significance in weighing the evidence to the terms plaintiff and defendant. In other words, the fact that the plaintiff has filed a lawsuit against the defendant does not mean that the plaintiff is entitled to your verdict or that her evidence is entitled to greater weight than the defendant's evidence. [A plaintiff must prove every element of his or her claim by a preponderance of the evidence and a defendant must prove every element of its defense by a preponderance of the evidence.]

Source:    Howard v. District of Columbia, C.A. No. 04-2082 (PLF); Standardized Jury Instructions for the District of Columbia, 1-3.

## 1-4  JURORS' DUTY TO DELIBERATE

It is your duty as jurors to consult with one another and to deliberate expecting to reach an agreement. You must decide the case for yourself but you should do so only after thoroughly discussing it with your fellow jurors. You should not hesitate to change an opinion when convinced that it is wrong. You should not be influenced to vote in any way on any question just because another juror favors a particular decision or holds an opinion different from your own. You should reach an agreement only if you can do so in good conscience. In other words, you should not surrender your honest beliefs about the effect or weight of evidence merely to return a verdict or solely because of other jurors' opinions.

Source:     Howard v. District of Columbia, C.A. No. 04-2082 (PLF); Standardized Jury Instructions for the District of Columbia, 1-4.

## 1-5  ATTITUDE AND CONDUCT OF JURORS

Remember that you are not advocates in this matter. You are neutral judges of the facts. The final test of the quality of your service will lie in the verdict which you return to this courtroom. You will make an important contribution to the cause of justice if you arrive at a just and proper verdict in this case. Therefore, during your deliberations in the jury room, your purpose should not be to support your own opinion but to determine the facts.

Source:    Howard v. District of Columbia, C.A. No. 04-2082 (PLF); Standardized Jury Instructions for the District of Columbia, 1-5

## 1-6 INSTRUCTIONS TO BE

## CONSIDERED AS A WHOLE

You must treat and consider all of these instructions as a whole. You must not single out any particular instruction or sentence while ignoring others. You must give each instruction equal importance and consider each one equally with all other instructions.

Source:        Howard v. District of Columbia, C.A. No. 04-2082 (PLF); Standardized

Jury Instructions for the District of Columbia, 1-6

## 1-7  COURT'S COMMENTING

## ON THE EVIDENCE

The law permits me to comment to you about the evidence in this case, although I do not believe I have done so in this case.  But let me say that any comments I may have made about the facts do not bind you.  If, during the course of this trial, or the giving of these instructions, I have made or make any comment on any evidence, you are free to disregard the comment. Remember, you are the sole and exclusive judges of all questions of fact in this case.

Source:        Howard v. District of Columbia, C.A. No. 04-2082 (PLF); Standardized

Jury Instructions for the District of Columbia, 1-7.

## 1-8  COURT'S QUESTIONS TO WITNESSES

During the course of the trial, I may have asked questions of a witness, to obtain information or to bring out facts. You should not take my questions to witnesses as any indication of my opinion about how you should determine the facts.

Source:      Howard v. District of Columbia, C.A. No. 04-2082 (PLF); Standardized
             Jury Instructions for the District of Columbia, 1-8.

## 1-9  JURY NOT TO TAKE CUE FROM JUDGE

If I have said or done anything at any time during this case, including giving these instructions, which seemed to indicate my opinion on any of these matters, then I instruct you to disregard that indication. Nothing I have said or done should influence or suggest to you that I favor any party in this case.

I have not meant to express, or to suggest, any opinion about which witnesses should be believed, or which facts are established.

Source:      <u>Howard v. District of Columbia</u>, C.A. No. 04-2082 (PLF); Standardized
            Jury Instructions for the District of Columbia, 1-9.

## 1-10  RULINGS ON OBJECTIONS

There may have been times during the trial when a lawyer made an objection to a question asked by another lawyer or to an answer given by a witness. It is the duty of a lawyer to make objections if the lawyer believes something improper is being done. When I sustained an objection to a question, the witness was not allowed to answer it. Do not attempt to guess what the answer might have been had I allowed the question to be answered. Similarly, when I told you to disregard a particular answer -- when I ordered it stricken -- you should have put that statement out of your mind, and you may not refer to that stricken answer during your deliberations.

While it may have been natural for you to become impatient with the delay caused by objections or other portions of the proceedings, you must not let your feelings in any way affect your deliberations. Those interruptions concerned legal matters, while your job is to decide the facts. You should not be influenced by any lawyer's objections, no matter how I ruled upon them.

Source:    Howard v. District of Columbia, C.A. No. 04-2082 (PLF); Standardized
           Jury Instructions for the District of Columbia, 1-10.

## 1-11  EQUALITY OF LITIGATIONS -- GOVERNMENT AGENCY

Our system of justice requires that you decide the facts of this case in an impartial manner. You must not be influenced by bias, sympathy, prejudice or public opinion. It is a violation of your sworn duty to base your verdict upon anything other than the evidence in the case.

In reaching a just verdict, you must consider and decide this case as an action between persons of equal standing in the community and of equal worth.  The federal government and its agencies, like HUD OIG, have the same right to a fair trial as private individuals. All persons, individuals and including government agencies, stand equal before the law and are to be treated as equals in this court.  In other words, the fact that the defendant is an agency of the federal government, must not affect your decision.

Source:        Howard v. District of Columbia, C.A. No. 04-2082 (PLF); Standardized Jury Instructions for the District of Columbia, 1-11.

## 2-1  EVIDENCE IN THE CASE

You may consider only the evidence properly admitted in the case. Evidence includes the sworn testimony of witnesses, exhibits admitted into evidence, and facts stipulated and agreed to by counsel. You may consider any facts to which all counsel have agreed or stipulated to be undisputed evidence.

Source:    <u>Howard v. District of Columbia</u>, C.A. No. 04-2082 (PLF); Standardized Jury Instructions for the District of Columbia, 2-1.

## 2-3  INFERENCES

As I have said, in arriving at your verdict, you are to consider only the evidence in the case. When you are considering the evidence, however, you are not limited solely to the statements of the witnesses and exhibits. You are permitted to draw from the evidence any inferences or conclusions that reason and common sense lead you to make.  An inference is a deduction or conclusion which reason and common sense lead you to make from facts which have been proved.

Source:     Howard v. District of Columbia, C.A. No. 04-2082 (PLF); Standardized
            Jury Instructions for the District of Columbia, 2-3.

## 2-4  INADMISSIBLE AND STRICKEN EVIDENCE

It is the duty of the lawyers to object when the other side offers testimony or other materials that a lawyer believes are not properly admissible in evidence.

If, during the course of the trial, I sustained an objection by one lawyer to a question asked by the other lawyer, you are to disregard the question and you must not guess about what the answer would have been. If a question was asked and the witness answered it, and I ruled that you should not consider the answer, then you must disregard both the question and the answer in your deliberations just as if the question and answer had never been spoken.

Likewise, if I sustained an objection to any exhibits or ordered them stricken, then those stricken exhibits are not evidence and you must not consider them.

Source:        Howard v. District of Columbia, C.A. No. 04-2082 (PLF); Standardized
              Jury Instructions for the District of Columbia, 2-4.

## 2-5 STATEMENTS OF COUNSEL

Statements and arguments of the lawyers, such as their opening statements and closing arguments, are not evidence. They are intended only to help you understand and interpret the evidence from each party's perspective.

The questions that the lawyers ask are not evidence. A lawyer's question that contains an assertion of a fact does not provide evidence of that fact unless that fact is already in evidence or, with my permission, has been asked subject to proving the facts asserted later during the trial.

Source:     <u>Howard v. District of Columbia</u>, C.A. No. 04-2082 (PLF); Standardized
Jury Instructions for the District of Columbia, 2-5.

## 2-6  JURY'S RECOLLECTION CONTROLS

During this case, I or the lawyers may have called your attention to certain evidence. If you remember that evidence differently from the way I or the lawyers stated it, then you should disregard our characterization of the evidence and rely upon your own memory.  It is your recollection of the evidence that controls.

Source:        Howard v. District of Columbia, C.A. No. 04-2082 (PLF); Standardized

Jury Instructions for the District of Columbia, 2-6.

### 2-8  BURDEN OF PROOF

The party who makes a claim or a defense has the burden of proving it. This burden of proof means that the plaintiff must prove every element of a claim by a preponderance of the evidence and that the defendant must prove every element of a defense by a preponderance of the evidence.

To establish a fact by a preponderance of the evidence is to prove that it is more likely so than not so. In other words, a preponderance of the evidence means that the evidence produces in your mind the belief that the thing in question is more likely true than not true.

If, after considering all of the evidence, the evidence favoring the plaintiff's side of an issue is more convincing to you, and causes you to believe that the probability of truth favors the plaintiff on that issue, then the plaintiff will have succeeded in carrying the burden of proof on that issue.

If, after considering all of the evidence, the evidence favoring the defendant's side of an issue is more convincing to you, and causes you to believe that the probability of truth favors the defendant on that issue, then the defendant will have succeeded in carrying the burden of proof on that issue.

The term "preponderance of the evidence" does not mean that the proof must produce absolute or mathematical certainty.  For example, it does not mean proof beyond a reasonable doubt as is required in criminal cases.

Whether there is a preponderance of the evidence depends on the quality, and not the quantity, of evidence. In other words, merely having a greater number of witnesses or documents

bearing on a certain version of the facts does not necessarily constitute a preponderance of the evidence.

If you believe that the evidence is evenly balanced on an issue the plaintiff had to prove, then the plaintiff has not carried the burden of proof and your finding on that issue must be for the defendant.  If you believe that the evidence is evenly balanced on an issue the defendant had to prove, then the defendant has not carried the burden of proof and your finding on that issue must be for the plaintiff.

Source:    Howard v. District of Columbia, C.A. No. 04-2082 (PLF); Standardized
           Jury Instructions for the District of Columbia, 2-8

## 2-9  EVIDENCE PRODUCED BY ADVERSARY

In determining whether any fact has been proved by a preponderance of the evidence, you should consider all the evidence bearing upon that fact, regardless of who produced it. A party is entitled to benefit from all evidence that favors him or her whether he or she produced it or his or her adversary produced it.

Source:          Howard v. District of Columbia, C.A. No. 04-2082 (PLF); Standardized

Jury Instructions for the District of Columbia, 2-9

## 2-10  DIRECT AND CIRCUMSTANTIAL EVIDENCE

There are two types of evidence: direct and circumstantial.  Direct evidence is the direct proof of a fact, such as the testimony of an eyewitness. Circumstantial evidence is indirect evidence of a fact which is established or logically inferred from a chain of other facts or circumstances. For example, direct evidence of whether an animal was running in the snow might be the testimony of a person who actually saw the animal in the snow. Circumstantial evidence might be the testimony of a person who saw the tracks of the animal in the snow, rather than the animal itself.

You may consider both types of evidence equally. The law makes no distinction between the weight to be given either direct or circumstantial evidence. The law does not require a greater degree of certainty for circumstantial evidence than of direct evidence. You should weigh all the evidence in the case, both direct and circumstantial, and find the facts in accordance with that evidence.

Source:        Howard v. District of Columbia, C.A. No. 04-2082 (PLF); Standardized
                     Jury Instructions for the District of Columbia, 2-10.

## INFERENCES

During the trial and in these instructions you have heard the attorneys and me use the term "inference." The lawyers have asked you to "infer," on the basis of your reason, experience, and common sense, from one or more established facts, the existence of some other fact.

An inference is not a suspicion or a guess. It is a reasoned, logical conclusion that a disputed fact exists on the basis of another fact which has been shown to exist.

There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence. The plaintiff may ask you to draw one set of inferences, while the defense may ask you to draw another. It is for you and you alone to decide what inferences to draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a deduction or conclusion from which you, the jury, are permitted to draw – but are not required to draw –from the facts which have been established by either direct evidence or circumstantial evidence. In drawing inferences, you should exercise your common sense.

So, while you are considering the evidence presented to you, you are permitted to draw, from the facts which you find to be proven, such reasonable inferences as would be justified in light of your experience.

An example of inferences that you might draw, but that you would not be required to draw, are as follows:

If you were outside and saw the leaves of the trees wet and the sky cloudy, you could infer that it had been raining that day.

If you were inside during the day and saw a man or woman entering the courtroom with a

wet overcoat and shaking his or her umbrella, you could infer that it had been raining outside not long ago.

If you saw that same man or woman putting on a wet coat and carrying a wet umbrella as he or she was leaving the courtroom, you could not infer what the weather would be outside three or four hours later.

Source:     <u>Howard v. District of Columbia</u>, C.A. No. 04-2082 (PLF); <u>Modern Federal Jury Instructions (Civil Instructions)</u>, Vol. 4, No. 75-1 (2001);

## STIPULATIONS

The parties have stipulated to certain facts for the purposes of this case. Stipulations of fact reflect an agreement between parties that certain facts are true for the purposes of this case. I have read the parties' stipulations to you earlier [and provided copies to you earlier/will be providing copies to you when you retire for your deliberations].

You must regard stipulated facts as true in deciding your verdict. You must not regard stipulated facts in isolation from other facts that you are to decide by a preponderance of the evidence, nor should you assume anything because some facts have been stipulated to and others have not. Stipulated facts are to be treated no differently from facts that you decide by a preponderance of the evidence during your deliberations, except that no proof of stipulated facts is required.

Source:    Howard v. District of Columbia, C.A. No. 04-2082 (PLF);

Veroza v. Merrill Lynch, Pierce, Fenner & Smith, 589 F.2d 974

(9th Cir. 1973); Fifth Circuit Pattern Jury Instruction 2.3;

## 3-1 JURY TO DETERMINE

## CREDIBILITY OF WITNESSES

In evaluating the evidence and deciding what the facts are, you must consider and weigh the testimony of all the witnesses who have appeared before you. You are the sole judges of the credibility of the witnesses. In other words, you alone are to determine whether to believe any witness and to what extent any witness should be believed. If there is any conflict in the testimony between a witness's testimony and other evidence, it is your function to resolve the conflict and to determine where the truth lies.

In deciding the credibility of any witness, you may consider any matter that may have a bearing on the subject. You may consider the appearance and the behavior of the witness on the witness stand; whether the witness impresses you as a truthful individual; whether the witness impresses you as having an accurate memory and recollection; whether the witness has any motive for not telling the truth; whether the witness had full opportunity to observe the matters about which he or she has testified; whether the witness has any interest in the outcome of this case; or whether the witness has any friendship or animosity toward other persons concerned in this case.

You may consider the reasonableness or unreasonableness, and the probability or improbability, of the testimony of a witness in determining whether to accept it as true and accurate. You may consider whether the witness has been contradicted or corroborated by other credible evidence.

If you believe that any witness has shown himself to be biased or prejudiced, either for or against either side in this trial, you may consider and decide whether that bias or prejudice has colored the testimony of the witness so as to affect the witness's desire and capability to tell the truth.

You should give the testimony of each witness as much weight as in your judgment it is fairly entitled to receive.

Source:    <u>Howard v. District of Columbia</u>, C.A. No. 04-2082 (PLF); Standardized

Jury Instructions for the District of Columbia, 3-1

## 3-5 DEPOSITIONS AS EVIDENCE

During the trial of this case, certain testimony has been read to you or presented to you by videotape. You should give to this testimony the same consideration as to its weight and credibility, as you give to the testimony of witnesses who testified here in court. You must not discount any testimony merely because it was read to you or presented on videotape. It is testimony that was given under oath and is the same as testimony given live in Court.

Source:    Howard v. District of Columbia, C.A. No. 04-2082 (PLF); Standardized
           Jury Instructions for the District of Columbia, 3-5

## 3-8  IMPEACHMENT BY PRIOR

## INCONSISTENT STATEMENTS

The testimony of a witness may be discredited or impeached by showing that he or she has previously made statements which are inconsistent with his or her present courtroom testimony. It is for you to decide whether a witness made a statement on an earlier occasion and whether it was in fact inconsistent with the witness's testimony in court here.

If a witness at trial has been confronted with a prior statement which that witness made, and that prior statement is inconsistent with his or her testimony here in court, then you may consider the prior statement when you assess the truthfulness of the testimony given in court.

If the witness made the prior inconsistent statement under oath subject to the penalty of perjury, then you may also treat that prior statement as evidence in this case -- that is, you may treat what the witness said in that prior statement as evidence like any other evidence in this case.

If you believe that any witness has been discredited or impeached, then you should give his or her testimony the weight, if any, that you judge it is fairly entitled to receive.

Source:    Howard v. District of Columbia, C.A. No. 04-2082 (PLF); Standardized

Jury Instructions for the District of Columbia, 3-8

## 3-9  ADOPTING PRIOR INCONSISTENT STATEMENTS

If a witness testifies that a prior inconsistent statement is the truth, then you may consider the prior statement both to evaluate the witness's credibility and as evidence of the truth of any fact contained in that statement.

Source:       Howard v. District of Columbia, C.A. No. 04-2082 (PLF); Standardized

              Jury Instructions for the District of Columbia, 3-9

## THE STATUTE

This case arises under Title VII of the Civil Rights Act of 1964, a federal law which prohibits employers, including the federal government and its agencies, from discriminating against an employee or an applicant for employment and from retaliating against an employee or applicant for employment for utilizing a protected EEO complaints process.

In specific terms, Title VII provides that:

> All personnel actions affecting employees or applicants for employment with the federal government shall be made free from any discrimination based on race, color, religion, sex, or national origin, and free from any retaliation based on protected EEO activity.
>
> An unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin or prior use a federal agency's administrative discrimination complaints process was a motivating factor for any personnel practice, even though other factors also motivated the practice.

The decision to remove an employee from a supervisory or management position is one of the personnel actions covered by Title VII.

The decision to reassign an employee without his or her agreement to a position with significantly different responsibilities is another of the personnel actions covered by Title VII.

Race and sex are two of the categories protected under Title VII.

Using a federal agency's EEO discrimination complaints process is an activity that is protected under Title VII, whether or not the complaint is successful and whether or not its allegations are correct.

Source:        Howard v. District of Columbia, C.A. No. 04-2082 (PLF); 42 U.S.C. sec. 2000e-16 (incorporating 42 U.S.C. sec. 2000e-2, e-3); Womack v. Munson, 619 F.2d 1292, 1298 (8th Cir. 1980).

## REDUCTION IN SALARY UNNECESSARY

Title VII does not only prohibit s employers from taking those employment and personnel actions that cause an employee's salary to be reduced.  It also prohibits an employer from discriminating or retaliating against an employee by removing his or her supervisory duties, without any reduction in his or her salary or benefits.  It also prohibits reassigning an employee to a position with significantly different responsibilities, without any reduction in his or her salary or benefits.

Source:     Czekalski v. Peters, 475 F.3d 360, 364 (D.C. Cir. 2007).  Stewart

v. Ashcroft, 352 F.3d 422, 427 (D.C. Cir. 2004); Burke v. Gould,

286 F.3d513, 522 (D.C. Cir. 2002); Burlington Indus., Inc. v.

Ellerth, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633

(1998); Forkkio v. Powell, 306 F.3d 1127, 1131 (D.C. Cir. 2002).

## SEPARATE AND MULTIPLE CLAIMS AND VERDICTS

There are six separate claims that are at issue in this case. Unless I instruct you otherwise, the instructions that I give you apply equally to each of these six claims.

Ms. Elion has claimed that discrimination on account of her race <u>OR</u> her sex was a motivating factor of HUD OIG in removing her from a supervisory position, even though other factors may also have motivated HUD OIG.

Ms. Elion has also claimed that discrimination on account of her race <u>OR</u> her sex was a motivating factor of HUD OIG in reassigning her involuntarily to a position with significantly difference responsibilities, even though other factors may also have motivated HUD OIG.

Similarly, Ms. Elion has claimed that retaliation on account of her prior use of the administrative discrimination complaints process was a motivating factor of HUD OIG in removing her from a supervisory position, even though other factors may also have motivated HUD OIG.

Ms. Elion has also claimed that retaliation on account of her prior use of the administrative discrimination complaints process was a motivating factor of HUD OIG in reassigning her involuntarily to a position with significantly different responsibilities, even though other factors may also have motivated HUD OIG.

You are to deliberate on each of these six separate claims and render a verdict on each one separately. If you find that Ms. Elion has proven one, more than one, or all of her claims by a preponderance of the evidence, you are to find for her and enter judgment accordingly.

If you find that Ms. Elion has not proven any of her claims by a preponderance of the evidence, or that defendant has proven an affirmative defense to all of Ms. Elion's successful claims by a preponderance of the evidence, you are to find for HUD OIG and enter judgment accordingly.

Source:        Standardized Jury Instructions for the District of Columbia, 4-3, 4-4.

### ESSENTIAL ELEMENTS OF PLAINTIFF'S CLAIMS

Ms. Elion has the burden of proving by a preponderance of the evidence that discrimination on account of her race and/or her sex and/or retaliation for her use of the protected discrimination complaints process was a motivating factor of HUD OIG in removing her from a supervisory position and/or reassigning her involuntarily to a position with significantly different responsibilities, even though other factors may also have motivated HUD OIG.

Ms. Elion is not required to prove that discrimination or retaliation due to her use of the protected discrimination complaints process was a motivating factor or one of the motivating factors behind HUD OIG's action in disbanding the Headquarters Audits Division.  Although Ms. Elion may prove and may have proven by a preponderance of the evidence that discrimination or retaliation was a motivating factor, but not the sole or exclusive motivating factor of HUD OIG in disbanding her former Division, she is not required to do so.  She only has to prove by a preponderance of the evidence that either discrimination or retaliation was a motivating factor, but not the only factor or factors, in removing her from a supervisory position and reassigning her to a position with significantly different responsibilities.

If plaintiff has not proved, by a preponderance of the evidence, that one of HUD OIG's motivating factors, but not the sole or exclusive motivating factor of HUD OIG, was discriminating against plaintiff on account of her race or her sex or retaliating against plaintiff on account of her use of the administrative discrimination complaints process in removing her from a supervisory position or reassigning her involuntarily to a position

with significantly different responsibilities, your verdict must be for defendant.


      Source:        Standardized Jury Instructions for the District of Columbia, 3-8.

## MOTIVATING FACTOR –

## NOT EXCLUSIVE FACTOR

Ms. Elion is not required to prove that her race, her sex, or her prior use of the agency's administrative discrimination complaints process was the sole motivation or even the primary motivation behind defendant's decision to remove her from a supervisory position. Neither is she required to prove that her race, her sex, or her prior use of the agency's administrative discrimination complaints process was the sole motivation or even the primary motivation behind defendant's decision to reassign her involuntarily. Ms. Elion need only prove that her race or her sex or her prior use of the administrative EEO complaints process was a motivating factor in either removing her from a supervisory position or reassigning her involuntarily, even though other factors may have also motivated HUD OIG. Ms. Elion does not have to prove by a preponderance of the evidence that discrimination or retaliation was HUD OIG was solely motivated by intentional discrimination and/or retaliation or that other factors were not involved.

Source:      Howard v. District of Columbia, C.A. No. 04-2082 (PLF); West

Federal Jury Practice and Instructions, Vol. 3C, §171.20 (5th ed.); 42

U.S.C. §1981; Title VII of the Civil Rights Act of 1964, as amended,

42 U.S.C. §2000e-2(m).

## SAME ACTION DEFENSE[1]

If plaintiff has proved, by a preponderance of the evidence, that one of HUD OIG's motivating factors, but not the sole or exclusive motivating factor of HUD OIG, was discriminating against plaintiff on account of her race or her sex or retaliating against plaintiff on account of her use of the administrative discrimination complaints process in removing her from a supervisory position or reassigning her involuntarily to a position with significantly different responsibilities, you may have one final task. That is to determine whether the defendant had a reason or reasons for taking these actions that is independent of your reasons for finding that it discriminated or retaliated against plaintiff and, if so, whether the defendant has proven by a preponderance of the evidence that it would have taken the same employment decisions toward plaintiff for one or more independent non-discriminatory and non-retaliatory reasons.

In other words, you are first to determine whether HUD OIG has proven by a preponderance of the evidence that it had a reason or reasons for its actions independent of why you found that it discriminated or retaliated against Ms. Elion. If you find that it had an independent reason or reasons, and only if you find that it did, then you are to determine whether defendant has proven by a preponderance of the evidence that it would have taken the same actions independent of your reasons for finding that one or more of its motivating factors was discriminating or retaliating against plaintiff.

If you find that HUD OIG has proven by a preponderance of the evidence that it

---

[1]     Plaintiff respectfully submits that this instruction may only be given if defendant's same action defense is based on a one or more reasons and on evidence independent of the evidence and actions it has presented in defending against plaintiff's claims of discrimination and retaliation.

had one or more independent reasons and that it would have taken the same actions toward Ms. Elion even though discrimination or retaliation was a motivating factor, but not the sole or exclusive motivating factor, in removing her from a supervisory position and/or reassigning her involuntarily to a position with significantly different responsibilities, then you must find for defendant.

If you do not find that HUD OIG has proven by a preponderance of the evidence that it would have taken the same actions toward Ms. Elion even though discrimination or retaliation was a motivating factor, but not the sole or exclusive motivating fact, in removing her from a supervisory position and/or reassigning her involuntarily to a position with significantly different responsibilities, then you must find for plaintiff.

Source:     Desert Palace, Inc. v. Costa, 123 S.Ct. 2148, 2155 (2002); Price Waterhouse v. Hopkins, 490 U.S. 228, 240-41 (1989); reversing in part Hopkins v. Price Waterhouse, 825 F.2d 458, 471-72 (D.C. Cir. 1987); Jones v. WMATA, 946 F. Supp. 1011, 1017 (D.D.C. 1996); ; Opley v . BAX  Global Inc., 97 F.Supp.2nd 1164, 1170-71 (S.D. Fla. 2000) 42 U.S.C. sec. 2000e-5(g)(2)(b).

## REPLACEMENT NOT NECESSARY

Ms. Elion "need not demonstrate that she was replaced as a Division Director or in a supervisory position by a person" who was not an African American and not a female, or who did not engage in protected EEO activity when HUD OIG abolished her former Division, in order to prevail on one or more of her claims.

Source:     Stella v. Mineta, supra, 284 F.3d 135, 146 (D.C. Cir. 2002);

Washington v. Garrett, 10 F.3d 1421, 1433 (9th Cir. 1994);

Montana v. First Federal Savings & Loan Ass'n, 869 F.2d 100, 104 (2nd Cir. 1989).

## INTENT – DEFINITION OF DISPARATE TREATMENT

"'Disparate treatment' such as is alleged in the present case is the most easily understood type of discrimination" and retaliation. "The employer simply treats some people less favorably ... because of their race, or ... sex, or" protected EEO activity.

Source:    International Brotherhood of Teamsters v. United States, 431 U.S. 324 at 335, n.15 (1977).

# PROOF OF INTENT

Ms. Elion is not required to produce direct evidence of HUD OIG's intent to discriminate or retaliate. There is "usually" only circumstantial evidence of "discriminatory" or "retaliatory" motives. "There will seldom be 'eyewitness' testimony as to the employer's mental processes."

Source:    Aikens v. USPS, 460 U.S. 711, 716 (1983); Krodel v. Young, 701 F.2d 784, 707 (D.C. Cir. 1984).

## BUSINESS JUDGMENT

It is not your function to second-guess the wisdom of the employer's business decision in this case. It is your function, as I have said, to determine whether plaintiff's race was a motivating factor in the decision. In other words, you may not return a verdict for plaintiff just because you might disagree with the employer's decision or believe it to be harsh or unreasonable.

Source:        Howard v. District of Columbia, C.A. No. 04-2082 (PLF).

**EMPLOYER'S CREDIBILITY IN EMPLOYMENT CASES**

Proof that the HUD OIG's explanation for its actions is not credible or is contradictory is simply one form of circumstantial evidence from which you may infer, but do not have to infer, that it is covering up discrimination or retaliation. If you find that any of HUD OIG's explanations for its actions is materially false in one or more respects, you "can reasonably infer," but do not have to infer "from the falsity of the explanation that" HUD OIG " is dissembling to cover up a discriminatory" or retaliatory "purpose." You are "entitled to consider, but do not have to consider, any "dishonesty" on the part of HUD OIG "about a material fact as "'affirmative evidence of'" discrimination or retaliation.

Source:    Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148
(2000);  Aka v. Washington Hospital Center, 156 F.3d 1284, 1290
(D.C. Cir. 1998) (en banc)

## TREATMENT OF OTHER EMPLOYEES

An employer's treatment of other employees who are minorities or women or who engaged in protected EEO activity is also circumstantial evidence from which you may infer, but do not have to infer, that it intended to discriminate or retaliate against the plaintiff.  Ms. Elion has pointed to HUD OIG's treatment of Mr. Groom, her predecessor as District Inspector General in Washington, D.C.; its treatment of Donna Hawkins, her Assistant Division Director; and or its treatment of Michael Beard, the former Regional Inspector General for Audit in Texas, as evidence from which you may infer, but do not have to infer, that defendant discriminated and retaliated against her.

Source:        McDonnell Douglas Corp. v. Green, 411 U.S. 792, 804 (1973); Becker v. ARCO Chem. Co., 207 F.3d 176, 194 (3rd Cir. 2000); Quarantino v. Tiffany & Co., 71 F.3d 58, 63 (2nd Cir. 1995);  Heyne v. Caruso, 69 F.3d 1475, 1479-81 (9th Cir. 1995); Kelber v. Joint Industry Bd. of Elec. Industry, 27 F.3d 42, 47-48 (2nd Cir. 1994); Parker v. HUD, 891 F.2d 316, 321  (D.C. Cir. 1989). Riordan v. Kempiners, 831 F.2d 690, 697-98 (7th Cir. 1987);  Morris v. WMATA, 702 F.2d 1037, 1045 (D.C. Cir. 1982); Higby v. Billingham, 246 F.Supp.2nd 10 at 15 & n.5 (D.D.C. 2003); Jones v. WMATA, 946 F. Supp. 1011, 1019 (D.D.C. 1996); Rule 404(b), Fed. R. Evid.

## OTHER CIRCUMSTANTIAL EVIDENCE

Ms. Elion has offered other evidence from which you may infer, but do not have to infer, defendant's intent to discriminate or retaliate. She maintains that among such evidence is: (1) the performance of the Headquarters Audits Division, Ms. Elion's former Division, at the time it was disbanded; (2) her seniority in the Headquarters Office of Audit; (3) her removal from a supervisory position and/or her involuntary reassignment to a position with significantly different responsibilities; (4) the need for some of all of her staff in other Divisions; and/or (5) the way in which HUD OIG made the decision to disband the Headquarters Audits Division.

As with all evidence in the case, what weight you give to this evidence, and what inferences you choose to draw, is entirely up to you.

Source:      Howard v. District of Columbia, C.A. No. 04-2082 (PLF); 42 U.S.C. sec. 2000e-16 (incorporating 42 U.S.C. sec. 2000e-2, e-3); Aka v. Washington Hospital Center, 156 F.3d 1284, 1295 (D.C. Cir. 1998) (en banc); Holcomb v. Powell, 433 F.3d 889, 897 (D.C. Cir. 2006); Lathram v. Snow, 336 F.3d 1085, 1093 (D.C. Cir. 2003).

## AGENCY

In government agencies like HUD OIG, employment decisions and personnel selections are often the products of decisions, recommendations, and evaluations of more than one individual. A government agency like HUD OIG can only act through natural individuals and is responsible for the acts that its employees make during personnel actions.

Source:     <u>Howard v. District of Columbia</u>, C.A. No. 04-2082 (PLF)

<u>Standardized Jury Instructions for the District of Columbia</u>, 4-5.

## INDIVIDUALS CENTRALLY INVOLVED IN DECISION-MAKING

Plaintiff is only required to show that one of the individuals who played a central role in the decision to remove her from a supervisory position and/or to reassign her to a position with significantly different responsibilities discriminated or retaliated against her, not that every one did.

The motives of all participants who are centrally involved in employment actions that are alleged to be discriminatory or retaliatory are relevant unless the "record affirmatively demonstrates" that a decision was reached "independently" by others. The fact that one or more other individuals contributed to the decision-making process or made or approved of the employment actions at issue does not insulate an employer from liability.

Source:      Griffin v. Washington Convention Center, 142 F.3d 1308, 1311-12
              (D.C. Cir. 1998).

## DAMAGES

I will now give you a series of instructions about damages.

You should not consider the fact that I am giving you this instruction as suggesting any view of mine as to which party is entitled to your verdict in this case, or that I think you should award any damages. Those decisions are entirely for you to make. I am giving you these instructions solely for your guidance, in the event that you find in favor of plaintiff and against defendant.

Source:     <u>Howard v. District of Columbia</u>, C.A. No. 04-2082 (PLF).

## DAMAGES

Compensatory damages are those damages that comprise fair compensation for a plaintiff when he or she has been discriminated against or retaliated against. If you find in favor of plaintiff, then you must award plaintiff such sum as you find by a preponderance of the evidence will fairly and reasonably compensate her for any damages you find she actually sustained as a direct result of being removed from a supervisory position and/or reassigned involuntarily to a position with significantly different responsibilities.

Any compensatory damages you award to Ms. Elion must include some compensation for the violation of her civil rights, even if it is only nominal. It may also include compensation for any future economic loss, emotional pain, suffering, inconvenience, mental anguish, or loss of enjoyment of life that she experienced as a consequence of discrimination.

No evidence of the monetary value of intangible damages has been, or need be, introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Any award you make should be fair in light of the evidence presented at the trial.

In determining the amount of any damages that you decide to award, you should be guided by common sense. You must use sound judgment, drawing reasonable inferences from the facts in evidence. You may not award damages based on sympathy, conjecture, speculation, guess work or punishment. On the other hand, the law does not require that plaintiff prove the amount of damages with mathematical precision. The damages that you award must be fair compensation, no more and no less.

Your award of damages must not include any amounts for lost pay or benefits or attorney fees. The award of any amounts for lost pay or benefits or attorney fees, if appropriate, is for the Court to decide and award.

Source:    Howard v. District of Columbia, C.A. No. 04-2082 (PLF); West Federal Jury Practice and Instructions, Vol. 3C, §§171.90, 171.92 (5th ed.); Thompson v. Int. Ass'n of Machinists, 614 F. Supp. 1002 (D.D.C. 1985); Eller v. Houston's Restaurant, 35 FEP Cases 1801 (D.D.C. 1984); Standardized Jury Instructions for the District of Columbia, 12-1, 2, 3; Modern Federal Jury Instructions No. 77-3.

Respectfully submitted,


_____//s//_____
Robert C. Seldon, Esq.
 D.C. Bar No. 245100


_____//s//_____
Molly E. Buie, Esq.
 D.C. Bar No. 483767
Robert C. Seldon & Associates, P.C.
1319 F Street, N.W., Suite 200
Washington, D.C.  20004
(202) 393-8200

Counsel for Plaintiff