UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAUNDRA G. ELION, | ) |
| Plaintiff, | ) |
| v. | ) Civ. Action No. 05-0992 (PLF) |
| ALPHONSO R. JACKSON, Secretary Of Housing And Urban Development, | ) |
| Defendant. | ) |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO QUASH, OR IN THE ALTERNATIVE, MOTION *IN LIMINE***

Defendant's motion is based on a fundamental misunderstanding, both of the proposed subject of Mr. Johnson's testimony and of the applicability of the attorney-client and work product privileges to it. Defendant's concern that Mr. Johnson's testimony would solicit responses of confidential or privileged advice or information is unfounded. See Mtn. Quash at 5-8. Mr. Johnson need not even be identified as an attorney. All that is desired of Mr. Johnson is that he explain in easily understood language the information that he himself verified under oath when defendant selected him to respond to plaintiff's written discovery on its behalf. Since defendant cannot possibly be prejudiced by having one of its own employees appear to testify about defendant's own discovery responses, its Motion to Quash is meritless.

**I. BACKGROUND**

This case involves the decision of the Office of Inspector General ("OIG") for the Department of Housing and Urban Development ("HUD") to abolish the Headquarters Audits Division, which Saundra Elion formerly headed, and to reassign her to a non-supervisory, make-

1

work Special Assistant position. According to defendant, it took that action as part of a realignment of the Office of Audit that took place in 2004 due to budgetary constraints and a hiring freeze. During discovery, plaintiff sought information and documents that would challenge defendant's articulated reasons by propounding written discovery regarding defendant's allocation of funds and full time personnel or their equivalents ("FTEs") to each audit office, district, and/or region of the agency. Ex. 1 at 29. Plaintiff also sought information about defendant's reduction in force ("RIF") retention policy. Ex. 2 at 2.

As plaintiff expected, defendant's discovery responses and document production revealed that there is no separate budget for the Office of Audit and that FTEs are not allocated by office, and that there was no new need to abolish plaintiff's former Division in order to assign staff to other Divisions in April of 2004. Ex. 1 at 29, Bates 2414. They further showed that if plaintiff's office had been abolished through a RIF rather than a "realignment," she would have been entitled to a supervisory position in the Office of Audit instead of a white male. Ex. 2 at 2-3, Bates 3202. Defendant's responses were verified by Richard Johnson, the Deputy Counsel to the Inspector General. Exs. 1-2.

## II.  ARGUMENT

### DEFENDANT'S MOTION TO QUASH IS UNFOUNDED

Plaintiff's aim in subpoenaing Mr. Johnson to testify at trial is merely to have him confirm the significance of two of defendant's discovery responses that he himself verified – its response to Request for Production ("RFP") No. 8 and its supplemental response to Interrogatory No. 12 – and to explain their meaning in terms that will be easily understood by the jury. Regarding RFP 8, plaintiff intends to call Mr. Johnson to confirm that there is no separate budget for the Office of Audit and that FTEs are not allocated by office. Plaintiff also intends for Mr.

Johnson to explain the charts produced by defendant showing the numbers of auditors on board and the hiring ceiling in the Office of Audit overall and by region and division. Ex. 1 at 29, Bates 2414.  Regarding Interrogatory No. 12, plaintiff plans on having Mr. Johnson testify about the retention register that defendant produced in order to show that plaintiff had standing in terms of seniority in the Office of Audit and under defendant's own reduction in force retention policy, which would have entitled her to "bump" an incumbent white male auditor from a supervisory position if defendant had disbanded her former Division in a reduction-in-force.  Ex. 2 at 2, Bates 3202.

There is nothing privileged about these documents and their meaning or defendant's interrogatory responses.  Even if there were, privileges do not survive voluntary disclosure to an adversary.  All of the information about which Mr. Johnson would testify has already been disclosed to plaintiff by defendant; accordingly it is not protected by the attorney-client privilege. "The case law in this Circuit is clear that confidentiality does not survive such a disclosure to a third party."  Cobell v. Norton, 213 F.R.D. 16, 24 (D.D.C. 2003 (Lamberth, J.) (citing In re Sealed Case, 877 F.2d 976, 980 (D.C.Cir.1989)); see also In re Sealed Case, 676 F.2d 793, 809 (D.C. Cir. 1982) ("any voluntary disclosure by the client to a third party breaches the confidentiality of the attorney-client relationship and therefore waives the privilege, not only as to the specific communication disclosed but often as to all other communications relating to the same subject matter").

Furthermore, Mr. Johnson's testimony would not infringe upon the attorney work product privilege.  Plaintiff does not intend to ask Mr. Johnson any questions that would call for his "mental impressions, conclusions, opinions, or legal theories … concerning the litigation" apart from what was already disclosed in defendant's discovery responses.  Fed. R. Civ. P. 26(b)(3).

Any work-product privilege that may have applied to the documents and information provided by defendant during discovery has been waived.  See <u>In re Subpoena Duces Tecum</u>, 738 F.2d 1367, 1372 (D.C. Cir. 1984) (affirming that defendant waived attorney work product privilege as to all adversaries through disclosure of documents to one adversary) (cited by <u>Navajo Nation v. Peabody Holding Co., Inc.</u>, 209 F.Supp.2d 269, 286-87 (D.D.C. 2002) (Sullivan, J.)); <u>In re Sealed Case</u>, 676 F.2d 793, 817 (D.C. Cir. 1982) ("a party waives its work product protection in civil litigation if it discloses the privileged material to anyone without 'common interests in developing legal theories and analyses of documents'").

      Defendant itself identified Mr. Johnson by selecting him to verify its responses to plaintiff's written discovery under oath.  Even if plaintiff had been required to disclose Mr. Johnson upon their receipt, he could not be excluded as a witness unless defendant was prejudiced.  Fed. R. Civ. P. Rule 37(c)(1); <u>Yeti By Molly LTD v. Deckers Outdoor Corp.</u>, 259 F.3d 1101, 1106-07 (9th Cir. 2001); <u>NutraSweet Co. v. X-L Engineering Co.</u>, 227 F.3d 776, 785-86 (7th Cir. 2000).  Mr. Johnson is still employed by defendant, which means that he is available to defendant upon demand to discuss his discovery responses and anticipated testimony at trial.  Defendant cannot possibly be prejudiced by Mr. Johnson's appearance, anymore that its privileges could be invaded by having Mr. Johnson testify about discovery responses he has already given.

### III.    CONCLUSION

For all of the foregoing reasons, plaintiff urges the Court to deny Defendant's Motion to Quash, Or In The Alternative, Motion In Limine.

Respectfully submitted,

_____//s//_____
Robert C. Seldon, Esq.
  D.C. Bar No. 245100

_____//s//_____
Molly E. Buie, Esq.
  D.C. Bar No. 483767

Robert C. Seldon & Associates, P.C.
1319 F Street, N.W., Suite 200
Washington, D.C.  20004
(202) 393-8200

Counsel for Plaintiff