**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **SAUNDRA G. ELION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civ. Action No. 05-0992 (PLF)** |
| | ) | |
| **ALPHONSO R. JACKSON,** | ) | |
|   **Secretary Of Housing And** | ) | |
|   **Urban Development,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**PLAINTIFF'S NOTICE OF FILING**

Plaintiff to the above action respectfully requests that the Court take notice of the attached decision of the U.S. Supreme Court issued earlier today in Sprint/United Management Co. v. Mendelsohn, Slip Op. no 06-1224 (Feb. 26, 2008).  The decision relates to and supports Argument I in Plaintiff's Opposition to Defendant's Motion In Limine.  It holds that a district court that applies a "a *per se* rule excluding" evidence of discrimination toward other employees by the same managers who discriminated against the plaintiff has "abused its discretion."  Id. at 8.  The Supreme Court further held that "whether evidence of discrimination by other supervisors is relevant … is within the province of the district court."  Id. at 8-9.

A copy of the decision in Sprint has been attached for the convenience of the Court.

Respectfully submitted,


_____//s//_____

Robert C. Seldon, Esq.
 D.C. Bar No. 245100




_____//s//_____

Molly E. Buie, Esq.
 D.C. Bar No. 483767
Robert C. Seldon & Associates, P.C.
1319 F Street, N.W., Suite 200
Washington, D.C.  20004
(202) 393-8200

Counsel for Plaintiff

Cite as: 552 U. S. ____ (2008)          1

Opinion of the Court

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports.  Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 06–1221

SPRINT/UNITED MANAGEMENT COMPANY, PETITIONER *v.* ELLEN MENDELSOHN

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

[February 26, 2008]

JUSTICE THOMAS delivered the opinion of the Court.

In this age discrimination case, the District Court excluded testimony by nonparties alleging discrimination at the hands of supervisors of the defendant company who played no role in the adverse employment decision challenged by the plaintiff.  The Court of Appeals, having concluded that the District Court improperly applied a *per se* rule excluding the evidence, engaged in its own analysis of the relevant factors under Federal Rules of Evidence 401 and 403, and remanded with instructions to admit the challenged testimony.  We granted certiorari on the question whether the Federal Rules of Evidence required admission of the testimony.  We conclude that such evidence is neither *per se* admissible nor *per se* inadmissible. Because it is not entirely clear whether the District Court applied a *per se* rule, we vacate the judgment of the Court of Appeals and remand for the District Court to conduct the relevant inquiry under the appropriate standard.

I

Respondent Ellen Mendelsohn was employed in the Business Development Strategy Group of petitioner

Opinion of the Court

Sprint/United Management Company (Sprint) from 1989 until 2002, when Sprint terminated her as a part of an ongoing company-wide reduction in force. She sued Sprint under the Age Discrimination in Employment Act of 1967 (ADEA), 81 Stat. 602, as amended, 29 U. S. C. §621 *et seq.*, alleging disparate treatment based on her age.

In support of her claim, Mendelsohn sought to introduce testimony by five other former Sprint employees who claimed that their supervisors had discriminated against them because of age. Three of the witnesses alleged that they heard one or more Sprint supervisors or managers make remarks denigrating older workers. One claimed that Sprint's intern program was a mechanism for age discrimination and that she had seen a spreadsheet suggesting that a supervisor considered age in making layoff decisions. Another witness was to testify that he had been given an unwarranted negative evaluation and "banned" from working at Sprint because of his age, and that he had witnessed another employee being harassed because of her age. App. 17a. The final witness alleged that Sprint had required him to get permission before hiring anyone over age 40, that after his termination he had been replaced by a younger employee, and that Sprint had rejected his subsequent employment applications.

None of the five witnesses worked in the Business Development Strategy Group with Mendelsohn, nor had any of them worked under the supervisors in her chain of command, which included James Fee, Mendelsohn's direct supervisor; Paul Reddick, Fee's direct manager and the decisionmaker in Mendelsohn's termination; and Bill Blessing, Reddick's supervisor and head of the Business Development Strategy Group. Neither did any of the proffered witnesses report hearing discriminatory remarks by Fee, Reddick, or Blessing.

Sprint moved *in limine* to exclude the testimony, arguing that it was irrelevant to the central issue in the case:

Opinion of the Court

whether Reddick terminated Mendelsohn because of her age. See Fed. Rules Evid. 401, 402. Sprint claimed that the testimony would be relevant only if it came from employees who were "similarly situated" to Mendelsohn in that they had the same supervisors. App. 156a. Sprint also argued that, under Rule 403, the probative value of the evidence would be substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading of the jury, and undue delay.

In a minute order, the District Court granted the motion, excluding, in relevant part, evidence of "discrimination against employees not similarly situated to plaintiff." App. to Pet. for Cert. 24a. In clarifying that Mendelsohn could only "offer evidence of discrimination against Sprint employees who are similarly situated to her," the court defined "'[s]imilarly situated employees,' for the purpose of this ruling, [as] requir[ing] proof that (1) Paul Ruddick [sic] was the decision-maker in any adverse employment action; and (2) temporal proximity." *Ibid.* Beyond that, the District Court provided no explanation of the basis for its ruling. As the trial proceeded, the judge orally clarified that the minute order was meant to exclude only testimony "that Sprint treated other people unfairly on the basis of age," and would not bar testimony going to the "totally different" question "whether the [reduction in force], which is [Sprint's] stated nondiscriminatory reason, is a pretext for age discrimination." App. 295a–296a.

The Court of Appeals for the Tenth Circuit treated the minute order as the application of a *per se* rule that evidence from employees with other supervisors is irrelevant to proving discrimination in an ADEA case. Specifically, it concluded that the District Court abused its discretion by relying on *Aramburu* v. *Boeing Co.*, 112 F. 3d 1398 (CA10 1997). 466 F. 3d 1223, 1227–1228 (CA10 2006). *Aramburu* held that "[s]imilarly situated employees," for the purpose of showing disparate treatment in employee

discipline, "are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." 112 F. 3d*,* at 1404 (internal quotation marks omitted). The Court of Appeals viewed that case as inapposite because it addressed discriminatory discipline, not a company-wide policy of discrimination. The Court of Appeals then determined that the evidence was relevant and not unduly prejudicial, and reversed and remanded for a new trial. We granted certiorari, 551 U. S. ___ (2007), to determine whether, in an employment discrimination action, the Federal Rules of Evidence require admission of testimony by nonparties alleging discrimination at the hands of persons who played no role in the adverse employment decision challenged by the plaintiff.

## II

The parties focus their dispute on whether the Court of Appeals correctly held that the evidence was relevant and not unduly prejudicial under Rules 401 and 403. We conclude, however, that the Court of Appeals should not have engaged in that inquiry. Rather, as explained below, we hold that the Court of Appeals erred in concluding that the District Court applied a *per se* rule. Given the circumstances of this case and the unclear basis of the District Court's decision, the Court of Appeals should have remanded the case to the District Court for clarification.

## A

In deference to a district court's familiarity with the details of the case and its greater experience in evidentiary matters, courts of appeals afford broad discretion to a district court's evidentiary rulings. This Court has acknowledged:

"A district court is accorded a wide discretion in determining the admissibility of evidence under the Fed-

Opinion of the Court

eral Rules. Assessing the probative value of [the prof-
fered evidence], and weighing any factors counseling
against admissibility is a matter first for the district
court's sound judgment under Rules 401 and 403 . . . ."
*United States* v. *Abel*, 469 U. S. 45, 54 (1984).

This is particularly true with respect to Rule 403 since it
requires an "on-the-spot balancing of probative value and
prejudice, potentially to exclude as unduly prejudicial
some evidence that already has been found to be factually
relevant." 1 S. Childress & M. Davis, Federal Standards
of Review §4.02, p. 4–16 (3d ed. 1999). Under this defer-
ential standard, courts of appeals uphold Rule 403 rulings
unless the district court has abused its discretion. See *Old
Chief* v. *United States*, 519 U. S. 172, 183, n. 7 (1997).

Here, however, the Court of Appeals did not accord the
District Court the deference we have described as the
"hallmark of abuse-of-discretion review." *General Elec.
Co.* v. *Joiner*, 522 U. S. 136, 143 (1997). Instead, it rea-
soned that the District Court had "erroneous[ly] con-
clu[ded] that *Aramburu* controlled the fate of the evidence
in this case." 466 F. 3d, at 1230, n. 4.

To be sure, Sprint in its motion *in limine* argued, with a
citation to *Aramburu*'s categorical bar, that "[e]mployees
may be similarly situated only if they had the same super-
visor," App. 163a, and the District Court's minute order
mirrors that blanket language.

But the District Court's discussion of the evidence nei-
ther cited *Aramburu* nor gave any other indication that its
decision relied on that case. The minute order included
only two sentences discussing the admissibility of the
evidence:

"Plaintiff may offer evidence of discrimination against
Sprint employees who are similarly situated to her.
'Similarly situated employees,' for the purpose of this
ruling, requires proof that (1) Paul Ruddick *[sic]* was

Opinion of the Court

the decision-maker in any adverse employment action; and (2) temporal proximity." App. to Pet. for Cert. 24a.

Contrary to the Court of Appeals' conclusion, these sentences include no analysis suggesting that the District Court applied a *per se* rule excluding this type of evidence.

Mendelsohn argued on appeal[1] that the District Court must have viewed *Aramburu* as controlling because Sprint cited the case in support of its *in limine* motion. But neither party's submissions to the District Court suggested that *Aramburu* was controlling. Sprint's memorandum in support of its motion mentioned the case only in a string citation, and not for the proposition that only "similarly situated" witnesses' testimony would be admissible.[2] App. 163a. Mendelsohn did not cite the case in her memorandum in opposition, see *id.,* at 208a, and Sprint did not address it in its reply brief, see *id.,* at 221a.

Mendelsohn further argued that the District Court's use of the phrase "similarly situated," also used in *Aramburu*, evidenced its reliance on that case. Although the District Court used the same phrase, we decline to read the District Court's decision as relying on a case that was not controlling. *Aramburu* defined the phrase "similarly situated" in the entirely different context of a plaintiff's allegation that nonminority employees were treated more

---

[1] Although, as noted above, the parties do not address in their filings before this Court the grounds on which we base our decision, we shall consider the relevant arguments they made before the Court of Appeals.

[2] Even if Sprint had argued that *Aramburu* requires a *per se* rule excluding such evidence, it would be inappropriate for the reviewing court to assume, absent indication in the District Court's opinion, that the lower court adopted a party's incorrect argument. Cf. *Lawrence* v. *Chater*, 516 U. S. 163, 183 (1996) (SCALIA, J., dissenting) ("[W]e should not assume that a court of appeals has adopted a legal position only because [a party] supported it").

favorably than minority employees. 112 F. 3d, at 1403–1406. Absent reason to do so, we should not assume the District Court adopted that "similarly situated" analysis when it addressed a very different kind of evidence. An appellate court should not presume that a district court intended an incorrect legal result when the order is equally susceptible of a correct reading, particularly when the applicable standard of review is deferential.

Mendelsohn additionally argued that the District Court must have meant to apply such a rule because that was the nature of the argument in Sprint's *in limine* motion. But the *in limine* motion did not suggest that the evidence is never admissible; it simply argued that such evidence lacked sufficient probative value "in this case" to be relevant or outweigh prejudice and delay. App. 156a.

When a district court's language is ambiguous, as it was here, it is improper for the court of appeals to presume that the lower court reached an incorrect legal conclusion. A remand directing the district court to clarify its order is generally permissible and would have been the better approach in this case.

B

In the Court of Appeals' view, the District Court excluded the evidence as *per se* irrelevant, and so had no occasion to reach the question whether such evidence, if relevant, should be excluded under Rule 403. The Court of Appeals, upon concluding that such evidence was not *per se* irrelevant, decided that it was relevant in the circumstances of this case and undertook its own balancing under Rule 403. But questions of relevance and prejudice are for the District Court to determine in the first instance. *Abel, supra,* at 54 ("Assessing the probative value of [evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 . . ."). Rather than

Opinion of the Court

assess the relevance of the evidence itself and conduct its own balancing of its probative value and potential prejudicial effect, the Court of Appeals should have allowed the District Court to make these determinations in the first instance, explicitly and on the record.[3]  See *Pullman-Standard* v. *Swint*, 456 U. S. 273, 291 (1982) (When a district court "fail[s] to make a finding because of an erroneous view of the law, the usual rule is that there should be a remand for further proceedings to permit the trial court to make the missing findings").  With respect to evidentiary questions in general and Rule 403 in particular, a district court virtually always is in the better position to assess the admissibility of the evidence in the context of the particular case before it.

We note that, had the District Court applied a *per se* rule excluding the evidence, the Court of Appeals would have been correct to conclude that it had abused its discretion.  Relevance and prejudice under Rules 401 and 403 are determined in the context of the facts and arguments in a particular case, and thus are generally not amenable to broad *per se* rules.  See Advisory Committee's Notes on Fed. Rule Evid. 401, 28 U. S. C. App., p. 864 ("Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case").  But, as we have discussed, there is no basis in the record for concluding that the District Court applied a blanket rule.

### III

The question whether evidence of discrimination by other supervisors is relevant in an individual ADEA case is fact based and depends on many factors, including how

---

[3]The only exception to this rule is when "the record permits only one resolution of the factual issue." *Pullman-Standard* v. *Swint*, 456 U. S. 273, 292 (1982).  The evidence here, however, is not of that dispositive character.

Opinion of the Court

closely related the evidence is to the plaintiff's circumstances and theory of the case. Applying Rule 403 to determine if evidence is prejudicial also requires a fact-intensive, context-specific inquiry. Because Rules 401 and 403 do not make such evidence *per se* admissible or *per se* inadmissible, and because the inquiry required by those Rules is within the province of the District Court in the first instance, we vacate the judgment of the Court of Appeals and remand the case with instructions to have the District Court clarify the basis for its evidentiary ruling under the applicable Rules.

*It is so ordered.*