THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAUNDRA ELION, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | ) Civil Action No. 05-0992 (PLF) |
| | ) |
| ALPHONSO R. JACKSON, | ) |
| Secretary of the | ) |
| U.S. Dept. of Housing and | ) |
| Urban Development, | ) |
| | ) |
|     Defendant. | ) |
| _____ | ) |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION IN LIMINE**

**A.     Introduction.**

Plaintiff intends to call 13 witnesses for this 5-day jury trial. As explained in Defendant's Motion in Limine and elaborated below, four of these witnesses should be excluded because they will offer "me too" testimony that will only prolong the trial and confuse the jury. Under Rule 403, their testimony should be excluded because the undue prejudice emanating from the testimony outweighs its probative value. Four other witnesses should also be excluded because they lack personal knowledge of the underlying facts at issue, and mainly have personal complaints against the agency.

Defendant does not object to Plaintiff's own testimony, her husband's testimony (Victor Elion), and the testimony of three main agency officials (Messers. James Heist, Michael Stephens, and Michael Phelps).

**B.     Argument.**

1

1.     **The Court Should Exclude "Me Too" Evidence.**

Plaintiff's Opposition devotes much ink to arguing the admissibility of the testimony of four witnesses (Austin Groom, Donna Hawkins, Michael Beard, and Daniel Salas) claiming that these witnesses would testify to the alleged discrimination and retaliation that they purportedly experienced.  See Opp. at 8 (Dkt. No. 69); see also JPT at ECF p. 12-15.  Plaintiff, however, is utterly silent on the prejudicial effect of these witnesses if allowed to testify.  Moreover, their testimony will inevitably prolong this trial as Defendant will need to present a full defense against their respective alleged discrimination and retaliation claims against the agency.  This will only further confuse the jury and force the Court to preside over litigation of collateral issues.

**Austin Groom:** Mr. Groom's testimony about his own alleged discrimination claims against the agency will unfairly prejudice Defendant and confuse the jury.  Mr. Groom's alleged discrimination claims center around his poor performance evaluation and removal from federal service.  These claims are not similar to that of Plaintiff's and, therefore, are not probative here.

Specifically, Mr. Groom claims that Defendant discriminated against him by giving him an "unsatisfactory performance appraisal."  Groom Depo. at 25:10-19 (Dkt. No. 52-7).  He also claims that Defendant discriminated against him when the agency removed him for performance based reasons.  Groom Depo. 28:6-11.  Mr. Groom clarifies that retaliation did not play any role in his removal.  Id.  Unlike the circumstances with Mr. Groom, Defendant in this case abolished the Headquarters Audits Division ("HAD") and reassigned Plaintiff to become a Special Assistant, due to a hiring freeze and budgetary reasons.  Plaintiff's reassignment did not affect her grade, salary, or any other benefits.  Furthermore, Plaintiff's reassignment was not due to her

performance and she was not removed from federal service. Therefore, Mr. Groom's testimony is irrelevant and would only distract the jury from the underlying issues here and cause unfair prejudice to Defendant. More importantly, Mr. Groom has specifically testified that he has no knowledge of Plaintiff's claims against the agency. Groom Depo. at 49:3-4.

Under Rule 403, the Court may exclude relevant evidence if its probative value does not substantially outweigh the undue prejudice. See Sprint/United Manag. Co. v. Mendelsohn, 2008 U.S. LEXIS 2195, *9 (2008). A trial court is to make this determination on a case-by-case basis balancing the probative value and prejudice. Id. Here, in light of the dissimilarity between Mr. Groom's and Plaintiff's underlying circumstances, it would cause undue prejudice to Defendant to allow Mr. Groom to testify.

**Donna Hawkins:** Ms. Hawkins was reassigned to the Technical and Oversight Planning Division when Defendant abolished the HAD. Ms. Hawkins was the Assistant Director of the HAD, a subordinate to Plaintiff at that time. Plaintiff seeks to have Ms. Hawkins testify about her own alleged discrimination and retaliation claims because of her (Hawkins) reassignment. See JPT at ECF 13. Ms. Hawkins's testimony would be cumulative and unnecessarily prolong the trial. More significantly, her testimony would cause unfair prejudice to Defendant.

Furthermore, Ms. Hawkins's own EEO complaint, based on the same alleged discriminatory and retaliatory conduct in this case, was dismissed and affirmed on appeal. See Gov. Exh. A. Allowing her to testify now would permit Ms. Hawkins to reopen her dismissed claims in federal court. Moreover, Ms. Hawkins's testimony would duplicate the testimony Plaintiff would offer at trial. If Ms. Hawkins is permitted to testify, Defendant will need to present a full defense to rebut her testimony– the same defense that it would advance in the

underlying case. Therefore, the probative value of Ms. Hawkins's testimony does not outweigh the undue prejudice to Defendant and it would only cause further delay of this case.

**Michael Beard:** Plaintiff seeks to have Mr. Beard, a Caucasian male, testify about Defendant's retaliation against him because of his prior EEO complaint. See JPT at ECF 13-14. Specifically, Mr. Beard alleges that Defendant reassigned him to a special assistant position after he filed an EEO complaint against the agency. Id. at ECF 14. Mr. Beard, represented by the same Plaintiff's counsel (Robert Seldon), has a pending federal lawsuit against Defendant before Judge Kessler. See Beard v. Jackson, Civ. No. 06-756 (GK). Defendant's motion for summary judgment in that case is fully briefed and awaiting Judge Kessler's ruling. See Beard v. HUD, Civ. No. 06-756 (GK) (Dkt. No. 13, Gov. Exh. B). Allowing Mr. Beard to testify in this case would cause undue prejudice to Defendant, and confuse the jury. Specifically, Mr. Beard will inevitably give self-serving testimony about his own claims against Defendant. The agency will then be forced to import the defense in the Beard case into this trial to rebut Mr. Beard's testimony. This will create a trial within a trial, unduly prolong this trial, and create confusion.

More importantly, a perusal of the motion for summary judgment in Beard demonstrates that the circumstances surrounding Mr. Beard's lawsuit are markedly different from Plaintiff's underlying claims here. For instance, Mr. Beard's reassignment has its genesis in his poor performance, not because of a hiring freeze or budgetary constraints – the basis for Plaintiff's reassignment. Under these facts, the probative value of Mr. Beard's testimony does not outweigh the unfair prejudice to Defendant in this trial. Therefore, Mr. Beard's testimony should be excluded.

**Daniel Salas:** Plaintiff seeks to offer Mr. Salas's testimony on Defendant's alleged

4

retaliation against him after he filed an EEO complaint against the agency. See JPT at ECF p. 15. Mr. Salas, currently in Texas, gave a deposition in Malloy v. HUD, Civ. No. 05-1117 (RCL), a case pending before Judge Lamberth. The plaintiff in Malloy is represented by the same counsel (Robert Seldon) in this case. Summary judgment in Malloy is ripe for Judge Lamberth's ruling. Malloy v. HUD, Civ. No. 05-1117 (RCL) (Dkt. No. 29 – Gov. Exh. C).

Permitting Mr. Salas to testify in this trial will cause the parties to litigate a trial within a trial. Specifically, for the agency to rebut Mr. Salas's testimony alleging retaliation, the agency will need to call witnesses and present evidence regarding Mr. Salas's claims in this trial. Most of the relevant witnesses and evidence that Defendant needs to offer in rebuttal are located in Texas, where Mr. Salas works and lives. Defendant's rebuttal to Mr. Salas's testimony will prolong this one-week long trial and further distract and confuse the jury from the underlying claim here. Under Rule 403, the balance tips against Mr. Salas's testimony because it would unduly prejudice Defendant to litigate a wholly different claim in front of the same jury that will pass judgment on Plaintiff's claims. Accordingly, the Court should exclude Mr. Salas's testimony.[1]

---

[1] Plaintiff indicates that she does not intend to call Janet Bonds and Latesha Campbell-Walters to testify about their own alleged discrimination and retaliation claims. See Opp. at 10 n.11 (Dkt. No. 69). In light of this fact, Defendant will not address the reasons for excluding these two witnesses as "me too evidence." However, Defendant seeks to exclude them as fact witnesses because they do not have personal knowledge of the facts that gave rise to Plaintiff's claims. See Def. Mot. at 5 (Dkt. No. 57).

### 2. The Court Should Exclude Witnesses Without Personal Knowledge Of The Facts That Gave Rise To Plaintiff's Claims.

As explained in Defendant's Motion in Limine, Plaintiff's proposed witnesses (Groom, Hawkins, Beard, Salas, Stanley McCleod, Janet Bonds,[2] and Latesha Walter-Campbell[3]) do not have personal knowledge of the circumstances that gave rise to Plaintiff's claims. According to Plaintiff's Joint Pretrial Statement, none of these witnesses had personal knowledge about the background facts that led Mr. James Heist to propose disbanding the HAD and reassigning Plaintiff to become a Special Assistant. Furthermore, these witnesses have no personal knowledge of Mr. Stephens' decision to approve Mr. Heist's proposal. Indeed, there is not a scintilla of evidence showing that these witnesses spoke to Mr. Heist or Mr. Stephens before or after the realignment and Plaintiff's reassignment.

Given the opportunity to testify, these witnesses undoubtedly will complain about their unhappy experience and take gratuitous shots at the agency. This is neither the time nor the forum for these witnesses to air their grievances, especially in front of the same jury that will pass judgment on Plaintiff's claims and Defendant's non-discriminatory explanations. Under these circumstances, these witnesses should be excluded because their respective testimony adds nothing to the trial and would only create jury confusion that would unfairly prejudice

---

[2] Plaintiff seeks to offer Ms. Bonds to testify on Plaintiff's accomplishments as Director of the HAD. See JPT at ECF p. 14. However, this testimony is irrelevant because Plaintiff's accomplishments (or the lack thereof) were not the basis for the abolishment of the HAD and reassignment of the staff.

[3] Plaintiff intends to have Ms. Campbell-Walters testify about Mr. Michael Phelps' "disparaging treatment" of Plaintiff, his refusal to allow Plaintiff to hire her staff, and his solicitation of complaints against Plaintiff. See JPT at ECF at 14. These issues are not probative of the basis for dissolving the HAD and reassignment of the staff.

Defendant.

       **3.**      **The Court Should Exclude Deposition Testimony From Other Civil Actions.**

Plaintiff seeks to import contentious issues in <u>Malloy v. Jackson</u>, Civ. No. 05-1117 (RCL) into this trial, by playing portions of Mr. Salas's videotaped deposition for the jury. Mr. Salas is currently working and living in Texas. Plaintiff, however, did not identify Mr. Salas as a witness until March 21, 2007 (<u>see</u> Opp. at 14), seven months after the close of fact discovery and approximately one month after Defendant filed its motion for summary judgment (Dkt. No. 33).

Mr. Salas's deposition testimony adds nothing to the underlying issues here. As discussed above, Mr. Salas does not have any personal knowledge of the facts that led to the abolishment of the HAD and Plaintiff's reassignment. Without more, permitting Plaintiff to introduce Mr. Salas's testimony at trial will simply confuse, mislead or prejudice the jury. It also will create a trial within a trial because Defendant may need to put on a defense to rebut Mr. Salas's allegations of retaliatory reassignment. Accordingly, the Court should exclude his deposition testimony.

       **4.**      **The Court Should Not Permit Plaintiff To Testify About Events That Led Her To File The December 2002 EEO Complaint.**

Plaintiff argues that she intends to testify briefly about the events that led to her filing of the December 2002 EEO claims as background evidence. <u>See</u> Opp. at 16-17. Plaintiff, however, voluntarily dismissed her December 2002 EEO complaint in March 2003, stating that "the issues have been resolved to [her] satisfaction at this time." Def. Mot. at 7.

Plaintiff now seeks to resurrect issues that occurred approximately 16 months prior to the alleged discriminatory and retaliatory conduct in April 2004. Her testimony on these aged claims will undoubtedly confuse the jury as to which issues are for the jury to decide here. The

only claim for trial is the alleged discriminatory and retaliatory reassignment of Plaintiff to become a Special Assistant in April 2004. Permitting Plaintiff to testify about events leading up to her December 2002 EEO claims – even for background purposes – will only confuse the jury and may lead the jury to award damages to Plaintiff for the wrong claims.

Under Rule 403, the balance tips in favor of excluding such testimony as unduly prejudicial. Furthermore, Defendant may need to introduce evidence and witnesses to rebut Plaintiff's testimony. This will create a trial within a trial. Under these circumstances, the Court should not permit Plaintiff to testify about the events that gave rise to her December 2002 EEO complaint. Plaintiff should only be permitted to testify that she filed an EEO complaint in December 2002, without elaboration on her complaint.[4]

### 5.   The Court Should Exclude Testimony About Alleged Discrimination Between December 2002 and April 2004.

Plaintiff claims that Defendant continued to discriminate against her after she withdrew her December 2002 EEO complaint. See Opp. at 18. Plaintiff now argues that alleged acts of discrimination occurring up to the abolishment of the HAD are relevant. Id. at 18-19. This argument lacks merit.

As an initial matter, the alleged discriminatory acts between December 2002 to April 2004 are not probative of Plaintiff's underlying claims at trial. Furthermore, under Rule 403, the Court may exclude evidence that is likely to prolong the trial, confuse the issues, and mislead the jury. Indeed, if Plaintiff is permitted to testify on alleged discriminatory acts during this time period, the jury may confuse the alleged conduct with the conduct actually at trial here.

---

[4] In fact, it may not be necessary for Plaintiff to testify that she filed an EEO complaint in December 2002, as the parties stipulated to that fact in the Joint Pretrial Statement.

Evidence that likely causes jury confusion should be excluded under Rule 403 as unduly prejudicial. Moreover, if Plaintiff testifies about events between the December 2002 and April 2004 period, Defendant will need to defend those allegations, which will inevitably and unnecessarily prolong this trial. On balance, under Rule 403, the Court should not permit Plaintiff to testify about the alleged discrimination between December 2002 and April 2004.

> 6. **The Court Should Exclude Testimony and Evidence Surrounding the ADR Process in 2003 and 2004.**

Plaintiff's desire to offer testimony and evidence pertaining to the ADR process in 2003 and 2004 is another attempt to infest this trial with collateral issues. Plaintiff is correct that federal employees have the right to request the use of Alternative Dispute Resolution as part of the EEO process. See Opp. at 19. The opposite side to that coin, unmentioned by Plaintiff, is the fact that in 2003 and 2004, Defendant also had the right to decline to engage in ADR. In fact, it was not mandatory for Defendant to participate in ADR until December 2005. See Gov. Exh. D.

However, whether Defendant declined ADR is a red herring and not relevant to any underlying claims for trial. Permitting Plaintiff to present testimony at trial on the ADR process and Defendant's decision not to participate in that process only further delays the trial and confuses the jury from the real issues at hand. Therefore, under Rules 401 and 403, the Court should preclude any testimony or evidence about the ADR process in 2003 and 2004.

Plaintiff also maintains that Defendant used a "strong arm tactic" that resulted in her withdrawing her EEO complaint. See Opp. at 20. Plaintiff argues that Defendant would not agree to participate in an ADR meeting unless Plaintiff agreed to meet without counsel. Id. This argument is not supported by the evidence in the record.

In fact, Plaintiff's own attorney, Mr. Robert Seldon, agreed to allow Plaintiff to meet with Mr. Stephens without his (Seldon's) presence. See MSJ Gov. Exh. B. Plaintiff requested to engage in ADR to resolve her first administrative discrimination complaint (filed in December 2002). In response, Defendant offered to meet with Plaintiff outside a formal mediation setting. Prior to the meeting, Plaintiff consulted with her attorney, Mr. Robert Seldon, who *affirmatively* agreed to allow Plaintiff to meet with Mr. Stephens informally. See MSJ Gov. Exh. B (Jan. 16, 2003 Letter from Seldon to Matthews). Mr. Seldon's January 16th letter specifically stated, "Ms. Elion has decided to accept the agency's offer that she and Mr. Stephens meet privately, one-on-one, **before the upcoming mediation session**." See MSJ Gov. Exh. B (emphasis added). This letter clearly demonstrates that Plaintiff and her counsel understood that the meeting was outside the agency's formal ADR process. Plaintiff and her counsel could have declined the invitation to meet without counsel, but Plaintiff chose to meet with Mr. Stephens without counsel and with her lawyer's knowledge of the meeting. Accordingly, this evidence is not probative of any issue

**7.     The Court Should Exclude Testimony and Evidence About Plaintiff's Lack of Bonus.**

Plaintiff attempts to obfuscate the issues with extraneous evidence by claiming that her division ranked third when it was abolished. See Opp. at 20-21. Plaintiff also argues her division's superior performance is probative. Id. at 20.

The reason for disbanding of the HAD was to facilitate HUD OIG fulfilling its varied missions by reassigning auditors from the HAD to other divisions where needed. The decision to disband the HAD was not based on its performance (or lack thereof). As previously explained in the April 20, 2004 Memorandum, the HAD was down in staffing to three staff auditors, one

Deputy and one Director (Plaintiff). As a result of budgetary constraints totally outside the control of OIG, a hiring freeze was required in order to prevent OIG from exceeding its budget for FY2004. At the same time, there was a need for the staff auditors in the Financial Audit Division, a Division that carries out a Congressionally mandated function. There existed an open FTE for a senior auditor as a desk Officer in the Technical Oversight and Planning Division, a position for which the Deputy of HAD, Ms. Hawkins, was qualified. See April 20, 2004 Memorandum (Dkt. No. 53-2). The reassignment of the HAD's staff, including Plaintiff, was in no way related to how the Division had, or had not, performed. Further, Plaintiff seems to correlate the Division's ranking to production, without any support for doing so. While HAD may or may not have accomplished its work well within the metrics measured by the one evaluation system Plaintiff relies upon, hence its ranking, it was the volume of work that was anticipated when HAD was created that failed to develop and led to its disbanding in order to reallocate resources to other Divisions where necessary. Accordingly, any discussion of her supposed "ranking" is totally irrelevant, and could lead to juror confusion.

        **8.**    **Testimony About The Closing Of The Capital District Office.**

Plaintiff agrees that she will not offer "evidence that closing the Capital District audit office violated Title VII." See Opp. at 22. She also clarifies that she would only mention the Capital District office to identify "her prior experience as Director of the Capital District" office. Id. at 21. Given these representations, the Court should grant Defendant's motion in limine on this issue.

        **9.**    **Victor Elion**

Defendant moved to exclude Mr. Elion, Plaintiff's husband, from (1) identifying himself

11

as a forensic psychologist; and (2) offering an expert opinion on Plaintiff's alleged emotional distress. Def. Mot. at 11-12.

In response, Plaintiff agrees not to call Mr. Elion as an expert. See Opp. at 22. Plaintiff, however, fails to address the first issue – excluding Mr. Elion from identifying himself as a forensic psychologist. Without more, it appears that Plaintiff concedes Defendant's motion in limine on this point. Therefore, to avoid undue prejudice to Defendant, the Court should preclude Mr. Elion from identifying himself as a forensic psychologist when testifying about Plaintiff's alleged emotional distress.

**10.    ADEA Claims.**

The parties agree that Plaintiff's alleged discrimination and retaliation claims under the ADEA are tried before the Court. The parties, however, disagree on the mechanics and timing of when the parties should try the claims before the Court.

Defendant also wishes to raise a potential issue regarding Plaintiff's retaliation claim under the ADEA. There appears to be a split between the D.C. Circuit and the First Circuit whether the ADEA allows an employee to bring a retaliation claim against the federal government. See Forman v. Small, 271 F.3d 285, 296 (D.C. Cir. 2001) (allowing retaliation claims against the federal government under the ADEA); Gomez-Perez v. Potter, 467 F.3d 54 (1st Cir. 2007) (holding that the ADEA does not provide for a retaliation claim against the federal government). The Supreme Court recently heard oral argument to resolve the disagreement on this issue among the Courts of Appeals. See Transcript of Oral Argument, Gomez-Perez v. Potter, No. 06-1321 (U.S. February 19, 2008).

In light of this new development, Defendant asks that the Court reserve ruling on

Plaintiff's retaliation claim under the ADEA until the Supreme Court settles this issue.


Dated: February 27, 2008.                              Respectfully Submitted,


   /s/   Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


   /s/   Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

   /s/   John C. Truong
JOHN C. TRUONG, D.C. BAR #465901
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 307-0406

Attorneys for Defendant