

LexisNexis Total Research System                           Switch Client | Preferences | Sign Off | [?] Help
Lexis™ | Search | Research Tasks | Get a Document | Shepard's® | Alerts | Counsel Selector     History | 
FOCUS™ Terms Donna pre/2 Hawkins          Search Within Original Results (1 - 3)  Go → Advanced...

View: Cite | KWIC | Full | Custom              ← 1 of 3 NEXT →         FAST Print   Print | Download | Fax | Email
                        Save As Alert | More Like This | More Like Selected Text
                              2006 EEOPUB LEXIS 6702  (Copy w/ Cite)                           F

Source: Legal > Federal Legal - U.S. > Administrative Agency Materials > Federal Agency Decisions, Combined
Terms: Donna pre/2 Hawkins  (Edit Search | Suggest Terms for My Search)

✓Select for FOCUS™ or Delivery
☐

2006 EEOPUB LEXIS 6702, *

**Donna M. Hawkins**, Complainant, v. Alphonso Jackson, Secretary, Department of Housing and Urban Development, Agency

Appeal No. 0120063329 n1

n1 Due to a new data system, your case has been redesignated with the above-referenced appeal number. Agency No. IG-04-02-A1

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

2006 EEOPUB LEXIS 6702

December 5, 2006

**CORE TERMS:** audit, sex, harassment, transferred, retaliation, experienced, prima facie case, subordinate, subjected, disbanded, reprisal, hostile work environment, discriminated, articulated, supervisor, protected activity, resignation, performing, protected class, final decision, nondiscriminatory, inexperienced, anticipated, supervision, pervasive, workload, disband, manager, severe, staff

**ISSUEDBY: [*1]** For the Commission by Carlton M. Hadden, Director, Office of Federal Operations

**OPINION:**
DECISION

On May 8, 2006, complainant filed an appeal from the agency's April 12, 2006 final decision concerning her equal employment opportunity (EEO) complaint alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e et seq. The appeal is deemed timely and is accepted pursuant to 29 C.F.R. § 1614.405(a). For the following reasons, the Commission AFFIRMS the agency's final decision.

The record reflects that complainant filed a formal EEO complaint on January 25, 2004, alleging that she was discriminated against on the bases of race (African-American), sex (female), and reprisal for prior protected EEO activity under Title VII of the Civil Rights Act of 1964 when she was subjected to harassment due to a hostile work environment by the agency's Deputy Assistant Inspector General for Audit, Office of the Inspector General (DA) based on the following incidents: (1) on or about October 8, 2003, the DA allowed an inexperienced Auditor to be transferred into the agency's Headquarters Audits **[*2]** Division (HAD); (2) about October 10, 2003, the DA permitted one of complainant's co-workers (W1) to review her work and comment on her supervisory ability; (3) on August 15, 2003, the DA allowed an experienced

Auditor to be transferred from the HAD despite complainant's objections; and (4) between July and October 2003, the DA conducted meetings with complainant's subordinate employees without her knowledge.

Complainant also alleged that she was retaliated against due to her prior EEO activity in violation of Title VII when: (1) the DA continued to meet with complainant's subordinate employees without her knowledge, which denied her the opportunity to participate in the discussion and led to the resignation of a subordinate employee; (2) about February 25, 2004, the agency's Director, Technical Operations and Planning Division perpetuated a hostile work environment, while challenging complainant's competence as a manager; and (3) on or about April 20, 2004, the agency's Assistant Inspector General for Audit disbanded complainant's division, the HAD. Complainant alleged that the HAD was disbanded in retaliation for her inquiries regarding the parameters of the agency's Ombudsman's [*3] review of HAD's operations and as she raised concerns regarding meetings between her staff and senior managers from the Office of Inspector General.

The record reflects that complainant was employed by the agency as the GS-0511-14 Assistant Director of HAD, Office of the Inspector General in Washington, D.C. Complainant's first-level supervisor (S1; Black female with prior EEO activity) was the Director of HAD and her second-level supervisor was the DA (White male with prior EEO activity). Regarding allegation (1), complainant alleged that her race and sex were factors in the DA's decision to assign an "inexperienced" Auditor to the HAD, while an experienced Auditor (White male) under complainant's supervision was transferred out of the HAD. The DA stated that he transferred the new Auditor into the HAD, but disputed complainant's allegation that he was inexperienced, and stated that he was a GS-14 Auditor. The former Director of the HAD ("Director") stated that the DA did not discuss race or sex with her, but she believed that complainant's race and sex were factors in the DA's decision to transfer the new Auditor into the HAD. FAD at 4. An agency Management Specialist stated that [*4] complainant was discriminated against when the new Auditor was transferred into the HAD. *Id.* Regarding complainant's allegation (2), the DA stated that complainant's race and sex were not factors in his decision to have her work reviewed. In this regard, the agency's Assistant Regional Inspector General for Audit stated that she did not believe complainant was discriminated against based on her race and sex; she further stated that the DA asked her to review an audit that complainant completed. FAD at 5. The DA stated that he did not have complainant's work reviewed, but had the audit at issue reviewed as one of complainant's staff members questioned the quality of work which had been done up to that point. FAD at 5. In addition, an Auditor, Technical Oversight and Planning Division, stated that she had no knowledge of complainant being discriminated against regarding this allegation. Regarding complainant's allegation (3) of race and sex discrimination, the DA stated that the experienced Auditor (White male) at issue was transferred from the HAD as the Division Director, who was complainant's supervisor, expressed concern that the experienced Auditor was not performing at a high [*5] level. FAD at 6. The DA proposed the "switch" of the Auditors at issue as neither employee was performing up to expectations and complainant did not offer any comments or objection to him. The Director stated that she objected to the transfer of the experienced Auditor as the remaining staff lacked the experience to independently carry out audits, and that she believed that the decision to transfer the experienced Auditor "probably" factored into the decision at issue. FAD at 6. Regarding issue (4) of complainant's race and sex allegations, the DA stated that a subordinate employee came to him with allegations about the conduct of an audit and there was no requirement that employees go through the "chain of command" to report problems with an audit. FAD at 7. The DA stated that he met with other supervisors' subordinate employees when they came to him with a problem.

Regarding issues (1) and (2) of complainant's retaliation allegations, the DA stated that after the Director informed him that the employee at issue resigned, he met with the employee to understand the reasons for his resignation. The DA stated that he did not include complainant in that meeting as it was not appropriate [*6] and complainant's presence could have stifled the employee's candor. The Director stated that the employee's resignation was "probably" contrived as OIG management had been looking for a reason to terminate the HAD. Addressing issue (3) of complainant's retaliation allegations, complainant alleged that the HAD was one of the most productive divisions in the agency's Office of Audit, its audits were timely issued and met OIG requirements. Complainant further stated that the Assistant Inspector General for Audits was aware of her prior EEO activity. The Assistant Inspector General stated that he commended that the HAD be disbanded, and that decision had been made more than two (2) years prior the actual disbanding. The DA stated that the decision was made in part due to the level of work

anticipated at agency Headquarters; the workload was not as heavy as anticipated, and thus the need for a separate HAD did not exist. The Assistant Inspector General stated that complainant's inquiries about the future of HAD or an Ombudsman's review was not a factor in his decision to disband the HAD, and neither complainant's race, sex nor prior EEO activity were factors in that decision. The [*7] Deputy Inspector General stated that he trusted the judgment of the Assistant Inspector General regarding the future of the HAD. He also stated that complainant's race, sex and prior EEO activity were not factors in the decision to disband the HAD.

Believing she was the victim of discrimination and retaliation, complainant sought EEO counseling and filed for aforementioned formal complaint. At the conclusion of the investigation, complainant was provided with a copy of the report of investigation and notice of her right to request a hearing before an EEOC Administrative Judge (AJ). In accordance with complainant's request, the agency issued a final decision pursuant to 29 C.F.R. § 1614.110(b) concluding that complainant failed to prove that she was subjected to discrimination as alleged. n2

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 We note that although complainant initially requested a hearing before an EEOC Administrative Judge (AJ), on February 28, 2006, in response to complainant's Motion to withdraw her request for a hearing, the AJ issued an Order of Dismissal and returned the case to the agency for the issuance of a final agency decision.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*8] The FAD found that complainant failed to establish a *prima facie* case of harassment due to race and/or sex. In so finding, the FAD noted that while it undisputed that complainant is a member of protected groups, the facts indicate that she was not subjected to conduct which was sufficiently severe and pervasive to constitute harassment as a matter of law. The FAD found that the DA's conduct were management prerogatives which were within the bounds of acceptable conduct and reasonableness. FAD at 11. Regarding complainant's allegations of reprisal, the FAD found that she engaged in protected activity of which several members of the agency's management team were aware. As such, the FAD found that complainant established a *prima facie* case of retaliation. However, the FAD found that agency management articulated legitimate, nondiscriminatory reasons for its actions which complainant did not establish were pretextual in nature. In so finding, the FAD noted that the DA met with the employee at issue to better determine the reasons for his resignation. The FAD noted that the employee stated it was his decision to resign, and he felt he could no longer work under complainant's [*9] supervision. Investigative Report (IR) at Exhibit F8. The FAD then noted that the agency's Director, Technical Operations and Planning Division, stated that it was his responsibility to review drafts and final audit reports for technical accuracy and compliance with the Audit Operations Manual. IF at Exhibit F6. In addition, the FAD noted that the Assistant Inspector General for Audits stated that complainant's inquiries regarding an Ombudsman's review of the HAD were not a factor in his decision to disband the HAD. He stated that his reasons for disbanding the HAD were to realign staff at Headquarters to best address their workload, and budget constraints. IF at Exhibit F7. As such, the FAD concluded that the facts support a finding that the actions taken by agency management were within their purview as managers, exercising their judgment from the perspective of the Office of Inspector General. The FAD stated that while complainant would have preferred that the alleged actions were not taken and would have preferred consultation on these actions, the decisions made were made for reasons of efficiency of the service. FAD at 13.

On appeal, complainant alleges that the DA discriminated [*10] against her on the bases of sex and race by creating a hostile work environment to undermine the effectiveness of the HAD. Complainant alleged that the DA used his power to reduce the HAD's resources as a means of harming her personally. Complainant further alleged that in retaliation for her filing a discrimination complaint in January of 2004, the HAD was arbitrarily disbanded in April of 2004. She further alleged that when she was reassigned from

the HAD to the agency's Technical Planning and Oversight Division, the acts of harassment and disparate treatment by agency management continued. The agency responded to complainant's appeal, alleging that prove by a preponderance of the evidence that complainant was not harassed on the bases of race, sex or retaliation. The agency alleged that complainant failed to meet her burden of showing that the alleged harassment was sufficiently severe or pervasive to constitute harassment.

As this is an appeal from a decision issued without a hearing, pursuant to 29 C.F.R. § 1614.110(b), the agency's decision is subject to *de novo* review by the Commission. 29 C.F.R. § 1614.405(a). See EEOC Management Directive 110, Chapter 9, § VI.A. [*11] (November 9, 1999). (explaining that the *de novo* standard of review "requires that the Commission examine the record without regard to the factual and legal determinations of the previous decision maker," and that EEOC "review the documents, statements, and testimony of record, including any timely and relevant submissions of the parties, and . . . issue its decision based on the Commission's own assessment of the record and its interpretation of the law").

To establish a claim of harassment based on race, sex, disability, age, or reprisal, complainant must show that: (1) she is a member of the statutorily protected class; (2) she was subjected to harassment in the form of unwelcome verbal or physical conduct involving the protected class; (3) the harassment complained of was based on the statutorily protected class; and (4) the harassment affected a term or condition of employment and/or had the purpose or effect of unreasonably interfering with the work environment and/or creating an intimidating, hostile, or offensive work environment. *Humphrey v. United States Postal Service*, EEOC Appeal No. 01965238 (October 16, 1998); 29 C.F.R. § 1604.11. The harasser's conduct should [*12] be evaluated from the objective viewpoint of a reasonable person in the victim's circumstances. Enforcement Guidance on Harris v. Forklift Systems, Inc., EEOC Notice No. 915.002 (March 8, 1994). Further, the incidents must have been "sufficiently severe and pervasive to alter the conditions of complainant's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993); see also Oncale v. Sundowner Offshore Services, Inc., 23 U.S. 75 (1998).* In the case of harassment by a supervisor, complainant must also show that there is a basis for imputing liability to the employer. See *Henson v. City of Dundee, 682 F.2d 897 (11th Cir. 1982).*

addressing complainant's allegations of harassment, the Commission agrees with the agency's conclusion that complainant failed to show that she was subjected to discrimination on the bases of race or sex. The Commission finds that, even assuming *arguendo*, complainant did establish a *prima facie* case of discrimination, the agency articulated legitimate, nondiscriminatory reasons for its actions. We note the [*13] testimony of complainant's co-workers, including the former Director of the HAD, that complainant's race and sex were factors in the DA's decision to transfer the Auditor into the HAD. IF at Exhibits F4, F9. However, we note that these agency employees merely speculated and presented no objective evidence that complainant's race and sex were factors in the decision to transfer the new Auditor to the HAD, and the record indicates that he worked in the HAD for only one and one-half months before being placed in another position. In addition, the DA stated that the new Auditor was transferred into the HAD after being selected by the agency's Office of Audit for a GS-14 position. The DA also stated that the new Auditor was transferred into the HAD as he was not successful in his prior division and would do a better job performing audits. n3 IF at Exhibit F3. We find that the brief length of the new Auditor's assignment in the HAD makes it less likely that he was transferred into the HAD due to discriminatory or retaliatory animus by the DA. In addition, we find that the DA articulated legitimate reasons for assigning an employee to review complainant's work on a particular audit (Office [*14] of Healthy Homes and Lead Hazard Control). The record indicates that an agency employee raised concerns over the lack of supervision and inadequate survey work involved on the audit at issue, and as such the DA assigned an employee to review the audit. IF at Exhibits F3 and F10. With regard to the experienced Auditor being transferred from the HAD, the record indicates that the DA stated the Auditor was transferred as the HAD Division Director thought the employee was not performing at a high level, and complainant did not express concerns over the transfer. IF at Exhibit F3. The Commission also finds that complainant did not show that the agency's proffered reasons for its actions were a mere pretext to mask unlawful employment discrimination. In addition, under the standards set forth in *Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993),* complainant's claim of hostile work environment must fail on these allegations. See Enforcement Guidance Harris v. Forklift Systems, Inc. at 3, 6 (March 8, 1994). Thus, the establishment of a hostile work environment is precluded based on our finding that complainant failed to establish that any of the



actions [*15] taken by the agency were motivated by her race or sex. *See Oakley v. United States Postal Service*, EEOC Appeal No. 01982923 (September 21, 2000).

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 We note that while the former Director of the HAD stated that the Auditor who was placed in HAD over her objections had no recent audit experience, the Auditor himself stated that while his previous position was as a Desk Officer, he had been an Auditor/Program Manager for 10-15 years and had experience with posting audit reviews and preparing/updating audit operations manuals. IF at Exhibit F9.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -Addressing complainant's allegations of retaliation, we note that a *prima facie* case of reprisal discrimination may be established by presenting facts that, if unexplained, reasonably give rise to an inference of discrimination. *Shapiro v. Social Security Admin.*, EEOC Request No. 05960403 (Dec. 6, 1996) (citing *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973))*. Specifically, in a reprisal claim, and in accordance with the burdens [*16] set forth in *McDonnell Douglas, Hochstadt v. Worcester Foundation for Experimental Biology, 425 F. Supp. 318, 324* (D. Mass.), aff'd, *545 F.2d 222 (1st Cir. 1976)*, and *Coffman v. Department of Veteran Affairs*, EEOC Request No. 05960473 (November 20, 1997), a complainant may establish a *prima facie* case of reprisal by showing that: (1) she engaged in a protected activity; (2) the agency was aware of the protected activity; (3) subsequently, she was subjected to adverse treatment by the agency; and (4) a nexus exists between the protected activity and the adverse treatment. *Whitmire v. Department of the Air Force*, EEOC Appeal No. 01A00340 (September 25, 2000).

In the instant case, the Commission finds that there is evidence in the record to support the FAD's determination that complainant established a *prima facie* case of retaliation. The record reflects that complainant had filed prior EEO complaints of which the DA and other management officials were aware. The agency did not dispute that the DA was engaged with complainant's subordinates, negative comments were made against complainant and the HAD was disbanded, [*17] in a time period shortly after she filed EEO complaints. We also find that there is evidence in the record to support the FAD's determination that the agency articulated legitimate, nondiscriminatory reasons for its actions, as stated above. We further find that complainant failed to proffer evidence which demonstrates that the agency's articulated reasons were more likely than not a pretext for retaliation against complainant. In so finding, we note that the DA stated the HAD was disbanded as the workload was not to the extent that was anticipated, and thus the need for a separate HAD did not exist. IF at Exhibit F7.

Therefore, after a careful review of the record, including complainant's contentions on appeal and the agency's response, we AFFIRM the agency's final order finding no discrimination.

**Legal Topics:**

For related research and practice materials, see the following legal topics:

**LOAD-DATE:** December 21, 2006

View: Cite | KWIC | Full | Custom        1 of 3 NEXT>        FAST Print   Print | Download | Fax | Email | Text Only
Save As Alert | More Like This | More Like Selected Text
2006 EEOPUB LEXIS 6702 (Copy w/ Cite)                                                   Pages:   7
Source: Legal > Federal Legal - U.S. > Administrative Agency Materials > Federal Agency Decisions, Combined

Terms: **Donna pre/2 Hawkins** (Edit Search | Suggest Terms for My Search)
View: Full
Date/Time: Friday, February 15, 2008 - 10:25 AM EST

*My Lexis*™ | Search | Research Tasks | Get a Document | *Shepard's®* | Alerts | Counsel Selector
History | Delivery Manager | Switch Client | Preferences | Sign Off | Help

LexisNexis®  About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.