UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAUNDRA G. ELION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. Action No. 05-0992 (PLF) |
| ) | |
| ALPHONSO R. JACKSON, ) | |
|   Secretary Of Housing And ) | |
|   Urban Development, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR NON-MONETARY SANCTIONS AND
RESPONSE TO PLAINTIFF'S SUPPLEMENTAL MEMORANDUM**

**I.   Introduction**.

Defendant does not deny that it produced certain responsive documents out of time. However, the late productions of documents were not the result of bad faith or gross negligence. As explained further below, it was an oversight on Defendant's part that certain documents were not produced during the discovery period. More importantly, there is no new information in the "late" productions that unfairly prejudices Plaintiff. In fact, neither Plaintiff's Motion for Sanctions (Dkt. No. 72) nor Supplemental Memorandum (Dkt. No. 77) demonstrated that she was prejudiced by the late productions.

For these reasons and those elaborated below, the Court should deny Plaintiff's Motion for Sanctions and the relief requested in the Supplemental Memorandum.

**II.     Argument.**

    **A.     Standard of Review.**

The district court has broad discretion to impose sanctions for noncompliance with discovery obligations. See Fed. R. Civ. P. 37; Bonds v. District of Columbia, 93 F.3d 801, 807 (D.C. Cir. 1996). In determining whether sanctions are appropriate, the district court must tie the sanction to the specific conduct in question. Bonds, 93 F.3d at 808 ("The choice of sanction should be guided by the 'concept of proportionality' between offense and sanction." (citing Shea v. Donohoe Construction Co., 795 F.2d 1071, 1077 (D.C. Cir. 1986))). "The central requirement of Rule 37 is that 'any sanction must be just.'" Bonds, 93 F.3d at 808 (quoting Insurance Corp. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 707 (1982). "'Since our system favors the disposition of cases on the merits, dismissal is a sanction of last resort to be applied only after less dire alternatives have been explored without success' or would obviously prove futile." Shea, 795 F.2d at 1075 (quoting Trakas v. Quality Brands, Inc., 759 F.2d 185, 186-87 (D.C. Cir. 1985)). To warrant default judgment as a form of sanction, the court must find, *inter alia*, that "the other party 'has been so prejudiced by the misconduct that it would be unfair to require him to proceed further in the case.'" Webb v. District of Columbia, 146 F.3d 964, 971 (D.C. Cir. 1998) (quoting Shea, 795 F.2d at 1074). Sanctions must be weighed in light of the full record of the case. National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 642 (1976); cf. Bonds, 93 F.3d at 804 (noting that review of discovery sanctions includes examining the process that led to the sanctions).

"Considerations of fair play may dictate that courts eschew the harshest sanctions provided by Rule 37 where failure to comply is due to a mere oversight of counsel amounting to

no more than simple negligence." Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp., 602 F.2d 1062, 1068 (2d Cir. 1979); cf. Summers v. Howard University, 374 F.3d 1188, 1193 (D.C. Cir. 2004) (in the context of setting aside a final judgment, misconduct alone is not sufficient, and a "court must balance the interest in justice with the interest in protecting the finality of judgments."). In Bonds v. District of Columbia, the district court precluded defendant from offering any fact witnesses at trial as a discovery sanction for failing to timely respond to an interrogatory requesting identification of persons with knowledge of relevant events. Bonds, 93 F.3d at 803-04. In reversing this sanction, the Court of Appeals noted that the district court abused its discretion in denying defendant a trial on the merits. Bonds, 93 F.3d at 804. The order precluding fact witnesses from testifying at trial was akin to a default judgment in its severity. Bonds, 93 F.3d at 808.

    **B.**    **There Was No Bad Faith For Late Production of Documents.**

        **i.**    **February 22, 2008 Production**.

As explained in the February 22, 2008 transmittal letter, upon discovering additional documents, Defendant immediately produced them to Plaintiff. See Feb. 22, 2008 Letter. In that production were two e-mails that contain drafts of the April 20, 2004 Memorandum. As explained in the Declaration of Richard Johnson, given the volume of e-mails and documents that the agency had to review to respond to Plaintiff's discovery request, the two e-mails were inadvertently overlooked. See Declaration of Richard Johnson at ¶ 8 (Gov. Exh. A).[1]

---

[1] Plaintiff argues that had she known about these two emails containing drafts of the April 20, 2004 Memorandum, it would have led to further discovery of the IG's email. Supp. Mem. 2. This is a red herring. The two emails in question were between Mr. Heist and Mr. Phelps, and the emails were not shared with the IG or anyone else.

Also in that production was an April 2, 2004 e-mail, which Plaintiff maintains "is exceptionally important." Mot. for Sanctions at ECF p. 5. Plaintiff argues that the April 2 e-mail shows that the ceiling for the number of employees in the Office of Audit was raised two days before Defendant imposed an office-wide hiring freeze. Id. Plaintiff then asserts that, if the ceiling of employees was raised, there was no reason to disband Plaintiff's former Headquarters Audits Division. Id. Plaintiff misconstrues the April 2 e-mail and its effect on the ultimate decision to disband the Headquarters Audits Division.

The April 2 e-mail states in part that, "... 5 FTE will be added to the Audit staff and 5 FTE will be subtracted from the Investigative staff."  April 2, 2004 E-mail (Gov. Exh. B). It goes on to state, "However, this new number is based on an overall FTE for the organization based on 660 not 675. Therefore Investigations [] new FTE ceiling will be 308 and Audit will be based on 301...." Id. Mr. James Heist (one of the recipients of the email) explains,

> The resultant impact on the Office of Audit was not an increase in its FTE ceiling level, because the "5 FTE" was added back to the Office of Audit after the OIG-wide FTE ceiling number had been reduced from 675 to 660. The net effect was actually a reduction of the Office of Audit's FTE ceiling from 302 to 301. The revised 301 FTE ceiling was subsequently reflected in the 4/25/04 audit staffing chart, (Attch. 2) reduced from the 302 FTE level shown in the prior (4/18/04) Office of Audit staffing chart. (Attch. 3).[2]

Declaration of James Heist ("Heist Declaration") at ¶ 8 (Gov. Exh. C).

In the end, the Office of Audits (which includes the Financial Audits Division) was still short staffed. Heist Declaration at ¶ 8. The Heist Declaration also explains that despite giving the Office of Audit additional FTEs, the hiring freeze was still in effect. Heist Declaration at ¶ 9.

---

[2] Attachments 2-5 of the Heist Declaration were produced during discovery and are part of Plaintiff's Proposed Trial Exhibits.

As explained in the April 20, 2004 Memorandum, a hiring freeze prevented Defendant from hiring more auditors to staff the Financial Audits Division. See April 20, 2004 Memorandum (Gov. Exh. D). In short, Plaintiff is simply wrong when she asserts that there was no need to disband the Headquarters Audit Division.

    **ii.**    **February 26, 2008 Production**

Defendant further supplemented its productions of documents on February 26, 2008, upon discovering additional documents. As explained in the transmittal letter, the agency provided the documents (127 pages) to the undersigned counsel to produce in connection with Plaintiff's discovery request. See Feb. 26, 2008 Letter (Gov. Exh. E). The letter to Plaintiff's counsel also explains that, due to work load and an oversight, the undersigned counsel failed to produce the documents as a formal response to Plaintiff's discovery. Id. at 1.

However, the February 26 letter also explains that some of the documents were not responsive. Id. Other documents were previously introduced and attached as exhibits to Plaintiff's deposition on August 2, 2006. Id. The vast majority of the documents (mainly e-mails) should have already been in Plaintiff's possession (or, at least, she was aware of their content) because they were either sent by Plaintiff, received by Plaintiff, or copied to Plaintiff . Id. In short, Plaintiff was already aware of the majority of the documents produced on February 26, 2008.

Plaintiff's Supplemental Memorandum (Dkt. No. 77) takes issue with a July 21, 2004 e-mail (Gov. Exh. F), produced on February 26. Plaintiff argues that the July 21e-mail is of "particular significance" because it shows that the Inspector General of HUD "engaged in a dialogue to add 12 more auditors to the Office of Audits" during a hiring freeze. Suppl. Mem. at

5

2 (Dkt. No. 77).[3]

Even though Plaintiff believes that July 21 e-mail is of "particular significance," in fact, the e-mail is a conscientious manager's response to the hiring freeze. This particular manager needed more staff and the e-mail confirms that high level approval was needed to make new hires because there was a hiring freeze. This e-mail does not undermine Defendant's position. From the beginning, Defendant has maintained that due to the hiring freeze coupled with budgetary constraints, it was prudent to dissolve the Headquarters Audit Division (HAD) and allocate the remaining HAD staff to other divisions in order to meet agency needs. See April 20, 2004 Memorandum.

Plaintiff also maintains that the April 14, 2004 e-mail (Gov. Exh.G) produced on February 26, 2008, is "probative." Supp. Mem. at 2 (Dkt. No. 77).[4] Plaintiff, however, does not explain how its late production adversely affects her prosecution of the case. In fact, the April 14 e-mail is another piece of cumulative evidence. The April 14 e-mail discussed the need to detail auditors to the Financial Audits Division to complete the financial statement under an accelerated deadline. See April 14, 2004 E-mail (Gov. Exh. G). The need for more auditors in the Financial Audits Division was one of the reasons that Defendant offered on April 20, 2004, as a basis for its decision to abolish the HAD and reassign its three senior auditors to the Financial Audits Division. See April 20, 2004 Memorandum (Gov. Exh. D). The April 20

---

[3] In fact, Plaintiff has not pointed to which document request the July 21, 2004 e-mail is responsive. The e-mail was sent three months after the abolishment of the HAD and Plaintiff's reassignment.

[4] The April 14, 2004 e-mail was previously produced to Plaintiff on February 22, 2008, and it is currently part of Defendant's Proposed Exhibit No. 40.

Memorandum also explained that due to budgetary constraints it was not feasible to detail auditors to the Financial Audits Division.  See April 20, 2004 Memorandum.  Accordingly, Defendant needed to disband the HAD to transfer auditors to the Financial Audits Division.  Id. This explanation is nothing new to Plaintiff because she had the April 20, 2004 Memorandum at the EEO stage. Therefore, there is no prejudice to Plaintiff at all.

      **C.    There Is Neither A Factual Nor Legal Basis For Default Judgment Or Preclusion of Evidence.**

Both Plaintiff's Motion for Non-Monetary Sanctions and Supplemental Memorandum do not specifically request that the Court enter default judgment as a form of sanction.  However, Plaintiff suggests that default judgment is a possible punishment here.  The record in this case does not support an entry of default judgment for late productions of relatively insignificant documents.

Default judgment as a sanction under Rule 37 should be confined to the "flagrant cases" in which the failure to produce materially affects the substantial rights of the adverse party and is prejudicial to the presentation of the case.  Hathcock v. Navistar Int'l Transp. Corp., 53 F.3d 36, 41 (4th Cir. 1995) (citing Wilson v. Volkswagen of Am., 561 F.2d 494, 504 (4th Cir. 1977)); see also 8A Wright, Miller & Marcus, Federal Practice & Procedure section 2284, p. 623 (2d ed. 1994).  Where the failure to comply with a discovery order is not the result of willful bad faith or gross negligence of the party, default judgment, or preclusion of evidence, which is equivalent to a default judgment, is not warranted.  See Societe Internationale Pour Participations Industrielles et Commerciales v. Rogers, 357 U.S. 197, 212 (1958); Bonds v. District of Columbia, 93 F.3d 801, 808-10 (D.C. Cir. 1996) cf. Shepherd v. American Broadcasting Companies, Inc., 62 F.3d 1469, 1472 (D.C. Cir. 1995) (holding that default judgment based on a court's inherent power is

7

proper only when fraudulent or bad faith litigation misconduct is established by clear and convincing evidence, and lesser sanctions would not be sufficient to punish and deter the abusive conduct); see also Dellums v. Powell, 566 F.2d 231, 235 (D.C. Cir. 1977) (noting that some element of willfulness is required to justify a sanction of dismissal (citing Flaks v. Koegel, 504 F.2d 702, 708-09 (2d Cir. 1974))). A party's failure to provide documents is not the end of the inquiry into the determination of sanctions. Sanctions, including preclusionary orders, "ensure that a party will not be able to profit from its own failure to comply with the rules set forth by the court." Butera v. District of Columbia, 235 F.3d 637, 661 (D.C. Cir. 2001) (upholding motion to strike an expert witness where the witness misrepresented his credentials); see also Dellums, 566 F.2d at 235.

Here, there is no factual basis for the Court to find that the Defendant engaged in bad faith when it did not produce documents within the discovery period. As explained above, given the volume of documents needed to be reviewed for production, two e-mails were inadvertently overlooked when the agency produced documents to Plaintiff. See Johnson Declaration at ¶ 8. As for the February 26 production, the letter to Plaintiff's counsel explains that it was due to an oversight on the part of Defendant's counsel that those documents were not produced sooner. More importantly, the vast majority of the documents produced on February 26 are either (1) not responsive, (2) previously provided to Plaintiff in the form of deposition exhibits; or (3) already in Plaintiff's possession. See Feb. 26, 2008 Letter (Gov. Exh. E).

Furthermore, Plaintiff has not demonstrated she suffers any prejudice due to these late productions. The documents support Defendant's claims that HAD was realigned and Plaintiff was reassigned due to a hiring freeze, a position that Defendant has consistently maintained

throughout this case. In fact, the information from the late productions cumulative of information that Defendant produced timely. Therefore, Plaintiff could have discerned the same information from Defendant's timely productions of documents in this case.

Plaintiff also asserts that Defendant's late productions justify "precluding defendant from offering facts" about the hiring freeze to support its defense. See Mot. for Sanctions at ECF p. 6. Plaintiff's contention is not supported by law because she has not demonstrated that her prosecution of this case is prejudiced by Defendant's late productions.

"Exclusion sanctions based on alleged discovery violations are generally improper absent undue prejudice to the opposing side." Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp., 190 F.R.D. 644, 648 (N.D. Cal 2000) (citing Wendt v. Host Int'l, Inc., 125 F.3d 806, 814 (9th Cir. 1997). "Preclusion of evidence is generally disfavored." Am. Stock Exchange, LLC v. Mopex, Inc., 215 F.R.D. 87, 93 (S.D.N.Y. 2002); see also Montgomery v. Mitsubishi Motors Corp., 448 F. Supp. 2d 619, 633 (E.D. Pa. 2006) (exclusion of evidence is an extreme sanction rarely imposed (citing Shalley v. City of Philadelphia, 1996 WL 210795 *2 (E.D. Pa. Apr. 30, 1996). See Lentz v. Mason, 32 F. Supp. 2d 733, 739-40 (D.N.J. 1999) (in denying request to exclude evidence due to late production of documents regarding damages, the court found no prejudice to the other party because the documents had been produced, albeit late, and exclusion of the evidence would greatly prejudice plaintiff); Pepsico, Inc. v. Central Investment Corp., 2001 U.S. Dist. LEXIS 25059 (S.D. Ohio) (denying plaintiff's request to exclude the allegedly pretextual reason for termination, the magistrate judge noted that the evidence had been produced and was available to the parties).

Here, as explained above, the information from the late productions is not new

information to Plaintiff.  The documents that Plaintiff highlighted in her Motion and Supplemental Memorandum are cumulative evidence of Defendant's consistent position throughout this case.  Defendant has consistently maintained that, due to a hiring freeze and budgetary constraints, it had to abolish the Headquarters Audit Division and reassign the staff where needed.  See April 20, 2004 Memorandum.  Defendant reassigned three auditors to the Financial Audits Division to assist that Division with meeting the accelerated deadline for submitting financial statements.  Id.  Defendant reassigned Ms. Hawkins to the Technical and Oversight Planning Division because that Division also needed additional auditors.  Id.  After those two reassignments, HAD was left with only Plaintiff.  It made business sense to abolish the HAD and reassign Plaintiff to become the Special Assistant to the Assistant Inspector General.  The reassignment did not affect Plaintiff's salary, grade, or benefits in any way.

Under these circumstances, since there is no evidence of bad faith, dilatory motive, or prejudice to Plaintiff, the Court should not enter default judgment or preclude Defendant from using the produced documents at trial.

**III.    Conclusion**

For the foregoing reasons, the Court should deny Plaintiff's Motion for Non-Monetary Sanctions and the relief sought in her Supplemental Memorandum.

Dated: February 28, 2008.                    Respectfully Submitted,


   /s/   Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


   /s/   Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

   /s/   John C. Truong
JOHN C. TRUONG, D.C. BAR #465901
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 307-0406

Attorneys for Defendant

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAUNDRA G. ELION, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Civ. Action No. 05-0992 (PLF) |
| | ) |
| ALPHONSO R. JACKSON, | ) |
|   Secretary Of Housing And | ) |
|   Urban Development, | ) |
| | ) |
|     Defendant. | ) |
| _____ | ) |

## ORDER

Upon consideration of Plaintiff's Motion for Non-Monetary Sanctions and Supplemental Memorandum, Defendant's Opposition thereto, and the entire record herein, it is this ____ day of February, 2008,

ORDERED that Plaintiff's Motion for Non-Monetary Sanctions (Dkt. No. 72) and Supplemental Memorandum (Dkt. No. 77) be and are hereby DENIED.

SO ORDERED.

_____
U.S District Judge