IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAUNDRA ELION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05-0992 (PLF) |
| ) | |
| ALPHONSO R. JACKSON, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**AFFIDAVIT OF RICHARD JOHNSON IN SUPPORT OF DEFENDANT'S
RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS**

I, RICHARD JOHNSON, hereby declare under the penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following facts are true and correct based on my personal knowledge and I can competently testify to the facts stated herein

1. I am currently on active duty in the U.S. Air Force. This active duty tour will run from 9 July 2007 through 30 April 2008. Before beginning this active duty tour, I was Deputy Counsel at the Department of Housing and Urban Development, Office of Inspector General (OIG). As part of my duties, I coordinated responses to discovery requests in a number of civil lawsuits. In particular, I coordinated the discovery response by the OIG in this lawsuit. I have been asked to explain how I coordinated the discovery responses in this lawsuit, with a focus on the emails.

2. On receipt of discovery requests for documents, I initially asked our Information Technology section how we could search the OIG emails for the information requested in lawsuits. I was told that while our contractor back-upped our emails on magnetic tapes, it would take weeks and tens of thousands of dollars to search the magnetic tapes. The tapes did not contain the emails in chronological order. A tape may have several different time periods on it, covering wide disconjunctive periods of time, and there is no index to know whose emails may be on a tape or the time periods covered on a tape. Also, we were uncertain whether the contractor actually had all the time periods. We have since obtained a new IT contractor.

3. In the normal course of answering discovery, in particular emails, I would provide the discovery requests to the appropriate person within OIG and ask them to search their archived emails for responsive documents and provide them to me. If there was a specific request for a certain document, I would request it by name or type of document.



4. For this particular lawsuit, I personally obtained the archived copies of the emails from James Heist and Michael Phelps and downloaded them to my computer. I then searched their emails using keywords. I do not recall all of the keywords I used but they would have included Elion, freeze, hiring, HAD, and other words that might result in responsive documents.

5. I spent days searching and reading literally thousands of emails. When I ran across an email that appeared responsive, I printed it out. I then sorted the hardcopy emails by the request for documents, tabbed them, and provided them to the Assistant United States Attorney, who provided the actual response to the Plaintiff's attorney.

6. Late in the litigation, I believe in late 2006, Mr. Seldon asked for the study or reports that resulted in the hiring freeze. I explained to either the AUSA or Mr. Seldon, or both, that there was no official study. It was simply spreadsheets that our Finance Office prepared showing that our budget was going to be short by millions of dollars and would not sustain our current manning level. I'm fairly certain we provided these documents although it was a late request. They contained no information regarding the Headquarters Audit Division or the plaintiff.

7. I also sent the requests for documents and other discovery to our personnel service provider, the Bureau of Public Debt. I usually sent the request to the Chief of the Employee/Labor Division and asked him to give it to the right office. Sometimes, I knew the right office and sent it directly to them.

8. Given the volume of emails that I was provided to review and determine if they were responsive to Plaintiff's requests, and the fact that some emails had either no subject line or vague subject lines, it is possible that I did not identify the emails between Mr. Phelps and Mr. Heist with which they exchanged various drafts of the April 20, 2004 Proposal for Realignment of the Office of Audit. If this document was not provided, any such failure was either unavoidable by the process I used, totally inadvertent, or was simply an error caused by the volume of the documents to be reviewed. It may also be that if I saw the email I erroneously recognized it as a document that already provided, or it may even have been previously provided as we later learned occurred in the last Motion for Sanctions. I can definitely state that I did not purposely withhold the documents.

I HAVE NOTHING FURTHER TO ADD.

27 February 2008

RICHARD K. JOHNSON