UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAUNDRA G. ELION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. Action No. 05-0992 (PLF) |
| ) | |
| ALPHONSO R. JACKSON, ) | |
| Secretary Of Housing And ) | |
| Urban Development, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**RESPONSE TO THE COURT'S DIRECTIVE REGARDING
TESTIMONY OF POST-ACTION "ME TOO" WITNESSES**

Plaintiff to the above action respectfully submits this Response in accordance with the Court's instruction during the Pretrial Conference on February 29, 2008.

**DEFENDANT'S WITNESSES**

Defendant plans to call two African American women, Sharelle Higgins and Brenda. Patterson, who are expected to testify, at least in part, that they were promoted by defendant or that defendant readily promotes African American women.[1]  Ms. Elion, of course, has not alleged that defendant passed her over for promotion; on this ground alone, Ms. Higgins and Ms. Patterson must be excluded from trial  Furthermore, these are two of the three witnesses who defendant failed to disclosed and cannot, therefore, be called as witnesses, as demonstrated in plaintiff's Supplemental Memorandum Regarding Disclosure of Individuals.  Their testimony is

---

[1] In its Pretrial Statement, defendant claimed that Ms. Higgins will testify "as to matters related to career progression with the federal government, including entry into the Senior Executive Service and other human resources matters." Even if Ms. Higgins's testimony were limited in this way, it would amount to nothing more than generalized testimony with no connection to the specific decision makers involved in this case.  Accordingly, it should not be permitted.  See Howard v. District of Columbia Public Schools, ___ F.Supp.2d ___ , 2008 WL 205615 at *2 (D.D.C.) (PLF).

1

also irrelevant and unfairly prejudicial as neither woman was promoted until after the events at issue in this action; in fact, neither was promoted until plaintiff filed this lawsuit.

Even were the testimony of these two witnesses relevant – and the discussion that follows demonstrates that it is not – the evidence of their treatment by defendant would unfairly "mislead[] the jury" and cause "undue delay, waste of time," and dissipation of judicial resources. Rule 404, Fed. R. Civ. P. Ms. Higgins and Ms. Patterson were both promoted by defendant, and Ms. Elion's case does not involve her being passed over for promotion. Furthermore, defendant's failure to disclose these witnesses prevented plaintiff from learning about OIG's general promotion practices and whether their promotions were exceptions to the rule, not to mention the circumstances surrounding their promotions. All of this would potentially need to be explored at trial.

Moreover, courts have repeatedly held that a defendant's purported "achievements" in the treatment of women and minorities "are irrelevant" when they occur "<u>after</u>" the employment actions at issue in a case. <u>Townsend v. Washington Metropolitan Area Transit Authority</u>, 746 F. Supp. 178, 186, n.8 (D.D.C. 1990) (emphasis in original); <u>accord</u> <u>Bishopp v. District of Columbia</u>, 788 F.2d 781, 788 (D.C. Cir. 1986); <u>Parham v. Southwestern Bell Telephone Co.</u>, 433 F.2d 421, 426 (8th Cir. 1970). This is especially so when the improved employment practices toward minorities occur after an employee has filed a charge of discrimination, as happened in this case. <u>See</u> <u>Bishopp</u>, 788 F.2d at 788 & n.10 (citing <u>Rich v. Martin Marietta Corp.</u>, 522 F.2d 333, 346 & n.11 (10th Cir. 1975)) ("If post filing conduct is to be taken into account at all, it might tend to show the existence of prior discrimination and an effort to repair the harm after discovery.")

Ms. Higgins was not even remotely similarly situated to plaintiff. Prior to being promoted, Ms. Higgins was a staff personnel specialist in the Human Resources Division, which is under the Office of Management and Policy, not the Office of Audits. As such, the decision to promote her would necessarily have involved completely different considerations and decision makers than those involved in taking action against Ms. Elion. Therefore, as this Court previously held in Howard v. District of Columbia Public Schools, Civ. Action No. 04-2082 at Docket No. 72, any testimony about Ms. Higgins's promotion would be irrelevant and unfairly prejudicial. See also Stanback v. Best Diversified Products, Inc., 180 F.3d 903, 910 (8th Cir. 1999) (citing Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 972 (8th Cir.1994)).

For all of the foregoing reasons, the testimony of Ms. Higgins and Ms. Patterson about their treatment by defendant after the events at action in this case is inadmissible.

## PLAINTIFF'S WITNESSES

The Supreme Court's recent decision in Sprint v. Mendelsohn, ___ S. Ct. ___ 2008 WL 495370 at *5-6 (U.S.) made it clear that evidence of an employer's treatment of employees within a plaintiff's protected groups is always relevant and admissible when the same decision-makers and types of discrimination are involved; and that evidence of this nature may also be admissible even if those employees have different supervisors or work in different departments. The Sprint opinion dispelled the notion asserted by defendant in this case, that testimony from similarly situated employees must be per se excluded. Id. at *2, *5-6. The Court also emphasized that the relevance and potential prejudice of so-called "me too" witnesses under different supervisors or in different departments must be "determined in the context of the facts and arguments in a particular case." Id. at *6.

3

In this case, plaintiff intends to call two witnesses who will testify that they met the same fate shortly after plaintiff did– involuntary reassignment – after filing EEO complaints of their own.[2] Michael Beard, the former Regional Inspector General for Audit for Region VI in Fort Worth, Texas, was involuntarily reassigned to Headquarters as a Special Assistant to Mr. Heist in January of 2005 after he filed an administrative complaint of discrimination. (Pl. Opp Def. In Limine at 4-5). Other than Ms. Elion, Mr. Beard was "the only other Headquarters Division Director or similarly situated Regional Inspector General for Audit ever removed from management and reassigned over his objection" (Id. at 4 (citing Elion SJ Decl, Docket Entry 37, ECF #3, ¶30; Beard SJ Decl., ECF #4, ¶16)). Prior to their reassignments, Mr. Beard and Ms. Elion occupied the same positions, albeit in different parts of the country, and were in the same chain of command (Id). The same management officials were involved in both actions (Id). The fact that Mr. Beard's involuntary reassignment occurred nine months after Ms. Elion's does nothing to diminish the relevance of his similar treatment by the agency, which is highly probative of defendant's retaliatory animus.

Daniel Salas, a Hispanic male who served as a Deputy Assistant Inspector General in HUD OIG, was also reassigned involuntarily in early 2005, after filing an EEO complaint in the fall of 2004 (Pl. Opp Def. In Limine at 4-9). Although Mr. Salas worked in the investigation office of the OIG, rather than audit, Inspector General Kenneth Donahue made the decision to reassign Mr. Salas while Deputy Inspector General Stephens was serving as the chief operating

---

[2] The Court has already ruled that Austin Groom, an African American man who was terminated before Ms. Elion's former Division was disbanded after filing an EEO complaint, will be allowed to testify about the agency's treatment of him. Minute Order of Feb. 29, 2008. Donna Hawkins, Ms. Elion's former Assistant Director, also filed an EEO complaint and was removed as a supervisory in the same "realignment" that relieved Ms. Elion of her supervisory duties (Pl. Opp. Def. In Limine at . Therefore, neither of these witnesses comes within the category of "post-action" witnesses the Court directed the parties to address in this brief.

4

officer for HUD OIG (Jt. PT Submission, Stipulation of Fact No. 6).  Mr. Stephens, who is Mr. Donahue's immediate subordinate, is in Ms. Elion's chain-of-command and was directly involved in taking action against her.  Evidence that HUD OIG retaliated against Mr. Salas is relevant regardless of whether it occurred before or after Ms. Elion's reassignment.

## CONCLUSION

For all of the foregoing reasons, plaintiff urges the Court to exclude the testimony of defendant's witnesses Higgins and Patterson, and to permit the testimony of plaintiff's witnesses Beard and Salas.

Respectfully submitted,

_____//s//_____
Robert C. Seldon, Esq.
  D.C. Bar No. 245100


_____//s//_____
Molly E. Buie, Esq.
  D.C. Bar No. 483767

Robert C. Seldon & Associates, P.C.
1319 F Street, N.W., Suite 200
Washington, D.C.  20004
(202) 393-8200

Counsel for Plaintiff

5