UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAUNDRA G. ELION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. Action No. 05-0992 (PLF) |
| ) | |
| ALPHONSO R. JACKSON, ) | |
|   Secretary Of Housing And ) | |
|   Urban Development, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**DEFENDANT'S RESPONSE TO THE COURT'S ORDER**

    **1.**    **The Necessity of Deposing Inspector General Kenneth Donnohue**

It appears that Plaintiff does not wish to depose Inspector General Kenneth Donnohue at this time. See Dkt. No. 92. Plaintiff, however, also indicates that if depositions of Messers. Phelps, Heist, Stephens, and McGinnis – which the Court allowed – uncover evidence that requires her to depose Mr. Donnohue, she will then seek leave of Court to do so. Id.

Given Plaintiff's position on the issue, the Court does not need to rule on this issue at this time.

    **2.**    **"Me Too" Evidence Post Relevant Conduct**.

Case law supports the proposition that "me too" evidence – be it favorable or adverse to the employer – that occurred after relevant alleged discriminatory conduct may be admissible, if it is probative and not unduly prejudicial. See Ansell v. Green Acres Contracting Co., Inc. 347 F. 515, 524 (3rd Cir. 2003).

In Ansell, an age discrimination case, the Third Circuit allowed the employer to

1

introduce evidence that – after plaintiff's termination – it hired employees over 40 years to show that it did not have discriminatory animus against older workers. 347 F.3d at 523-24. In doing so, the Third Circuit opined that:

> While not conclusive, an employer's favorable treatment of other members of a protected class can create an inference that the employer lacks discriminatory intent.
>             * * *
> Subsequent actions by an employer against co-workers may be less probative of an employer's intent than prior actions "because the logical relationship between the circumstances ... and the employer's decision to terminate is attenuated." Coletti, 165 F.3d at 777. That is not to say, however, that subsequent acts can have no probative value; they may still be relevant to intent. Echeverri, 854 F.2d at 645; cf. Ryder v. Westinghouse Elec. Corp., 128 F.3d 128, 132-33 (3d Cir.1997) (age-discriminatory comments made by CEO and other supervisors one year after plaintiff's termination were relevant to show managerial attitudes). **A court should consider the passage of time between the other act and the act alleged to be discriminatory**. There is a point at which a prior or subsequent act becomes so remote in time from the alleged discriminatory act at issue, that the former cannot, as a matter of law, be relevant to intent. See, e.g., Hurley v. Atlantic City Police Dep't, 174 F.3d 95, 112 (3d Cir.1999) (certain prior acts of sexual harassment against plaintiff inadmissible because they were too remote in time); cf. Echeverri, 854 F.2d at 645 (presence of cocaine in defendant's apartment four years after last overt act of RICO and drug conspiracy at issue, and 18 months after termination of the conspiracy, was not relevant to conspirators' knowledge or intent). Similarly, changed circumstances may also affect whether or not a subsequent good act is relevant. See, e.g., United States v. Hill, 40 F.3d 164, 168-69 (7th Cir.1994) (excluding evidence offered by defendant, who was accused of stealing a check from the mail, that she failed to steal valuables placed before her by postal inspectors in a sting operation occurring five months after the offense; passage of time, combined with defendant's awareness that she was a suspect, rendered her failure to commit a similar crime "only tangentially relevant").

Ansell, 347 F.3d at 524 (emphasis added).

### A.    Allow Ms. Patterson and Hobbs To Testify

The Court should **allow** Ms. Brenda Patterson (African-American female) and Joan Hobbs (Caucasian female) to testify as to Defendant's favorable treatment of minorities and female employees to rebut evidence of Defendant's alleged discriminatory intent toward members within these two protected classes.

**Brenda Patterson**: Ms. Patterson was promoted to become the Deputy Director of Technical and Oversight Planning Division in August 2004 (with supervisory duties), by Mr. James Heist and Michael Phelps (the two alleged responsible officials here).  See Hayes v. U.S. Bancorp Piper Jaffray Inc., 2004 WL 2075560, at *9 n. 12 (D. Minn. Sept. 16, 2004) (where plaintiff (female) alleged gender discrimination when she was awarded the lowest bonus of any trader, the court noted that evidence of the alleged discriminating official awarding the highest bonus to a woman was relevant).

Further, given that it was only four months after the abolishment of the Headquarters Audit Division and Plaintiff's assignment in April 2004, Ms. Patterson's promotion to the Deputy Director position is probative.  Finally, Ms. Patterson can also testify to the promotion and career advancement of minority employees within the agency.  See Joint Pretrial Statement (Dkt. No. 56) at ECF p. 18; see Abramson v. American Univ., 1988 WL 152020, at * 3 n.2 (June 13, 1988 D.D.C.) (noting that evidence of an employer's favorable treatment of minority employees "are facts to be considered when the Court and the jury weighs the evidence relating to defendant's intent.  If found to be true, however, they would of course seriously undermine plaintiff's discrimination claim".).

**Joan Hobbs**: As described in the Joint Pretrial Statement, Ms. Hobbs can testify to

3

Defendant's favorable treatment of female employees with respect to career progression and promotion.  See Joint Pretrial Statement (Dkt. No. 56) at ECF p. 18.  Ms. Hobbs was promoted to become the Regional Inspector General of Audit of Region 9 in March 2003.  In April 2004, she was given responsibility over Region 10.  In this capacity, she has supervisory responsibilities over auditors working in Regions 9 and 10, which cover Arizona, California, Nevada, Oregon, Washington, Alaska, Hawaii, and Idaho.  See Abramson, 1988 WL 152020, at * 3 n.2..

> **B.     Exclude Bear and Salas From Testifying.**

The Court should **exclude** the testimony of Plaintiff's "me too" witnesses (Michael Beard and Daniel Salas) because of the passage of time and the probative value of their testimony does not outweigh the undue prejudice to Defendant.

**Michael Beard**: Mr. Beard (Caucasian male) sued for age discrimination and for retaliation because of his prior protected activity when he was reassigned in January 2005 to become a special assistant to Mr. Phelps, Deputy Assistant Inspector General.  There are three reasons for excluding Mr. Beard's testimony.

First, as discussed in the motion for summary judgment in Beard v. Jackson, Civ. No. 06-656 (GK) (Dkt. No.13),[1] Mr. Beard cannot establish a causal relationship for retaliation purposes because there was a two year lapse between his prior EEO activity in 2002 and the alleged retaliatory reassignment in January 2005.[2]  As a matter of law, Mr. Beard cannot establish a

---

[1]     The motion for summary judgment was attached as Exhibit B to Defendant's Reply in Support of Motion in Limine (Dkt. 78-3).

[2]     The agency's action against Mr. Beard that led to the reassignment in January 2005, actually took place in December 2004.  See Motion for Summary in Beard (Dtk. 78-3) at

4

prima facie case of retaliation.  See Motion for Summary Judgment in Beard (Dtk. No. 78-3) at p. 21 (citing See Ball v. Tanoue, 133 F. Supp.2d 84, 92 (D.D.C. 2001) (finding that a one-year gap between the protected activity and the alleged retaliatory conduct is too long)).[3]

Second, Mr. Beard cannot establish a prima case facie of age discrimination because the agency replaced him with a person of the same age.  See Motion for Summary Judgement in Beard (Dkt. No. 78-3) at p. 18.

Finally, the passage of time between the Plaintiff's reassignment in this case (April 2004) and Mr. Beard's reassignment (January 2005) is too long for the conduct to be probative of retaliatory intent in this case.  See Ansell, 347 F.3d at 524 (noting that "[t]here is a point at which a prior or subsequent act becomes so remote in time from the alleged discriminatory act at issue, that the former cannot, as a matter of law, be relevant to intent.") (internal quotation omitted).  Under the totality of circumstances, the probative value of Mr. Beard's testimony does not outweigh the unfair prejudice to Defendant.

---

p. 13.

[3]     Plaintiff's retaliation claim in this case is legally infirm because she cannot establish her prima case of retaliation for failure to demonstrate causation.  Indeed, there was a 14-month gap between Plaintiff's prior protected activity (her December 2002 EEO complaint) and the alleged discriminatory and retaliatory act (the disbanding of the HAD in April 2004). See Mayers v. Laborers' Health and Safety Funds of N. America, 478 F.3d 364, 369 (D.C. Cir. 2007) (noting that temporal proximity of eight to nine months is too long); Buggs v. Powell, 293 F.Supp.2d 135, 148 (D.D.C.2003) (a seven month gap was too long); Gustave-Schmidt v. Chao, 360 F.Supp.2d 105, 118-19 (D.D.C.2004) (referring to end of three-month window as "outer limit" of "temporal requirement in a retaliation case."); Garrett v. Lujan, 799 F. Supp. 198, 202 (D.D.C. 1992) (eleven months too long); Woods v. Bentsen, 889 F. Supp. 179, 187 (E.D. Pa. 1995) (noting that "Courts generally hold that if at least four months pass after the protected activity without employer reprisal, no inference of causation is created.").

**Daniel Salas:** Mr. Salas is currently a special agent in Arlington, Texas, working in the Office of Investigation. He claims to be retaliation for filing an EEO complaint in February 2005.

Mr. Salas should be excluded from testifying for three reasons. First, the passage of time between his filing of the EEO complaint and Plaintiff's reassignment in this case is too long. Specifically, Plaintiff was reassigned in April 2004, but Mr. Salas did not even file an EEO complaint until February 2005 – 10 months after the relevant conduct at issue here. See Salas Depo. at 7-8 (Gov. Exh. 1). Mr. Salas claims that, because of his EEO complaint, Mr. Haban reassigned him to a different position as a form of retaliation. Id. Mr. Salas's reassignment was announced in October 2005, to become effective in January 2006, twenty three months afer the relevant conduct in this case. See Gov. Exh. 2. Given this passage of time after Plaintiff's reassignment, Mr. Salas's testimony on his EEO activity and reassignment is not relevant to Plaintiff's retaliation claims. See Ansell, 347 F.3d at 524 (noting that "[t]here is a point at which a prior or subsequent act becomes so remote in time from the alleged discriminatory act at issue, that the former cannot, as a matter of law, be relevant to intent.") (internal quotation omitted).

Second, the individual (Joe Haban) who reassigned Mr. Salas was not the same person who reassigned Plaintiff. Indeed, Mr. Salas, as a special agent in the Office of Investigation, did not report to Phelps or Heist, both of whom work in the Office of Audits. Furthermore, both Phelps and Heist did not play any role in Mr. Salas's reassignment.

Finally, Mr. Salas did not even work in the same office as Plaintiff during the relevant time period. Specifically, Mr. Salas was a deputy assistant inspector general in the Office of Investigation. Plaintiff, on the other hand, was in the Office of Audit. Although both Offices

fall under the umbrella Office of the Inspector General, Mr. Salas and Plaintiff had different supervisory chains of command. Given these facts, the probative value of Mr. Salas's testimony does not outweigh the undue prejudice to Defendant. See, e.g., Nurriddin v. Goldin, 382 F. Supp. 2d 79, 97 (D.D.C. 2005) ("[T]o be similarly situated, plaintiff must establish that his employment was similar in all relevant regards to those with whom he seeks comparison.").

    3.    **Initial Disclosures**

Parties are to produce as part of their initial disclosures the names of individuals "likely to have discoverable information." Fed. Civ. R. 26(a)(1)(A) provides in pertinent part:

> (1) Initial Disclosure.
>
> (A) In General. . . .a party must provide to the other parties:
>
> (i) the name . . . .of each individual likely to have discoverable information. . . . unless the use would be solely for impeachment.

Fed. Civ. R. 26(a)(1)(A).

As for trial witnesses, D'Onofrio v. SFX Sports Group, Inc., 247 F.R.D. 43, 53 (D.D.C. 2008), concludes that "no rule requires a trial witnesses' disclosure until the calling party files a pretrial statement." Id. It further queries rhetorically, "whether a party can be compelled to

disclose its witnesses in the interval between the initial disclosure and the filing of the Pretrial statement" and concludes that "the traditional view is that it cannot." Id. D'Onofrio, however recognizes that in certain instances, the District Court has adequate means to prevent prejudice or unfair surprise, id, citing Fed. R. Civ. P. 37(c)(1).[4]

According to LCvR 16.5(b)(1) (iv)[5], trial witnesses are specifically required to be disclosed in the Parties' Pretrial Statement.  Moreover, LCvR 16.5(b)(5) states in pertinent part:

> (5) The schedule of witnesses shall set forth the full names and addresses of all witnesses the party may call if not earlier called by another party, separately identifying those whom the party expects to present and those whom the party may call if the need arises including rebuttal witnesses. . . . .
>
> No objection shall be entertained to a witness or to testimony on the ground that the witness or testimony was disclosed for the first time in a party's Pretrial Statement, unless the party objecting has unsuccessfully sought to learn the identity of the witness or the substance of the testimony by discovery, and the court . . . . finds the information to have been wrongfully withheld.

LCvR 16.5(b)(5). (Emphasis added).  Defendant disclosed all of its trial witnesses in its final Pretrial Statement filed with this court on February 15, 2008.  Included in that Pretrial Statement

---

[4] Rule 37(c)(1) states in pertinent part:
> (1) Failure to Disclose, or Supplement.  If a party fails to provide information or identify a witness as required by Rule 26 (a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1).

[5] LCvR 16.5(b)(1)(iv) states in pertinent part:
> (1) A party's Pretrial Statement shall contain the following:
> (iv). A schedule of witnesses to be called by the party. . .

8

were three witnesses that were not included in its initial disclosures. Those witnesses are: (1) Sharelle Higgins; (2) Brenda Patterson and (3) Joan Hobbs.

### These Witnesses Should Not Be Excluded

The initial disclosure rule carves out a specific exemption for witnesses used solely for impeachment purposes. Moreover, the non-disclosure of these witnesses is substantially justified and/or harmless and will not cause unfair prejudice to the Plaintiff. The district court has broad discretion in determining whether a party's non-disclosure is substantially justified or harmless. D'Onofrio, 247 F.R.D. 43 at 53; Meadows v. Allstate Insurance Co., 2006 U.S. Dist. LEXIS 55958, *11 (S.D. W. VA, 2006). A district court is guided by the following factors in determining substantial justification or harmlessness: (1) the surprise to the party against whom evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt trial; (4) the importance of the evidence; (5) the non-disclosing party's explanation for its failure to disclose the evidence. Id., at 597. On balance, none of these factors support exclusion of these three witnesses in this case.

(1) **Sharelle Higgins**. Plaintiff may testify that because she is no longer a supervisor, she is ineligible for entry into the Senior Executive Service (SES) or otherwise unable to be further promoted into a supervisor's position. Sharelle Higgins is an human resources personnelist and the sole purpose of her testimony would be to show that Plaintiff suffers no detriment as far as entry into the SES nor is she precluded from further promotional opportunities. Her testimony is dependent entirely upon what the plaintiff is allowed to testify about concerning her career

progression on direct examination.[6]

(2) **Brenda Patterson**. Depending upon what, if any, "me too" evidence is allowed into the trial, Ms. Patterson, an African American female, will testify as to the fact that she was promoted to a managerial position by Mr. Heist and served as a subordinate under Mr. Phelps. This witness will only testify if Plaintiff's "me too" evidence is allowed. The D'Onofrio Court was concerned with preventing "unfair surprise and prejudice." 247 F.R.D. 43, at 53. In that regard, this type of evidence is not prejudicial to the Plaintiff but rather allows for a full and fair rendition of the facts to be offered to the jury.

(3) **Joan Hobbs**. Depending upon what witnesses Plaintiff offers and what evidence is adduced from those witnesses, Ms. Hobbs will testify as to her personal knowledge, observations and experience as a subordinate of Mr. Phelps. Again, Ms. Hobbs' testimony would serve to give a full flavor of what was occurring in 2004 and the years leading up to 2004. Ms. Hobbs worked under Mr. Phelps and Ms. Elion.

    This type of evidence is offered to impeach by contradiction.

---

[6] It is not clear whether Plaintiff will be able to establish a proper foundation or first hand knowledge as to her eligibility for SES positions.

Dated: March 1, 2008.                              Respectfully Submitted,


   /s/   Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


   /s/   Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

   /s/   John C. Truong
JOHN C. TRUONG, D.C. BAR #465901
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 307-0406

Attorneys for Defendant