UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
SAUNDRA G. ELION,                   )
                                    )
            Plaintiff,              )
                                    )
    v.                              )   Civil Action No. 05-0992 (PLF)
                                    )
ALPHONSO R. JACKSON,                )
  Secretary, United States Department of )
  Housing and Urban Development,    )
                                    )
            Defendant.              )
_____)


OPINION

This is an employment discrimination case in which the plaintiff, an African American woman, alleges race and gender discrimination and retaliation for engaging in protected activity, all under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2 ("Title VII"). Both parties seek to call witnesses at trial to offer so-called "me too" testimony. The purpose of such testimony is to support (or, in defendant's case, to undermine) the inference that defendant, the United States Department of Housing and Urban Development ("HUD"), discriminated and retaliated against plaintiff when it disbanded the Headquarters Audit Division ("HAD") and reassigned her in April 2004. Both parties also seek to call certain witnesses to testify about other collateral but purportedly relevant matters. Each party has filed various papers arguing that this Court should preclude the other party from offering its proposed witnesses.[1]

---

[1] The papers submitted in connection with this Opinion include: Plaintiff's and Defendant's Joint Pretrial Statement ("Joint Pretrial Statement"); Defendant's Motion *in Limine*

On March 5, 2008, this Court issued an Order setting forth its conclusions with respect to whether these witnesses would be permitted to testify, and, if so, how their testimony would be limited. The Court now sets forth its reasoning for its conclusions with respect to defendant's proffered witnesses, Sharelle Higgins, Joan Hobbs and Brenda Patterson.

## I. BACKGROUND AND PROFFERED TESTIMONY

Ms. Higgins will testify, if permitted to do so, that, as a result of her reassignment, "[p]laintiff suffers no detriment as far as entry into the [Senior Executive Service] nor is she precluded from further promotional opportunities." Def.'s Supp. at 9. The purpose of this testimony, it seems, is to rebut any inference that Ms. Elion's reassignment damaged her long-term prospects for career advancement and promotion. If permitted to testify, Ms. Hobbs will testify as to her personal knowledge of "[d]efendant's favorable treatment of female employees" – including herself – "with respect to career progression and promotion," Def.'s Supp. at 3-4, and about her personal experience as a (former) subordinate of Ms. Elion. See Joint Pretrial Stmt. at 18.[2] Ms. Patterson, if permitted, will testify "about her personal knowledge of and experience

---

("Defendant's Motion"); Plaintiff's Fifth Motion *in Limine* ("Plaintiff's Fifth Motion") (seeking to exclude the testimony of Sharelle Higgins, Brenda Patterson and Joan Hobbs); Memorandum of Points and Authorities in Opposition to Defendant's Motion *in Limine* ("Plaintiff's Opposition"); Defendant's Omnibus Response to Plaintiff's Five Motions *in Limine* ("Defendant's Opposition"); Reply Memorandum in Support of Plaintiff's Fifth Motion *in Limine* ("Plaintiff's Fifth Reply"); Defendant's Reply in Support of Motion *in Limine* ("Defendant's Reply"); Plaintiff's Supplemental Memorandum Regarding Disclosure of Individuals ("Plaintiff's Disclosure Supplement"); Response to the Court's Directive Regarding Testimony of Post-Action "Me Too" Witnesses ("Plaintiff's Me Too Supplement"); and Defendant's Response to the Court's Order ("Defendant's Supplement").

[2] Ms. Hobbs was promoted to become the Regional Inspector General of Audit of Region 9 in March 2003, and was given responsibility over Region 10 in April 2004. See Def.'s Supp. at 3-4.

with how [HUD's Office of Audit] treats its minority employees" – including herself – "with respect to promotion and career progression." See id.; see also Def.'s Supp. at 3.[3]

Plaintiff argues that Ms. Higgins and Ms. Patterson should not be permitted to testify because their identities as potential witnesses were not disclosed until the Joint Pretrial Statement was filed (just two weeks before the originally scheduled trial date and well after discovery had closed), and that Ms. Hobbs may not testify because, while her identity was disclosed in defendant's initial disclosures, she was proffered only for the purpose of testifying about her experience as Ms. Elion's subordinate. See Pl.'s Fifth Mot. at 3-5; see also Pl.'s Disclosure Supp. at 2-3. Alternatively, plaintiff argues that none of these witnesses has relevant testimony to offer. See id. at 3 (Hobbs); Pl.'s Me Too Supp. at 2 (Patterson and Higgins).

Defendant responds that these witnesses have relevant testimony to offer, and that it was permitted to withhold their identities because (1) they are offered solely as impeachment witnesses, and their identities therefore were properly withheld under Rules 26(a) and 26(e) of the Federal Rules of Civil Procedure; (2) even if these witnesses should have been disclosed, defendant's failure to disclose their identities was substantially justified and/or harmless and therefore not sanctionable; and (3) Local Civil Rule 16.5(b)(5) permits the withholding of witnesses' names until the filing of the Joint Pretrial Statement. See Def.'s Supp. at 7-10.[4]

---

[3]   Ms. Patterson was promoted to the position of Deputy Director for the Technical Oversight and Planning Division in August 2004 by the same officials Ms. Elion alleges discriminated and retaliated against her. See Def.'s Supp. at 3.

[4]   Local Civil Rule 16.5(b)(5) provides, in pertinent part:

> No objection shall be entertained to a witness or to testimony on the ground that the witness or testimony was disclosed for the first time in a party's Pretrial Statement, unless the party objecting has

II.  ANALYSIS

Although the Court does not agree with either party's analysis of these issues under the Federal and Local Rules, it does agree that the disputes turn largely on the interaction of various discovery provisions set forth in the Federal Rules of Civil Procedure.

Rule 26(a)(1) of the Federal Rules of Civil Procedure governs initial disclosures. Under that provision, parties must disclose, without awaiting a discovery request, the identity of "each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses, *unless the use would be solely for impeachment*." FED. R. CIV. P. 26(a)(1) (emphasis added).  Rule 26(a)(3), governing pretrial disclosures close in time to trial and after the close of discovery, has a similar provision.

Rule 26(b), by contrast, governs the scope of formal discovery.  See FED. R. CIV. P. 26(b).  Under that provision, parties may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including . . . the identity and location of persons who know of any discoverable matter." FED. R. CIV. P. 26(b)(1).  Notably, this provision does *not* exclude witnesses who might have information solely relating to impeachment.

Rule 26(e) provides that parties "who [have made] a disclosure under Rule 26(a) – or who [have] responded to an interrogatory, request for production, or request for admission [as part of formal discovery] – must supplement or correct [their] disclosure or response . . . in a timely manner." FED. R. CIV. P. 26(e).  Rule 37(c)(1) states that a party who fails to provide the

---

> unsuccessfully sought to learn the identity of the witness or the substance of the testimony by discovery, and the court . . . finds the information to have been wrongfully withheld.

L. CIV. R. 16.5(b)(5).

identity of witnesses as required by Rule 26(a) and Rule 26(e) shall be precluded from calling those witnesses at trial unless the failure was "substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). Rule 37(c)(1) is a self-executing sanction, and the motive or reason for the failure is irrelevant. See Elion v. Jackson, Civil Action No. 05-992, 2006 WL 2583694, at *1 (D.D.C. Sept. 8, 2006).

In this case, the defendant did disclose the identity of two of the three witnesses at issue in a timely manner. Defendant disclosed the identity of Joan Hobbs in its initial disclosures pursuant to Rule 26(a)(1). See Defendant's Rule 26(a)(1) Disclosures at 3. Defendant also disclosed the identity of Brenda Patterson in its response to plaintiff's first set of interrogatories. See Defendant's Response and Objection to Plaintiff's First Set of Interrogatories and First Request for Production of Documents, Response to Interrogatory Number 1(c), at 5. It appears that defendant did not disclose Ms. Higgins' identity until well after the close of discovery when the parties filed their Joint Pretrial Statement.

*A. Ms. Higgins*

The Court concludes that Ms. Higgins' testimony must be excluded under Rule 37 of the Federal Rules of Civil Procedure. As noted above, Rule 26(b) permits parties to discover "any nonprivileged matter that is *relevant to any party's claim or defense* – including . . . the identity and location of persons who know of any discoverable matter." FED. R. CIV. P. 26(b)(1) (emphasis added). Pursuant to that Rule, plaintiff propounded an interrogatory seeking the identities of "all persons with knowledge, personal or otherwise, *on which [defendant relies] in support* of the First, Second, Third, and Fourth Affirmative Defenses of Defendant's Answer to

the Complaint in this action." Defendant's Response and Objection to Plaintiff's First Set of Interrogatories and First Request for Production of Documents, Interrogatory Number 1(c), at 4 (emphasis added).[5]  As defendant intends to rely on Ms. Higgins to support its defenses at trial – apparently, to show that Ms. Elion cannot state a claim for relief because she cannot show that she was reassigned under circumstances giving rise to an inference of discrimination, see Defendant's Motion for Summary Judgment at 7 – Ms. Higgins' knowledge is relevant to those defenses.  See FED. R. CIV. P. 26(b)(1).  Defendant therefore was required to disclose Ms. Higgins' identity in response to plaintiff's interrogatory seeking the identity of all persons on whose knowledge HUD would rely to support its defenses – or, if defendant was unaware of Ms. Higgins or the nature of Ms. Higgins' testimony at the time it responded to this interrogatory, to supplement its response in a timely manner under Rule 26(e).  See FED. R. CIV. P. 26(e).  As defendant failed to fulfill its duties under Rule 26(e), the Court must look to Rule 37 for the appropriate remedy.

Under Rule 37, the sanction of exclusion of a witness is "automatic and mandatory unless the party to be sanctioned can show that its violation . . . was either [substantially] justified or harmless."  NutraSweet Co. v. X-L Engineering Co., 227 F.3d 776, 785-86 (7th Cir. 2000).  The burden is on the party facing sanctions to prove that its violation was either substantially justified or harmless.  See Elion v. Jackson, 2006 WL 2583694 at *1 (citing Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106-07 (9th Cir. 2001)).  The

---

[5]  These affirmative defenses are, respectively, that (1) the Court lacks subject matter jurisdiction over plaintiff's claims; (2) plaintiff's claims are barred by the applicable limitations period; (3) plaintiff has not exhausted her administrative remedies; and – most relevant here – (4) the complaint fails to state a claim upon which relief may be granted.  See Defendant's Answer to the First Amended Complaint at 10.

Court agrees with plaintiff that defendant cannot make that showing because defendant's failure to disclose Ms. Higgins prevented plaintiff from preparing to meet Ms. Higgins' testimony. See, e.g., United States ex rel. Purcell v. MWI Corp., 520 F. Supp. 2d 158, 168 (D.D.C. 2007) ("The harm from the failure to disclose a witness flows from the unfair surprise hindering the prejudiced party's ability to examine and contest that witness' evidence."). Thus, Ms. Higgins will be excluded from testifying at trial.

Defendant's argument that Ms. Higgins need not have been disclosed because she is offered "solely for impeachment" purposes fails for two reasons. First, as proffered, Ms. Higgins' testimony is not offered solely for impeachment purposes. Ms. Higgins' testimony is offered primarily to rebut an inference about the facts of this case – namely, that Ms. Elion's reassignment had a negative impact on her future career prospects – not to undermine Ms. Elion's credibility. While such evidence arguably could be characterized as "impeachment" evidence, it is not "solely for impeachment" within the terms of the discovery rules, and is in fact offered for a more substantive purpose. See Chiasson v. Zapata Gulf Marine Corp., 988 F.2d 513, 517 (5th Cir. 1993) (substantive evidence is evidence "offered to establish the truth of a matter to be determined by the trier of fact"; impeachment evidence is evidence offered to "discredit a witness . . . [by showing] why the jury should not put faith in [her] or [her] testimony") (internal quotation marks and citation omitted). See also Klonoski v. Mahlab, 156 F.3d 255, 270 (1st Cir. 1998); Newsome v. Penske, 437 F. Supp. 2d 431, 435-36 (D. Md. 2006). The Court therefore cannot agree with defendant that Ms. Higgins' testimony falls within Rule 26(a)'s exception for impeachment evidence. Therefore, Ms. Higgins' identity should have been

disclosed pursuant to Rule 26(a).[6]

Second, even assuming that Ms. Higgins' testimony were offered solely for impeachment purposes and therefore was not disclosable under Rule 26(a), the defendant would still be in violation of Rule 26. To repeat, Rule 26(b), which governs formal discovery – unlike Rule 26(a) – does *not* include an exception for witnesses whose testimony would be "solely for impeachment." FED. R. CIV. P. 26(a)(1)(A)(i), 26(a)(3)(A). As a leading treatise explains:

> The initial disclosure requirements exclude items that the disclosing party may use "solely for impeachment," but no such limitation applies to material sought through discovery. . . . The fact that the party responding to discovery intends to use the material only for impeachment does not take it out of the realm of discoverable material if it is otherwise relevant.

CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2011 at 96 (2007 Supp.). See also Newsome v. Penske, 437 F. Supp. 2d at 437 ("No special status is given to impeachment evidence under Rule 26(b)(1)."). Rule 26(b) thus imposed a duty on defendant to disclose Ms. Higgins' identity in response to plaintiff's Interrogatory Number 1(c),

---

[6] As Professors Wright and Miller explained:

> If a party plans to testify to one version of the facts, and the opponent has evidence supporting a different version of the facts, the opponent's evidence will tend to impeach the party by contradiction, but if discovery of this kind of evidence is not permitted the discovery rules might as well be repealed. Even those who have been most concerned about protecting impeachment material recognize that substantive evidence must be subject to discovery even though it also tends to contradict evidence of the discovering party.

CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2015 at 212 (1994).

even if her testimony was intended to be used solely for impeachment.[7]  If Ms. Higgins' identity or relevance were not known to defendant at the time it responded to the interrogatory, Rule 26(e) imposed a duty to disclose her identity as soon as it became known to defendant or as soon as defendant understood that Ms. Higgins' identity fell within the scope of plaintiff's interrogatory.  See FED. R. CIV. P. 26(e).  And Rule 37(c) now requires the imposition of a sanction for defendant's violation of Rule 26(e).[8]

*B.  Ms. Hobbs and Ms. Patterson*

Ms. Hobbs (a white woman) and Ms. Patterson (an African American woman) are a different story.  As noted above, Ms. Hobbs' identity was disclosed in defendant's initial disclosures, and Ms. Patterson's identity was disclosed in one of defendant's responses to plaintiff's interrogatories.[9]  Thus, it would be inappropriate to exclude them under Rule 37.  That,

---

[7]  As noted above, see *supra* at 5-6, plaintiff's Interrogatory Number 1(c) sought the identities of "all persons with knowledge, personal or otherwise, on which [defendant relies] in support of the First, Second, Third, and Fourth Affirmative Defenses of Defendant's Answer to the Complaint in this action."  Defendant's Response and Objection to Plaintiff's First Set of Interrogatories and First Request for Production of Documents, Interrogatory Number 1(c), at 4.

[8]  Defendant's reliance on Local Civil Rule 16.5 to avoid this conclusion is misplaced.  As noted above, plaintiff – through her interrogatories – "unsuccessfully sought to learn the identity of the witness . . . by discovery," and defendant wrongfully withheld it.  L. CIV. R. 16.5(b)(5).  The Local Civil Rule does not permit such conduct.

[9]  Plaintiff has argued that the disclosure of Ms. Hobbs was inadequate because defendant provided her name but did not fully disclose the purposes for which defendant would rely on her testimony.  The Court agrees that defendant's disclosure of Ms. Hobbs was not ideal in this respect.  See FED. R. CIV. P. 26(a)(1) (requiring disclosure of the identity of "each individual likely to have discoverable information – along with the subjects of that information . . . .").  As defendant's disclosure of Ms. Hobbs was sufficient to put plaintiff on notice that Ms. Hobbs had discoverable information, however – and as plaintiff therefore was free to depose Ms. Hobbs to find out exactly what she knew about what – defendant's arguably inadequate disclosure of Ms. Hobbs is not sanctionable.

however, is not the end of the inquiry. The Court must also consider whether Ms. Hobbs' and Ms. Patterson's proffered testimony is relevant and otherwise admissible.

1. Ms. Hobbs

*a. Experience as Subordinate*

The Court concludes that Ms. Hobbs' testimony about her experience as Ms. Elion's subordinate is irrelevant. Ms. Hobbs was Ms. Elion's subordinate some time before May 2002. See Joint Pretrial Stmt. at 18 (noting that Ms. Hobbs was a subordinate of Ms. Elion's while both were at the Capital District Office, an office abolished in May 2002). Thus, any testimony she could offer on this score would relate to events that are too remote in time to have significant probative value with respect to the matters at issue in this case. Moreover, permitting Ms. Hobbs to testify about these long-ago events could confuse the jury and would likely waste the Court's and the jury's time. See FED. R. EVID. 403.

*b. "Me Too" Testimony*

The Court will permit Ms. Hobbs to offer "me too" testimony about defendant's favorable treatment of her. It is established that evidence of an employer's past *discriminatory* or

---

As for Ms. Patterson, plaintiff was permitted to seek "discovery regarding any nonprivileged matter that is relevant to [her] claim[s]," FED. R. CIV. P. 26(b)(1), and defendant was required to respond to plaintiff's discovery requests in a "complete" and "correct" manner. FED. R. CIV. P. 26(g)(1)(A). Plaintiff served upon the defendant an interrogatory seeking the identities of "all persons with knowledge, personal or otherwise, on which [defendant relies] in support of [its defenses] in this action." Defendant's Response and Objection to Plaintiff's First Set of Interrogatories and First Request for Production of Documents, Interrogatory Number 1(c), at 4. In response, defendant disclosed the identity of Ms. Patterson (among others). See id., Response to Interrogatory Number 1(c), at 5. This was an adequate response to plaintiff's interrogatory as it was phrased.

*retaliatory* behavior toward other employees may be relevant to whether an employer discriminated or retaliated against a plaintiff.  See Sprint v. Mendelsohn, No. 06-1221, 2008 WL 495370, at *5-6 (Feb. 28, 2008); Parker v. HUD, 891 F.2d 316, 321 (D.C. Cir. 1989); Jones v. WMATA, 946 F. Supp. 1011, 1019 (D.D.C. 1996), *aff'd in part and vacated in part on other grounds*, 205 F.3d 428 (D.C. Cir. 2000).  As the Supreme Court has explained, such testimony is neither *per se* admissible nor *per se* inadmissible; the question whether such testimony is relevant and sufficiently more probative than unfairly prejudicial in a particular case is "fact-based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case."  Sprint v. Mendelsohn, 2008 WL 495370 at *6.  Among the factors to consider are whether such past discriminatory behavior by the employer is close in time to the events at issue in the case, whether the same decisionmakers were involved, whether the witness and the plaintiff were treated in a similar manner, and whether the witness and the plaintiff were otherwise similarly situated.  See Coles v. Perry, 217 F.R.D. 1, 9-10 & n.5 (D.D.C. 2003); White v. United States Catholic Conference, Civil Action No. 97-1253, 1998 WL 429842, at *5 (D.D.C. May 22, 1998).[10]

       "Me too" evidence of an employer's past *non*-discriminatory and *non*-retaliatory behavior may be relevant as well, because "an employer's favorable treatment of other members of a protected class can create an inference that the employer lacks discriminatory intent."  Ansell v. Green Acres Contracting Co., Inc., 347 F.3d 515, 524 (3d Cir. 2003).  Cf. Connecticut v. Teal, 457 U.S. 440, 455 (1982) ("Proof that [a] work force was racially balanced or that it contained a

---

[10]    Such testimony does not run afoul of Rule 404(b) of the Federal Rules of Evidence because that Rule explicitly contemplates the admission of "other acts" evidence to show motive or intent.  FED. R. EVID. 404(b).

disproportionately high percentage of minority employees is not wholly irrelevant on the issue of intent when that issue is yet to be decided.").

To the extent that Ms. Hobbs' "me too" testimony is offered to negate the inference that defendant harbored discriminatory or retaliatory intent, the Court concludes that it is relevant and admissible. See FED. R. EVID. 401, 402. Ms. Hobbs, like Ms. Elion, is a woman. She was promoted within the same time period (March 2003 to April 2004) in which Ms. Elion alleges defendant engaged in various discriminatory and retaliatory acts against her.[11] Ms. Hobbs was also given additional oversight responsibility at roughly the same time that Ms. Elion's former division was disbanded. Thus, under the circumstances of this case, Ms. Hobbs' testimony may have some probative value with respect to whether defendant harbored discriminatory intent toward Ms. Elion on the basis of her gender. See Sprint v. Mendelsohn, 2008 WL 495370 at *6. Furthermore, the Court cannot perceive any danger of unfair prejudice, confusion or waste of time in permitting this testimony. See FED. R. EVID. 403.

*c. Testimony About Other Employees*

Ms. Hobbs' testimony about defendant's treatment of other women may or may not be relevant and admissible, depending on whether it is based on Ms. Hobbs' personal knowledge, involves specific events (rather than vague generalizations), and is about events within the relevant time period. If defendant intends to elicit such testimony from Ms. Hobbs, the Court will require a detailed proffer out of the presence of the jury to ensure that her testimony about other employees or events will meet these requirements.

---

[11] The parties' papers do not make clear whether the same decisionmakers who allegedly discriminated and/or retaliated against Ms. Elion also decided to promote Ms. Hobbs.

### 2. Ms. Patterson

#### a. "Me Too" Testimony

Ms. Hobbs' "me too" testimony relates to events that occurred before (or at roughly the same time as) the allegedly discriminatory and/or retaliatory conduct at issue in this case. Ms. Patterson's "me too" testimony, by contrast, relates to events that occurred *after* the allegedly unlawful conduct – in August 2004. This distinction, however, does not necessarily render Ms. Patterson's "me too" testimony irrelevant. See Ansell v. Green Acres Contracting Co., Inc., 347 F.3d at 524 ("Subsequent actions by an employer . . . may be less probative of an employer's intent than prior actions . . . . That is not to say, however, that subsequent acts can have no probative value; they may still be relevant to intent.").

The Court concludes that Ms. Patterson's testimony, to the extent that it is offered to negate the inference that defendant harbored discriminatory or retaliatory intent, is relevant and admissible. See FED. R. EVID. 401, 402. Ms. Patterson, like Ms. Elion, is an African American woman. She was promoted to a director's position within four months of the disbanding of HAD and the reassignment of Ms. Elion. Moreover, it appears that Ms. Patterson was promoted by James Heist and Michael Phelps – two of the officials accused of discriminating and/or retaliating against Ms. Elion. See Def.'s Supp. at 3. Thus, under the circumstances of this case, her testimony may have significant probative value with respect to whether defendant harbored discriminatory intent toward Ms. Elion. See Sprint v. Mendelsohn, 2008 WL 495370 at *6. Furthermore, the Court cannot perceive any danger of unfair prejudice, confusion or waste of time in permitting this testimony. See FED. R. EVID. 403.

*b. Testimony About Other Employees*

Ms. Patterson's testimony about defendant's treatment of other African Americans or other women will be subject to the same strictures – and to the same requirement of a detailed proffer – as Ms. Hobbs' testimony on such matters.  <u>See</u> *supra* at 12.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: April 7, 2008